JANETTE K. BRIMMER (WSB #41271)
Earthjustice
705 Second Avenue, Suite 203
Seattle, WA  98104
(206) 343-7340
(206) 343-1526 *[FAX]*
jbrimmer@earthjustice.org

*Attorneys for Plaintiffs*

BRIAN W. CHESTNUT (WSB #23453)
JOSHUA OSBORNE-KLEIN (WSB #36736)
Ziontz, Chestnut, Varnell, Berley & Slonim
2101 Fourth Avenue, Suite 1230
Seattle, WA  98121-2331
(206) 448-1230
(206) 448-0962 *[FAX]*
bchestnut@zcvbs.com
joshok@zcvbs.com

*Co-Counsel for Plaintiffs*

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| WASHINGTON ENVIRONMENTAL COUNCIL and SIERRA CLUB WASHINGTON STATE CHAPTER, ) ) ) | Civ. No.  11-417 |
| Plaintiffs, ) ) | COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |
| v. ) ) | |
| E.G. "TED" STURDEVANT, DIRECTOR, WASHINGTON STATE DEPARTMENT OF ECOLOGY, in his official capacity, MARK ASMUNDSON, DIRECTOR, NORTHWEST CLEAN AIR AGENCY, in his official capacity, and CRAIG T. KENWORTHY, DIRECTOR, PUGET SOUND CLEAN AIR AGENCY, in his official capacity, ) ) ) ) ) ) ) ) ) ) | |
| Defendants. ) | |

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF   - 1 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

**INTRODUCTION**

1.      This lawsuit is brought under the federal Clean Air Act to protect the residents
and the natural environment of Washington State from the harmful effects of greenhouse gas
emissions.  It seeks to compel state and regional agencies that are responsible for protecting air
quality and climate in Washington to comply with federally-enforceable mandates that they
control greenhouse gas emissions from oil refineries.

2.      There are five oil refineries permitted to operate in Washington State—BP Cherry
Point in Blaine, ConocoPhillips in Ferndale, Shell Oil in Anacortes, Tesoro in Anacortes, and
U.S. Oil in Tacoma (collectively "Oil Refineries").  As the Oil Refineries convert raw oil into
usable petroleum products, they emit an estimated five to eight percent of total statewide
greenhouse gas emissions.  Numerous technologies and methods are available to improve the
energy efficiency of the Oil Refineries and, thus, to reduce greenhouse gas emissions from these
facilities which in turn would help to protect global and local air quality and the global and local
climate.

3.      The Defendants named in this lawsuit are the directors of the Washington State
Department of Ecology, Northwest Clean Air Agency, and Puget Sound Clean Air Agency, in
their official capacity.  Defendants have failed to implement and enforce requirements of the
Clean Air Act in their failure to control greenhouse gas emissions from the Oil Refineries in
violation of the mandatory provisions of Washington's federally-approved State Implementation
Plan ("SIP").  Under the Clean Air Act ("CAA"), Washington was required to propose a SIP for
the control of air pollution and submit the SIP for approval by the United States Environmental
Protection Agency ("EPA").  Once a SIP is approved by EPA, its provisions become federally
enforceable and the state and regulated entities are required to abide by its provisions.

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF   - 2 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

4.      Specifically, Defendants have failed to comply with the portions of the SIP that require them to identify and implement "reasonably available control technology" ("RACT") for emissions of greenhouse gases from the Oil Refineries and have failed to comply with the portions of the SIP that require Defendants to ensure that greenhouse gas emissions from the Oil Refineries do not endanger the health, safety and welfare of Washingtonians or damage business or property in the state.

5.      Plaintiffs Washington Environmental Council and Sierra Club Washington State Chapter (collectively "Conservation Groups") are member-based non-profit organizations committed to protecting the natural environment and climate of Washington State.  The Conservation Groups seek a court order compelling Defendants to comply with the SIP by requiring Oil Refineries to implement RACT for greenhouse gases, and to take other steps necessary to ensure that greenhouse gas emissions from the Oil Refineries do not endanger the health, safety and welfare of Washingtonians or damage property or business in the state.

**PARTIES**

6.      Plaintiff Washington Environmental Council ("WEC") is a non-profit corporation registered in the state of Washington.  WEC is a statewide, nonpartisan organization devoted to environmental protection in the state of Washington.  WEC has over 3,500 individual members and over 50 affiliated organizations.  WEC members and members of WEC affiliate organizations engage in hiking, fishing, nature study, and other recreational activities, as well as agriculture, aquaculture, and the domestic use of water, all of which are dependent on the sound management and protection of the environment and natural resources of the state.  WEC's mission is to protect, restore, and sustain Washington's environment.  Since its founding in 1967, WEC actively participates in all aspects of environmental and natural resources policy and

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF   - 3 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

management, including climate issues and clean energy, serving on numerous state task forces,

advocating for its members' and the public's interests before administrative agencies,

commissions, the legislature, and the courts.  WEC's principal place of business is in Seattle.

7.      Plaintiff Sierra Club Washington State Chapter is a state chapter of the Sierra

Club, a California non-profit corporation founded in 1892.  The Sierra Club is the oldest

conservation organization in the United States.  The Washington State Chapter is headquartered

in Seattle and has approximately 20,000 members in Washington State.  The Washington State

Chapter works at the state level on issues related to transportation planning, energy, climate

change, public and private lands, water resources, outdoor activities, and environmental justice.

Sierra Club's mission is to explore, enjoy, and protect the wild places of the earth, to practice and

promote the responsible use of the Earth's ecosystems and resources, to educate and enlist

humanity to protect and restore the quality of the natural and human environment and to use all

lawful means to carry out these objectives.

8.      Defendant E.G. (Ted) Sturdevant is Director of the Washington State Department

of Ecology ("Ecology"), a state agency created pursuant to RCW 43.21A.040.  Mr. Sturdevant is

responsible, in his official capacity, for the implementation of Clean Air Act requirements in the

State of Washington through Ecology.  Ecology regulates air quality state-wide.  Ecology is

responsible for, among other things, protecting the air quality and climate of Washington State

and implementing and enforcing provisions of the Washington SIP, including those related to the

control of air contaminant emissions from the Oil Refineries.

9.      Defendant Mark Asmundson is the Director of the Northwest Clean Air Agency

("NWCAA"), a regional air pollution agency created pursuant to RCW 70.94.053, 055, and 057.

Mr. Asmundson is responsible, in his official capacity, for the implementation of Clean Air Act

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF   - 4 -

requirements in the Northwest regions of the State of Washington through NWCAA.  NWCAA

regulates air quality in Whatcom, Skagit, and Island Counties with its office in Mt. Vernon,

Washington.  NWCAA shares responsibility and regulatory authority with Ecology under the

SIP to regulate air contaminant emissions from the BP Cherry Point refinery in Blaine,

ConocoPhillips refinery in Ferndale, Shell Oil refinery in Anacortes, and the Tesoro refinery in

Anacortes.

10.     Defendant Craig T. Kenworthy is the Director of the Puget Sound Clean Air

Agency ("PSCAA"), a regional air pollution authority created pursuant to RCW 70.94.053, 055,

and 057.  Mr. Kenworthy is responsible, in his official capacity, for the implementation of Clean

Air Act requirements in the Puget Sound region of the State of Washington through PSCAA.

PSCAA regulates air quality in Snohomish, King, Pierce, and Kitsap Counties with its office in

Seattle, Washington.  PSCAA shares responsibility and regulatory authority with Ecology under

the SIP to regulate air contaminant emissions from the U.S. Oil refinery in Tacoma. (The

individually named defendants and the agencies under their respective control are hereinafter

collectively referred to as "Defendants.")

### JURISDICTION AND VENUE

11.     This Court has jurisdiction over this case pursuant to the citizen's suit provision

of the Clean Air Act, 42 U.S.C. § 7604(a)(1).

12.     In accordance with the requirements of 42 U.S.C. § 7604(b)(1), the Conservation

Groups provided written notice of the violations alleged herein to the Ted Sturdevant, Director,

Department of Ecology; Mark Asmundson, Director, the Northwest Clean Air Agency; Craig

Kenworthy, Director, the Puget Sound Clean Air Agency; the Washington State Governor; the

Washington State Attorney General; the EPA Administrator; and the EPA Region 10

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF   - 5 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

Administrator more than 60-days prior to commencing this action.  A copy of the written notice to the Defendants is attached as Exhibit A.  The same letter was sent to the additional recipients listed in this paragraph.

13.     EPA has not taken action against any of the Defendants to address or prevent the violations set forth in the written notice described above and the violations are continuing.

14.     Venue is proper in this judicial district pursuant to 42 U.S.C. § 7604(c)(1) and 28 U.S.C. § 1391(b) because all the Oil Refineries are located in this judicial district, all Defendants reside in Washington state, and one or more Defendants resides in this judicial district.

## STATEMENT OF THE CASE

15.     Continued emissions of "greenhouse gases," including but not limited to carbon dioxide, methane, nitrous oxide, hydrofluorocarbons, perfluorocarbons, and sulfur hexafluoride, have adversely affected and continue to adversely affect the climate of Washington State. Climate-related impacts in Washington State caused by emissions of greenhouse gases include rising sea levels, coastal flooding, acidification of marine waters, declines in shellfish production, impacts to snow pack and water supplies, agricultural impacts on the east side of the Cascades, and changes in forest fires.

16.     The Oil Refineries combust fossil fuels in the process of converting crude oil into products such as gasoline, jet fuel, and asphalt.  As a result of this combustion and the refining process, the Oil Refineries emit greenhouse gases from their process heaters, boilers, fluid catalytic cracking units, hydrogen production units, sulfur recovery plants, and other facilities and units at the refineries.  The Oil Refineries also emit greenhouse gases from process equipment leaks, crude oil storage tanks, asphalt blowing, delayed coking units, and other

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF   - 6 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

sources.  In addition, refineries emit greenhouse gases as a result of system blow down and the flaring of waste gas.

17.     The Oil Refineries are responsible for a significant portion of the total greenhouse gas emissions in Washington State.  For example, the BP Cherry Point refinery directly emitted approximately 1.84 million metric tons of carbon dioxide in 2004, (the last year for which data is available for that facility), which was around two percent of total statewide greenhouse gas emissions that year.  The Tesoro facility emitted 1.37 million tons of carbon dioxide in 2008 (the last year for which data is available for that facility).  The Oil Refineries also emit methane and nitrous oxide, which are more potent greenhouse gases than carbon dioxide, as well as several other air contaminants that pose risks to human health and the environment such as hydrogen sulfide, sulfur dioxide, nitrogen oxides, particulate matter, and volatile organic compounds.

18.     RCW 70.94.154 and WAC 173-400-040 require that all existing sources of air contaminants in the state, including the Oil Refineries, employ Reasonably Available Control Technology ("RACT") to control emissions of any air contaminant.  These provisions also require Ecology to develop an initial list and schedule for RACT for existing sources, and require Defendants to review and revise the RACT determinations and requirements at least once every five years, with any necessary revisions based upon consideration of a number of factors.

19.     WAC 173-400-040(5) prohibits Defendants from "allow[ing] the emission of any air contaminant from any source if it is detrimental to the health, safety, or welfare of any person, or causes damage to property or business."

20.     "Air contaminants" are defined in RCW 70.94.030(2) as dust, fumes, mist, smoke, other particulate matter, vapor, gas, odorous substance, or any combination thereof.

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF   - 7 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

21.     RCW 70.94.030, 70.94.154 and WAC 173-400-040, including subpart (5), are included in Washington's State Implementation Plan ("SIP").  EPA approved Washington's SIP (with these provisions) in 1995.

22.     Under the federal Clean Air Act, states are required to submit SIPs to the EPA. Upon EPA's approval of the SIP, the provisions of the SIP become federally-enforceable by EPA or by citizens under the Clean Air Act's citizen suit provisions and have the force and effect of federal law.

23.     Greenhouse gases are "air contaminants" as defined in the Washington SIP, RCW 90.74.030.  Washington State Governor Chris Gregoire confirmed that greenhouse gases constitute "air contaminants" in a 2009 Executive Order, in which Governor Gregoire declared that "greenhouse gases are air contaminants within the meaning of the state's Clean Air Act and pose a serious threat to the health and welfare of Washington's citizens and the quality of the environment . . . ."

24.     Each of the Oil Refineries constitutes a "source" of "air contaminants" subject to Washington's SIP, RCW 70.94.154 and WAC 173-400-040.

25.     Defendants have never made a determination of what constitutes RACT for greenhouse gas emissions from the Oil Refineries, nor have Defendants imposed RACT on the Oil Refineries for greenhouse gas emissions through operating permits or otherwise.

26.     Defendants have never imposed any binding requirements on the Oil Refineries to reduce or control their greenhouse gas emissions, and thus have allowed and continue to allow emissions of greenhouse gases from the Oil Refineries to potentially endanger health and welfare Washingtonians and to damage property and business in the state.

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF   - 8 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

27.     Defendants have violated and are in continuing violation of the Washington SIP provisions codified at RCW 70.94.154, WAC 173-400-040, and WAC 173-400-040(5) by failing to define and implement RACT for the Oil Refineries and by failing to take steps to ensure that greenhouse gas emissions from the Oil Refineries do not endanger the health and welfare of Washingtonians or damage property or business in the state.

28.     Defendants' failure to implement the provisions of the Washington SIP provisions codified at RCW 70.94.154, WAC 173-400-040 and WAC 173-400-040(5) with respect to greenhouse gas emissions from the Oil Refineries will result in higher levels of greenhouse gas concentrations in the atmosphere and will cause and exacerbate climate change impacts.

29.     The climate-related impacts described herein have caused and will continue to cause injury-in-fact to the Conservation Groups and their members' health and real and personal property; the forests, trails, and other lands that they use for recreation, travel, and aesthetic enjoyment; and the State's natural resources that the Conservation Groups and their members have long worked to protect.  The injuries described in this paragraph are concrete, particularized, imminent, and fairly traceable to Defendants' failure to implement the Washington SIP provisions codified at RCW 70.94.154, WAC 173-400-040, and WAC 173-400-040(5) with respect to greenhouse gas emissions from the Oil Refineries.  The injuries to the Conservation Groups and their members alleged herein fall squarely within the zone of interests the federal Clean Air Act was designed to protect, and these injuries would be redressed if the Court issued an order requiring Defendants to control greenhouse gas emissions from the Oil Refineries.

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF   - 9 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

**CAUSES OF ACTION**

**COUNT I**
**Failure To Comply**
**With SIP Requirement To Determine And Implement RACT For Greenhouse Gas**
**Emissions (RCW 70.94.154 and WAC 173-400-040)**

30.     The Conservation Groups restate and reallege all preceding paragraphs.

31.     Under RCW 70.94.154 and WAC 173-400-040 (the "RACT Provisions"),
Defendants Sturdevant, Asmundson, and Kenworthy are required to issue a regulatory order or
rule determining emission control strategies that are "reasonably available control technology"
("RACT") for emissions of air contaminants from the Oil Refineries including greenhouse gas
emissions, and to review and revise that determination at least once every five years.

32.     EPA approved the RACT Provisions as part of Washington's SIP on June 2,
1995.  Accordingly, the RACT Provisions constitute an "emission standard or limitation,"
enforceable pursuant to the citizen suits provision of the federal Clean Air Act, 42 U.S.C. §
7604(a)(1).

33.     Defendants Sturdevant, Asmundson, and Kenworthy have failed to comply with
requirements of the RACT Provisions of the Washington SIP because they have never issued a
regulatory rule or order determining the greenhouse gas emissions control strategies for the Oil
Refineries that constitute RACT, review and revised RACT determinations for greenhouse gas
emissions every five years, or otherwise required the Oil Refineries to use RACT to limit their
greenhouse gas emissions.

34.     Based upon the foregoing, the Conservation Organizations are entitled to
declaratory and injunctive relief finding that Defendants Sturdevant, Asmundson, and
Kenworthy have violated the RACT Provisions of Washington's SIP and requiring Defendants to

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF   - 10 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

1    immediately comply by determining and implementing RACT controls for the emission of

2    greenhouse gases at the Oil Refineries.

3                                          **COUNT II**

     **Failure To Comply With SIP Requirement To Protect Health, Safety And Welfare Of**
4            **Washingtonians And Property And Business (WAC 173-400-040(5))**

5            35.     The Conservation Groups restate and reallege all preceding paragraphs.

6            36.     Under WAC 173-400-040(5) (the "Narrative Standard"), Defendants Sturdevant,

7    Asmundson, and Kenworthy are prohibited from "allow[ing] the emission of any air

8    contaminant," including greenhouse gases, from the Oil Refineries if such emission "is

9    detrimental to the health, safety, or welfare of any person, or causes damage to property or

10   business."

11           37.     EPA approved the Narrative Standard as part of Washington's SIP on June 2,

12   1995.  Accordingly, the Narrative Standard constitutes an "emission standard or limitation,"

13   enforceable pursuant to the citizen suits provision of the federal Clean Air Act, 42 U.S.C. §

14   7604(a)(1).

15           38.     Defendants Sturdevant, Asmundson, and Kenworthy have failed to comply with

16   requirements of the Narrative Standard portion of the Washington SIP because they have not

17   taken necessary actions to ensure that greenhouse gas emissions from the Oil Refineries will not

18   be detrimental to the health, safety, or welfare of Washingtonians and will not cause damage to

19   property or business in Washington.

20           39.     Based upon the foregoing, the Conservation Organizations are entitled to

21   declaratory and injunctive relief finding that Defendants Sturdevant, Asmundson, and

22   Kenworthy have violated the Narrative Standard portion of Washington's SIP and requiring

23   Defendants to immediately comply by requiring controls for the emission of greenhouse gases at

24

25   COMPLAINT FOR DECLARATORY AND
     INJUNCTIVE RELIEF   - 11 -
26

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

the Oil Refineries necessary to protect the health, safety, or welfare of Washingtonians and property or business in Washington.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request an order from this Court:

a.      Declaring that Defendants Sturdevant, Asmundson, and Kenworthy's failure to define and implement RACT for the Oil Refineries violates Washington SIP provisions codified at RCW 70.94.154 and WAC 173-400-040;

b.      Declaring that Defendants Sturdevant, Asmundson, and Kenworthy's failure to ensure that greenhouse gas emissions from the Oil Refineries do not endanger the health and welfare of Washingtonians or damage property or business violated Washington SIP provisions codified at WAC 173-400-040(5);

c.      Ordering Defendants Sturdevant, Asmundson, and Kenworthy to determine and implement, within 60 days, all emission control strategies that constitute RACT for greenhouse gas emissions from the Oil Refineries pursuant to RCW 70.94.154 and WAC 173-400-040;

d.      Ordering Defendants Sturdevant, Asmundson, and Kenworthy to determine, within 60 days, whether additional controls beyond RACT are required to ensure that emissions of greenhouse gases from the Oil Refineries are not detrimental to the health, safety, or welfare of any person or cause damage to property or business pursuant to WAC 173-400-040(5) and to immediately implement any such additional controls;

e.      Retaining jurisdiction over this action until Defendants Sturdevant, Asmundson, and Kenworthy have made the determinations requested herein and taken any other appropriate action required by the Court;

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF   - 12 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

1    f.    Granting Plaintiffs an award of reasonable costs and attorney fees pursuant to 42

2    U.S.C. § 7604(d); and

3    g.    Granting any other relief the Court deems just and reasonable.

4    Respectfully submitted this 10th day of March, 2011.

5
6                                        _____/s/ Janette K. Brimmer_____
                                         JANETTE K. BRIMMER (WSB #41271)
7                                        Earthjustice
                                         705 Second Avenue, Suite 203
8                                        Seattle, WA  98104
                                         (206) 343-7340
9                                        (206) 343-1526 *[FAX]*
                                         jbrimmer@earthjustice.org

10                                       *Attorneys for Plaintiffs*

11                                       BRIAN W. CHESTNUT (WSB #23453)
                                         JOSHUA OSBORNE-KLEIN (WSB #36736)
12                                       Ziontz, Chestnut, Varnell, Berley & Slonim
                                         2101 Fourth Avenue, Suite 1230
13                                       Seattle, WA  98121
                                         (206) 448-1230
14                                       (206) 448-0962 *[FAX]*
                                         bchestnut@zcvbs.com
15                                       joshok@zcvbs.com

16                                       *Co-Counsel for Plaintiffs*

17

18

19

20

21

22

23

24
                                         *Earthjustice*
25   COMPLAINT FOR DECLARATORY AND          *705 Second Ave., Suite 203*
     INJUNCTIVE RELIEF   - 13 -             *Seattle, WA  98104*
                                            *(206) 343-7340*
26

# EXHIBIT A

**Z**IONTZ, **C**HESTNUT, **V**ARNELL, **B**ERLEY & **S**LONIM

ATTORNEYS AT LAW

STEVEN H. CHESTNUT
JAMES L. VARNELL
RICHARD M. BERLEY
MARC D. SLONIM
JOHN B. ARUM
BRIAN W. CHESTNUT
BRIAN C. GRUBER
JOSHUA OSBORNE-KLEIN

2101 FOURTH AVENUE, SUITE 1230
SEATTLE, WASHINGTON  98121-2331
TELEPHONE 206-448-1230
FACSIMILE  206-448-0962
www.zcvbs.com

August 24, 2010

Ted Sturdevant
Director, Washington State Department of Ecology
PO Box 47600
Olympia, WA 98504-7600

Mark Asmundson
Director, Northwest Clean Air Agency
1600 South Second Street
Mount Vernon, WA 98273-5202

Craig Kenworthy
Director, Puget Sound Clean Air Agency
1904 Third Avenue, Suite 105
Seattle, WA 98101-3317

> **Re:  60-Day Notice of Violations of Washington State Implementation Plan Provisions Relating to Control of Greenhouse Gas Emissions from Oil Refineries.**

Dear Messrs. Sturdevant, Asmundson, and Kenworthy,

Washington Environmental Council and Sierra Club Cascade Chapter (collectively "Conservation Groups") hereby provide notice, pursuant to 42 U.S.C. § 7604(b)(1)(A), that the Washington State Department of Ecology, Northwest Clean Air Agency, and Puget Sound Clean Air Agency (collectively "Air Pollution Agencies" or "Agencies") are in violation of the federal Clean Air Act ("CAA"), 42 U.S.C. §§ 7401-7671q, because they have failed to implement mandatory provisions of Washington's State Implementation Plan ("SIP") relating to control of greenhouse gas emissions from oil refineries.  If these violations are not adequately addressed within 60 days of receipt of this notice, the Conservation Groups intend to file a lawsuit against the Agencies pursuant to 42 U.S.C. § 7604(a)(1).

Below, you will find a more specific description of the Air Pollution Agencies' violations of the Washington SIP.  Please contact us as at (206) 448-1230 if you have any questions regarding this notice or would like to discuss resolution of the violations described herein prior to commencement of litigation.

Page **1** of 7

# BACKGROUND

Oil refineries are a significant source of greenhouse gas emissions in the United States. Refineries combust large quantities of fossil fuels in the process of converting crude oil into usable products such as gasoline, jet fuel, and asphalt. As a result, greenhouse gases are emitted from various refinery sources including process heaters, boilers, fluid catalytic cracking units, hydrogen production units, and sulfur recovery plants.[1] Oil refineries also emit greenhouse gases from process equipment leaks, crude oil storage tanks, asphalt blowing, and delayed coking units.[2] In addition, refineries emit greenhouse gases as a result of system blow down and the flaring of waste gas.[3]

There are five oil refineries operating in Washington State—BP Cherry Point in Blaine, ConocoPhillips in Ferndale, Shell Oil in Anacortes, Tesoro in Anacortes, and U.S. Oil in Tacoma.[4] These refineries contribute significantly to statewide greenhouse gas emissions. For example, the BP Cherry Point facility directly emitted 1.84 million metric tons of carbon dioxide in 2004, approximately two percent of total statewide greenhouse gas emissions that year.[5] The Tesoro refinery emitted 1.37 million tons of carbon dioxide in 2008.[6] Oil refineries in the state also emit methane and nitrous oxide, which are potent greenhouse gases, as well as several other air contaminants such as hydrogen sulfide, sulfur dioxide, nitrogen oxides, particulate matter, and volatile organic compounds.[7]

The Air Pollution Agencies have a poor record of regulating air pollution from the oil refineries. For example, although EPA approved Washington's "Title V" permit programs for air emissions from stationary sources in 1994, as of the year 2000 the Air Pollution Agencies had not issued the required Title V permits to the oil refineries, forcing a coalition of conservation groups to send 60-day notices threatening legal action. Those notices prompted settlement, and the Air Pollution Agencies ultimately issued Title V permits to the oil refineries in 2002 and

---

[1] EPA, *Technical Support Document for the Petroleum Refining Sector: Proposed Rule for Mandatory Reporting of Greenhouse Gases*, at 11 (Sept. 2008).

[2] EPA, *Technical Support Document for the Petroleum Refining Sector: Proposed Rule for Mandatory Reporting of Greenhouse Gases*, at 11 (Sept. 2008).

[3] EPA, *Technical Support Document for the Petroleum Refining Sector: Proposed Rule for Mandatory Reporting of Greenhouse Gases*, at 11 (Sept. 2008).

[4] The Northwest Clean Air Agency ("NWCAA") has regulatory authority over air emissions from all these refineries except the U.S. Oil facility, which is under the jurisdiction of the Puget Sound Clean Air Agency ("PSCAA"). *See* RCW 70.94.053. The Department of Ecology has concurrent authority over SIP implementation and regulation of all five refineries. *See* RCW 70.94.405, .410.

[5] BP, *Cherry Point Refinery, Blaine, Washington, 2004 Health, Safety and Environmental Statement*, at 14 (Sept. 2005); CTED, *Summary Report of Washington's Greenhouse Gas Emissions: Sources and Trends*, at 2 (Dec. 2006).

[6] NWCAA, *Statement of Basis for the Air Operating Permit – FINAL: Tesoro Refining and Marketing*, at 42 (Jan. 26, 2010).

[7] NWCAA, *BP West Coast Products Air Operating Permit*, at ii (modified Sept. 06, 2006).

2003.  However, because Title V permits have a term of five years,[8] the operating permits for the oil refineries expired in 2007 and 2008.  Only one of these permits (for the Tesoro facility) has been renewed; the remaining four oil refineries are currently operating under expired permits.[9] None of the permits, including the Tesoro permit that was renewed in January 2010, contain requirements for controlling greenhouse gas emissions.  Nor have the Agencies taken any significant steps outside of the Title V program to curb greenhouse gas emissions from the refineries.

The Air Pollution Agencies' failure to control greenhouse gas emissions is particularly egregious in light of recent legal and political developments on both the state and federal level confirming that the Agencies have the duty to control greenhouse gas emissions from oil refineries.  For example:

- In 2007, the United States Supreme Court issued the landmark decision in *Massachusetts v. EPA*,[10] in which the Court held that "greenhouse gases fit well within the [federal] Clean Air Act's capacious definition of 'air pollutant . . . .'"

- In 2008, the Washington State Legislature enacted a law requiring the State to "limit emissions of greenhouse gases" to specified levels.[11]

- In 2009, Governor Gregoire issued an executive order confirming that "greenhouse gases are air contaminants within the meaning of the state's Clean Air Act and pose a serious threat to the health and welfare of Washington's citizens and the quality of the environment . . . ."[12]

- In 2009, the federal EPA proclaimed that "six greenhouse gases taken in combination endanger both the public health and the public welfare of current and future generations."[13]

---

[8] WAC 173-601-610; *see also* 42 U.S.C. § 7661a(b)(5)(B).

[9] BP Cherry Point and the U.S. Oil renewals were due in June 2009, the ConocoPhillips renewal was due in May 2009, and the Shell Oil renewal was due in November 2008.  *See* NWCAA, *BP West Coast Products Air Operating Permit,* at ii (modified Sept. 06, 2006); PSCAA, *U.S. Oil & Refining Co. Air Operating Permit*, at 2 (amended Apr. 15, 2003); NWCAA, *ConocoPhillips Air Operating Permit,* at i (May 20, 2003); NWCAA, *Shell Oil Products Air Operating Permit*, at ii (modified Sept. 24, 2004).

[10] 549 U.S. 497, 532 (2007).

[11] The State is required to reduce greenhouse gas emissions to 1990 levels by 2020, 25 percent below 1990 levels by 2035, and 50 percent below 1990 levels by 2050.  RCW 70.235.020(1)(a).

[12] Washington State Governor, Executive Order 09-05 (May 25, 2009).

[13] 74 Fed. Reg. 66,496 (Dec. 15, 2009).  The EPA-approved portions of Washington's SIP are listed on EPA's website.  *Federally Approved Washington State Implementation Plan for Air Quality, available at* http://yosemite.epa.gov/r10/airpage.nsf/webpage/SIP+-+WA+Table+of+Contents?OpenDocument (last viewed Apr. 30, 2010).

In light of such developments, it is indisputable that greenhouse gas emissions pose a serious threat to the health and welfare of Washington's residents and are subject to regulation under both the federal and state Clean Air Acts.

## LEGAL FRAMEWORK

The federal CAA allows the states to develop SIPs, which establish strategies a state will take for controlling air pollution and complying with federal air pollution standards.[14]  EPA may only approve a SIP if it meets all of the requirements of the federal CAA.[15]  Once EPA issues its approval, the terms of the SIP are binding on the state as a matter of federal law.[16]  Individuals may file suit in a federal district court "to compel state and local agencies and officials to comply with the requirements of a state implementation plan . . . approved by EPA."[17]

EPA approved the bulk of Washington's current SIP in 1995.[18]  At issue in this case are two SIP provisions, described in more detail below, that require the Air Pollution Agencies to review and implement control technologies and other strategies for reducing greenhouse gas emissions from oil refineries.  Because the Air Pollution Agencies have failed to take even minimal steps towards implementing these mandates, the Conservation Organizations intend to file a lawsuit in federal court seeking an order compelling the Agencies to comply with the SIP.

## VIOLATIONS

I.   **The Air Pollution Agencies are in violation WAC 173-400-040 because they have failed to define and require RACT for emissions of greenhouse gases from oil refineries.**

One of the provisions of Washington's SIP that EPA approved in 1995 requires the Air Pollution Agencies to review and implement "reasonably available control technology" ("RACT") for emissions of "air contaminants" from "sources."  Specifically, WAC 173-400-040 provides as follows:

[A]ll emissions units are required to use reasonably available control technology (RACT) which may be determined for some sources or source categories to be more stringent than the applicable emission limitations of any chapter of Title 173 WAC.  Where current controls are determined to be less than RACT, ecology or

---

[14] 42 U.S.C. §§ 7410(a), 7409(a)-(b).

[15] 42 U.S.C. §§ 7410(a)(3)(A), 7502(b).

[16] 42 U.S.C. § 7413(a)(2).

[17] *Council of Commuter Orgs. v. Metro. Transp. Auth.*, 683 F.2d 663, 665 (2d Cir. 1982); *see also Clean Air Council v. Mallory*, 226 F. Supp. 2d 705, 720-21 (E.D. Penn. 2002); *Cmtys. for a Better Env't v. Cenco Refining Co.*, 180 F. Supp. 2d 1062, 1077-82 (C.D. Cal. 2001); *Oregon Envtl. Council v. Dep't of Envtl. Quality*, 775 F. Supp. 353, 360 (D. Or. 1991).

[18] 60 Fed. Reg. 28,726 (June 2, 1995).

the [regional air] authority shall, as provided in [RCW 70.94.154], define RACT for each source or source category and issue a rule or regulatory order requiring the installation of RACT.[19]

The Washington Legislature has provided further instruction to the Air Pollution Agencies on implementing this RACT standard:

> By January 1, 1994, ecology shall develop a list of sources and source categories requiring RACT review and a schedule for conducting that review. Ecology shall review the list and schedule within six months of receiving the initial operating permit applications and at least once every five years thereafter. . . . The department and local authorities shall revise RACT requirements, as needed, based on the review conducted under this subsection.
>
> . . . . In establishing or revising RACT requirements, ecology and local authorities shall address, where practicable, all air contaminants deemed to be of concern for that source or source category.[20]

Because the term "air contaminants" is defined in Washington law to include greenhouse gases,[21] and oil refineries qualify as "sources" or "source categories,"[22] the federally enforceable SIP unambiguously mandates that the Air Pollution Agencies review and implement RACT for greenhouse gas emissions from oil refineries whenever practicable and at least every five years.[23]

It is entirely practicable for the Air Pollution Agencies to comply with these RACT

---

[19] WAC 173-400-040 (emphasis added).  EPA has approved this provision as part of Washington's current SIP.  40 C.F.R. § 52.2479.

[20] RCW 70.94.154(4)-(5) (emphasis added).

[21] RCW 70.94.030(1) ("'Air contaminant' means dust, fumes, mist, smoke, other particulate matter, vapor, gas, odorous substance, or any combination thereof."); *see also* WAC 173-400-030(3); Washington State Governor, Executive Order 09-05 (May 25, 2009) ("[G]reenhouse gases are air contaminants within the meaning of the state's Clean Air Act and pose a serious threat to the health and welfare of Washington's citizens and the quality of the environment . . . .").

[22] "Source" is broadly defined as "all of the emissions unit(s) including quantifiable fugitive emissions, that are located on one or more contiguous or adjacent properties, and are under the control of the same person or persons under common control, whose activities are ancillary to the production of a single product or functionally related group of products."  WAC 173-400-030(76); *see also* RCW 70-94-030(22).  "Emissions unit" is defined as "any part of a stationary source or source which emits or would have the potential to emit any pollutant subject to regulation under the Federal Clean Air Act, chapter 70.94 or 70.98 RCW."  WAC 173-400-030(28).

[23] *See Sierra Club v. Sw. Clean Air Agency*, No. 09-108, 2010 WL 1636869, *12-13 (PCHB Apr. 19, 2010) ("The statute anticipates that Ecology will develop a list of sources and source categories requiring RACT review, and review it every five years.  Ecology and local air authorities are expected to revise RACT requirements, as needed, based on that review. . . .  Ecology and local air authorities are also to address, where practicable, all air contaminants deemed to be of concern for a source when establishing or revising RACT requirements . . . .")

mandates for greenhouse gas emissions from oil refineries.  Indeed, according to a 2008 draft EPA report, "there appear to be numerous efficiency improvements that currently exist and have been adequately demonstrated" for reducing greenhouse gas emissions from oil refineries, including "boiler and steam system optimization, heat exchanger fouling mitigation and optimization, efficiency improvements in processes heaters and motors, waste gas and power recovery, and process optimization and process technology improvements."[24]  Under the SIP, the Air Pollution Agencies have an obligation to evaluate these energy efficiency measures and other potential greenhouse gas control strategies, and to issue a regulatory order or rule mandating whatever greenhouse gas emissions controls and/or limits constitute RACT.[25]

II.    **The Air Agencies are in violation of WAC 173-400-040(5) because they have failed to protect the health and welfare of Washington's residents from greenhouse gas emissions from oil refineries.**

Washington law also provides that "[n]o person shall cause or allow the emission of any air contaminant from any source if it is detrimental to the health, safety, or welfare of any person, or causes damage to property or business."[26]  Like the RACT requirement discussed above, this standard is incorporated into Washington's SIP and is "enforceable as written."[27]

Despite the SIP requirement, the Air Pollution Agencies have failed to take any action to protect the health and welfare of Washington's residents from greenhouse gas emissions, which constitute "air contaminants" under Washington law and therefore fall within the scope of WAC 173-400-040(5).[28]  If the Air Pollution Agencies continue to allow uncontrolled emissions of greenhouse gases, mountain snowpack will be diminished resulting in less water availability throughout the Pacific Northwest for human, commercial, and industrial use.[29]  In addition, changes in precipitation patterns and temperatures are expected to bring more frequent extreme weather events, an increase in the occurrence of forest fires, diminished agricultural activity, a rising sea level, and reduced hydropower electricity generation.[30]  These changes threaten to

---

[24] EPA, *Technical Support Document for the Advanced Notice of Proposed Rulemaking for Greenhouse Gases; Stationary Sources, Section VII, Final Draft*, at 19 (June 2008).

[25] RCW 70.94.154(2)-(3).

[26] WAC 173-400-050(5).

[27] *Sierra Club*, 2010 WL 1636869 at *10 ("The Board concludes that the general emissions standards of WAC 173-400-050(5) and SWCAA 400-040(5) are applicable requirements for purposes of the Operating Permit because they are included within the Washington SIP and Washington Administrative Code and within a regulation adopted by SWCAA, but also concludes that the general emissions standards are enforceable as written . . . ."); 40 C.F.R. § 52.2479.

[28] *Supra* note 27.

[29] Climate Impacts Group, *The Washington Climate Change Impacts Assessment: Evaluating Washington's Future in a Changing Climate-Executive Summary*, at 8 (2009) [hereinafter "CIG Report"].

[30] CIG Report at 2, 10, 31-32; *see also* United States Geological Survey, *Vulnerability of U.S. National Parks to Sea-Level Rise and Coastal Change* (September 2002); Climate Leadership Initiative, *An overview of Potential Economic Costs to Washington of a Business-As Usual Approach to Climate Change*, at iv, 16 (February 2009).

devastate Washington's economy and seriously injure the health of Washington's residents.

In light of these severe potential impacts, the Governor of Washington has declared that "greenhouse gases . . . pose a serious threat to the health and welfare of Washington's citizens and the quality of the environment . . . ."[31]  The Air Pollution Agencies must give heed to this declaration and take immediate steps, as mandated in the SIP, to protect the health and welfare Washington's residents from greenhouse gas emissions from oil refineries.

## CONCLUSION

The Air Pollution Agencies have a legal duty and a moral imperative to control greenhouse gas emissions from oil refineries.  If the Air Pollution Agencies do not immediately begin to discharge this responsibility, the Conservation Organizations have no choice but to initiate legal action to compel the Agencies to comply with the SIP and take necessary first steps towards protecting Washington's residents from the adverse impacts of climate change.

We look forward to working with you to resolve these complex issues.  Do not hesitate to contact us at 206-448-1230 if you have any questions or would like to discuss a schedule for remedying the violations outlined herein.

Sincerely,

ZIONTZ, CHESTNUT, VARNELL,
  BERLEY & SLONIM

John B. Arum
Joshua Osborne-Klein

*Attorneys for Washington Environmental Council
and Sierra Club Cascade Chapter*

cc:    Joan Crooks, Executive Director, Washington Environmental Council
       Morgan Ahouse, Chair, Sierra Club Cascade Chapter

---

[31] Washington State Governor, Executive Order 09-05 (May 25, 2009)