1          HONORABLE MARSHA J. PECHMAN

2

3

4

5

6

7      UNITED STATES DISTRICT COURT
    FOR THE WESTERN DISTRICT OF WASHINGTON

8

9 WASHINGTON ENVIRONMENTAL   Civ. No. 11-417-MJP
 COUNCIL and SIERRA CLUB
10 WASHINGTON STATE CHAPTER,   INTERVENOR-DEFENDANT
             WESTERN STATES PETROLEUM
11     Plaintiffs,      ASSOCIATION'S COMBINED
             MOTION FOR SUMMARY
12   v.          JUDGMENT AND MEMORANDUM,
             AND OPPOSITION TO PLAINTIFFS'
13 THEODORE ("TED") L. STURDEVANT, MOTION FOR SUMMARY
 DIRECTOR, WASHINGTON STATE  JUDGMENT
14 DEPARTMENT OF ECOLOGY, in his official
 capacity, MARK ASMUNDSON, DIRECTOR, NOTE ON MOTION CALENDAR:
15 NORTHWEST CLEAN AIR AGENCY, in his October 14, 2011
 official capacity, and CRAIG T.
16 KENWORTHY, DIRECTOR, PUGET SOUND (ORAL ARGUMENT REQUESTED)
 CLEAN AIR AGENCY, in his official capacity,
17
     Defendants,
18
   and
19
 WESTERN STATES PETROLEUM
20 ASSOCIATION,
21
     Intervenor-Defendant.
22

23

24

25

26

INTERVENOR-DEFENDANT'S COMBINED MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM, AND OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT (Civ. No. 11-417-MJP)

70846105.6

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
Telephone (206) 624-0900

1

<u>TABLE OF CONTENTS</u>

Page

I. INTRODUCTION .................................................................................................. 1

II. BACKGROUND .................................................................................................. 1

    A.    Climate Change Effects in Washington State Have No Correlation to
         Local or Regional GHG Emissions .................................................................... 2

    B.    Washington Refinery GHG Emissions Reflect an EPA Policy Choice to
         More Tightly Control Other Pollutants .............................................................. 3

III. STANDARD OF REVIEW ................................................................................ 5

IV. ARGUMENT ..................................................................................................... 5

    A.    The Washington SIP Does Not Regulate GHG Emissions ............................... 6

         1.    The sole purpose of a CAA SIP is to attain and maintain NAAQS ........... 6

         2.    GHGs are neither criteria pollutants nor precursors to criteria
              pollutants ....................................................................................................... 11

         3.    The scope of the Washington SIP RACT and Nuisance Rules must
              be construed consistent with the purpose and intent of CAA Section
              110. ............................................................................................................... 11

    B.    The Agencies Are Not in Violation of the RACT Rule of the SIP ................... 16

         1.    The RACT Rule ........................................................................................... 16

         2.    The Washington SIP does not require Defendants to selectively
              target refinery GHG emissions for RACT analysis and controls ............... 17

    C.    The Agencies Are Not in Violation of the SIP Nuisance Rule ........................ 19

         1.    The Nuisance Rule is not an "emission standard or limitation" within
              the meaning of CAA Section 304 .............................................................. 21

             a.    The CAA permits citizen suits only to enforce specific and
                 objective "emissions standards or limitations" .............................. 21

             b.    The Washington SIP Nuisance Rule is not a specific and
                 objective "emission standard or limitation" ................................... 22

          2.    Plaintiffs cannot mandate development of GHG emission standards
              or an Agency enforcement action against the refineries based upon
              the Nuisance Rule ....................................................................................... 24

             a.    The Nuisance Rule does not require the Agencies to
                 develop emission standards ............................................................ 24

             b.    Citizen suits are not allowed to compel agencies to bring
                 discretionary enforcement actions against polluters ...................... 26

V. PLAINTIFFS' EXHIBITS AND TESTIMONY ARE INADMISSIBLE ............................... 27

    A.    Dkts. 37-1, 37-3, 37-4, and 37-6 through 37-10 Have Not Been Properly
         Authenticated .................................................................................................. 28

INTERVENOR-DEFENDANT'S COMBINED MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM, AND OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT (Civ. No.  11-417-MJP) - i

S<small>TOEL</small> R<small>IVES</small> <small>LLP</small>
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
<i>Telephone (206) 624-0900</i>

70846105.6

B.   Dkts. 37-1 Through 37-10 Are Inadmissible Hearsay ...........................................29

C.   Dks. 37-1 Through 37-10 Are Relied upon for Inadmissible Opinion Evidence ..........................................................................................................31

D.   Dkts. 37-8 and 37-9 Are Relied upon for Evidence That Is Not Probative ..........31

E.   Plaintiffs' Declarations Contain Inadmissible Speculation and Opinion ..............33

VI. ALTERNATIVELY, MATERIAL ISSUES OF FACT PRECLUDE  PLAINTIFFS FROM OBTAINING SUMMARY JUDGMENT.............................................................. 33

VII. REMEDY ...................................................................................................................... 34

VIII. CONCLUSION ............................................................................................................. 35

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

INTERVENOR-DEFENDANT'S COMBINED MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM, AND OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT (Civ. No.  11-417-MJP) - ii

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone (206) 624-0900*

70846105.6

1

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*American Electric Power Co. v. Connecticut*,
  564 U.S. _, 131 S.Ct. 2527 (2011) ........................................................................13, 34

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ..................................................................................................5

*Beyene v. Coleman Sec. Servs., Inc.*,
  854 F.2d 1179 (9th Cir. 1988) ...................................................................28, 29, 30

*Canada v. Blain's Helicopters, Inc.*,
  831 F.2d 920 (9th Cir. 1987) ..................................................................................28

*Cate v. Transcon. Gas Pipe Line Corp.*,
  904 F. Supp. 526 (W.D. Va. 1995) .........................................................................10

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ............................................................................................5, 34

*Chevron U.S.A., Inc. v. Natural Res. Defense Council, Inc.*,
  467 U.S. 837 (1984) .................................................................................................8

*City of Seabrook v. Costle*,
  659 F.2d 1371 (5th Cir. 1981) ................................................................................26

*City of Yakima v. Surface Transp. Bd.*,
  46 F. Supp. 2d 1092 (E.D. Wash. 1999) .................................................................27

*Clean Air Council, Inc. v. McGinty*,
  No. 06-00741, 2006 WL 2715205 (E.D. Pa. Sept. 22, 2006) .................................27

*Cmtys. for a Better Env't v. Cenco Ref. Co.*,
  180 F. Supp. 2d 1062 (C.D. Cal. 2001) ..................................................................23

*Concerned Citizens of Bridesburg v. EPA*,
  836 F.2d 777 (3d Cir. 1987) ...................................................................................14

*Conservation Law Found., Inc. v. Busey*,
  79 F.3d 1250 (1st Cir. 1996) ..................................................................................22

*Coyt v. Holder*,
  593 F.3d 902 (9th Cir. 2010) ...................................................................................8

INTERVENOR-DEFENDANT'S COMBINED MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM, AND OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT (Civ. No.  11-417-MJP) - iii

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
Telephone (206) 624-0900

70846105.6

*Dubois v. Thomas,*
  820 F.2d 943 (8th Cir. 1987) ...........................................................................27

*Duquesne Light Co. v. EPA,*
  166 F.3d 609 (3d Cir. 1999)............................................................................14

*Eilrich v. Remas,*
  839 F.2d 630 (9th Cir. 1988) ...........................................................................25

*El Comite Para El Bienestar de Earlimart v. Warmerdam,*
  539 F.3d 1062 (9th Cir. 2008) ...........................................................................5

*Ernst & Ernst v. Hochfelder,*
  425 U.S. 185 (1976)..........................................................................................12

*Hal Roach Studios, Inc. v. Richard Feiner & Co.,*
  896 F.2d 1542 (9th Cir. 1989) .........................................................................28

*Hancock v. Train,*
  426 U.S. 167 (1976)..........................................................................................21

*Heckler v. Chaney,*
  470 U.S. 821 (1985)..........................................................................................26

*Helter v. AK Steel Corp.,*
  No. C-1-96-527, 1997 WL 34703718 (S.D. Ohio Mar. 31, 1997) ...............22, 23

*Hydranautics v. FilmTec Corp.,*
  204 F.3d 880 (9th Cir. 2000) ...........................................................................24

*Kleenwell Biohazard Waste & Gen. Ecology Consultants, Inc. v. Nelson,*
  48 F.3d 391 (9th Cir. 1995) .........................................................................25, 26

*Kortan v. California,*
  5 F. Supp. 2d 843 (C.D. Cal. 1998), *aff'd sub nom.,*
  *Kortan v. Cal. Youth Auth.,*
  217 F.3d 1104 (9th Cir. 2000) .........................................................................28

*League to Save Lake Tahoe v. Trounday,*
  598 F.2d 1164 (9th Cir. 1979) .......................................................................8, 10

*Manhattan Gen. Equip. Co. v. Comm'r,*
  297 U.S. 129 (1936)..........................................................................................12

*Native Vill. of Kivalina v. ExxonMobil Corp.,*
  663 F. Supp. 2d 863 (N.D. Cal. 2009) .............................................................3

INTERVENOR-DEFENDANT'S COMBINED MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM, AND OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT (Civ. No.  11-417-MJP) - iv

1    *Natural Res. Defense Council, Inc. v. Train*,
2        510 F.2d 692 (D.C. Cir. 1974) ...........................................................................22

3    *North Carolina ex rel. Cooper v. TVA*,
         615 F.3d 291 (4th Cir. 2010) ...............................................................................8
4
     *Orr v. Bank of Am., NT & SA*,
5        285 F.3d 764 (9th Cir. 2002) ........................................................................28, 29

6    *Paper, Allied-Industrial, Chemical & Energy Workers*
         *International Union v. Continental Carbon Co.*,
7        No. 04-0438, 2005 WL 1389431 (W.D. Okla. 2005) .........................................23

8    *Parklane Hosiery Co. v. Shore*,
9        439 U.S. 322 (1979)..............................................................................................24

10   *Pension Benefit Guar. Corp. v. Carter & Tillery Enters.*,
         133 F.3d 1183 (9th Cir. 1998) .............................................................................12
11
     *Postscript Enters. v. City of Bridgeton*,
12       905 F.2d 223 (8th Cir. 1990) ...............................................................................28

13   *Safe Air for Everyone v. EPA*,
14       475 F.3d 1096 (9th Cir. 2007) ...............................................................................8

15   *Satterfield v. J.M. Huber Corp.*,
         888 F. Supp. 1561 (N.D. Ga. 1994) ....................................................................23
16
     *Shoemaker v. City of Bremerton*,
17       745 P.2d 858 (Wash. 1987).............................................................................24, 25

18   *Sierra Club v. Bosworth*,
19       510 F.3d 1016 (9th Cir. 2007) ...............................................................................5

20   *Sierra Club v. Sw. Wash. Clean Air Agency*,
         No. 09-108, 2010 WL 1636869 (Wash. PCHB Apr. 19, 2010)...........10, 19, 20, 24
21
     *Sierra Club v. U.S. Def. Energy Support Ctr.*,
22       No. 01:11-cv-41, 2011 WL 3321296 (E.D. Va. July 29, 2011)...................3, 10, 26

23   *Sierra Club v. Whitman*,
         268 F.3d 898 (9th Cir. 2001) ...............................................................................27
24
     *Union Electric Co. v. EPA*,
25       427 U.S. 246 (1976)..............................................................................................14

26

INTERVENOR-DEFENDANT'S COMBINED MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM, AND OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT (Civ. No. 11-417-MJP) - v

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
Telephone (206) 624-0900

70846105.6

*United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*,
  484 U.S. 365 (1988) ................................................................................................12

*United States v. Dibble*,
  429 F.2d 598 (9th Cir. 1970) .................................................................................29

*United States v. Lewis*,
  67 F.3d 225 (9th Cir. 1995) ...................................................................................12

*Univ. of Tenn. v. Elliott*,
  478 U.S. 788 (1986) ..........................................................................................25, 26

*Wehrli v. Cnty. of Orange*,
  175 F.3d 692 (9th Cir. 1999) .............................................................................24, 25

*Wilder v. Thomas*,
  854 F.2d 605 (2d Cir. 1988) ...............................................................................8, 22

**Federal Statutes**

42 U.S.C. § 7408(a)(2) .................................................................................................7

42 U.S.C. § 7409 ..............................................................................................5, 7, 11

42 U.S.C. § 7409(a)(1) .................................................................................................7

42 U.S.C. § 7409(b)(2) .................................................................................................7

42 U.S.C. § 7410 ................................................................................................ passim

42 U.S.C. § 7410(a) ...............................................................................................6, 7, 9

42 U.S.C. § 7410(a)(2)(A) ...........................................................................................8

42 U.S.C. § 7410(a)(2)(C) ...........................................................................................8

42 U.S.C. § 7410(a)(2)(D)(i)(I) ...................................................................................8

42 U.S.C. § 7410(k)-(l) ...............................................................................................17

42 U.S.C. § 7411(d) .....................................................................................................13

42 U.S.C. § 7411(d)(1) ................................................................................................13

42 U.S.C. § 7416 .........................................................................................................13

42 U.S.C. § 7602(k) .....................................................................................................21

INTERVENOR-DEFENDANT'S COMBINED MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM, AND OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT (Civ. No. 11-417-MJP) - vi

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone (206) 624-0900*

42 U.S.C. § 7604 ................................................................................5, 16, 21, 26

42 U.S.C. § 7604(a)(1) ..............................................................................21, 22

42 U.S.C. § 7604(f) ...........................................................................................21

42 U.S.C. §§ 7661-7661f ..................................................................................21

**Washington Statutes**

RCW 43.21B.170 ...............................................................................................26

RCW 70.94.154 ...........................................................................................17, 18

RCW 70.94.154(5) .............................................................................................19

RCW 70.235.020(2) .............................................................................................4

RCW 80.80.040 ..................................................................................................13

**Federal Rules**

Fed. R. Civ. P. 56(a) ............................................................................................5

Fed. R. Civ. P. 56(c)(2) ....................................................................................27

Fed. R. Civ. P. 56(e) .........................................................................................28

Fed. R. Evid. 401 ...............................................................................................32

Fed. R. Evid. 401-403 .................................................................................27, 33

Fed. R. Evid. 402 .........................................................................................31, 32

Fed. R. Evid. 701-702 .................................................................................27, 33

Fed. R. Evid. 701-705 .......................................................................................31

Fed. R. Evid. 702 ...............................................................................................31

Fed. R. Evid. 801 ...............................................................................................30

Fed. R. Evid. 801(c) .....................................................................................29, 30

Fed. R. Evid. 802 ...............................................................................................29

Fed. R. Evid. 901 ...............................................................................................27

INTERVENOR-DEFENDANT'S COMBINED MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM, AND OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT (Civ. No.  11-417-MJP) - vii

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
Telephone (206) 624-0900

70846105.6

Fed. R. Evid. 901(a) .................................................................................................28

Local Rule 7(g) .......................................................................................................27

**Federal Regulations**

40 C.F.R. pt. 50 .........................................................................................................7

40 C.F.R. §§ 50.4-.13, 50.15-.17 .............................................................................11

40 C.F.R. § 51.1000 .................................................................................................11

40 C.F.R. § 60.23(a)(1) ............................................................................................13

40 C.F.R. § 98.2(b) ....................................................................................................2

40 C.F.R. § 98.6 .........................................................................................................2

37 Fed. Reg. 10842, 10900 (May 31, 1972) ...........................................................15

57 Fed. Reg. 44530, 44532 (Sept. 28, 1992) ............................................................9

58 Fed. Reg. 4578 (Jan. 15, 1993) ..........................................................................15

63 Fed. Reg. 28958, 28959 (May 27, 1998) .............................................................9

66 Fed. Reg. 42427, 42432 (Aug. 13, 2001) ............................................................9

71 Fed. Reg. 13551, 13553 (Mar. 16, 2006) .....................................................10, 13

73 Fed. Reg. 44354, 44367 (July 30, 2008) .........................................................2, 11

74 Fed. Reg. 57051, 57051 (Nov. 3, 2009) .............................................................10

75 Fed. Reg. 77697, 77700 (Dec. 13, 2010) ...........................................................11

76 Fed. Reg. 16365, 16366 (Mar. 23, 2011) ...................................................7, 9, 10

**Washington Regulations**

WAC 173-400-040 (1993) ........................................................................................17

WAC 173-400-040(1) ....................................................................................16, 18, 19

WAC 173-400-040(5) .......................................................................................... passim

WAC 371-08-300 ......................................................................................................26

INTERVENOR-DEFENDANT'S COMBINED MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM, AND OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT (Civ. No.  11-417-MJP) - viii

70846105.6

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone (206) 624-0900*

WAC ch. 173-460 .................................................................................................13

WAC ch. 371-08 ...................................................................................................26

WAC Title 173.......................................................................................................16

**Other Authorities**

http://yosemite.epa.gov/r10/airpage.nsf/webpage/SIP+-
+WA+Table+of+Contents?OpenDocument ......................................................17

S. Rep. No. 91-1196, at 36 (1970), *reprinted in* Cong. Research Serv., *A Legislative
History of the Clean Air Act Amendments of 1970*, at 436 (1974) .........................................22

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

INTERVENOR-DEFENDANT'S COMBINED MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM, AND OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT (Civ. No.  11-417-MJP) - ix

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone (206) 624-0900*

1

# I.  INTRODUCTION

2     This litigation arises in the context of the ongoing national and international policy

3 debate over climate change regulation.  Despite the absence of a national ambient air quality

4 standard ("NAAQS") for greenhouse gases ("GHGs"), the plaintiff advocacy groups seek to

5 manufacture an unprecedented obligation that the Washington Department of Ecology

6 ("Ecology") and two local air pollution control authorities (collectively "Defendants" or

7 "Agencies") selectively regulate the GHG emissions of five Washington oil refineries pursuant

8 to two provisions of Washington's Clean Air Act ("CAA") State Implementation Plan ("SIP").

9     As addressed below, in the absence of an established NAAQS for GHGs, the CAA does

10 not authorize states to regulate GHGs through the vehicle of a SIP.  For this reason, the

11 Washington SIP cannot, and so does not, regulate GHG emissions.  Moreover, even if the

12 Washington SIP did regulate GHGs, the two SIP provisions at issue here – the "RACT Rule" and

13 the "Nuisance Rule" – do not impose on the Agencies a federal duty to regulate refinery GHG

14 emissions as argued by Plaintiffs.  For these reasons, Plaintiffs' motion for summary judgment

15 (Dkt. 35) should be denied, and the dispositive cross-motions of the Agencies and Intervenor-

16 Defendant Western States Petroleum Association ("WSPA")[1] should be granted.

17

# II.  BACKGROUND

18     The issues presented in this litigation are matters of statutory and regulatory

19 interpretation subject to disposition as a matter of law.  *See* Dkt. 20 at 2 (Joint Rule 26(f) Status

20 Report statement that "[t]his case presents clear legal questions regarding application of the

21 federal Clean Air Act").  Although Plaintiffs do not contend otherwise in their pending motion,

22 they nevertheless devote a substantial portion of their brief to assertions about climate change

23 impacts in Washington and the GHG emissions of Washington's five oil refineries.  *See* Dkt. 35

24

_____

25     [1] WSPA was granted intervention as of right and, accordingly, has "full rights of
participation as a party" in this matter.  Dkt. 25.

26

INTERVENOR-DEFENDANT'S COMBINED MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM, AND OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT (Civ. No.  11-417-MJP) – 1

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone (206) 624-0900*

70846105.6

1   at 2-8.  In an attempt to lend gravity and urgency to their claims, Plaintiffs paint a bleak portrait

2   of the threat posed by climate change and the contribution of Washington's refineries to the state

3   GHG emissions inventory; however, Plaintiffs' contentions, in addition to being extraneous to

4   the dispositive legal issues in the case, are inaccurate and misleading in important respects.[2]

5   **A.   Climate Change Effects in Washington State Have No Correlation to Local or Regional GHG Emissions**

6         GHG emissions are very different from other air pollutants.  Declaration of Thomas A.

7   Umenhofer ("Umenhofer Decl.") ¶ 5.[3]  GHGs, emitted from whatever source at whatever

8   location, are ubiquitous and evenly dispersed across the world.  *Id.*  Accordingly, changes in

9   GHG emissions at the local or regional level have no detectable effect on local or regional GHG

10  concentrations, or local or regional effects of climate change:

11              Unlike most pollutants where local and regional air quality, and
                local and regional public health and welfare, can be improved by
12              reducing local and regional emissions, GHGs originate around the
                globe, and are mixed and dispersed such that there is a relatively
13              uniform atmospheric GHG concentration level around the world.
                *There is little or nothing that a single State or region can do that*
14              *will appreciably alter the atmospheric GHG concentration level in*
                *that particular State or region.*
15

16  73 Fed. Reg. 44354, 44367 (July 30, 2008) (emphasis added) (Comments of U.S. Department of

17  Energy on Environmental Protection Agency's ("EPA") Advanced Notice of Proposed

18  Rulemaking re Regulating Greenhouse Gas Emissions Under the Clean Air Act); Umenhofer

19  Decl. ¶ 5 ("Because of the global dispersion and mixing, there is no resultant direct correlation

20  between a specific GHG emission source and atmospheric concentrations of GHGs at any local

21

22      _____

        [2] Plaintiffs' assertions are also premised upon inadmissible submissions.  *See infra* § V.

23      [3] GHGs include carbon dioxide and five other families of chemical compounds.  *See* 40

24  C.F.R. § 98.6 (definition of GHGs).  Federal and state reporting rules require industrial sources
    to report their GHG emissions on a "$CO_2$ equivalent" basis (*i.e.*, in units that account for the
    different warming effects of each GHG emitted from a facility).  $CO_2e$ emissions by industry are
25  generally reported in "million metric tonnes" or "MMt."  *See, e.g,* 40 C.F.R. § 98.2(b) (formula
    for converting GHG emissions to a $CO_2e$ basis).

26

INTERVENOR-DEFENDANT'S COMBINED MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM, AND OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT (Civ. No.  11-417-MJP) – 2

**STOEL RIVES LLP**
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone (206) 624-0900*

70846105.6

1    or regional receptor.  Similarly, there is no direct correlation between specific GHG emissions

2    and local or regional climate change.").

3         No science demonstrates (and no credible scientist would testify) that reductions in GHG

4    emissions from Washington's refineries (or even complete elimination of GHG emissions from

5    Washington's refineries) would detectably reduce GHG concentrations in Washington or affect

6    the pace of climate change, now or in the future, in Washington (or elsewhere).

7
> Greenhouse gases are unique, moreover, in that they are both well-mixed and long-lived in the atmosphere, so that concentrations of greenhouse gases at a given time are determined by the emissions of all sources worldwide over centuries, rather than by emissions from local, contemporaneous sources. . . . A reduction in greenhouse gas emissions in one area or from one source has no effect on greenhouse gas levels that are specific to that area, and may even have no effect on global greenhouse gas levels because other sources  (including those in other countries) may increase their own emissions.

8

9

10

11

12   *Sierra Club v. U.S. Def. Energy Support Ctr.*, No. 01:11-cv-41, 2011 WL 3321296, at *4 (E.D.

13   Va. July 29, 2011) (citation omitted); *see* Umenhofer Decl. ¶ 13 ("[N]o foreseeable changes in

14   the GHG emissions from the five Washington refineries, whether they are increases or decreases,

15   would cause or can be correlated with, local or regional GHG concentrations anywhere in

16   Washington, or local or regional climate change effects.").[4]

17   **B.    Washington Refinery GHG Emissions Reflect an EPA Policy Choice to More**
         **Tightly Control Other Pollutants**

18

19        Lacking a causal link between climate change effects in Washington and GHG emissions

20   from Washington refineries, Plaintiffs instead generalize about the percentage share of the state

21   _____

22       [4] *Accord, e.g., Native Vill. of Kivalina v. ExxonMobil Corp.*, 663 F. Supp. 2d 863, 876 (N.D. Cal. 2009) ("[T]he harm from global warming involves a series of events disconnected from the discharge itself."); Umenhofer Decl. Ex. 2 (U.S. Geological Survey determination that

23   "[i]t is currently beyond the scope of existing science to identify a specific source of $CO_2$ emissions and designate it as the cause of specific climate impacts at an exact location."); *see*

24   *also* Umenhofer Decl. ¶ 11 & Ex. 3 (recent EPA analysis and findings that hypothetical facility with 2.5 times the amount of annual GHG emissions as the collective emissions of the

25   Washington refineries would have no quantifiable adverse impact on the most sensitive of species (*i.e.*, listed threatened and endangered species) or their habitats).

26

INTERVENOR-DEFENDANT'S COMBINED MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM, AND OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT (Civ. No.  11-417-MJP) – 3

1    GHG emissions inventory generated by the Washington refineries.   However, the GHG

2    emissions of Washington's refineries are readily assessed from annual public reports and, when

3    viewed in context, are far from a compelling target for the kind of selective enforcement action

4    Plaintiffs seek to enjoin in this litigation.[5]  Indeed, in substantial measure, current refinery GHG

5    emissions levels are a product of a policy choice by federal regulators to decrease sulfur

6    emissions from refineries through technology that increases GHG emissions.

7          In recent years, EPA has amended its fuel specifications for gasoline, highway diesel, and

8    other fuels to reduce the maximum sulfur content of most fuels to 15 parts per million.  *See*

9    Holmes Decl. ¶ 7 & Ex. 2.  To meet the new "ultra low sulfur" fuel standards, Washington

10   refineries have invested millions of dollars to upgrade their sulfur capture capability.  Refineries

11   strip sulfur out of crude oil using hydrogen gas.  The refineries must manufacture hydrogen as a

12   raw material for the production of ultra low sulfur fuels.  The chemical reaction that generates

13   elemental hydrogen yields carbon dioxide as a byproduct.  Recent capital projects at Washington

14   refineries (like the Clean Fuels Project at the BP Cherry Point Refinery, mentioned by Plaintiffs),

15   have – as mandated by EPA rules – installed technology that tightly controls sulfur at the

16   expense of generating GHG emissions.  *Id.*

17         WSPA acknowledges the challenge of climate change and the case for global efforts to

18   reduce GHG emissions.  However, Plaintiffs misrepresent the nature of the problem and ignore

19   well-established science in implying that more stringent control of Washington oil refinery GHG

20

21

22         [5] Washington refineries emitted 5.94 MMt $CO_2e$[5] in 2008.  Declaration of Frank E.
     Holmes ("Holmes Decl.") ¶¶ 4-5.  In December 2010, pursuant to the mandate of the Legislature
23   in RCW 70.235.020(2), the State of Washington published an inventory of GHG emissions in
     Washington for the period of 1990 through 2008.  *Id.* ¶  5 & Ex. 1.  Total emissions in
24   Washington for 2008 were reported as 101.1 MMt $CO_2e$, a reduction of 2.4 percent from 2007
     GHG emissions.  Based upon the state's reported GHG inventory for 2008, Washington refinery
25   GHG emissions were approximately 5.9 percent of the statewide GHG emissions for that year.
     *Id.*
26

INTERVENOR-DEFENDANT'S COMBINED MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM, AND OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT (Civ. No.  11-417-MJP) – 4

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
Telephone (206) 624-0900

70846105.6

1  emissions would affect the pace or impacts of climate change in Washington.  Umenhofer Decl.

2  ¶¶ 4-13.

3  ### III.  STANDARD OF REVIEW

4          Summary judgment shall be granted if the moving party demonstrates that there are no

5  genuine issues of material fact and the moving party is entitled to judgment as a matter of law.

6  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex*

7  *Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Sierra Club v. Bosworth*, 510 F.3d 1016, 1022

8  (9th Cir. 2007).  The claims alleged in Plaintiffs' complaint, as presented in their pending motion

9  for summary judgment, rest entirely on erroneous portrayals of the scope of the Washington SIP,

10  the requirements of two SIP rules, and the remedies available in a CAA Section 304 citizen suit.

11  As such, Plaintiffs' claims may be resolved by this Court on the basis of statutory and regulatory

12  interpretation.  *See El Comite Para El Bienestar de Earlimart v. Warmerdam*, 539 F.3d 1062,

13  1069 (9th Cir. 2008) (interpretation of SIP in CAA citizen suit resolved as a matter of law).

14  Should the Court determine, however, that Plaintiffs state viable claims under the CAA and the

15  Washington SIP, Plaintiffs' motion must still be denied because Plaintiffs offer no admissible

16  evidence to support essential elements of their claims, and because Plaintiffs' claims, as alleged,

17  are dependent upon material facts that are in genuine dispute.  *See infra* §§ V-VI.

18  ### IV.  ARGUMENT

19          This case turns on three elements of the CAA.  First, EPA promulgates primary and

20  secondary NAAQS.  42 U.S.C. § 7409.  Air pollutants for which NAAQS have been established

21  by EPA are known as "criteria pollutants" or "NAAQS pollutants."  Second, states are required

22  to propose, and EPA is required to approve, a SIP containing control measures that attain and

23  maintain the NAAQS in areas within a state's jurisdiction.  42 U.S.C. § 7410.  Third, CAA

24  Section 304 authorizes citizen suits to enforce "an emission standard or limitation" that is "in

25  effect under" the CAA via an approved SIP.  42 U.S.C. § 7604.

26

INTERVENOR-DEFENDANT'S COMBINED MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM, AND OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT (Civ. No.  11-417-MJP) – 5

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone (206) 624-0900*

1   GHGs are not criteria pollutants, and there are no NAAQS for GHGs.  Without an

2   ambient standard for GHGs, there is nothing for a SIP to attain or maintain.  For this reason, the

3   CAA neither requires nor authorizes SIP provisions regulating GHGs.  As addressed in Section

4   IV.A, Plaintiffs' attempt here to compel Washington agencies to regulate GHG emissions under

5   authority of the Washington SIP rewrites the well-defined role of a SIP under CAA Section 110.

6         Even if, as Plaintiffs argue, a SIP may include GHG control measures, the Washington

7   SIP RACT and Nuisance Rules do not compel agencies to regulate GHG emissions.   As

8   addressed in Section IV.B, the RACT Rule does not compel the state to establish new RACT

9   controls for GHG emissions from refineries.  As for the SIP Nuisance Rule, Section IV.C shows

10  that narrative nuisance rules like WAC 173-400-040(5) are not enforceable in a citizen suit, and

11  this Court lacks jurisdiction over a CAA citizen suit seeking to compel the Agencies to undertake

12  enforcement action against a source.

13  **A.    The Washington SIP Does Not Regulate GHG Emissions**

14        Section 110(a) of the CAA declares that within three years of adoption of a NAAQS each

15  state must submit to EPA a plan which provides for attainment and maintenance of that NAAQS

16  within the state.   42 U.S.C. § 7410(a).   EPA must approve that plan if it finds that the SIP

17  submittal meets the requirements of Section 110.   Nothing in Section 110 authorizes a state to

18  include, or EPA to approve as part of a SIP, provisions that have any purpose other than attaining

19  and maintaining the NAAQS.  Here, in the absence of a GHG NAAQS, it is clear from the plain

20  language of Section 110, and from EPA's consistent decades-long interpretation and application

21  of both Section 110 and the Washington SIP, that the Washington SIP cannot and does not

22  regulate GHGs.  Because misinterpretation of CAA Section 110 and the Washington SIP is an

23  essential element of Plaintiffs' claims, this litigation is subject to dismissal as a matter of law.

    **1.    The sole purpose of a CAA SIP is to attain and maintain NAAQS**

24        When Congress enacted the modern CAA Amendments in 1970, there was a broad

25  consensus that the air was unhealthy in many regions of the country, but there was no established

26

INTERVENOR-DEFENDANT'S COMBINED MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM, AND OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT (Civ. No.  11-417-MJP) – 6

70846105.6

**STOEL RIVES LLP**
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone (206) 624-0900*

1   scientific foundation to evaluate the harmful effects of each pollutant.  As a first step, Congress

2   directed EPA to list air pollutants that cause or contribute to air pollution, and to issue "air

3   quality criteria" for those pollutants that "accurately reflect the latest scientific knowledge useful

4   in indicating the kind and extent of all identifiable effects on public health or welfare which may

5   be expected from the presence of such pollution in the ambient air[.]"  42 U.S.C. § 7408(a)(2).

6   At the same time, Congress directed EPA to propose and, after a reasonable opportunity for

7   public comment, to finalize NAAQS for each pollutant for which criteria were issued.  42 U.S.C.

8   § 7409(a)(1).[6]  EPA refers to the air pollutants for which it has established NAAQS as "criteria

9   pollutants" or "NAAQS pollutants."  *See, e.g.,* 76 Fed. Reg. 16365, 16366 (Mar. 23, 2011).

10          In Section 110(a) of the CAA, Congress directed each state to submit to EPA a SIP to

11  attain and maintain the NAAQS within the state.  42 U.S.C. § 7410(a).  Each state has broad

12  discretion to design the control measures included in its SIP, so long as those measures meet

13  certain minimum criteria and collectively achieve and maintain the NAAQS.  The mandatory

14  link between SIPs and NAAQS attainment is expressed in the plain language of Section 110:

15          § 7410.   State implementation plans *for national primary and
        secondary ambient air quality standards*.

16

17          (a)(1) Each State shall, after reasonable notice and public hearings,
        adopt and submit to the Administrator, within 3 years . . . *after the
        promulgation of a national primary ambient standard air quality*

18      *standard* (or any revision thereof) under section 7409 of this title
        for any air pollutant, a plan which provides for implementation,

19      maintenance, and enforcement *of such primary standard* in each
        air quality control region (or portion thereof) within such State.  In

20      addition, such State shall adopt and submit to the Administrator . . .
        within 3 years . . . *after the promulgation of a national ambient air*

21      *quality secondary standard* (or revision thereof), a plan which
        provides for implementation, maintenance, and enforcement of

22      *such secondary standard* in each air quality control region (or
        portion thereof) within such State.

23

24  _____

25          [6] NAAQS are subdivided into Primary NAAQS, which are intended to protect public
    health, and Secondary NAAQS, which are established to protect public welfare  42 U.S.C.

26  § 7409(b)(1)-(2).  In practice, the two standards are often the same.  *See* 40 C.F.R. pt. 50.

INTERVENOR-DEFENDANT'S COMBINED MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM, AND OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT (Civ. No.  11-417-MJP) – 7

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone (206) 624-0900*

70846105.6

1   *Id.* (emphases added); *see also North Carolina ex rel. Cooper v. TVA*, 615 F.3d 291, 298-300

2   (4th Cir. 2010) (describing CAA statutory structure, including the role of NAAQS and SIPs);

3   *League to Save Lake Tahoe v. Trounday,* 598 F.2d 1164, 1167 (9th Cir. 1979) (same).

4           The lengthy provisions of CAA Section 110 run for many pages, but *every element*

5   addresses the establishment and amendment of SIPs to attain and maintain NAAQS.  *See, e.g.,*

6   42 U.S.C. § 7410(a)(2)(A) (requiring that SIPs include enforceable emissions limitations and

7   other control measures "as may be necessary or appropriate to meet the applicable requirements

8   of this chapter"), § 7410(a)(2)(C) (requiring that SIPs provide for enforcement of adopted

9   measures "as may be necessary to assure that national ambient air quality standards are

10  achieved"), § 7410(a)(2)(D)(i)(I) (requiring that SIPs prohibit emissions of an air pollutant in

11  amounts that will contribute to another state's nonattainment of "any such national primary or

12  secondary ambient air quality standard").   In contrast, there is no mention of non-criteria

13  pollutants in Section 110 of the CAA.

14          Upon approval by EPA of a state regulation as an element of the SIP, that regulation

15  becomes enforceable as a matter of federal law.  *Safe Air for Everyone v. EPA*, 475 F.3d 1096,

16  1104 (9th Cir. 2007).  A state may revise the rules incorporated into a SIP, but revisions take

17  effect as a matter of federal law only upon approval by EPA.  *Id.*  In all instances, as mandated

18  by the plain language of the authorizing statute, SIPs must consist of control strategies to attain

19  and maintain NAAQS.  *See Wilder v. Thomas*, 854 F.2d 605, 609 (2d Cir. 1988); *Chevron*

20  *U.S.A., Inc. v. Natural Res. Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984) (in interpreting a

21  federal statute, courts must give effect to the unambiguously expressed intent of Congress).

22          If the purpose, intent, and scope of Congress's authorization of SIPs were uncertain from

23  the plain language of CAA Section 110 (which it is not), then EPA's construction of Section 110

24  and the extent of SIP authority must be respected so long as it is permissible.  *See Chevron*, 467

25  U.S. at 842-43; *Coyt v. Holder*, 593 F.3d 902, 905 (9th Cir. 2010).  Here, EPA's interpretation of

26

INTERVENOR-DEFENDANT'S COMBINED MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM, AND OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT (Civ. No.  11-417-MJP) – 8

**STOEL RIVES LLP**
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone (206) 624-0900*

70846105.6

1    the authority granted to it and to the state under the SIP provisions of the CAA is certain,

2    consistent, and oft-repeated:

3            [M]easures to control non-criteria pollutants may not legally be
             made part of a SIP.  Section 110 of the Clean Air Act makes clear
4            that the SIPs have this limitation.

5    Declaration of Jeffrey W. Leppo ("Leppo Decl.") at Ex. 1 (Memorandum from EPA Associate

6    General Counsel to Regional Counsels re Status of State/Local Air Pollution Control Measures

7    Not Related to NAAQS (Feb. 9, 1979))(cited and quoted, in part, at 76 Fed. Reg. 16365, 16366

8    (Mar. 23, 2011)).

9            Over the past four decades, EPA has consistently applied this interpretation of the limits

10   of SIP authority to the Washington SIP and many other SIPs.  For example:

11      •   In 1991, Ecology submitted for SIP approval a recodified version of
            Washington's air rules.  EPA approved all of the rules that regulated criteria
12          pollutants, and excluded all of the rules that regulated other pollutants, "as these
            provisions are not related to the criteria pollutants regulated under the SIP."  57
13          Fed. Reg. 44530, 44532 (Sept. 28, 1992) (explaining decision to exclude odor,
            particulate fallout, and hazardous air pollutant standards from the Washington
14          SIP).

15
16      •   In 2001, EPA declined to approve a Montana odor rule in the Montana SIP,
            explaining: "We believe we have no legal basis in the Act for approving
17          Montana's odor control rule . . . and making it Federally enforceable because odor
            control provisions are not generally related to attainment or maintenance of the
18          National Ambient Air Quality Standards (NAAQS)."  66 Fed. Reg. 42427, 42432
            (Aug. 13, 2001).
19

20      •   In 1998, EPA declined to approve a California nuisance rule in a SIP, stating:
            "EPA believes that nuisance provisions are inappropriate for inclusion in the SIP
21          because they are not in any way required by the Act and do not specifically
            control criteria air pollutants."  63 Fed. Reg. 28958, 28959 (May 27, 1998).
22

23      •   In 2009, EPA removed from the Arizona and Nevada SIPs a host of rules that
            were not related to attainment and maintenance of the NAAQS, stating that "[w]e
24          now recognize that many of these elements were not appropriate for approval into
            the SIPs because they are not required for SIPs and are not related to the SIPs'
25          purpose under CAA section 110(a) of implementing, maintaining, and enforcing

26

INTERVENOR-DEFENDANT'S COMBINED MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM, AND OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT (Civ. No.  11-417-MJP) – 9

1    the national ambient air quality standards."  74 Fed. Reg. 57051, 57051 (Nov. 3,

2    2009).

3    • In 2006, EPA removed Georgia's nuisance rule from the Georgia SIP, explaining
     that "EPA policy is that nuisance provisions unrelated to attainment and
4    maintenance of the NAAQS should not be included as part of the SIP."  71 Fed.
     Reg. 13551, 13553 (Mar. 16, 2006).

5
6    *See* Leppo Decl. Exs. 2-6.[7]  Consistent with its long-held interpretation of the Washington SIP

7    and other SIPs, in response to a petition from Sierra Club urging EPA to object to a CAA Title V

8    permit for the Centralia Coal Plant because the permit did not regulate GHG emissions under

9    authority of the SIP RACT and Nuisance Rules, EPA has clearly restated once again, in a

10   currently proposed clarifying SIP amendment, that the Washington SIP does not regulate GHG

11   emissions.  76 Fed. Reg. 16365, 16366 (Mar. 23, 2011) (reaffirming as to the Washington SIP

12   that "[s]tate and local regulations approved by EPA into the SIP under Section 110 of the CAA

     must reasonably relate to attainment and maintenance of the NAAQS").[8]

13        In sum, in CAA Section 110, Congress clearly established that the purpose of a SIP is to

14   attain and maintain NAAQS, and that regulation of criteria pollutants is the tool employed to

15   meet those goals.  *See League to Save Lake Tahoe*, 598 F.2d at 1167; *Cate v. Transcon. Gas Pipe*

16   *Line Corp.*, 904 F. Supp. 526, 528 (W.D. Va. 1995) ("the purpose of the SIP is to provide for the

17   implementation, maintenance, and enforcement of the NAAQS").  With a few narrow exceptions

18

19   ───────────────────

20        [7] For the Court's convenience, copies of the referenced Federal Register authorities have
     been provided as part of WSPA's submissions.

21        [8] In 2010, the Sierra Club and two other advocacy groups appealed the Title V permit for
     the Centralia Coal Plant on grounds that the Washington SIP required the permitting authority to
22   set RACT and Nuisance Rule emission standards for GHGs in the permit.  The permitting
     authority determined that the SIP rules do not authorize the relief sought by petitioners, and the
23   state Pollution Control Hearings Board ("PCHB") upheld that decision.  *Sierra Club v. Sw.*
     *Wash. Clean Air Agency*, No. 09-108, 2010 WL 1636869 (Wash. PCHB Apr. 19, 2010).  Sierra
24   Club then petitioned the EPA Administrator to object to the permit, thereby prompting EPA to
     publish a rulemaking proposal to clarify that the Washington SIP does not regulate GHGs.
25   Copies of EPA's Federal Register notice and the PCHB's *Sierra Club* decision are provided for
     the Court's convenience at Leppo Decl. Exs. 7-8.

26

INTERVENOR-DEFENDANT'S COMBINED MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM, AND OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT (Civ. No.  11-417-MJP) – 10

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone (206) 624-0900*

1    not pertinent here,[9] measures that are not designed to attain and maintain NAAQS have no legal

2    basis for inclusion in a SIP.  In contending that the Washington RACT and Nuisance Rules

3    mandate federal regulation of GHG emissions, Plaintiffs both ignore and contradict the plain

4    language of CAA Section 110 and 40 years of EPA administrative precedent.

5            **2.        GHGs are neither criteria pollutants nor precursors to criteria pollutants**

6            Pursuant to Section 109 of the CAA, EPA has set NAAQS for six pollutants:  sulfur

7    dioxide, particulate matter, nitrogen dioxide, carbon monoxide, ozone, and lead.  40 C.F.R.

8    §§ 50.4-.13, 50.15-.17.  In addition, EPA has identified ammonia, volatile organic compounds,

9    nitrogen oxides, and sulfur dioxide as precursors to one or more of the NAAQS pollutants.  *See*

10   40 C.F.R. § 51.1000 (defining "$PM_{2.5}$ precursor").  GHGs are not criteria pollutants or one of

11   their precursors.[10]

12           **3.        The scope of the Washington SIP RACT and Nuisance Rules must be
                         construed consistent with the purpose and intent of CAA Section 110**

13           Ignoring both the purpose and plain language of Section 110, and decades of EPA

14   interpretation and application, Plaintiffs contend that, as a matter of law, Washington silently

15   sought, and EPA silently approved, in Washington alone, extension of the federal CAA to the

16   unprecedented length that it regulates through the SIP any substance that Ecology regulates

17   _____

18           [9] In the CAA's Prevention of Significant Deterioration ("PSD") program, Congress
     expressly authorized EPA to require PSD permits for pollutants other than criteria pollutants.
19   EPA recently promulgated the "Tailoring Rule" to require states with SIP-approved PSD
     programs to issue new permits to large new and modified sources of GHG emissions.  *See* 75
20   Fed. Reg. 77697, 77700 (Dec. 13, 2010) (SIP call for states to update SIP PSD programs to
     regulate GHGs).  Nothing in the Tailoring Rule, however, established NAAQS for GHGs, or
21   authorized states to regulate GHGs in their SIPs for any purpose other than PSD permitting.

             [10] It is well-recognized that development of one or more GHG NAAQS would be
22   problematic.  *See* 73 Fed. Reg. 44354, 44367 (July 30, 2008) (comments of U.S. Department of
     Energy) ("At least three major difficulties would be presented with respect to the issuance by
23   EPA of a NAAQS for one or more greenhouse gases:  (1) the determination of what GHG
     concentration level is requisite to protect public health and welfare; (2) the unique nature of
24   GHGs as pollutants dispersed from sources throughout the world and that have long atmospheric
     lifetimes; and (3) GHG concentrations in the ambient air are virtually the same throughout the
25   world meaning that they are not higher near major emissions sources than in isolated areas with
     no industry or major anthropogenic sources of GHG emissions.").

26

INTERVENOR-DEFENDANT'S COMBINED MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM, AND OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT (Civ. No.  11-417-MJP) – 11

1    under the broad definition of "air contaminant," including GHGs.   The fatal flaws in this

2    contention are many.

3          First, the power of an administrative agency to administer a federal statute and to

4    promulgate implementing regulations is necessarily informed and bounded by the intent of

5    Congress as expressed in the statute.   *Manhattan Gen. Equip. Co. v. Comm'r*, 297 U.S. 129, 134

6    (1936).   Accordingly, the scope of the SIP-approved Washington RACT and Nuisance Rules

7    must be construed in relation to, and consistent with, the purpose of CAA Section 110.   *See*

8    *United States v. Lewis*, 67 F.3d 225, 228-29 (9th Cir. 1995) (statutory meaning "must be

9    construed in light of the overall purpose and structure of the whole statutory scheme"); *Pension*

10   *Benefit Guar. Corp. v. Carter & Tillery Enters.*, 133 F.3d 1183, 1186 (9th Cir. 1998) (courts

11   "derive meaning from context, and this requires reading the relevant statutory provisions as a

12   whole").

13         Although the two provisions of the Washington SIP at issue in this litigation do not

14   identify the specific air pollutants to which they apply, any uncertainty is clarified by the

15   authorizing provisions of the CAA.   Only by limiting application of the Washington SIP to

16   criteria pollutants is the SIP faithful to the intent of Congress.   Conversely, Plaintiffs' alternative

17   interpretation of the Washington SIP is incompatible with the intent of Congress, and would

18   thereby render these SIP provisions *ultra vires*.[11]   *See United Sav. Ass'n of Tex. v. Timbers of*

19   *Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988) ("A provision that may seem ambiguous

20   in isolation is often clarified by the remainder of the statutory scheme – because the same

21   terminology is used elsewhere in a context that makes its meaning clear, or because only one of

22   the permissible meanings produces a substantive effect that is compatible with the rest of the

23   law." (citations omitted)).

24   _____

        [11] *See Manhattan Gen. Equip. Co.*, 297 U.S. at 134 (regulation that extends the authority

25   granted to an agency by statute, or that is in conflict with that authority, is *ultra vires*); *see, e.g.,*
     *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 213-14 (1976).

26

INTERVENOR-DEFENDANT'S COMBINED MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM, AND OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT (Civ. No.  11-417-MJP) – 12

70846105.6

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone (206) 624-0900*

1    Second, the fact that Congress did not authorize states to regulate GHGs in their SIPs

2    does not mean that the CAA denies either EPA or the states the power to regulate GHGs.  CAA

3    Section 111(d) directs EPA to "establish a procedure similar to that provided by section 7410 of

4    this title [CAA Section 110]" under which EPA establishes emission guidelines for existing

5    sources of non-criteria pollutants, and the states must submit plans to EPA to implement those

6    guidelines.  42 U.S.C. § 7411(d)(1); *see American Electric Power Co. v. Connecticut*, 564 U.S.

7    _, 131 S.Ct. 2527, 2537 (2011).   EPA recently committed to promulgate GHG emission

8    guidelines for existing refineries under this subsection.[12]  Within nine months of EPA publishing

9    the guidelines, each state must adopt and submit to EPA "a plan for the control of the designated

10   pollutant to which the guideline document applies."  40 C.F.R. § 60.23(a)(1).

11    As for the states, CAA Section 116 preserves their right to regulate more broadly or

12   stringently than required by the federal CAA.  The Agencies have freely exercised that authority

13   with respect to GHGs and other pollutants.[13]  Plaintiffs err, however, in conflating Washington's

14   authority to regulate GHGs under state law with the scope of a Section 110 SIP.  *See* Dkt. 35 at

15   10 ("EPA may approve SIPs that are more stringent than the CAA minimums.").  Indeed, EPA

16   has expressly rejected the argument presented by Plaintiffs here that CAA Section 116, 42

17   U.S.C. § 7416, allows states to include provisions in their SIPs that are not tailored to attain and

18   maintain NAAQS.[14]

19

20       [12] *See* Leppo Decl. Ex. 9, §§ 2-3.

21       [13] For instance, the Washington legislature in 2007 enacted GHG emissions performance standards for new electric power generating facilities.  RCW 80.80.040.  Similarly, although toxic air pollutants are not regulated under the Washington SIP, since 1990, Ecology has regulated emissions of several hundred toxic air pollutants from new and modified sources.  *See* WAC ch. 173-460.

23       [14] *See* 71 Fed. Reg. 13551, 13552-53 (Mar. 16, 2006) (copy provided at Leppo Decl. Ex. 6) ("Section 116 of the CAA thus explains that unless pre-empted under one of several enumerated provisions of the Act, the state may adopt regulations more stringent than those required under the Act.  It does not, however, as the commenter suggests, require that any 'more stringent' state regulations be included as part of the federally enforceable SIP.").

26

INTERVENOR-DEFENDANT'S COMBINED MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM, AND OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT (Civ. No.  11-417-MJP) – 13

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone (206) 624-0900*

1    Third, the decisions Plaintiffs rely upon do not support their contention that a SIP may

2    include control strategies directed at goals other than attainment and maintenance of NAAQS.

3    *Duquesne Light Co. v. EPA*, 166 F.3d 609 (3d Cir. 1999), is a standing case in which the Third

4    Circuit declined to allow an electric utility to challenge a Pennsylvania rule that provided the

5    utility with less credit for shutting down a boiler than EPA's "offset" rules otherwise would have

6    allowed.   Both EPA's offset rules and the more stringent Pennsylvania rule regulated only

7    criteria pollutants in a non-attainment area.   Accordingly, the *Duquesne Light* decision relates

8    solely to the content of Pennsylvania's ozone attainment plan and in no way supports regulation

9    of non-criteria pollutants in a SIP.

10    *Union Electric Co. v. EPA,* 427 U.S. 246 (1976), involved an electric utility's contention

11    that EPA erred in approving Missouri's SIP because the sulfur dioxide limits in the SIP were

12    economically infeasible.   The Supreme Court ruled that states have the freedom under CAA

13    Section 110 to enact emission standards more stringent than the minimum prescribed by EPA's

14    SIP rules.   The case, however, involved SIP regulation of sulfur dioxide, a criteria pollutant.   It

15    does not address SIP regulation of non-criteria pollutants.

16    *Concerned Citizens of Bridesburg v. EPA*, 836 F.2d 777 (3d Cir. 1987), involved a

17    Pennsylvania odor regulation that EPA approved into the SIP in 1972, at a time when EPA

18    policy invited regulation of odor as a control measure for ozone and sulfur compounds.   EPA

19    policy on odor regulation as a NAAQS attainment strategy changed in 1980, and by 1985 EPA

20    decided that the Pennsylvania odor regulation did not promote attainment of the NAAQS and

21    should be removed from the SIP.   *Id.* at 781-82.   The Third Circuit concluded that EPA made a

22    procedural mistake by failing to publish the proposed deletion for public comment and remanded

23    the action to EPA.   The court noted that   Pennsylvania considered the odor regulations "an

24    adjunct to regulation of ozone and sulfur compounds." *Id.* at 787.   The court posed, but never

25    answered, the question of whether Pennsylvania would have authority to retain its odor rule in

26    the SIP if the state could not justify that rule as a NAAQS attainment strategy.

INTERVENOR-DEFENDANT'S COMBINED MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM, AND OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT (Civ. No.  11-417-MJP) – 14

70846105.6

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone (206) 624-0900*

1      Finally, Plaintiffs' argument both conflicts with EPA's 37-year interpretation of the

2  authority granted to EPA and to states under the SIP provision of the CAA, including the

3  Washington SIP, and is *entirely without support* in any document by EPA or Ecology proposing

4  amendments to or approving the Washington SIP RACT and Nuisance Rules (or any other

5  provision of the SIP).  Instead, as consistently determined by EPA, the scope of a SIP is limited

6  to attaining and maintaining NAAQS through implementation measures that regulate criteria

7  pollutants and their precursors.  *See supra* § IV.A.1.

8      The SIP-approved rules at issue here do not mention GHGs, or any specific pollutant.

9  Plaintiffs offer no evidence that EPA or Washington ever intended to regulate GHG emissions

10  (or other non-criteria pollutants) in the SIP, and there is none.  There is no hint that Ecology ever

11  considered GHG regulation as a NAAQS attainment strategy.  Accordingly, the issue is not

12  whether a state may regulate criteria pollutant emissions at levels more stringent than EPA

13  minimums, but rather whether Governor Gregoire's 2009 pronouncement that GHGs will be

14  regulated as air contaminants under state law somehow imports into the Washington SIP's

15  RACT and Nuisance Rules, which were promulgated decades earlier,[15] an intent by EPA to

16  regulate GHGs contrary to its authority under CAA Section 110.  As to this question, EPA could

17  not have lawfully included, and did not intend to include, GHG regulation (or regulation of other

18  non-criteria pollutants) in the Washington SIP.  Rather, EPA approved the RACT and Nuisance

19  Rules in the SIP *as part of a NAAQS attainment strategy*.  Both rules apply more broadly as a

20  matter of state law, but the scope of EPA's SIP approval covers only criteria pollutants and their

21  precursors.

22      In sum, the starting point for interpretation of the Washington SIP is the SIP authorizing

23  provisions of CAA Section 110.  The purpose, meaning, and scope of the Washington SIP are

24  _____

[15] EPA first approved the Washington SIP in 1972.  37 Fed. Reg. 10842, 10900 (May 31,
25  1972).  EPA approved the RACT and Nuisance Rules into the SIP no later than 1993, and
probably much earlier than that.  *See* 58 Fed. Reg. 4578 (Jan. 15, 1993).

26

INTERVENOR-DEFENDANT'S COMBINED MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM, AND OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT (Civ. No.  11-417-MJP) – 15

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
Telephone (206) 624-0900

70846105.6

1   clear from the plain language of Section 110, and from EPA's many interpretations and

2   applications of Section 110 to SIPs, including the Washington SIP.  Plaintiffs' implausible

3   alternative construction of the Washington SIP – derived by working back from Governor

4   Gregoire's 2009 pronouncement about state law, instead of by working forward from the federal

5   authorizing statute – cannot be squared with CAA Section 110 or EPA's long-standing

6   interpretation, and would render the RACT and Nuisance Rules in the SIP *ultra vires*.

7   Washington law may regulate many substances as "air contaminants," but the Washington SIP

8   only regulates criteria pollutants and their precursors.  Because GHGs are non-criteria pollutants

9   outside the scope of the Washington SIP (and other SIPs), and because the citizen suit provision

10  of the CAA, 42 U.S.C. § 7604, does not authorize citizen suits to enforce state law requirements,

11  all of Plaintiffs' claims fail as a matter of law.  If the Court concurs that CAA Section 110 and

12  the Washington SIP do not authorize regulation of non-criteria pollutants, then it need not reach

13  the parties' remaining arguments.

14  **B.      The Agencies Are Not in Violation of the RACT Rule of the SIP**

15          Plaintiffs seek a judgment declaring the Agencies to be in violation of WAC 173-400-

16  040(1), and enjoining the Agencies to complete and implement a RACT review within 90 days.

17  Dkt. 1 at 10-12.  Plaintiffs contend that the Agencies must develop RACT emission standards for

18  GHG emissions from Washington refineries.  However, as explained below, Plaintiffs seek to

19  compel agency actions that the applicable rule vests entirely within the Agencies' discretion.

20  Even if the Court interpreted the Washington SIP to regulate GHG emissions, Plaintiffs' claim

21  seeks to compel the Agencies to undertake actions that the RACT Rule does not require.

22          **1.      The RACT Rule**

23          The Washington SIP's RACT Rule states, in relevant part:

24              Further, all emissions units are required to use reasonably available
                control technology (RACT) which may be determined for some
25              sources or source categories to be more stringent than the
                applicable emission limitations of any chapter of Title 173 WAC.
26              Where current controls are determined to be less than RACT,

INTERVENOR-DEFENDANT'S COMBINED MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM, AND OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT (Civ. No.  11-417-MJP) – 16

70846105.6

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone (206) 624-0900*

1    ecology or the authority shall, as provided in section 8, chapter
     252, Laws of 1993, define RACT for each source or source
2    category and issue a rule or regulatory order requiring the
     installation of RACT.

3    WAC 173-400-040 (1993).[16]   The RACT section requires that every source must employ RACT.

4    It recognizes that all sources are subject to other SIP emission limits, and that those limits may

5    be adequate to meet RACT.   "Where current controls are determined to be less than RACT,"

6    WAC 173-400-040 directs agencies to define RACT using the process prescribed in "section 8,

7    chapter 252, Laws of 1993," subsequently codified as RCW 70.94.154.   *Id.*   By its own terms,

8    the RACT Rule invests state and local permitting authorities with the discretion to determine

9    whether the controls in place are RACT.

10       **2.      The Washington SIP does not require Defendants to selectively target
                refinery GHG emissions for RACT analysis and controls**
11

12       Plaintiffs allege in Count 1 of their Complaint that the Agencies have violated the

13   Washington SIP by failing to determine and apply RACT to the oil refineries for GHGs.   *See*

14   Dkt. 1, ¶¶ 30-34.   In particular, Plaintiffs allege:

15            Defendants . . . have failed to comply with requirements of the
              RACT Provisions of the Washington SIP because they have never
16            issued a regulatory rule or order determining the greenhouse gas
              emissions control strategies for the Oil Refineries that constitute
17            RACT, review [sic] and revised RACT determinations for
              greenhouse gas emissions every five years, or otherwise required
18            the Oil Refineries to use RACT to limit their greenhouse gas
              emissions.

19

20

21

22   _____
     [16]   EPA maintains a website that reproduces the approved elements of the Washington
     SIP.   *See* http://yosemite.epa.gov/r10/airpage.nsf/webpage/SIP+-
23   +WA+Table+of+Contents?OpenDocument (last visited Aug. 21, 2011).   In many cases, the SIP-
     approved version of a regulation may not include later amendments of a rule adopted into state
24   law.   The Washington SIP includes the 1993 version of WAC 173-400-040.   Although this state
     regulation has been amended several times since 1993, these amendments have not been
25   incorporated by EPA into the SIP.   *See* 42 U.S.C. § 7410(k)-(l).   Accordingly, for purposes of
     this brief, all citations to WAC 173-400-040 are to the 1993 version contained in the SIP.

26

INTERVENOR-DEFENDANT'S COMBINED MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM, AND OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT (Civ. No.  11-417-MJP) – 17

1   *Id.* ¶ 33.  However, they point to no requirement in the SIP RACT Rule that compels Ecology to

2   determine RACT for GHG emissions (or any other emissions) from refineries, and no

3   requirement of the SIP RACT Rule that the other Agencies take any mandatory action.

4         Action under the SIP-approved RACT Rule initially requires Ecology or a local air

5   authority to determine that "current controls are less than RACT."  However, there is no

6   requirement in the RACT Rule that the Agencies evaluate whether the controls on a particular

7   source or category of sources are "less than RACT."  WAC 173-400-040(1) vests the Agencies

8   with the discretion to establish RACT for a source if they determine that current controls are not

9   adequate, but there is no mandate to undertake a RACT review.[17]

10        If, and only if, a state or local air authority determines, in its discretion, that current

11  controls are "less than RACT," WAC 173-400-040(1) requires the air authority to follow the

12  process described in RCW 70.94.154 to establish RACT for the source or source category.[18]

13  Moreover, even if Ecology initiates RACT rulemaking for a source category, the *only* mandatory

14  obligations of Ecology are that it issue a list of source categories and a schedule for conducting

15  RACT reviews on those categories, and that it "review the list and schedule" at least every five

16  years thereafter.  *See* RCW 70.94.154.

17        The SIP RACT Rule does not contain any of the following:

18  • A determination that existing controls on refineries do not satisfy RACT;

19  • A mandate that Ecology schedule or prioritize refineries (or any other specific
    source or source category) for RACT review;

20

21      [17] Plaintiffs here presume that all five oil refineries do not employ RACT by reference to
    inadmissible excerpts of documents purported to state that oil refineries generically could be

22  more efficient.  *See infra* § V.  In doing so, Plaintiffs ignore both the absence of a SIP mandate
    that the Agencies evaluate RACT, and the absence of a determination by the Agencies that the

23  oil refineries employ "less than RACT."

24      [18] RCW 70.94.154 is not itself a part of the SIP.  The list of SIP-approved provisions on
    EPA's website (*see supra* n.16) does not include RCW 70.94.154.  The relevance of the statute

25  in implementing the SIP-approved RACT Rule is in describing the procedures and criteria for
    agencies in issuing RACT determinations if and when an agency first determines that the
    controls currently imposed on a source or source category are "less than RACT."

26

INTERVENOR-DEFENDANT'S COMBINED MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM, AND OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT (Civ. No.  11-417-MJP) – 18

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone (206) 624-0900*

70846105.6

- A mandate that Ecology prioritize GHG emissions from any source category for RACT review;[19]

- Any deadline for Ecology to conduct or complete RACT reviews and determinations for any source or source category;[20]

- Any deadline for periodic reconsideration of RACT reviews and determinations for any source or source category; or

- Any mandatory requirement that local air agencies – in this instance, the Northwest Clean Air Agency and the Puget Sound Clean Air Agency – do anything with respect to RACT.

*See Sierra Club v. Sw. Wash. Clean Air Agency*, No. 09-108, 2010 WL 1636869, at *12 (Wash. PCHB Apr. 19, 2010) (Washington RACT obligations of agencies are "permissive and … within the discretion of the local air authority").

In sum, the RACT Rule in the Washington SIP does not mandate the actions Plaintiffs contend the Agencies have failed to take. The Agencies may determine that existing emission controls for a given source or category of sources are not RACT, but the SIP does not mandate such a determination. No such determination has been made for refineries. Moreover, insofar as Ecology may undertake RACT reviews, there is no mandate that the Agencies address refineries (or, if they do a RACT review of refineries, that it address GHG emissions) in advance or in lieu of other higher-priority emission sources and categories. Accordingly, the Agencies are not in violation of the requirements of the Washington SIP RACT Rule, and Plaintiffs' RACT claim should be dismissed. *See generally id.* at *10-13 (rejecting attempt to compel application of Washington RACT Rule to GHG emissions of coal-fired power plant).

**C.    The Agencies Are Not in Violation of the SIP Nuisance Rule**

WAC 173-400-040(5) states:

---

[19] RCW 70.94.154(5) provides that in establishing RACT, permitting authorities should "address, where practicable, all air contaminants deemed to be of concern for that source or source category." Under this provision, if a RACT proceeding is initiated, the Agencies are vested with the discretion and authority to determine both what is "practicable" and "of concern" for a given source or category of sources.

[20] *See* WAC 173-400-040(1).

INTERVENOR-DEFENDANT'S COMBINED MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM, AND OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT (Civ. No.  11-417-MJP) – 19

70846105.6

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
Telephone (206) 624-0900

1
2
> No person shall cause or allow the emission of any air contaminant from any source if it is detrimental to the health, safety, or welfare of any person, or causes damage to property or business.

3    This provision, known as the Nuisance Rule,[21] is SIP-approved.

4    Plaintiffs allege that the Agencies are in violation of the Nuisance Rule "because they

5    have not taken necessary actions to ensure that GHG emissions from the Oil Refineries will not

6    be detrimental to the health, safety, or welfare of Washingtonians and will not cause damage to

7    property or business in Washington." *See* Dkt. 1, ¶ 38. Plaintiffs request an injunction requiring

8    the Agencies to determine, within 90 days, whether "additional controls beyond RACT" are

9    required to comply with the Nuisance Rule, and to "immediately implement any such additional

10   controls." *Id.* at 12 (Prayer for Relief ¶ (d)). These allegations appear to seek an injunction that

11   requires the Agencies to (i) develop specific GHG emissions standards for the refineries within

12   90 days and/or (ii) immediately undertake enforcement action against the refineries to eliminate

13   the detrimental impacts of their emissions.

14   As addressed below, the Nuisance Rule is not enforceable under the CAA's citizen suit

15   provision. Moreover, the Nuisance Rule does not authorize development of emission standards,

16   nor may Plaintiffs compel the Agencies to undertake a discretionary enforcement action against

17   the refineries. For these reasons, Plaintiffs' claim regarding the SIP Nuisance Rule must be

18   dismissed as a matter of law.

19
20
21
22
23
24
25
26

---

[21] WAC 173-400-040(5) has also been referred to in various proceedings as a "general emissions standard" by the PCHB and as the "Narrative Standard" by Plaintiffs in their Complaint. *See Sierra Club*, 2010 WL 1636869, at *8 n.2; Dkt. 1, ¶ 36.

INTERVENOR-DEFENDANT'S COMBINED MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM, AND OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT (Civ. No. 11-417-MJP) – 20

70846105.6

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
Telephone (206) 624-0900

1      **1.     The Nuisance Rule is not an "emission standard or limitation" within the meaning of CAA Section 304**

2

3              **a.     The CAA permits citizen suits only to enforce specific and objective "emissions standards or limitations"**

4              Section 304(a)(1) of the CAA authorizes citizen suits only for alleged violations of an

5      "emission standard or limitation."  42 U.S.C. § 7604(a)(1).  "Emission standard or limitation" is

6      defined in relevant part as:

7                      (1) a schedule or timetable of compliance, emission limitation, standard of performance or emission standard, [or]

8                      . . . .

9                      (4) any other standard, limitation, or schedule established under any permit issued pursuant to [42 U.S.C. §§ 7661-7661f] or under any applicable State implementation plan approved by the Administrator, any permit term or condition, and any requirement to obtain a permit as a condition of operations, which is in effect under this chapter … or under an applicable implementation plan.

10

11

12

13     42 U.S.C. § 7604(f).  "Emission standard" and "emission limitation" are further defined in CAA

14     Section 302(k) as

15                     a requirement … which limits the quantity, rate, or concentration of emissions of air pollutants on a continuous basis, including any requirement relating to the operation or maintenance of a source to assure continuous emission reduction, and any design, equipment, work practice or operational standard promulgated under this chapter.

16

17

18     42 U.S.C. § 7602(k).

19             Federal courts have uniformly held that through these definitions, as incorporated into the

20     CAA's citizen suit provision, Congress *limited* the reach of citizen enforcement actions to

21     specific and objective standards with which compliance may be readily assessed.  *See Hancock*

22     *v. Train*, 426 U.S. 167, 197 (1976) ("[The definition of 'emission standard or limitation' in

23     Section 304(f)] extends the enforcement power only to 'a schedule or timetable of compliance,

24     emission limitation, standard of performance or emission standard,' and not to all state

25     implementation measures."), *superseded on other grounds by legislative amendment*;

26

INTERVENOR-DEFENDANT'S COMBINED MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM, AND OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT (Civ. No.  11-417-MJP) – 21

70846105.6

**STOEL RIVES LLP**
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone (206) 624-0900*

1    *Conservation Law Found., Inc. v. Busey*, 79 F.3d 1250, 1258 (1st Cir. 1996) (explaining that

2    when Congress opened the door to citizen suits, it limited jurisdiction to claims that meet "'an

3    objective evidentiary standard'" (quoting S. Rep. No. 91-1196, at 36 (1970))).[22] Thus, a "citizen

4    suit must allege a violation of a *specific* strategy or commitment in the SIP." *Wilder v. Thomas*,

5    854 F.2d 605, 610 (2d Cir. 1988) (emphasis added; internal quotation marks and citation

6    omitted); *Natural Res. Defense Council, Inc. v. Train*, 510 F.2d 692, 700 (D.C. Cir. 1974)

7    ("Congress restricted citizen suits to actions seeking to enforce *specific* requirements of the

8    [CAA]." (emphasis added)).

9        **b.    The Washington SIP Nuisance Rule is not a specific and objective "emission standard or limitation"**

10   Washington's Nuisance Rule does not satisfy the CAA's definition of an "emission

11   standard or limitation" as required for a citizen suit enforcement action because it is not a

12   specific requirement limiting the "quantity, rate or concentration of emissions" of an air

13   pollutant.   Courts have consistently held that nuisance provisions, like the Washington SIP's

14   Nuisance Rule, are too subjective to be enforced through a citizen suit.

15       For example, in *Helter v. AK Steel Corp.*, plaintiffs brought a citizen suit against AK

16   Steel alleging a violation of an Ohio Administrative Code provision that prohibits "'emission …

17   of substances, in such a manner or in such amounts as to endanger the health, safety or welfare of

18   the public, or cause unreasonable injury or damage to property.'"   No. C-1-96-527, 1997 WL

19   34703718, at *18 (S.D. Ohio Mar. 31, 1997) (quoting regulation).   In dismissing this claim, the

20   court explained that the CAA citizen suit provision only authorizes suits "to enforce specific

21   quantifiable standards and limitations."   *Id.*   According to the court, the nuisance provision at

22

23   _____

     [22] *See* S. Rep. No. 91-1196, at 36 (1970), *reprinted in* Cong. Research Serv., *A*
24   *Legislative History of the Clean Air Act Amendments of 1970*, at 436 (1974) (confirming
     Congress's intent to require "an objective evidentiary standard [that] would have to be met by
25   the citizen who brings an action under" Section 304(a)(l) and thus eliminate the need for
     "reanalysis of technological or other considerations at the enforcement stage").

26

INTERVENOR-DEFENDANT'S COMBINED MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM, AND OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT (Civ. No.  11-417-MJP) – 22

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
Telephone (206) 624-0900

70846105.6

1   issue "contains no specific standard or limitation."  *Id.* at *19.  The court noted that other

2   "[c]ourts that have considered the issue have concluded that violations of vague emissions

3   prohibitions, like that contained in O.A.C. § 3745-15-07, are not subject to redress by means of a

4   citizen suit." *Id.* at *18.

5        Similarly, in *Satterfield v. J.M. Huber Corp.*, the court found that it should dismiss

6   plaintiffs' claim "as it contains allegations of violations of a subjective standard."  888 F. Supp.

7   1561, 1567 (N.D. Ga. 1994).  "Plaintiffs must allege objective standards under the citizen suit

8   provision of the Clean Air Act." *Id.*  Plaintiffs' citizen suit alleged CAA violations for failure to

9   comply with a permit condition, which was a restatement of the Georgia common law of

10  nuisance.  The court rejected this claim because "[c]itizens cannot sue for alleged violations of a

11  nonobjective standard such as [this], even where such a standard is incorporated into a permit."

12  *Id.* at 1566.

13       The district court in *Paper, Allied-Industrial, Chemical & Energy Workers International

14  Union v. Continental Carbon Co.* also dismissed plaintiffs' claim that alleged violation of a

15  nuisance-like provision in a SIP. No. 04-0438, 2005 WL 1389431 (W.D. Okla. 2005).  The court

16  was "persuaded by the cases which have concluded that a citizen suit may not be maintained to

17  enforce non-objective standards, even if those standards are in a SIP or permit provision." *Id.* at

18  *14.  "The court conclude[d] that [the claims], alleging creation of a nuisance, [were] subject to

19  dismissal … under the standards of Rule 12(b)(6)." *Id.*

20       The Washington SIP Nuisance Rule is precisely the type of subjective requirement that

21  Congress wrote out of, and that courts have refused to enforce under, CAA citizen suits.

22  Plaintiffs cannot read an objective, specific, enforceable emissions standard or limitation into the

23  generalized language contained in WAC 173-400-040(5).  Any such attempt to do so is an

24  impermissible attempt by Plaintiffs to ask the Court to "modify or amend a SIP to conform to a

25  plaintiff's own notion of proper environmental policy." *Cmtys. for a Better Env't v. Cenco Ref.

26  Co.*, 180 F. Supp. 2d 1062, 1076 (C.D. Cal. 2001).

INTERVENOR-DEFENDANT'S COMBINED MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM, AND OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT (Civ. No.  11-417-MJP) – 23

70846105.6

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone (206) 624-0900*

1    **2.    Plaintiffs cannot mandate development of GHG emission standards or an**
     **Agency enforcement action against the refineries based upon the Nuisance**
2    **Rule**

3           **a.    The Nuisance Rule does not require the Agencies to develop emission**
                    **standards**
4
     Plaintiffs ask this Court to enjoin the Agencies to "determine and implement …
5
greenhouse gas emissions requirements as are necessary" to protect the public health, welfare,
6
and property.  Dkt. 35 at 2.  However, there is no authority in WAC 173-400-040(5) for
7
Agencies to undertake rulemaking.  Plaintiffs previously argued and lost this very contention in
8
proceedings before the Washington PCHB.
9
     In *Sierra Club*, 2010 WL 1636869, the Sierra Club argued that WAC 173-400-040(5)
10
required the Southwest Clean Air Agency ("SWCAA") to develop and incorporate into
11
TransAlta's Title V permit emission standards limiting emissions of carbon dioxide.  *Id.* at *6-
12
10.  SWCAA argued, as WSPA and the Agencies are arguing in this current case, that the
13
Nuisance Rule does not authorize air agencies to establish new emission limits for any specific
14
pollutants.  *Id.* at *8.  In granting summary judgment for SWCAA and TransAlta, the PCHB held
15
that translating the Nuisance Rule into "more specific, measurable narrative, or numerical limits
16
for purposes of permit issuance or renewal would create and impose a new substantive standard
17
in the absence of authority to do so."  *Id.* at *9.
18
     Plaintiffs should be prohibited from re-litigating this identical claim in the present suit.
19
Under the principles of collateral estoppel, once an issue is actually litigated and necessarily
20
determined, that determination is conclusive in subsequent suits based on a different cause of
21
action but involving a party to the prior litigation.  *Parklane Hosiery Co. v. Shore*, 439 U.S. 322,
22
326 n.5 (1979); *Hydranautics v. FilmTec Corp.*, 204 F.3d 880, 885 (9th Cir. 2000).  Collateral
23
estoppel is triggered by state administrative decisions, insofar as those issues actually litigated
24
and necessarily determined are concerned, and so long as "an adequate opportunity to litigate"
25
existed.  *See, e.g., Wehrli v. Cnty. of Orange*, 175 F.3d 692, 694 (9th Cir. 1999); *Shoemaker v.*
26

INTERVENOR-DEFENDANT'S COMBINED MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM, AND OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT (Civ. No.  11-417-MJP) – 24

70846105.6

**STOEL RIVES LLP**
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone (206) 624-0900*

1    *City of Bremerton*, 745 P.2d 858, 860 (Wash. 1987).[23]  Collateral estoppel is intended to promote

2    judicial economy and prevent repetitive and harassing litigation.  *Eilrich v. Remas*, 839 F.2d 630,

3    635 (9th Cir. 1988).  Thus, it applies to legal as well as factual rulings of the administrative body.

4    *Wehrli*, 175 F.3d at 694.

5          In Washington, "[t]he elements of collateral estoppel have been stated as follows:

6    '(1) identical issues; (2) a final judgment on the merits; (3) the party against whom the plea is

7    asserted must have been a party to or in privity with a party to the prior adjudication; and

8    (4) application of the doctrine must not work an injustice on the party against whom the doctrine

9    is to be applied.'"  *Shoemaker*, 745 P.2d at 860 (citation omitted).  Where the prior adjudication

10   took place before an administrative body, additional factors may be considered by the state

11   courts, including  whether the agency acted within its competence, agency and court procedural

12   differences, and policy considerations.  *Id.* at 861.  To determine the adequacy of agency

13   proceedings, courts look to whether the administrative tribunal contained the essential elements

14   of adjudication: adequate notice, the right to present legal evidence and argument and a fair

15   opportunity to rebut evidence, the presence of counsel, and a final judgment.  *Id.* at 861-62.  If

16   so, the administrative decision is ordinarily given preclusive effect.

17         Federal common law rules of preclusion look to and, generally, mirror state standards.  In

18   *Kleenwell Biohazard Waste & Gen. Ecology Consultants, Inc. v. Nelson*, for example, a state

19   agency's adjudicative proceeding provided an adequate opportunity for the parties to present

20   their cases – and thus triggered collateral estoppel – when the hearing at issue was conducted in

21

22         [23] *See Kleenwell Biohazard Waste & Gen. Ecology Consultants, Inc. v. Nelson*, 48 F.3d
     391, 394 (9th Cir. 1995) ("'[W]hen a state agency "acting in its judicial capacity … resolves
23   disputed issues of fact properly before it which the parties have adequate opportunity to litigate,"
     federal courts must give the agency's factfinding the same preclusive effect to which it would be
24   entitled in the State's courts.'" (ellipsis in original) (quoting *Univ. of Tenn. v. Elliott*, 478 U.S.
     788, 799 (1986))); *Eilrich v. Remas*, 839 F.2d 630, 632 (9th Cir. 1988) ("Federal courts must
25   give preclusive effect to … unreviewed administrative findings under federal common law rules
     of preclusion." (citing *Univ. of Tenn.*, 478 U.S. at 799)).

26

INTERVENOR-DEFENDANT'S COMBINED MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM, AND OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT (Civ. No.  11-417-MJP) – 25

70846105.6

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone (206) 624-0900*

1     accord with state Administrative Procedure Act guidelines.  *See* 48 F.3d 391, 394-95 (9th Cir.

2     1995).  The parties were provided adequate notice and an opportunity to be heard.  They were

3     represented by counsel; briefs were filed; evidentiary rules were followed; and direct testimony

4     and cross-examination were allowed.  *Id.*  The agency's findings were therefore given preclusive

5     effect.

6          Here, insofar as Plaintiffs contend that the Agencies must develop specific emission

7     standards pursuant to WAC 173-400-040(5), this same issue was previously litigated and lost by

8     Sierra Club.[24]  Based upon the PCHB's valid and final judgment in *Sierra Club*, Plaintiffs are

9     barred by collateral estoppel from re-litigating their interpretation of the Nuisance Rule before

10    this Court.[25]

11             **b.**     **Citizen suits are not allowed to compel agencies to bring discretionary enforcement actions against polluters**

12

13          If, instead of or in addition to seeking to require the Agencies to adopt new emission

14    standards, Plaintiffs are asking this Court to compel the Agencies to bring enforcement actions

15    against the refineries for emitting GHGs in violation of the Nuisance Rule, this claim must also

16    be dismissed.  Federal citizen suit provisions, including Section 304 of the CAA, may not be

17    used to compel an agency to initiate an enforcement action.

18          It is well-established that federal citizen suits are not tools to force an agency to

19    undertake a discretionary enforcement action.  *See Heckler v. Chaney*, 470 U.S. 821, 837 (1985)

20    (recognizing "the presumption that agency decisions not to institute proceedings are

21    unreviewable"); *City of Seabrook v. Costle*, 659 F.2d 1371, 1374 (5th Cir. 1981) (holding that

22             [24] The Sierra Club filed an appeal of the PCHB decision but then voluntarily dismissed it.

23             [25] PCHB hearings contain the elements of a just adjudication.  *See* RCW 43.21B.170;
    WAC ch. 371-08.  PCHB hearings are governed by rules of practice established by the PCHB,
    which are informed by the rules of civil procedure and evidence for the Washington superior

24    courts.  WAC 371-08-300.  PCHB hearings include a robust motions practice, briefing, the
    presentation of evidence (including direct testimony and cross-examination), representation by

25    counsel, and a final decision, with written findings, appealable to state court.  *See generally*
    WAC ch. 371-08.  These procedures plainly satisfy the *Elliott* test.  *See Elliott*, 478 U.S. 788.

26

INTERVENOR-DEFENDANT'S COMBINED MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM, AND OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT (Civ. No.  11-417-MJP) – 26

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone (206) 624-0900*

70846105.6

1    the decision whether to make findings that certain entities were violating the Texas SIP was

2    within the discretion of the Administrator); *Clean Air Council, Inc. v. McGinty*, No. 06-00741,

3    2006 WL 2715205, at *5 (E.D. Pa. Sept. 22, 2006) ("While generally, once the EPA approves

4    regulations contained in a SIP, the state and federal governments have obligations to enforce

5    them, the CAA does not take away the state agency's discretion over when and how to police

6    violations." (internal quotation marks, brackets, and citation omitted)); *City of Yakima v. Surface*

7    *Transp. Bd.*, 46 F. Supp. 2d 1092 (E.D. Wash. 1999) (EPA's duty to initiate an enforcement

8    action to compel compliance with the CAA conformity provision is discretionary, and thus not a

9    proper basis for a citizen suit); *cf. Sierra Club v. Whitman*, 268 F.3d 898 (9th Cir. 2001)

10   (interpreting a similar provision in the Clean Water Act and holding that the decision of whether

11   to investigate or initiate enforcement proceedings is within agency discretion, and thus an

12   improper basis of a citizen suit); *Dubois v. Thomas*, 820 F.2d 943 (8th Cir. 1987) (same).

13   Accordingly, insofar as Plaintiffs seek to enjoin the Agencies to bring discretionary enforcement

14   actions against the refineries for violation of the Nuisance Rule, this Court should dismiss

15   Plaintiffs' claim as a matter of law.

16            **V.  PLAINTIFFS' EXHIBITS AND TESTIMONY ARE INADMISSIBLE**

17            Plaintiffs' claims are subject to the Federal Rules of Evidence.  Local Rule 7(g) requires

18   that requests to strike material be included in a parties' responsive brief.  Pursuant to Fed. R.

19   Evid. 401-403, 701-702, and 901, and Fed. R. Civ. P. 56(c)(2), WSPA requests that the Court

20   strike Plaintiffs' Exhibits A-J submitted as attachments to the Declaration of Joshua Osborne-

21   Klein in support of Plaintiffs' pending motion for summary judgment.  *See* Dkts. 37-1 through

22   37-10.  These exhibits are not authenticated, and they are offered to prove the truth of matters

23   that are inadmissible hearsay and/or inadmissible opinion evidence.  Moreover, key aspects of

24   the information provided are not relevant, let alone material.

25

26

INTERVENOR-DEFENDANT'S COMBINED MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM, AND OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT (Civ. No.  11-417-MJP) – 27

70846105.6

**STOEL RIVES LLP**
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone (206) 624-0900*

1    Plaintiffs have also submitted numerous individual declarations that, in key respects,

2  contain inadmissible speculation and unqualified opinion testimony.  Although it is not certain

3  that Plaintiffs rely upon these declarations, WSPA objects to and seeks to strike those portions of

4  the Plaintiffs' declarations that are patently inadmissible testimony.

5  **A.   Dkts. 37-1, 37-3, 37-4, and 37-6 through 37-10 Have Not Been Properly Authenticated**

6

7    On a motion for summary judgment, a district court cannot consider evidence without

8  proper authentication.  Fed. R. Evid. 901(a); *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773

9  (9th Cir. 2002); *Kortan v. California*, 5 F. Supp. 2d 843, 849 (C.D. Cal. 1998), *aff'd sub nom.*,

10  *Kortan v. Cal. Youth Auth.*, 217 F.3d 1104 (9th Cir. 2000); *Hal Roach Studios, Inc. v. Richard*

11  *Feiner & Co.*, 896 F.2d 1542, 1550-51 (9th Cir. 1989); *Canada v. Blain's Helicopters, Inc.*, 831

12  F.2d 920, 925 (9th Cir. 1987).   To authenticate an exhibit, a foundation must be laid by

13  producing competent evidence that the exhibit is what its proponent claims it to be.  *Beyene v.*

14  *Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1182 (9th Cir. 1988).  Plaintiffs have failed to lay a

15  sufficient foundation for the authentication of Exhibits A, C-D, and F-J to Dkt. 37.[26]

16    Where a party attempts to introduce an exhibit by attaching it to a declaration or affidavit,

17  the declarant or affiant must have personal knowledge of the exhibit.  *Orr*, 285 F.3d at 777; *Hal*

18  *Roach Studios*, 896 F.2d at 1550-51.  An attorney's affidavit is treated like all other affidavits

19  pursuant to Fed. R. Civ. P. 56(e), and is not sufficient unless it is based on personal knowledge.

20  *Postscript Enters. v. City of Bridgeton*, 905 F.2d 223, 226 (8th Cir. 1990).  Here, Plaintiffs

21  attached Exhibits A-J to the declaration of Joshua Osborne-Klein, co-counsel for Plaintiffs.

22  Osborne-Klein's declaration does not address, let alone establish, that he has personal knowledge

23  of the contents referenced in the exhibits.  Rather, counsel merely claims "on the basis of [his]

24

25  _____

26  [26] WSPA does not object to the authenticity of Dkt. 37-2 (Ex. B) and Dkt. 37-5 (Ex. E).

INTERVENOR-DEFENDANT'S COMBINED MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM, AND OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT (Civ. No.  11-417-MJP) – 28

70846105.6

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
Telephone (206) 624-0900

1   personal knowledge" that each exhibit is a "true and correct copy" of the documents cited in the

2   motion. *See* Dkt. 37.[27]

3          In *United States v. Dibble*, 429 F.2d 598 (9th Cir. 1970), the plaintiff submitted several

4   exhibits in support of a motion for summary judgment, including government memoranda and

5   copies of letters between third parties.  The plaintiff purported to authenticate the exhibits by

6   attaching them to a declaration stating only that the exhibits were "true" copies and "duly

7   executed."  *Id.* at 602.  However, the declarant had not authored the documents, and he laid no

8   foundation for his purported knowledge that the documents were correct copies.  *Id.*

9   Accordingly, the Ninth Circuit held that the documents were not properly authenticated and were

10  inadmissible.  *Id.*  Similarly here, Plaintiffs' counsel did not author Exhibits A, C-D, and F-J, and

11  has otherwise failed to lay any foundation demonstrating his knowledge regarding the

12  generation, content, and accuracy of these documents.  *See Beyene*, 854 F.2d at 1182 (declaration

13  characterizing evidence as a "true and correct copy" was not enough to establish authentication).

14  **B.     Dkts. 37-1 Through 37-10 Are Inadmissible Hearsay**

15         To the extent that Plaintiffs' exhibits are properly authenticated, they are inadmissible as

16  hearsay.  It is well-established that only admissible evidence may be considered by the district

17  court in ruling on a motion for summary judgment.  *Orr*, 285 F.3d at 783; *Beyene,* 854 F.2d at

18  1181; *Dibble*, 429 F.2d at 601-02.  Hearsay is inadmissible unless it falls within an exception to

19  the hearsay rule.  Fed. R. Evid. 802.  Hearsay "is a statement, other than one made by the

20  declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the

21  matter asserted."  Fed. R. Evid. 801(c).

22         Plaintiffs' motion for summary judgment contains broad statements and citations made

23  under the purported authority of Exhibits A-J.  These exhibits consist of document excerpts or

24  full documents from an assortment of non-testifying sources.  Documents that are offered into

25  _____
    [27] In most instances (*i.e.*, as to Exhibits A, E, and G-J), Plaintiffs have only submitted
    selective portions of the purported documents.

26

INTERVENOR-DEFENDANT'S COMBINED MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM, AND OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT (Civ. No.  11-417-MJP) – 29

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone (206) 624-0900*

70846105.6

1    evidence for their content constitute hearsay if they are offered for the truth of matters stated in

2    them.  Fed. R. Evid. 801; *see Beyene*, 854 F.2d at 1182-83.  Here, Exhibits A-D and F-J are,

3    indeed, offered by Plaintiffs in an attempt to "prove the truth of the matter asserted." Fed. R.

4    Evid. 801(c).[28]

5            Plaintiffs rely upon Exhibits A-J as proof of various facts and opinions regarding, among

6    other things, GHG emissions and climate change, impacts of climate change in Washington,

7    refinery emissions levels in Washington and in the nation in the past, and energy efficiency by

8    refineries in general.  Plaintiffs refer to and quote language from the various exhibits to prove

9    either that the refineries at issue have failed to implement RACT for GHG emissions,[29] or that

10   the Washington refineries are emitting GHGs that are "detrimental to the health, welfare, or

11   economic interest of Washingtonians."[30]   Used for these purposes, Exhibits A-J are plainly

12   inadmissible hearsay and should be stricken.  Fed. R. Evid. 801(c) (defining hearsay), 802

13   (hearsay not admissible).

14

15

16   ───────────────

17      [28] WSPA does not object to Dkt. 37-2 (Ex. B) on hearsay grounds insofar as it is offered
     by Plaintiffs to demonstrate the content of Governor Gregoire's Executive Order 09-05.

18   However, insofar as Plaintiffs rely on Exhibit B to prove the truth of any of the factual and
     opinion matters stated in the Governor's proclamation, Exhibit B is inadmissible hearsay.

19      [29] *See, e.g.*, Dkt. 35 at 5 ("The BP Cherry Point refinery directly emitted approximately
     1.84 million metric tons of carbon dioxide in 2004 … around two percent of total statewide

20   greenhouse gas emissions that year."); *Id.* ("The Tesoro facility emitted 1.37 million tons of
     carbon dioxide in 2008 …."); *Id.* at 6 ("[P]lantwide refinery energy savings potential is usually
     found to be around 30%."); *Id.* ("Most petroleum refineries can economically improve energy

21   efficiency by 10-20%."); *Id.* at 7 ("[T]here appear to be numerous efficiency improvements that
     currently exist and have been adequately demonstrated for reducing greenhouse gas emissions

22   from oil refineries.").

23      [30] *See, e.g.,* Dkt. 35 at 4 ("[G]reenhouse gases are emitted from various refinery
     sources …."); *Id.* at 5 ("Oil refineries emitted 277.6 Tg of carbon dioxide in 2002 …."); *Id.* at 3

24   ("[C]limate-related impacts in Washington State [are] caused by emissions of greenhouse cases
     [sic] ….")  *Id.* at 2 ("[T]he temperature in the Pacific Northwest has increased by 1.5°F since

25   1920."); *Id.* at 6 ("[S]evere environmental impacts will likely result from the projected changes
     to the temperature and climate change in Washington State.").

26

INTERVENOR-DEFENDANT'S COMBINED MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM, AND OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT (Civ. No.  11-417-MJP) – 30

70846105.6

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
Telephone (206) 624-0900

1    **C.     Dks. 37-1 Through 37-10 Are Relied upon for Inadmissible Opinion Evidence**

2           Whether hearsay or not, opinion evidence is not admissible without a proper foundation.

3    Fed. R. Evid. 701-705.  In order to submit evidence based on scientific or technical knowledge,

4    Plaintiffs must lay a foundation showing that the "experts" they are relying on are "qualified as

5    an expert by knowledge, skill, experience, training, or education."  Fed. R. Evid. 702.

6           Here, Plaintiffs rely upon Exhibits A-J to prove matters requiring a high degree of

7    scientific and technical knowledge.  *See, e.g., supra* nn. 29-30.[31]  However, Plaintiffs have failed

8    to lay *any foundation* to show the qualifications of the authors (or even who, in some instances,

9    the authors are), the sufficiency of the data and facts used, the reliability of the principles and

10   methods used, and the reliability of the application of those principles and methods by the

11   authors to the data and facts.   Merely attaching a document, or document excerpt, to an

12   attorney's declaration does not somehow exempt opinion statements regarding scientific and

13   technical matters from the well-established requirements for admission of expert testimony.[32]

14   **D.     Dkts. 37-8 and 37-9 Are Relied upon for Evidence That Is Not Probative**

15          Finally, some of Plaintiffs' documents and document excerpts are inadmissible because

16   the cited statements do not meet even the minimum standards for relevancy.  Fed. R. Evid. 402.

17

18          [31] *See* Dkt. 35 at 3 (cite to Ex. A to support the argument that "severe environmental
     impacts will likely result from the projected changes to the temperature and climate change in
19   Washington State."); *id.* at 6 (cite to Ex. H to demonstrate "a realistic estimate of the energy that
     may be saved by improving industrial process efficiency" in the oil refining process); *id.* (cite to
20   Ex. I in support of opinion evidence related to the "significant potential for energy efficiency
     improvements and costs savings within the oil refining sector"); *id.* at 4 (cite to Ex. C as an
21   authority for the various ways GHGs are emitted from oil refineries); *id.* at 5 (cite to Ex. D for
     assertion that in 2002 oil refineries emitted more carbon dioxide "than any other industrial
22   sector"); *id.* at  6-7 (cite to Ex. J to show that "there appear to be numerous efficiency
     improvements that currently exist and have been adequately demonstrated for reducing
23   greenhouse gas emissions from oil refineries").

           [32] WSPA does not object to Dkt. 37-2 (Ex. B) as unqualified opinion testimony to the
24   extent it is offered by Plaintiffs to demonstrate the content of Governor Gregoire's Executive
     Order 09-05.   WSPA does object to Dkt. 37-2 as unqualified opinion testimony insofar as
25   Plaintiffs rely on Exhibit B to prove the truth of any of the opinions stated in the Governor's
     proclamation.

26

INTERVENOR-DEFENDANT'S COMBINED MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM, AND OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT (Civ. No.  11-417-MJP) – 31

**STOEL RIVES LLP**
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone (206) 624-0900*

70846105.6

1    Evidence is relevant if it has the "tendency to make the existence of any fact that is of

2    consequence to the determination of the action more probable or less probable than it would be

3    without the evidence."  Fed. R. Evid. 401.  Pursuant to Fed. R. Evid. 402, "evidence which is not

4    relevant is not admissible."  Plaintiffs cite to several partial documents for the proposition that in

5    general oil refineries in the United States could save energy by improving "industrial efficiency."

6    *See* Dkt. 35 at 6 (citing Ex. H to provide "a realistic estimate of the energy that may be saved by

7    improving industrial process efficiency"); *id.* (citing Ex. I for the proposition that there is

8    "significant potential for energy efficiency improvements and costs savings within the oil

9    refining sector").  However, this evidence, even if it were otherwise admissible (which it is not),

10   is irrelevant to the matters at issue in this litigation.  The general potential for achieving energy

11   efficiencies in U.S. oil refineries does not demonstrate (i) anything about the energy efficiency,

12   let alone the GHG emissions reduction potential, at the Washington refineries; (ii) that any given

13   potential "energy efficiency" is feasible, let alone RACT, for any Washington refinery; or (iii)

14   that any given potential "energy efficiency," if implemented, would result in less GHG emissions

15   from any Washington refinery.  Accordingly, these statements should be excluded because they

16   do not have the "tendency to make the existence of any fact that is of consequence to the

17   determination of the action more probable or less probable than it would be without" it.  Fed. R.

18   Evid. 401.

19        In addition, WSPA moves to strike Dkt. 37-5 (Ex. E) because it is irrelevant.  Exhibit E is

20   an excerpt of a September 2005 health and safety statement from BP, the operator of one of the

21   Washington oil refineries.  None of the information contained in Plaintiffs' excerpts from this

22   summary have anything to do with GHG emissions, except for the statement of one refinery's

23

24

25

26

INTERVENOR-DEFENDANT'S COMBINED MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM, AND OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT (Civ. No.  11-417-MJP) – 32

70846105.6

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone (206) 624-0900*

1  $CO_2$ emissions in 2003 and 2004 at Dkt. 37-5, page 9.  Even this information is nearly a decade

2  old and, accordingly, meaningless in terms of present emissions levels.[33]

3  **E.    Plaintiffs' Declarations Contain Inadmissible Speculation and Opinion**

4          Plaintiffs have submitted a series of declarations, each of which provides testimony

5  purporting to link GHG emissions from the Washington refineries to current and future climate

6  change effects in Washington, and to further testify that application of the Washington SIP to

7  limit GHG emissions from Washington refineries will reduce the concentration of GHGs in the

8  atmosphere, thereby eliminating or slowing adverse climate change effects in Washington, such

9  as increased temperature, rising seas, and melting glaciers.  *See* Dkts. 39-44.  Plaintiffs' brief

10  does not cite to these declarations at all, and accordingly their intended purpose is unstated.

11          None of the individuals offering opinions on these complex and highly technical subjects

12  assert that they are experts in the relevant scientific fields, and no foundation or evidentiary basis

13  for their conclusions has been provided.  As such, key portions of Plaintiffs' declarations,

14  provided for whatever purpose, are merely self-serving, conclusory conjecture that is

15  inadmissible speculation and opinion testimony.[34]  *See* Dkt. 44, ¶¶ 6-8; Dkt. 43, ¶¶ 7-8; Dkt. 42,

16  ¶ 16; Dkt. 41, ¶¶ 11, 17; Dkt. 40, ¶¶ 15-17; Dkt. 39, ¶¶ 4-8; *see also* Fed. R. Evid. 701-702, 401-

17  403.

18  **VI.  ALTERNATIVELY, MATERIAL ISSUES OF FACT PRECLUDE
       PLAINTIFFS FROM OBTAINING SUMMARY JUDGMENT**

19          For the reasons addressed above, this litigation is subject to resolution as a matter of law.

20  There are no material or justiciable issues of fact for this Court to resolve.

21

22

23  [33] BP, as with the other oil refinery operators, publicly reports its current GHG emissions on an annual basis.  *See* Holmes Decl.  ¶ 4.

24  [34] Even if these statements were admissible (which they are not), and even if they addressed material issues of fact relevant to the pending motion (which they do not), WSPA has

25  submitted qualified expert testimony that rebuts the statements for purposes of summary judgment.  *See* Umenhofer Decl. ¶¶ 4-13.

26

INTERVENOR-DEFENDANT'S COMBINED MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM, AND OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT (Civ. No.  11-417-MJP) – 33

70846105.6

**STOEL RIVES LLP**
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone (206) 624-0900*

1    Nevertheless, under Plaintiffs' full theory of their claims, to prevail on their motion for

2    summary judgment determining that the Agencies are in violation of the Washington SIP RACT

3    and Nuisance Rules, Plaintiffs must establish, among other things, that (i) the GHG emissions of

4    the Washington refineries are a nuisance, or (ii) the controls installed at Washington refineries

5    are "less than RACT."  WSPA maintains that these issues are matters committed to agency

6    authority and discretion by law and, accordingly, are not subject to judicial determination in this

7    litigation.[35]  However, should this Court determine otherwise, insofar as such contentions are

8    essential elements of their claims, Plaintiffs have failed to meet their affirmative burden to

9    provide admissible evidence establishing them.  *Celotex*, 477 U.S. at 322-23 (party must make a

10   sufficient showing on each essential element of a claim on which it has the burden of proof).

11   None of the articles and declarations submitted by Plaintiffs, admissible or otherwise, establish

12   either of these contentions.   Moreover, WSPA affirmatively disputes that refinery GHG

13   emissions have the detrimental impacts required to support a violation of either the RACT or

14   Nuisance Rule.  *See* Umenhofer Decl.  ¶¶ 4-13.

15                                **VII.  REMEDY**

16        At this time, it is beyond the reasonable scope of the present briefing to fairly or fully

17   address what relief, if any, may be appropriate in this case.  Indeed, Plaintiffs have submitted

18   *nothing* to support the specific remedies they seek beyond the bare assertion that requiring

19   compliance with the SIP "in timely fashion is the appropriate equitable remedy for the violations

20   at issue and for protection of the environment."  Dkt. 35 at 19.  Accordingly, WSPA respectfully

21   requests that this Court establish a separate schedule to address remedy issues should Plaintiffs

22   prevail on any aspect of their claims.

23   _____
     [35] *See American Electric Power Co. v. Connecticut*, 131 S.Ct. at 2540 (rejecting
24   plaintiffs' request in federal common-law nuisance claim "that individual federal judges
     determine, in the first instance, what amount of carbon dioxide emissions is 'unreasonable,' and
25   then decide what level of reduction is 'practical, feasible and economically viable.'") (internal
     citations omitted).

26

INTERVENOR-DEFENDANT'S COMBINED MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM, AND OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT (Civ. No.  11-417-MJP) – 34

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone (206) 624-0900*

70846105.6

# VIII.  CONCLUSION

In this lawsuit, Plaintiffs seek to leverage a recent executive proclamation by the Governor of Washington that GHGs are "air pollutants" *under state law*, and to stretch the requirements of the RACT and Nuisance Rules of Washington's SIP (promulgated decades before the Governor's proclamation) to manufacture an unprecedented federally mandated legal requirement that the Agencies establish GHG emission standards for five refineries.  Plaintiffs further seek to accelerate this litigation, and to accelerate imposition of associated injunctive remedies, in the hope of somehow avoiding the fatal consequences of EPA's pending rule expressly clarifying – consistent with an unbroken 37-year interpretation of the CAA and SIPs – that the Washington SIP does not mandate any of the relief Plaintiffs demand and that the allegations of Plaintiffs are contrary to the CAA.

Under the CAA, EPA establishes NAAQS and then each state specifies through an EPA-approved SIP how these standards will be attained and maintained.  There are no NAAQS for GHGs.  Accordingly, because there is no ambient air quality standard to attain or maintain, the CAA does not authorize regulation of GHGs through SIPs.  The plain language of the CAA could not be clearer in establishing these principles, purposes, and limits.  Moreover, neither EPA nor the State of Washington ever discussed, considered, intended, or decided to regulate GHGs (or any other non-criteria pollutants or precursors) under the Washington SIP.  EPA's long-standing interpretation of the SIP provisions of the CAA, the Washington SIP, and other SIPs to limit SIP provisions to those that attain or maintain NAAQS is equally clear and certain.  EPA has proposed, and will soon finalize, clarifying changes to the Washington SIP that eliminate the "gotcha" strategy employed by Plaintiffs in an attempt to belatedly import GHG regulation requirements into the SIP.

In addition, and equally dispositive, neither the RACT nor Nuisance Rule of the SIP mandates the requirements Plaintiffs contend the Agencies have violated or the relief that

INTERVENOR-DEFENDANT'S COMBINED MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM, AND OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT (Civ. No.  11-417-MJP) – 35

70846105.6

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone (206) 624-0900*

1    Plaintiffs demand.  For each of these reasons, Plaintiffs' claims are subject to dismissal as a

2    matter of law.

3           Alternatively, under Plaintiffs' full theory of their claims, Plaintiffs have failed to

4    establish essential elements on which they bear the burden of proof.  This circumstance results

5    from both Plaintiffs' failure to offer evidence and from Plaintiffs' reliance upon inadmissible

6    evidence.  Moreover, insofar as Plaintiffs have offered admissible evidence regarding material

7    facts, WSPA has controverted it.  Accordingly, even under Plaintiffs' interpretation of the CAA

8    and the Washington SIP, Plaintiffs' motion for summary judgment must be denied.

9    DATED:  August 22, 2011.

STOEL RIVES LLP

10

11

12                                             /s/Jeffrey W. Leppo
                                               Jeffrey W. Leppo, WSBA No. 11099
                                               Matthew Cohen, WSBA No. 11232
13

14                                             Attorneys for Intervenor-Defendant
                                               Western States Petroleum Association

15

16

17

18

19

20

21

22

23

24

25

26

INTERVENOR-DEFENDANT'S COMBINED MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM, AND OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT (Civ. No.  11-417-MJP) – 36

1

## <u>CERTIFICATE OF SERVICE</u>

2        I hereby certify that on August 22, 2011, I filed a copy of foregoing document with the

3  Clerk of the Court for the United States District Court – Western District of Washington by using

4  the CM/ECF system.  Participants in this Case No. 2:11-cv-00417 who are registered CM/ECF

5

6  users will be served by the CM/ECF system.

7        Svend A. Brandt-Erichsen, sberichsen@martenlaw.com
        Janette K. Brimmer, jbrimmer@earthjustice.org

8        Brian W. Chestnut, bchestnut@zcvbs.com
        Jennifer A. Dold, jenniferd@pscleanair.org

9        Joshua Osborne-Klein, joshok@zcvbs.com
        Ryan P. Steen, rpsteen@stoel.com

10       Katharine G. Shirey, ecyolyef@atg.wa.gov

11       Laura J. Watson, lauraw2@atg.wa.gov

12

13                          /s/ Jeffrey W. Leppo
                          Jeffrey W. Leppo

14

15

16

17

18

19

20

21

22

23

24

25

26

INTERVENOR-DEFENDANT'S COMBINED MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM, AND OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT (Civ. No. 11-417-MJP) – 37

70846105.6

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone (206) 624-0900*