1

2

3

4

5

6                                                    The Honorable Marsha J. Pechman

7                         **UNITED STATES DISTRICT COURT**
                        **WESTERN DISTRICT OF WASHINGTON**
8                                    **AT SEATTLE**

9   WASHINGTON ENVIRONMENTAL              Case No.  2:11-cv-00417-MJP
    COUNCIL, et al.,
10
                        Plaintiffs,
11                                        DEFENDANTS' 12(b)(6) MOTION TO
        v.                                DISMISS AND RESPONSE IN
12                                        OPPOSITION TO PLAINTIFFS'
    THEODORE ("TED") L. STURDEVANT,       MOTION FOR SUMMARY
13  DIRECTOR, WASHINGTON STATE            JUDGMENT
    DEPARTMENT OF ECOLOGY, in his
14  official capacity, et al.,            NOTE ON MOTION CALENDAR:
                                          October 14, 2011
15                      Defendants,
                                          (ORAL ARGUMENT REQUESTED)
16          and

17  WESTERN STATES PETROLEUM
    ASSOCIATION,
18
                        Intervenor-Defendant.
19

20

21

22

23

24

25

26

**TABLE OF CONTENTS**

I.  INTRODUCTION ........................................................................................................ 1

II.  STATUTORY AND REGULATORY BACKGROUND ............................................ 2

    A.  National Ambient Air Quality Standards and State Implementation Plans ............... 3

    B.  Regulation of Greenhouse Gas Emissions Under the CAA ...................................... 4

        1.  New Source Performance Standards (NSPS) ................................................... 4

        2.  New Source Review ......................................................................................... 6

            a.  Attainment – Prevention of Significant Deterioration .............................. 6

            b.  Nonattainment – New Source Review ...................................................... 7

    C.  SIP Provisions at Issue in the Present Case ............................................................. 8

    D.  EPA's Proposed SIP Correction ............................................................................... 9

III.  ISSUES ...................................................................................................................... 9

IV.  ARGUMENT ............................................................................................................ 10

    A.  Standard of Review ................................................................................................. 10

    B.  Summary of Argument ............................................................................................ 11

    C.  The Cited Provisions of the Washington State Implementation Plan do Not
        Require the Agencies to Regulate Greenhouse Gas Emissions from Refineries ..... 12

        1.  The SIP Only Reaches Criteria Pollutants and Their Precursors ................... 12

            a.  The Purpose of a SIP is to Assure Attainment and Maintenance of
               the NAAQS ............................................................................................. 13

            b.  EPA Does Not Have the Authority to Require the Contested
               Provisions in Washington's SIP to Reach Greenhouse Gases ................. 14

               (i)  The plain language of the Clean Air Act dictates that SIPs
                   may only reach criteria pollutants. ................................................... 15

               (ii)  If the Court finds the language ambiguous, the Court must
                   give deference to EPA's interpretation that SIPs may not
                   reach beyond criteria pollutants. ..................................................... 17

            c.  Case Law Supports the Agencies' Position That a SIP may be
               Federally Enforceable Only Insofar as it Reaches Criteria Pollutants
               and Their Precursors ............................................................................... 19

DEFENDANTS' 12(b)(6) MOTION AND
RESPONSE TO PLAINTIFFS' SUMMARY
JUDGMENT MOTION
C11-417-MJP

ii

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
(360) 586-6770

2.   EPA's Proposed SIP Correction Simply Clarifies the State of Existing Law ................................................................................................ 22

D.  Citizen Suits Cannot be Used to Force a State Agency to Perform an Act that Falls Entirely Within the Agencies' Discretion or to Fulfill a Duty That Does Not Belong to the Agencies ...................................................................... 23

1.   The SIP's RACT Provision Does Not Impose a Mandatory Duty on the Clean Air Agencies to Make RACT Determinations for Greenhouse Gases from Refineries ........................................................................ 26

2.   The SIP's Nuisance Provision Likewise Does Not Place a Mandatory Duty on the Clean Air Agencies to Regulate Greenhouse Gases from Oil Refineries ........................................................................................ 29

3.   The Nuisance Provision is Not Judicially Enforceable ................................... 31

4.   Plaintiffs' Reading of the Nuisance Provision Turns the Federal and State Regulatory Framework on its Head ............................................ 33

E.  If the Court Rules for the Plaintiffs on the Legal Issues, the Court Should Set a Remedy Phase Because the Plaintiffs Have Not Identified Any Type of Relief That the Court Can Grant ................................................................. 34

V.   CONCLUSION ................................................................................................... 35

DEFENDANTS' 12(b)(6) MOTION AND
RESPONSE TO PLAINTIFFS' SUMMARY
JUDGMENT MOTION
C11-417-MJP

iii

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
(360) 586-6770

# TABLE OF AUTHORITIES

## Cases

*Alaska Dep't of Envtl. Conservation v. EPA,*
   540 U.S. 461 (2004)..........................................................................................12

*Am. Elec. Power Co. (AEP) v. Connecticut,*
   131 S. Ct. 2527 (2011).....................................................................................32

*Am. Lung Ass'n v. Kean,*
   871 F.2d 319 (3d Cir. 1989) .............................................................................19

*Am. Petroleum Institute v. EPA,*
   No. 08-1277 (D.C. Cir. 2010) .............................................................................6

*Aronsen v. Crown Zellerbach,*
   662 F.2d 584 (9th Cir. 1981) ......................................................................10, 16

*Ashcroft v. Iqbal,*
   129 S. Ct. 1937 (2009).....................................................................................10

*Ass'n of Irritated Residents v. C & R Vanderham Dairy,*
   2007 WL 2815038 (E.D. Cal. 2007).................................................................19

*Ass'n of Irritated Residents v. EPA,*
   494 F.3d 1027 (D.C. Cir. 2007) .......................................................................24

*Atascadero State Hosp. v. Scanlan,*
   473 U.S. 234 (1985)..........................................................................................17

*Auer v. Robbins,*
   519 U.S. 452 (1997)..........................................................................................15

*Bayview Hunters Point Cmty. Advocates v. Metro. Transp. Comm'n,*
   366 F.3d 692 (9th Cir. 2004) .....................................................3, 20, 25, 26, 30

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007)..........................................................................................10

*Boose v. Tri-County Metro. Transp. Dist.,*
   587 F.3d 997 (9th Cir.2009) ............................................................................28

*Catholic Health Initiatives v. Sebelius,*
   617 F.3d 490 (D.C. Cir. 2010) .........................................................................14

*Chevron U.S.A,. Inc. v. Natural Res. Def. Council, Inc.,*
   467 U.S. 837 (1984).............................................................................14, 15, 17

DEFENDANTS' 12(b)(6) MOTION AND
RESPONSE TO PLAINTIFFS' SUMMARY
JUDGMENT MOTION
C11-417-MJP

iv

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
(360) 586-6770

*Clean Air Council v. Mallory*,
   226 F. Supp. 2d 705 (E.D. Penn. 2002) ........................................................ 20

*Cmtys. for a Better Env't v. Cenco Refining Co.*,
   180 F. Supp. 2d 1062 (C.D. Cal 2001) ........................................................ 20

*Concerned Citizens v. EPA*,
   836 F.2d 777 (3d Cir. 1987) ........................................................ 18, 20, 21

*Cook v. Brewer*,
   637 F.3d 1002 (9th Cir. 2011) ........................................................ 10

*Council of Commuter Orgs. v. Metro. Transp. Auth.*,
   683 F.2d. 663 (2d Cir. 1982) ........................................................ 20

*Coyt v. Holder*,
   593 F.3d 902 (9th Cir. 2010) ........................................................ 16

*Defenders of Wildlife v. Browner*,
   191 F.3d 1159 (9th Cir. 1999) ........................................................ 15

*Duquesne Light Co. v. EPA*,
   166 F.3d 609 (3rd Cir. 1999) ........................................................ 20, 21, 22

*Duquesne Light Co. v. EPA*,
   698 F.2d 456 (D.C. Cir. 1983) ........................................................ 20

*EPA v. Port Auth.*,
   162 F. Supp. 2d 173 (S.D.N.Y. 2001) ........................................................ 25, 26, 27, 30

*Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*,
   529 U.S. 120 (2000) ........................................................ 15

*Friends of the Earth v. Carey*,
   535 F.2d 165 (2d Cir. 1976),
   cert. denied, 434 U.S. 902 (1977) ........................................................ 17, 20

*Gen. Motors Corp. v. United States*,
   496 U.S. 530 (1990) ........................................................ 12, 20

*Gonzaga Univ. v. Doe*,
   536 U.S. 273 (2002) ........................................................ 17

*Gustafson v. Alloyd Co.*,
   513 U.S. 561 (1995) ........................................................ 16

*Heckler v. Chaney*,
   470 U.S 821 (1985) ........................................................ 23, 24, 27, 30

*Hunter v. Underwood*,
   362 F.3d 468 (8th Cir. 2004) ........................................................ 17

DEFENDANTS' 12(b)(6) MOTION AND
RESPONSE TO PLAINTIFFS' SUMMARY
JUDGMENT MOTION
C11-417-MJP

v

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
(360) 586-6770

*In re Bankruptcy Estate of MarkAir, Inc.*,
  308 F.3d 1057 (9th Cir. 2002) ................................................................. 16

*INS v. Aguirre-Aguirre*,
  526 U.S. 415 (1999) ................................................................................. 15

*Kentucky Res. Council, Inc. v. EPA*,
  304 F. Supp. 2d 920 (W.D. Ky. 2004)..................................................... 20

*Lead Indus. Ass'n, Inc. v. EPA*,
  647 F.2d 1130 (D.C. Cir. 1980) ................................................................ 3

*Lyng v. Payne*,
  476 U.S. 926 (1986)................................................................................. 14

*Massachusetts v. EPA*,
  549 U.S. 497 (2007)................................................................................... 4

*McEvoy v. IEI Barge Servs., Inc.*,
  622 F.3d 671 (7th Cir. 2010) ............................................................. 31, 32

*Natural Res. Def. Council v. EPA*,
  542 F.3d 1235 (9th Cir. 2008) ................................................................ 11

*Natural Res. Def. Council, Inc. v. Train*,
  545 F.2d 320 (2d Cir. 1976) .................................................................... 13

*Navarro v. Block*,
  250 F.3d 729 (9th Cir. 2001) .................................................................. 10

*Norton v. S. Utah Wilderness Alliance*,
  542 U.S. 55 (2004)................................................................................... 34

*Nw. Envtl. Advocates v. EPA*,
  537 F.3d 1006 (9th Cir. 2008) ................................................................ 14

*Or. Envtl. Council v. Or. Dep't of Envtl. Quality*,
  775 F. Supp. 353 (D.Or. 1991) ............................................................... 20

*Safe Air For Everyone v EPA*,
  488 F.3d 1088 (9th Cir. 2007) ................................................................ 12

*Safe Air for Everyone v. EPA*,
  475 F.3d 1096 (9th Cir. 2007) ........................................................... 20, 22

*Safe Air For Everyone v. EPA*,
  488 F.3d 1088 (9th Cir. 2007) ................................................................ 20

*Schneider v. Chertoff*,
  450 F.3d 944 (9th Cir. 2006) ............................................................. 15, 17

DEFENDANTS' 12(b)(6) MOTION AND
RESPONSE TO PLAINTIFFS' SUMMARY
JUDGMENT MOTION
C11-417-MJP

vi

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
(360) 586-6770

*Sierra Club & Valley Watch, Inc. v. Jackson,*
  __F.3d__, 2011 WL 2600841 (D.C. Cir. 2011)..........................................23, 24, 27

*Sierra Club v. Tenn. Valley Auth.,*
  430 F.3d 1337 (11th Cir. 2005) ...............................................................20

*Star Enter. v. EPA,*
  235 F.3d 139 (3d Cir. 2000) ......................................................................5

*Sweat v. Hull,*
  200 F. Supp. 2d 1162 (D. Ariz. 2001) ......................................................20

*Train v. Natural Res. Def. Council, Inc.,*
  421 U.S. 60 (1975)...................................................................................13

*Transohio Sav. Bank v. Dir., Office of Thrift Supervision,*
  967 F.2d 598 (D.C. Cir. 1992).................................................................14

*Union Elec. Co. v. EPA,*
  427 U.S. 246 (1976)........................................................12, 13, 19, 20, 21

*United States v. Alcan Foil Prods.,*
  889 F.2d 1513 (6th Cir. 1989) ..................................................................20

*United States v. Ford Motor Co.,*
  814 F.2d 1099 (6th Cir. 1987) ..................................................................20

*United States v. Wheeling-Pittsburgh Steel Corp.,*
  818 F.2d 1077 (3d Cir. 1987) ...................................................................20

*Whitman v. Am. Trucking Ass'ns,*
  531 U.S. 457 (2001)...................................................................................3


**Federal Statutes**

42 U.S.C. § 7407(c) .........................................................................................3

42 U.S.C. § 7409(a) .........................................................................................3

42 U.S.C. § 7409(a)(1)(A) .............................................................................15

42 U.S.C. § 7409(b)(1) .....................................................................................3

42 U.S.C. § 7409(b)(2) .....................................................................................3

42 U.S.C. § 7410 ...........................................................................11, 12, 14, 17

42 U.S.C. § 7410(a)(1).......................................................................1, 3, 15, 18

42 U.S.C. § 7410(a)(2)(A) ..........................................................................3, 15

DEFENDANTS' 12(b)(6) MOTION AND
RESPONSE TO PLAINTIFFS' SUMMARY
JUDGMENT MOTION
C11-417-MJP

vii

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
(360) 586-6770

42 U.S.C. § 7410(a)(2)(C) .................................................................................. 15

42 U.S.C. § 7410(a)(2)(D) .................................................................................. 16

42 U.S.C. § 7410(k) .............................................................................................. 3

42 U.S.C. § 7410(k)(3) .................................................................................... 3, 16

42 U.S.C. § 7411 ................................................................................................... 2

42 U.S.C. § 7411(a)(1) ......................................................................................... 5

42 U.S.C. § 7411(b)(1)(A) ................................................................................ 4, 5

42 U.S.C. § 7411(d) .............................................................................................. 5

42 U.S.C. § 7412 ................................................................................................... 2

42 U.S.C. § 7416 .................................................................................... 18, 19, 22

42 U.S.C. § 7475 ................................................................................................... 6

42 U.S.C. § 7475(4) ............................................................................................ 14

42 U.S.C. § 7475(a)(4) ......................................................................................... 7

42 U.S.C. § 7479(1) ............................................................................................. 6

42 U.S.C. § 7479(3) ............................................................................................. 7

42 U.S.C. § 7502(b) ............................................................................................. 4

42 U.S.C. § 7502(c) ............................................................................................. 4

42 U.S.C. § 7502(c)(1) ......................................................................................... 4

42 U.S.C. § 7502(c)(6) ......................................................................................... 6

42 U.S.C. § 7503(a)(2) ......................................................................................... 7

42 U.S.C. § 7602(a) ............................................................................................ 18

42 U.S.C. § 7602(g) ............................................................................................ 13

42 U.S.C. § 7604 ......................................................................................... 12, 31

42 U.S.C. § 7604(a)(1) ....................................................................................... 11

42 U.S.C. §§ 7408-7410 ...................................................................................... 2

42 U.S.C. §§ 7409-7410 .................................................................................... 14

DEFENDANTS' 12(b)(6) MOTION AND
RESPONSE TO PLAINTIFFS' SUMMARY
JUDGMENT MOTION
C11-417-MJP

viii

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
(360) 586-6770

1   42 U.S.C. §§ 7470-7479 ......................................................................... 6, 14

2   42 U.S.C. §§ 7470-7509 ............................................................................. 2

3

4                          **Washington State Statutes**

5   Wash. Rev. Code 70.94.154 ......................................................................... 28

6   Wash. Rev. Code 70.94.154(2) ............................................................... 28, 34

7   Wash. Rev. Code 70.94.154(3) ................................................................... 28

8   Wash. Rev. Code 70.94.154(5) ................................................................... 28

9   Wash. Rev. Code 70.94.154(6) ................................................................... 27

10

11                          **Federal Regulations**

12  40 C.F.R. § 51.105 ....................................................................................... 3

13  40 C.F.R. § 51.121 ....................................................................................... 3

14  40 C.F.R. § 51.165(a)(1)(xxxvii)(C)(1)-(4) .............................................. 13

15  40 C.F.R. § 51.166(b)(48)(ii) ...................................................................... 7

16  40 C.F.R. § 51.1002(c) .............................................................................. 13

17  40 C.F.R. § 52.21(b)(49)(iv)(a) ................................................................... 7

18  40 C.F.R. § 52.21(b)(49)(v)(a) .................................................................... 7

19  40 C.F.R. § 52.28(b) ................................................................................... 28

20  40 C.F.R. § 60.1(a) ....................................................................................... 5

21  40 C.F.R. § 60.14 ......................................................................................... 5

22  40 C.F.R. § 60.102a ...................................................................................... 5

23  40 C.F.R. § 98.6 .......................................................................................... 12

24  40 C.F.R. §§ 52.2470–.2499 ........................................................................ 3

25  40 C.F.R. §§ 60.100–.109 ........................................................................... 5

26  40 C.F.R. §§ 60.102–.104 ........................................................................... 5

40 C.F.R. Appendix A ................................................................................. 28

40 C.F.R. Part 50 ........................................................................................ 4

40 C.F.R. Part 52 ........................................................................................ 3

60 Fed. Reg. 28,726 (June 2, 1995) ................................................. 8, 9, 28

60 Fed. Reg. 9,802 (Feb. 22, 1995) ...................................................... 8, 9

71 Fed. Reg. 13,551-52 (Mar. 16, 2006) ................................................. 18

Standards of Performance for Petroleum Refineries, Final Rule,
  73 Fed. Reg. 35,838 (June 24, 2008) .................................................... 6

Prevention of Significant Deterioration and Title V Greenhouse Gas Tailoring Rule
  Final Rule,
  75 Fed. Reg. 31,514 (June 3, 2010) ...................................................... 7

76 Fed. Reg. 16,365 (Mar. 23, 2011) ................................................. 9, 18

## Washington State Regulations

Wash. Admin. Code (WAC) 173-400 (1993) ......................................... 8, 9

Wash. Admin. Code 173-400-030(23) (1993) .......................................... 27

Wash. Admin. Code 173-400-030(69) (1993) .......................................... 27

Wash. Admin. Code 173-400-040 (1993) .......................................... *passim*

Wash. Admin. Code 173-400-040(1) (1993) ............................................. 8

Wash. Admin. Code 173-400-040(2) (1993) ............................................. 9

Wash. Admin. Code 173-400-040(4) (1993) ............................................. 9

Wash. Admin. Code 173-400-040(5) (1993) ...................................... *passim*

Wash. Admin. Code 173-400-060 (1993) ................................................ 28

Wash. Admin. Code 173-400-112(9) (1993) ........................................... 28

DEFENDANTS' 12(b)(6) MOTION AND
RESPONSE TO PLAINTIFFS' SUMMARY
JUDGMENT MOTION
C11-417-MJP

x

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
(360) 586-6770

1

**<u>Rules</u>**

2   Fed. R. Civ. P. 12(b)(6) ............................................................ 1, 2, 10, 11, 12

3   Fed. R. Civ. P. 12(d) ............................................................................. 10

4   Fed. R. Civ. P. 56............................................................................. 10, 12

5   Fed. R. Civ. P. 56(c) ........................................................................... 11

6

7

**<u>Other Authorities</u>**

8   Edward L. Robin, *Law and Legislation in the Administrative State*,
9      89 Colum. L. Rev. 369 (1989) ....................................................... 14

*In the Matter of Hercules, Inc.*, U.S. EPA "Order Responding to Petitioners' Request
10      that the Administrator Object to Issuance of a State Operating Permit" (Nov. 10,
11      2004)............................................................................................ 30

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DEFENDANTS' 12(b)(6) MOTION AND       xi       ATTORNEY GENERAL OF WASHINGTON
RESPONSE TO PLAINTIFFS' SUMMARY            Ecology Division
JUDGMENT MOTION                    PO Box 40117
C11-417-MJP                      Olympia, WA 98504-0117
                         (360) 586-6770

**TABLE OF ACRONYMNS**

CAA          Clean Air Act

LAER         lowest achievable emission rate

NAAQS        national ambient air quality standards

NSPS         new source performance standards

NSR          new source review

PSD          prevention of significant deterioration

RACT         reasonably available control technology

RCW          Revised Code of Washington

SIP          state implementation plan

WAC          Washington Administrative Code

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

DEFENDANTS' 12(b)(6) MOTION AND
RESPONSE TO PLAINTIFFS' SUMMARY
JUDGMENT MOTION
C11-417-MJP

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
(360) 586-6770

# I.     INTRODUCTION

Defendants Ted Sturdevant, Mark Asmundson, and Craig T. Kenworthy (the Clean Air Agencies or Agencies) submit this Motion to Dismiss and Response in Opposition to Plaintiffs' Motion for Summary Judgment.   This case should be dismissed because the Plaintiffs have failed to state a claim for which relief may be granted (Fed. R. Civ. P. 12(b)(6)).

While the Clean Air Act (CAA) gives citizens the authority to file suit against persons violating federally enforceable emission standards, the Plaintiffs' claims in this action do not provide a basis for the relief they seek.  Specifically, Plaintiffs claim the Clean Air Agencies have violated the CAA by failing to use two provisions in Washington's federally-approved state implementation plan (SIP) to regulate greenhouse gas emissions from refineries. Plaintiffs have failed to state a viable claim because the provisions upon which Plaintiffs rely are not federally enforceable for the regulation of greenhouse gases, nor do they impose nondiscretionary obligations on the Clean Air Agencies.

Congress, in enacting the CAA, gave the United States Environmental Protection Agency (EPA) the authority to make provisions in a SIP federally enforceable only to the extent the provisions relate to attainment and maintenance of the national ambient air quality standards (NAAQS) for criteria pollutants.   42 U.S.C. § 7410(a)(1).   It is uncontested that greenhouse gases are not criteria pollutants, and no ambient air quality standards have been issued for them.   Thus, even if EPA wanted to approve provisions in a SIP to regulate greenhouse gases, it could not legally do so.

Moreover, even if the Washington SIP provisions at issue in this case did reach greenhouse gases, they do not place a mandatory duty on the Clean Air Agencies to regulate in any particular fashion.   Rather, the first provision cited by Plaintiffs requires *sources* of pollutants to implement reasonably available control technology (RACT) and authorizes (but does not require) air agencies to determine RACT for sources.   The second provision cited by Plaintiffs prohibits *sources* from emitting pollutants that rise to the level of a nuisance but

DEFENDANTS' 12(b)(6) MOTION AND
RESPONSE TO PLAINTIFFS' SUMMARY
JUDGMENT MOTION
C11-417-MJP

1

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
(360) 586-6770

1    imposes no obligation on the Clean Air Agencies.  Neither provision includes the mandate that

2    the Plaintiffs ask this Court to impose.

3           Plaintiffs have failed to state a claim for which relief may be granted.  Because the

4    cited provisions of the Washington SIP, as it exists at this time, do not require the Agencies to

5    regulate greenhouse gases, and because they do not impose mandatory duties on the Clean Air

6    Agencies, Plaintiffs' Motion for Summary Judgment should be denied and this case should be

7    dismissed under Rule 12(b)(6).

8                    **II.     STATUTORY AND REGULATORY BACKGROUND**

9           The CAA creates a comprehensive framework for addressing air pollution.  Within this

10   congressionally established framework, the type of regulation applicable in a given situation

11   depends on the type of pollutant being addressed and the type of source being regulated.  For

12   example, the CAA addresses criteria pollutants through the establishment of national ambient

13   air quality standards (NAAQS) and state implementation plans (SIPs).  42 U.S.C. §§ 7408-

14   7410.  The CAA regulates hazardous air pollutants through the use of stringent technology-

15   based emission controls.  42 U.S.C. § 7412.  The CAA imposes requirements based on the type

16   of air pollutant *source* through category-specific new source performance standards.  42 U.S.C.

17   § 7411.  Finally, the CAA includes technology-based requirements for major new sources of

18   air pollution.  42 U.S.C. §§ 7470-7509.

19          This background section provides more detail concerning the NAAQS/SIP provisions

20   of the CAA, which form the basis of Plaintiffs' claims.  Then, to provide context concerning

21   the regulation of greenhouse gases under the CAA, this section describes the two CAA

22   programs currently used to regulate greenhouse gases:  source category-specific new source

23   performance standards, and permitting requirements for new major sources.  This section goes

24   on to provide some background concerning the two state law provisions in Washington's SIP

25   that are relevant to this case.  Finally, this section discusses EPA's recent proposal to clarify

26   the scope of those SIP provisions.

DEFENDANTS' 12(b)(6) MOTION AND
RESPONSE TO PLAINTIFFS' SUMMARY
JUDGMENT MOTION
C11-417-MJP

2

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
(360) 586-6770

A.      **National Ambient Air Quality Standards and State Implementation Plans**

The CAA directs EPA to develop NAAQS for each air pollutant for which air quality criteria have been established.   42 U.S.C. § 7409(a); *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 462 (2001).  EPA is required to develop "primary" and "secondary" NAAQS for each criteria pollutant. *Id*.  Primary NAAQS are set at a level requisite to protect public health with a margin of safety, while secondary NAAQS are set at a level requisite to protect public welfare. 42 U.S.C. § 7409(b)(1), (2).  EPA is also required to designate areas of the country as "attainment," "nonattainment," or "unclassifiable" for each air pollutant, depending on whether the area is in compliance with NAAQS.  42 U.S.C. § 7407(c).

Responsibility for complying with NAAQS rests primarily with the states. *Lead Indus. Ass'n, Inc. v. EPA*, 647 F.2d 1130, 1137 (D.C. Cir. 1980).  Each state must submit a plan (the SIP) for attaining and maintaining all NAAQS.  42 U.S.C. § 7410(a)(1).  Each SIP must include, among other things, "enforceable emission limitations and other control measures necessary to attain the NAAQS, as well as a timetable for compliance." *Bayview Hunters Point Cmty. Advocates v. Metro. Transp. Comm'n*, 366 F.3d 692, 695 (9th Cir. 2004); 42 U.S.C. § 7410(a)(2)(A).  As NAAQS change and new NAAQS are added, states must submit revisions to their SIPs to demonstrate how they will attain and maintain those revised or new NAAQS.   42 U.S.C. § 7410(a)(1); *see, e.g.*, 40 C.F.R. § 51.121 (Findings and requirements for submission of SIP revisions relating to emissions of oxides of nitrogen).

A state's SIP, and all SIP revisions, must be submitted to EPA, which must review the submission and act to approve or disapprove each element.  42 U.S.C. § 7410(k).  The state's submittal does not become part of the SIP until the EPA review process is completed and EPA approves the changes to the state SIP.  42 U.S.C. § 7410(k)(3); 40 C.F.R. § 51.105.   The current content of the SIP for each state and the history of EPA's action on each state's SIP submittals appear in 40 C.F.R. Part 52.  EPA's actions related to the Washington SIP appear in Subpart WW (40 C.F.R. §§ 52.2470–.2499).

DEFENDANTS' 12(b)(6) MOTION AND
RESPONSE TO PLAINTIFFS' SUMMARY
JUDGMENT MOTION
C11-417-MJP                                    3                    ATTORNEY GENERAL OF WASHINGTON
                                                                              Ecology Division
                                                                              PO Box 40117
                                                                         Olympia, WA 98504-0117
                                                                            (360) 586-6770

1    When EPA designates an area as being in nonattainment for one of the NAAQS, the

2    CAA requires the affected state to submit revisions to its SIP designed to bring the area back

3    into compliance with the relevant NAAQS, and specifies elements that must be incorporated in

4    the revised SIP.  42 U.S.C. § 7502(b), (c).  Among other items, and relevant to the present

5    case, a plan for a nonattainment area must provide for the implementation of all reasonably

6    available control measures "as expeditiously as practicable" to attain NAAQS, including

7    reductions in emissions through the adoption of "reasonably available control technology"

8    (RACT) by existing sources.  42 U.S.C. § 7502(c)(1).

9    To date, EPA has established NAAQS for six pollutants: particulate matter, sulfur

10   dioxide, ozone, nitrogen dioxide, carbon monoxide, and lead.  *See* 40 C.F.R. Part 50.  EPA has

11   not designated carbon dioxide or other greenhouse gases as criteria pollutants and there are no

12   NAAQS for greenhouse gases.

13   **B.    Regulation of Greenhouse Gas Emissions Under the CAA**

14   In *Massachusetts v. EPA*, the Supreme Court concluded that greenhouse gases are

15   pollutants subject to regulation under the CAA.  *Massachusetts v. EPA*, 549 U.S. 497 (2007).

16   After that ruling, EPA began the process of regulating greenhouse gas emissions.  Relevant to

17   the regulation of refinery emissions, EPA recently entered into a settlement under which it will

18   develop new source performance standards (NSPS) for greenhouse gas emissions from existing

19   and new petroleum refineries.  Also, beginning on January 2, 2011, EPA began regulating

20   greenhouse gas emissions from new and modified sources (such as refineries) under the

21   prevention of significant deterioration (PSD) program.

22   **1.    New Source Performance Standards (NSPS)**

23   The NSPS program establishes technology-based emission standards for new and

24   modified sources in specific source categories.  42 U.S.C. § 7411(b)(1)(A).  Unlike NAAQS

25   and SIPs, NSPS are not limited to criteria pollutants.  Rather, they may reach all pollutants

26   emitted by a source category that causes or contributes significantly to "air pollution which

DEFENDANTS' 12(b)(6) MOTION AND           4           ATTORNEY GENERAL OF WASHINGTON
RESPONSE TO PLAINTIFFS' SUMMARY                              Ecology Division
JUDGMENT MOTION                                              PO Box 40117
C11-417-MJP                                            Olympia, WA 98504-0117
                                                           (360) 586-6770

1  may reasonably be anticipated to endanger public health or welfare."   42 U.S.C.
2  § 7411(b)(1)(A).

3      A NSPS must:

4      [R]eflect[] the degree of emission limitation achievable through the application
5      of the best system of emission reduction which (taking into account the cost of
       achieving such reduction and any nonair quality health and environmental
6      impact and energy requirements) the Administrator determines has been
       adequately demonstrated.

7  42 U.S.C. § 7411(a)(1).  NSPSs apply to individual pieces of equipment and process units (*i.e.,*
8  "affected facilities") within a plant.  40 C.F.R. § 60.1(a).  Each NSPS expressly delineates the
9  affected facilities to which it applies.  *Star Enter. v. EPA*, 235 F.3d 139, 142 (3d Cir. 2000).
10 Affected facilities constructed, modified, or reconstructed after the publication of the
11 applicable NSPS must, at minimum, comply with the emission limitations set out in such
12 NSPS.  *Id.*  Existing equipment or process units become subject to an NSPS when they
13 undergo a physical or operational change which results in an increase in the emission rate of
14 any pollutant to which a standard for that source category applies.  40 C.F.R. § 60.14.  The
15 CAA also authorizes EPA to develop emission guidelines to set performance standards for
16 existing sources in an NSPS source category.  *See* 42 U.S.C. § 7411(d).

17     EPA has published NSPSs for over 80 specific source categories, including petroleum
18 refineries.  40 C.F.R. §§ 60.100–.109.  Among other things, the petroleum refinery NSPS
19 limits emissions of particulate matter, carbon monoxide, and sulfur oxides from refinery
20 equipment constructed or modified between 1973 and May 2007.  40 C.F.R. §§ 60.102–.104,
21 and emissions of the same pollutants plus nitrogen oxides from equipment constructed or
22 modified after May 2007.  40 C.F.R. § 60.102a.

23
24
25
26

DEFENDANTS' 12(b)(6) MOTION AND
RESPONSE TO PLAINTIFFS' SUMMARY
JUDGMENT MOTION
C11-417-MJP

5

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
(360) 586-6770

1    In 2012, EPA will also begin regulating greenhouse gas emissions through its

2    petroleum refinery NSPS pursuant to a settlement with Washington and several other parties.[1]

3    Under the settlement agreement, EPA agreed to issue NSPS final rules for greenhouse gas

4    emissions from refineries by November 10, 2012.  Refineries Settlement ¶ 3.  The agreement

5    also requires EPA to develop greenhouse gas emission guidelines that will be applied to

6    existing sources.  Refineries Settlement ¶ 2(5).

7    **2.     New Source Review**

8    The CAA establishes a permitting program for major new and modified emission

9    sources referred to as new source review (NSR).  42 U.S.C. §§ 7475, 7502(c)(6).   This

10   program is designed to facilitate achieving and maintaining NAAQS, but as discussed below,

11   NSR can also apply to air pollutants for which there are no NAAQS.   The type of emission

12   control technology required depends on whether the facility is located in an attainment or

13   nonattainment area.

14   **a.     Attainment – Prevention of Significant Deterioration**

15   The prevention of significant deterioration (PSD) program applies to new and modified

16   major emitting facilities located in attainment areas (*i.e.,* those areas in compliance with

17   NAAQS.  *See generally* 42 U.S.C. §§ 7470-7479.  A "major emitting facility" is defined as

18   one that emits (or has the potential to emit) more than 100 or 250 tons per year (depending on

19   source type) of "any air pollutant."  42 U.S.C. § 7479(1).  While most elements of the PSD

20   program are directed to NAAQS air pollutants, some elements are broader.  For example, a

21   major source required to obtain a PSD permit must implement best available control

22

23

24        [1] The settlement agreement resolved lawsuits that were filed in 2008, in the Court of Appeals for the District of Columbia by several states, local governments, and environmental groups. The plaintiffs in those suits

25   challenged EPA's NSPS for petroleum refineries, contending that EPA's rules should have addressed greenhouse gas emissions. *Am. Petroleum Institute v. EPA,* No. 08-1277 (D.C. Cir. 2010); *see also* Standards of Performance for Petroleum Refineries, Final Rule, 73 Fed. Reg. 35,838 (June 24, 2008).  The petroleum refinery NSPS

26   settlement is *available at* http://www.epa.gov/airquality/ghgsettlement.html (last accessed August 19, 2011).

DEFENDANTS' 12(b)(6) MOTION AND
RESPONSE TO PLAINTIFFS' SUMMARY
JUDGMENT MOTION
C11-417-MJP

6

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
(360) 586-6770

1    technology (BACT) "for each pollutant subject to regulation under [the CAA]."[2]   42 U.S.C.

2    § 7475(a)(4).

3           On January 2, 2011, EPA began regulating greenhouse gas emissions from new and

4    modified sources under the PSD program.   *See generally* Prevention of Significant

5    Deterioration and Title V Greenhouse Gas Tailoring Rule Final Rule, 75 Fed. Reg. 31,514

6    (June 3, 2010).   New or modified sources of greenhouse gas emissions are now required to

7    include greenhouse gases in a PSD permit that a source is otherwise required to obtain if the

8    new facility (or modification) has the potential to emit 75,000 tons per year or more of

9    greenhouse gases measured on a carbon dioxide equivalent ($CO_2e$)[3] basis.   40 C.F.R.

10   § 52.21(b)(49)(iv)(a).   In addition, a new or modified facility is required to obtain a PSD

11   permit if the facility's potential greenhouse gas emissions are equal to or greater than 100,000

12   tons $CO_2e$ *and* exceed the traditional 100/250 ton PSD thresholds measured on a mass basis.

13   40 C.F.R. § 52.21(b)(49)(v)(a).

14          In Washington, the Department of Ecology (Ecology) implements the PSD program

15   through delegation from EPA.   Declaration of Stuart Clark (Clark Decl.) ¶ Q.

16          **b.**    **Nonattainment – New Source Review**

17          The CAA includes stringent requirements for new or modified sources located in

18   nonattainment areas (*i.e.,* those areas not in compliance with one or more NAAQS).   New and

19   modified major stationary sources in nonattainment areas must meet the lowest achievable

20   emission rate (LAER) for the nonattainment pollutant or pollutants.   42 U.S.C. § 7503(a)(2).

21   Because there are no NAAQS for greenhouse gases, no area can be in nonattainment for

22

23          [2] BACT is defined as "an emission limitation based on the maximum degree of [pollutant] reduction . . .

24   which the [state] permitting authority, on a case-by-case basis, taking into account energy, environmental, and
     economic impacts and other costs, determines is achievable for [the] facility . . . ."  42 U.S.C. § 7479(3); *see also*

25   *Alaska Dep't of Envtl. Conservation v. EPA*, 540 U.S. 461 (2004).
            [3] $CO_2e$ is a measurement of the relative global warming potential of the six primary greenhouse gases:

26   carbon dioxide (CO2), nitrous oxide (N2O), methane (CH4), hydrofluorocarbons (HFCs), perfluorocarbons
     (PFCs), and sulfur hexafluoride (SF6).  *See* 40 C.F.R. § 51.166(b)(48)(ii).

DEFENDANTS' 12(b)(6) MOTION AND
RESPONSE TO PLAINTIFFS' SUMMARY
JUDGMENT MOTION
C11-417-MJP

7

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
(360) 586-6770

1  greenhouse gases.  Therefore, the nonattainment new source review requirements do not apply

2  to greenhouse gases.

3  **C.      SIP Provisions at Issue in the Present Case**

4        Ecology adopted major revisions to Washington Administrative Code (WAC) 173-400

5  and other air regulations in 1993, and submitted the revised rules to EPA for incorporation into

6  Washington's SIP.  *See* 60 Fed. Reg. 9,802 (Feb. 22, 1995).  In June 1995, EPA took final

7  action on the SIP revisions.  60 Fed. Reg. 28,726 (June 2, 1995).

8        Two sections of the regulations adopted by Ecology in 1993, and incorporated into the

9  SIP in 1995, are at issue in this case.  The first is the RACT provision contained in the

10  introductory paragraph of the 1993 version of WAC 173-400-040 (the version contained in the

11  SIP):[4]

12          Further, all emission units are required to use reasonably available control
            technology (RACT) which may be determined for some sources or source
13          categories to be more stringent than the applicable emission limitations of any
            chapter of Title 173 WAC.  Where current controls are determined to be less
14          than RACT, ecology or the authority shall, as provided in section 8, chapter
            252, Laws of 1993, define RACT for each source or source category and issue a
15          rule or regulatory order requiring the installation of RACT.

16  WAC 173-400-040 (1993).

17        The other provision at issue in this case is the nuisance standard contained in the SIP

18  version WAC 173-400-040(5), which states, "No person shall cause or permit the emission of

19  any air contaminant from any sources if it is detrimental to the health, safety, or welfare of any

20  person, or causes damage to property or business."

21

22

23        [4] Plaintiffs quote and cite to the current, state-only version of this regulation, which EPA has not
        approved for inclusion in the SIP, WAC 173-400-040(1) (effective Apr. 1, 2011).  Plaintiffs' Motion for
24      Summary Judgment and Memorandum (Plaintiffs' Br.) (Dkt. 35) at 12.  The two versions of the regulation are
        substantively the same, but the later state-only version provides a subsection number for the initial paragraph and
25      converts the earlier citation to a session law into a reference to the codified version of the statute.  The earlier
        1993 version of WAC 173-400-040, as incorporated in the SIP is available on EPA Region 10's web page at:
26      http://yosemite.epa.gov/R10/AIRPAGE.NSF/webpage/State+Implementation+Plans+-+Federally+Approved+Rules*
        (last accessed August 19, 2011).

1       When EPA adopted its final rules to update the Washington SIP in 1995, there also

2 were several provisions of WAC 173-400 that EPA excluded from the SIP because they were

3 unrelated to achieving compliance with NAAQS.  *See* 60 Fed. Reg. at 28,727-28 (excluding

4 WAC 173-400-040(2) "Fallout" and WAC 173-400-040(4) "Odors" and other provisions).  In

5 its proposal to adopt the rules, EPA explained that these provisions of WAC 173-400 (were not

6 included "as these provisions are not related to the criteria pollutants regulated under the SIP."

7 60 Fed. Reg. at 9,806.

8 **D.   EPA's Proposed SIP Correction**

9       On March 8, 2011, two days before this lawsuit was filed, EPA proposed a clarification

10 of the scope of regulations incorporated into the Washington SIP, including WAC 173-400-

11 040.  76 Fed. Reg. 16,365 (Mar. 23, 2011).  In that proposal, EPA recited the crux of the

12 information provided above regarding SIPs: that the CAA requires EPA to promulgate

13 NAAQS and requires states to adopt and submit SIPs to EPA to implement, maintain, and

14 enforce the NAAQS (differentiating the broader scope of the PSD program, which also is

15 explained above).  *Id*. at 16,366.  EPA observed that for a state or local regulation to be

16 incorporated in the SIP, it must reasonably relate to attainment and maintenance of the

17 NAAQS. *Id*.

18 **III.   ISSUES**

19      1.      Do the Plaintiffs fail to state a claim because the SIP provisions at issue in this

20 case do not apply to greenhouse gases?

21      2.      Even if the SIP provisions do apply to greenhouse gases, do the Plaintiffs fail

22 to state a claim because they fail to identify a mandatory duty that requires the Clean Air

23 Agencies to regulate greenhouse gases from oil refineries in the fashion urged by the

24 Plaintiffs?

25

26

DEFENDANTS' 12(b)(6) MOTION AND
RESPONSE TO PLAINTIFFS' SUMMARY
JUDGMENT MOTION
C11-417-MJP

9

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
(360) 586-6770

# IV.    ARGUMENT

## A.    Standard of Review

"A Rule 12(b)(6) motion tests the legal sufficiency of a claim.  A claim may be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001)).  "Dismissal is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Navarro*, 250 F.3d at 732.  When ruling on a 12(b)(6) motion, the court must accept as true all factual allegations, but not legal conclusions, in the Complaint. *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009).  Furthermore, a court is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Iqbal*, 129 S. Ct. at 1949-50 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  In this case, dismissal is proper because there is no cognizable legal theory supporting Plaintiff's claim, even accepting all of the Plaintiffs' factual allegations as true.

If, on a motion under Rule 12(b)(6), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  Fed. R. Civ. P. 12(d); *Aronsen v. Crown Zellerbach,* 662 F.2d 584, 591 (9th Cir. 1981).  To the extent the Agencies present matters outside the pleadings, the Agencies' motion to dismiss should be treated as a motion for summary judgment.  "In summary judgment, there must be no issue of any material fact and the moving party must demonstrate the right to judgment as a matter of law in the context of undisputed facts." *Aronsen,* 662 F.2d at 591  In determining whether a material factual dispute exists, facts and inferences must be viewed most favorably to the non-moving party.  *Id.*  "Summary judgment is appropriate 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter

DEFENDANTS' 12(b)(6) MOTION AND
RESPONSE TO PLAINTIFFS' SUMMARY
JUDGMENT MOTION
C11-417-MJP

10

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
(360) 586-6770

1    of law.' " *Natural Res. Def. Council v. EPA*, 542 F.3d 1235, 1249 (9th Cir. 2008) (quoting

2    Fed. R. Civ. P. 56(c)).  *See also* Fed. R. Civ. P. 56(c).

3         Here, the Agencies not only move for dismissal under Rule 12(b)(6) but also respond to

4    Plaintiffs' summary judgment motion.  The Agencies agree that the case presents legal issues

5    that are appropriately resolved through dispositive motions.  However, whether under a

6    12(b)(6) or summary judgment standard of review, the legal issues should be resolved in favor

7    of the Agencies, not the Plaintiffs.

8    **B.    Summary of Argument**

9         Plaintiffs seek an order directing the Clean Air Agencies to exercise their discretionary

10   authority under two Washington regulations to adopt and enforce new limits on greenhouse gas

11   emissions from five Washington refineries.  The Clean Air Agencies move this Court to

12   dismiss Plaintiffs' claims, brought under the CAA, 42 U.S.C. § 7604(a)(1), and to deny

13   Plaintiffs' motion for summary judgment because the CAA does not authorize the relief

14   Plaintiffs seek.

15        The two Washington regulations relied upon by Plaintiffs are not federally enforceable

16   against sources of greenhouse gas emissions and so cannot provide a basis for Plaintiffs'

17   claims.  EPA has exercised its authority under 42 U.S.C. § 7410 to make the two state

18   regulations part of the Washington SIP, which makes them federally enforceable to control

19   emissions of criteria pollutants.  Unlike the PSD and NSPS programs, which can apply to any

20   regulated air pollutant and already are being used to control greenhouse gases, § 7410 is

21   limited to criteria pollutants and their precursors.  Greenhouse gases are not criteria pollutants

22   or precursors to criteria pollutants.  Accordingly, the CAA does not authorize federal

23   enforcement of the two regulations relied upon by plaintiffs against greenhouse gas emissions.

24        If the Court agrees that the SIP provisions do not reach greenhouse gases, then the

25   Court's inquiry stops there and the case must be dismissed.  However, Plaintiffs' claims also

26   fail for the additional reason that the two regulations in question impose requirements on

DEFENDANTS' 12(b)(6) MOTION AND
RESPONSE TO PLAINTIFFS' SUMMARY
JUDGMENT MOTION
C11-417-MJP

11

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
(360) 586-6770

1    emission sources, not mandatory duties on the Clean Air Agencies.  Plaintiffs ask the Court to

2    direct the Clean Air Agencies to enforce the two regulations against specific emission sources

3    in specific ways.  But the courts will not review agencies' exercise of enforcement discretion,

4    and the form of relief Plaintiffs seek is unavailable in a § 7604 action.

5           Specifically, the RACT regulation does not direct the Clean Air Agencies to take

6    action, *unless* the Agencies in their discretion find that existing standards otherwise applicable

7    to specific sources or source categories are less than RACT.  WAC 173-400-040 (1993).

8    Contrary to Plaintiffs' claims, the Agencies have discretion to determine when to make a

9    RACT determination.  The nuisance regulation, WAC 173-400-040(5), provides no direction

10   to the Clean Air Agencies, and so any application of that regulation to specific sources is

11   purely a matter of agency enforcement discretion and beyond judicial review.

12          The Plaintiffs have failed to identify a federally enforceable duty that the Clean Air

13   Agencies have failed to meet. Therefore, Plaintiffs' § 7604 action necessarily fails and this

14   lawsuit must be dismissed under Rules 12(b)(6) or 56.

15   **C.    The Cited Provisions of the Washington State Implementation Plan do Not**
         **Require the Agencies to Regulate Greenhouse Gas Emissions from Refineries**
16

17          **1.     The SIP Only Reaches Criteria Pollutants and Their Precursors**

18          As described above, the CAA requires states to develop SIPs to ensure attainment and

19   maintenance of the NAAQS set by EPA for criteria pollutants.  42 U.S.C. § 7410; *see also*

20   *Union Elec. Co. v. EPA*, 427 U.S. 246 (1976); *Gen. Motors Corp. v. United States*, 496 U.S.

21   530 (1990); *Alaska Dep't of Envtl. Conservation*, 540 U.S. 461; *Safe Air For Everyone v EPA*,

22   488 F.3d 1088, 1091 (9th Cir. 2007).

23          Greenhouse gases are not criteria pollutants.[5]  Nor are greenhouse gases recognized

24   precursors to criteria pollutants.[6]  The CAA does not require states to develop SIPs to regulate

25   _____

26          [5] EPA recognizes seven greenhouse gases:  carbon dioxide, methane, nitrous oxide, sulfur hexafluoride,
     hydrofluorocarbons, perfluorocarbons, and certain other fluorinated gases.  40 C.F.R. § 98.6.

greenhouse gases.  Nor can general provisions in a SIP, such as the RACT provision and the nuisance provision in Washington's SIP, be federally enforced to regulate greenhouse gases. This conclusion is consistent with the purpose of SIPs, consistent with Congress' grant of authority to EPA regarding SIPs, consistent with EPA's interpretation of its authority regarding SIPs, and consistent with case law.

**a.      The Purpose of a SIP is to Assure Attainment and Maintenance of the NAAQS**

The NAAQS/SIP process was enacted in 1970 to "guarantee the prompt attainment and maintenance of *specified* air quality standards."  *Union Elec.*, 427 U.S. at 249 (emphasis added); *see also Train v. Natural Res. Def. Council, Inc.,* 421 U.S. 60, 64 (1975).  The 1970 Act required EPA to develop NAAQS for five pollutants for which air quality criteria already existed:  sulfur oxides, particulate matter, carbon monoxide, hydrocarbons, and photochemical oxidants.  *Natural Res. Def. Council, Inc. v. Train*, 545 F.2d 320, 326 (2d Cir. 1976).  In addition, the 1970 Act put in place a process by which EPA could add criteria pollutants to the list and develop NAAQS for them.  *Id*.

The heart of the 1970 amendments was the requirement that states develop plans providing for "the attainment of the national primary ambient air quality standards in the particular State 'as expeditiously as practicable . . . .'"  *Train*, 421 U.S. at 66-67.  National ambient air quality standards were needed to replace disparate state and local standards that had proven ineffective in controlling air pollution.  *See, e.g.*, *Id.* at 63-64; *Union Elec.,* 427 U.S. at 256 ("the 1970 Amendments to the Clean Air Act were a drastic remedy to what was perceived as a serious and otherwise uncheckable problem of air pollution.").  Thus, the NAAQS/SIP process is not a general process for addressing all air pollutants.  Rather, it was enacted to provide a framework for addressing *specific* pollutants—those for which air quality

---

[6] EPA has identified ammonia, volatile organic compounds, nitrogen oxides, and sulfur dioxide as precursors to one or more criteria pollutants.  *See* 42 U.S.C. § 7602(g); 40 C.F.R. 51.165(a)(1)(xxxvii)(C)(1)-(4). Because regulation of these pollutants is crucial to meeting the NAAQS, EPA has determined that it is appropriate for SIPs to include regulations governing these precursors. *See, e.g.,* 40 C.F.R. § 51.1002(c).

DEFENDANTS' 12(b)(6) MOTION AND
RESPONSE TO PLAINTIFFS' SUMMARY
JUDGMENT MOTION
C11-417-MJP

13

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
(360) 586-6770

criteria have been developed by EPA.  It therefore does not extend to pollutants, such as greenhouse gases, for which there are no NAAQS.[7]

### b.   EPA Does Not Have the Authority to Require the Contested Provisions in Washington's SIP to Reach Greenhouse Gases

Plaintiffs argue that EPA can and did approve provisions of Washington's SIP that are "broader" than criteria pollutants and, therefore, the Clean Air Agencies are saddled with a SIP that is broader than Washington State or EPA intended it to be.  Plaintiffs' Motion for Summary Judgment and Memorandum (Plaintiffs' Br.) (Dkt. 35) at 16-17.  However, "[i]t is a cardinal principle of administrative law that an agency may act only pursuant to authority delegated to it by Congress."  *Catholic Health Initiatives v. Sebelius,* 617 F.3d 490 (D.C. Cir. 2010).  *See also Lyng v. Payne,* 476 U.S. 926, 937 (1986) ("[A]n agency's power is no greater than that delegated to it by Congress."); *Transohio Sav. Bank v. Dir., Office of Thrift Supervision,* 967 F.2d 598, 621 (D.C. Cir. 1992) ("It is 'central to the real meaning of 'the rule of law' . . .' that a federal agency does not have the power to act unless Congress, by statute, has empowered it to do so.") (quoting Edward L. Robin, *Law and Legislation in the Administrative State*, 89 Colum. L. Rev. 369, 402 (1989)).  When an agency has acted beyond its delegated authority, a reviewing court will hold such action *ultra vires.  Transohio,* 967 F.2d at 621.  "Congress delegates authority to agencies through legislation, and we therefore look to the agency's enabling statute to determine whether it has acted within the bounds of its authority or overstepped them."  *Catholic Health Initiatives*, 617 F.3d 490.

In determining whether an agency exceeded statutory authority, a court must employ the analysis dictated by *Chevron U.S.A,. Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 842 (1984).  *Nw. Envtl. Advocates v. EPA*, 537 F.3d 1006, 1019 (9th Cir. 2008) (vacating EPA

---

[7] Plaintiffs point out that the PSD program reaches beyond criteria pollutants, and, indeed includes greenhouse gases.  Plaintiffs' Br. at 28, n.6.  Plaintiffs further note that a state may choose to include PSD program requirements in their SIPs.  *Id.*  But Plaintiffs fail to note that authorization for the PSD program is in an entirely different set of statutory provisions (42 U.S.C. §§ 7470-7479) from the NAAQS/SIP statutory provisions (42 U.S.C. §§ 7409-7410), and the PSD statute, unlike the provisions of 42 U.S.C. § 7410, includes the specific authority for the PSD program to reach beyond criteria pollutants and their precursors.  42 U.S.C. § 7475(4).

DEFENDANTS' 12(b)(6) MOTION AND
RESPONSE TO PLAINTIFFS' SUMMARY
JUDGMENT MOTION
C11-417-MJP

14

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
(360) 586-6770

1   regulation found to be *ultra vires*).  *See also Defenders of Wildlife v. Browner*, 191 F.3d 1159,

2   1162 (9th Cir. 1999) ("On questions of statutory interpretation, we follow the approach from

3   *Chevron* . . . .").  *Chevron* requires that a court examine in the first instance "whether Congress

4   has directly spoken to the precise question at issue."  *Chevron*, 467 U.S. at 842.  "If Congress

5   has done so, the inquiry is at an end; [we] 'must give effect to the unambiguously expressed

6   intent of Congress.' "  *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.,* 529 U.S.

7   120, 132 (2000) (quoting *Chevron,* 467 U.S. at 843).  If, after conducting such an analysis, a

8   court concludes that Congress has not addressed the issue, the court "must respect the agency's

9   construction of the statute so long as it is permissible."  *Brown & Williamson,* 529 U.S. at 132

10  (citing *INS v. Aguirre-Aguirre,* 526 U.S. 415, 424 (1999), and *Auer v. Robbins,* 519 U.S. 452,

11  457 (1997)).  However, the court "must reject those constructions that are contrary to clear

12  congressional intent or that frustrate the policy that Congress sought to implement."  *Schneider*

13  *v. Chertoff,* 450 F.3d 944, 952 (9th Cir. 2006).

14              (i)      **The plain language of the Clean Air Act dictates that SIPs**
                         **may only reach criteria pollutants.**

15          In this case, Congress has addressed the issue in question:  the plain language of the

16  CAA is clear that SIPs must be developed to regulate criteria pollutants and ensure the

17  attainment and maintenance of the NAAQS.  The statutory provision requiring states to

18  develop implementation plans states,

19          Each State shall . . . adopt and submit to the Administrator, within 3 years . . .
            after the promulgation of a national primary ambient air quality standard (or any
20          revision thereof) under section 7409 of this title[8] . . ., a plan which provides for
            implementation, maintenance, and enforcement of such primary standard in
21          each air quality control region . . . within such state.

22  42 U.S.C. § 7410(a)(1).  Plans must include emission limitations and other control measures to

23  meet the NAAQS as well as enforcement measures to assure that NAAQS are achieved.

24  42 U.S.C. § 7410(a)(2)(A), (C).  Plans must also contain provisions prohibiting sources from

25  _____

26       [8] Section 7409 requires EPA to promulgate NAAQS for each air pollutant for which air quality criteria
    have been issued.  42 U.S.C. § 7409(a)(1)(A).

1    emitting any air pollutant that would contribute significantly to nonattainment in, or interfere

2    with maintenance by, any other state with respect to any NAAQS.  42 U.S.C. § 7410(a)(2)(D).

3    EPA may approve SIPs only if they meet these requirements.  42 U.S.C. § 7410(k)(3).  The

4    plain language of these provisions makes it clear that the NAAQS/SIP process is limited to

5    pollutants that relate to attainment and maintenance of the NAAQS.

6            In determining Congressional intent under *Chevron*, a court must not only look at the

7    precise statutory section in question, but must also analyze the provision in the context of the

8    governing statute as a whole, presuming congressional intent to create a "symmetrical and

9    coherent regulatory scheme."  *Coyt v. Holder*, 593 F.3d 902, 905 (9th Cir. 2010) (quoting

10   *Gustafson v. Alloyd Co.,* 513 U.S. 561, 569 (1995)).  As described in the background section,

11   Congress created a coherent regulatory scheme for controlling air pollution, establishing

12   different but complementary tools for addressing different pollutants and types of sources.  It is

13   clear that within this scheme, Congress did not intend each of the CAA's provisions to apply

14   universally to all pollutants or to all types of sources.[9]

15           Furthermore, given the CAA's express legal framework, a finding in this case that

16   federally enforceable provisions in a SIP reach greenhouse gases would add requirements to

17   the CAA that Congress never intended or expressed.  The Plaintiffs cannot rewrite the CAA to

18   force it to reach this result.  *See Aronsen*, 662 F.2d at 590 ("A court should not add language to

19   an unambiguous statute absent a manifest error in drafting or unresolvable inconsistency);" *In

20   re Bankruptcy Estate of MarkAir, Inc.*, 308 F.3d 1057, 1062 (9th Cir. 2002) (refusing to write

21   into bankruptcy statute condition changing the order of distribution of assets in a bankruptcy).

22           Finally, a court evaluating a statutory scheme " 'must be guided to a degree by common

23   sense as to the manner in which Congress is likely to delegate [such an important] policy

24   decision.' "  *Coyt*, 593 F.3d at 905 (quoting *Gustafson,* 513 U.S. at 569).  EPA approval of a

25   ────────────────
          [9] Plaintiffs claim that a SIP is the CAA's primary method of ensuring the state achieves the goals of the
26   CAA.  Plaintiffs' Br. (Dkt. 35) at 7.  Plaintiffs overstate the case.  In fact, as described in Section II of this brief,
     SIPs are one of a number of tools relied on by the CAA to ensure states achieve the goals of the CAA.

1    provision of state law into a SIP makes the state provision federally enforceable.  *Friends of*

2    *the Earth v. Carey*, 535 F.2d 165 (2d Cir. 1976), cert. denied, 434 U.S. 902 (1977).  Making

3    state law federally enforceable alters the usual constitutional balance between the states and the

4    federal government.  "If Congress intends to alter the 'usual constitutional balance between the

5    States and the Federal Government,' it must make its intention to do so 'unmistakably clear in

6    the language of the statute.' "  *Gonzaga Univ. v. Doe*, 536 U.S. 273, 286 (2002) (quoting

7    *Atascadero State Hosp. v. Scanlan*, 473 U.S. 234, 242 (1985)).  *See also Hunter v. Underwood*,

8    362 F.3d 468 (8th Cir. 2004) (finding that state law notice provision was not federally

9    enforceable under the federal Housing Act).  In the CAA, Congress expressly authorized EPA

10   to make federally enforceable state law provisions regulating criteria pollutants and their

11   precursors, but did not authorize EPA to make state law concerning other pollutants federally

12   enforceable.  42 U.S.C. § 7410.

13       The plain language of the CAA demonstrates that Congress intended to limit SIPs to

14   regulation of criteria pollutants and their precursors.  The analysis should thus end here, and

15   the Court should find that EPA does not have the authority to approve conditions in a SIP to

16   address greenhouse gases unless EPA determines that they are precursors to criteria pollutants

17   or issues NAAQS for them.

18       (ii)   **If the Court finds the language ambiguous, the Court must**
             **give deference to EPA's interpretation that SIPs may not**
19           **reach beyond criteria pollutants.**

20       If a Court finds the CAA language on this subject ambiguous, the Court must engage in

21   the second step of the *Chevron* analysis.  Under this step, the Court must defer to any

22   permissible interpretations of the statutory language put forward by the agency charged with

23   administering the statute.  *Chevron,* 467 U.S. at 843.  The Court "must reject those

24   constructions that are contrary to clear congressional intent or that frustrate the policy that

25   Congress sought to implement." *Schneider,* 450 F.3d at 952.

26

DEFENDANTS' 12(b)(6) MOTION AND
RESPONSE TO PLAINTIFFS' SUMMARY
JUDGMENT MOTION
C11-417-MJP

17

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
(360) 586-6770

1    EPA is the agency delegated by Congress to administer the CAA's provisions.  *See,*

2    *e.g.,* 42 U.S.C § 7602(a) (defining "Administrator" as the Administrator of the Environmental

3    Protection Agency); 42 U.S.C. § 7410(a)(1) (requiring states to submit implementation plans to

4    the Administrator for approval).  EPA has consistently recognized that provisions in SIPs are

5    federally enforceable only insofar as they concern criteria pollutants and attainment and

6    maintenance of the NAAQS.  For example, in 1979, EPA stated, "measures to control

7    non-criteria pollutants may not legally be made part of a SIP."  Declaration of Katharine G.

8    Shirey (Shirey Decl.), Ex. A (Memorandum from Michael A. James to Regional Counsels,

9    Feb. 9, 1979).  In 1987 EPA attempted to remove odor provisions from Pennsylvania's SIP

10   because EPA believed the odor regulations were not related to criteria pollutants and the

11   achievement of the NAAQS.  *Concerned Citizens v. EPA*, 836 F.2d 777, 779 (3d Cir. 1987).

12   In 2006, EPA removed the nuisance provision from Georgia's SIP because EPA determined

13   that the nuisance provision was not related to the attainment and maintenance of the NAAQS.

14   71 Fed. Reg. 13,551-52 (Mar. 16, 2006).  In that action, EPA stated "provisions approved by

15   EPA as part of states' SIPs should generally be related to attainment and maintenance of the

16   NAAQS, consistent with the authority in Section 110 of the CAA under which these plans are

17   approved by EPA."  *Id*.

18        In 2011, EPA proposed a clarification that certain general regulations in Washington's

19   SIP are only approved into the SIP insofar as they regulate criteria pollutants and their

20   precursors.  76 Fed. Reg. 16,365.  In connection with that action, EPA stated, "measures to

21   control non-criteria pollutants [pollutants that are not NAAQS pollutants or their precursors]

22   may not legally be made part of a SIP."  *Id*.

23        The Plaintiffs ignore EPA's long-standing interpretation of the scope of the SIP and

24   instead, point to a provision of the CAA that authorizes states to regulate air pollution more

25   strictly than required by federal law.  42 U.S.C. § 7416.  Plaintiffs incorrectly claim this

26   provision authorizes EPA to approve, and thus make federally enforceable, provisions in a SIP

DEFENDANTS' 12(b)(6) MOTION AND
RESPONSE TO PLAINTIFFS' SUMMARY
JUDGMENT MOTION
C11-417-MJP                                                18                    ATTORNEY GENERAL OF WASHINGTON
                                                                                              Ecology Division
                                                                                              PO Box 40117
                                                                                          Olympia, WA 98504-0117
                                                                                              (360) 586-6770

1  addressing pollutants that are neither criteria pollutants nor their precursors.   Plaintiffs' Br.

2  (Dkt. 35) at 17.   Actually, § 7416 is a general statement that the federal CAA does not preempt

3  state laws regulating air pollution except that, "if an emission standard or limitation is in effect

4  under an applicable implementation plan" a State "may not adopt or enforce any emission

5  standard or limitation which is less stringent than the standard or limitation under such

6  plan. . ." 42 U.S.C. § 7416.   Courts have determined that this provision authorizes SIPs to

7  include emission standards or limitations for the control of criteria pollutants that are more

8  stringent than those required by federal law.   *See, e.g.*, *Union Elec.*, 427 U.S. at 252

9  (finding that a SIP could include provisions stricter than necessary to meet federal

10  requirements for the criteria pollutant sulfur dioxide).   However, 42 U.S.C. § 7416 does not

11  authorize EPA to make provisions relating to non-criteria pollutants federally enforceable by

12  approving them into a SIP.

13       As discussed above, the purpose of SIPs and the structure of the NAAQS/SIP

14  regulatory scheme are related solely to attainment and maintenance of the NAAQS developed

15  for criteria pollutants.   EPA's interpretation that the statute limits the agency to approving

16  regulations in SIPs only insofar as they relate to criteria pollutants and NAAQS is therefore

17  permissible and reasonable.   This interpretation merits *Chevron* deference.

18           **c.    Case Law Supports the Agencies' Position That a SIP may be
             Federally Enforceable Only Insofar as it Reaches Criteria Pollutants**

19           **and Their Precursors**

20       Plaintiffs have cited 20 cases to support their claim that Washington's SIP requires the

21  Agencies to regulate the emissions of greenhouse gases from refineries.   Plaintiffs' Br.

22  (Dkt. 35).   All of these cases are inapposite, as all of them concern attainment of the NAAQS

23  through the regulation of criteria pollutants or their formally recognized precursors (volatile

24  organic compounds VOCs, sometimes also called hydrocarbons).   (*Am. Lung Ass'n v. Kean*,

25  871 F.2d 319, 321 (3d Cir. 1989) (ozone); *Ass'n of Irritated Residents v. C & R Vanderham*

26  *Dairy*, 2007 WL 2815038, *2 (E.D. Cal. 2007) (VOCs as precursors to ozone); *Bayview*

DEFENDANTS' 12(b)(6) MOTION AND
RESPONSE TO PLAINTIFFS' SUMMARY
JUDGMENT MOTION
C11-417-MJP                                    19                    ATTORNEY GENERAL OF WASHINGTON
                                                                     Ecology Division
                                                                     PO Box 40117
                                                                     Olympia, WA 98504-0117
                                                                     (360) 586-6770

1  *Hunters*, 366 F.3d at 695-96 (hydrocarbons, carbon monoxide, NOx);[10] *Clean Air Council v.*

2  *Mallory*, 226 F. Supp. 2d 705, 708 (E.D. Penn. 2002) (ozone); *Cmtys. for a Better Env't v.*

3  *Cenco Refining Co.*, 180 F. Supp. 2d 1062, 1071 (C.D. Cal 2001) (VOCs and NOx);

4  *Concerned Citizens*, 836 F.2d at 783 (VOCs); *Council of Commuter Orgs. v. Metro. Transp.*

5  *Auth.*, 683 F.2d 663, 666 (2d Cir. 1982) (carbon monoxide and ozone); *Duquesne Light Co. v.*

6  *EPA*, 166 F.3d 609, 611-12 (3rd Cir. 1999) (New Source Review rules necessary to achieve or

7  maintain NAAQS in nonattainment area); *Duquesne Light Co. v. EPA*, 698 F.2d 456, 471

8  (D.C. Cir. 1983) (the assessment of penalties for failing to comply with regulations in a SIP for

9  attaining NAAQS developed by EPA); *Friends of the Earth*, 535 F.2d at 171 (carbon

10 monoxide); *Gen. Motors*, 496 U.S. at 534 (VOCs as precursors to ozone); *Kentucky Res.*

11 *Council, Inc. v. EPA*, 304 F. Supp. 2d 920, 923 (W.D. Ky. 2004) (carbon monoxide); *Or.*

12 *Envtl. Council v. Or. Dep't of Envtl. Quality*, 775 F. Supp. 353, 355, 361 (D.Or. 1991) (VOCs

13 as precursors to ozone); *Safe Air for Everyone v. EPA*, 475 F.3d 1096, 1098-99 (9th Cir.

14 2007)[11] (particulate matter); *Sierra Club v. Tenn. Valley Auth.*, 430 F.3d 1337, 1341 (11th Cir.

15 2005) (particulate matter); *Sweat v. Hull*, 200 F. Supp. 2d 1162, 1163 (D. Ariz. 2001) (carbon

16 monoxide and ozone); *Union Elec.*, 427 U.S. at 252 (sulfur dioxide); *United States v. Alcan*

17 *Foil Prods.*, 889 F.2d 1513, 1515 (6th Cir. 1989) (VOCs as precursors to ozone); *United States*

18 *v. Ford Motor Co.*, 814 F.2d 1099, 1101 (6th Cir. 1987) (VOCs and ozone); *United States v.*

19 *Wheeling-Pittsburgh Steel Corp.*, 818 F.2d 1077, 1079 (3d Cir. 1987) (particulate matter)).

20        Not one of these cases supports a claim that a SIP can regulate pollutants that are not

21 criteria pollutants or their precursors.  Some of the cases cited by Plaintiffs do stand for the

22 proposition that EPA may approve into a SIP, requirements more stringent than necessary to

23

24        [10] On page 696, in a bracketed statement introducing Transportation Control Measure #2, the opinion mistakenly refers to "emission reductions of . . . carbon dioxide . . . ."  The statement should refer to emission

25 reductions of carbon monoxide (CO).  A copy of Transportation Control Measure #2 with the correct reference is attached as Appendix A for the Court's convenience.
        [11] This is the decision cited by Plaintiffs.  However, this version has been superseded by *Safe Air For*

26 *Everyone v. EPA*, 488 F.3d 1088 (9th Cir. 2007).

DEFENDANTS' 12(b)(6) MOTION AND
RESPONSE TO PLAINTIFFS' SUMMARY
JUDGMENT MOTION
C11-417-MJP

20

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
(360) 586-6770

1    meet the requirements of federal law.  *Duquesne Light*, 166 F.3d at 611, 613; *Concerned*

2    *Citizens*, 836 F.2d at 781; *Union Elec.* 427 U.S. at 264.  However, all of these cases were

3    decided within the context of the CAA's mandate that SIPs regulate criteria pollutants in

4    furtherance of attainment and maintenance of the NAAQS.  None of the cases support the

5    Plaintiffs' argument that SIPs can be "broader" than envisioned by the CAA by regulating

6    pollutants other than criteria pollutants or their precursors.

7         For example, in *Union Electric*, the United States Supreme Court upheld provisions in

8    Missouri's SIP enabling the state to attain the NAAQS for sulfur dioxide sooner than required.

9    *Union Elec.*, 427 U.S. at 265.  The court noted, "So long as the national standards are met, the

10   State may select whatever mix of control devices it desires."  *Union Elec.*, 427 U.S. at 266.  In

11   *Duquesne Light*, the Third Circuit addressed provisions in Pennsylvania's SIP governing the

12   attainment of NAAQS in nonattainment areas.  *Duquesne Light*, 166 F.3d at 611-12.   In

13   *Concerned Citizens*, the Third Circuit looked at an attempt by EPA to remove odor regulations

14   from Pennsylvania's SIP as, in EPA's opinion, those regulations bore no significant relation to

15   attainment and maintenance of the NAAQS.  *Concerned Citizens*, 836 F.2d at 779.  However,

16   both the plaintiffs and the Pennsylvania Department of Environmental Resources in that case

17   attested that the odor regulations *were* used to regulate criteria pollutants.  *Id.* at 779, 783.

18        These cases are clear that the purpose of a SIP is to ensure the attainment and

19   maintenance of the NAAQS, and the more stringent provisions approved into SIPs are

20   provisions regulating criteria pollutants in support of this purpose.  These cases do not support

21   Plaintiffs' assertion that provisions in a SIP may reach beyond criteria pollutants.

22        These cases are also clear that the authorization for SIPs to be more stringent than

23   necessary comes from Congress' recognition of States' rights to regulate air pollution.  *Union*

24   *Elec.*, 427 U.S. at 263-64 ("Section 116 of the Clean Air Act . . . provides that states may adopt

25   emission standards stricter than the national standards."), 260 (States have discretion to exceed

26   minimum standards), 261(State itself may decide to adopt a plan more stringent than federal

DEFENDANTS' 12(b)(6) MOTION AND
RESPONSE TO PLAINTIFFS' SUMMARY
JUDGMENT MOTION
C11-417-MJP

21

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
(360) 586-6770

1    law demands); *Duquesne Light*, 166 F.3d at 613 (quoting 42 U.S.C. § 7416 ("nothing in this

2    chapter shall preclude or deny the right of any State . . . to adopt or enforce (1) any standard or

3    limitation respecting emissions of air pollutants or (2) any requirement respecting control or

4    abatement of air pollution. . .")); 42 U.S.C. § 7416 (Retention of state Authority).  In this case,

5    the State of Washington has made clear that it did not propose and does not support the novel

6    interpretation of the SIP that Plaintiffs advance here.[12]  Clark Decl. ¶ F, Exs. A, B.

7            **2.      EPA's Proposed SIP Correction Simply Clarifies the State of Existing Law**

8            As noted in the background section, EPA recently informed the Clean Air Agencies

9    that it was proposing to unilaterally correct Washington's SIP to clarify that the RACT

10   provision (WAC 173-400-040) and the nuisance provision (WAC 173-400-040(5)) have been

11   approved into the SIP only to the extent they regulate criteria pollutants and their precursors.

12   Clark Decl. ¶ F.  Contrary to Plaintiffs' claim (Plaintiffs' Br. (Dkt. 35) at 14), the Clean Air

13   Agencies did not propose the SIP correction to combat this lawsuit.  *Id.*  Indeed, the Agencies

14   did not propose the SIP correction at all.  *Id.*  In fact, the Agencies did not know EPA was

15   planning to propose the SIP correction, and did not work with EPA on developing the

16   proposal.  *Id.*  However, the Clean Air Agencies support the proposed SIP correction because it

17   is consistent with the Agencies' understanding that the cited provisions are not federally

18   enforceable except to the extent they regulate criteria pollutants and their precursors.  *Id.*

19           The SIP correction articulates EPA's agreement that state law provisions that EPA

20   never could have made federally enforceable for anything beyond criteria pollutants and their

21   precursors are not federally enforceable for anything beyond criteria pollutants and their

22   precursors.  The SIP correction thus clarifies the state of existing law, and accurately reflects

23   EPA's authority regarding SIPs.

24   _____

25        [12] Plaintiffs note that courts have found that a state's intentions are not relevant when interpreting the
     plain language of a SIP.  Plaintiffs' Br. (Dkt. 35) at 10 (citing *Safe Air For Everyone*, 475 F.3d 1096).  That

26   argument, and that case, are not relevant to this discussion.  Here we are not interpreting the plain language of a
     SIP.  Here we are interpreting the language of the Clean Air Act.

DEFENDANTS' 12(b)(6) MOTION AND                    22
RESPONSE TO PLAINTIFFS' SUMMARY
JUDGMENT MOTION
C11-417-MJP

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
(360) 586-6770

1         Plaintiffs argue that the Court must interpret and apply Washington's SIP as it is

2    currently written, pointing out that a SIP approved by EPA remains enforceable as is until a

3    change is approved by EPA.  Plaintiffs' Br. (Dkt. 35) at 18.  Although Plaintiffs are correct as a

4    general matter, their arguments do not apply in this case.  As noted above, EPA has never had

5    the authority to incorporate into a SIP provisions that reach beyond the regulation of criteria

6    pollutants and their precursors.  Therefore, the Washington SIP provisions at issue in this case,

7    as the SIP is currently written, do not require the Agencies to regulate emissions of greenhouse

8    gases from refineries.

9         In conclusion, the plain language of the CAA does not provide authority for EPA to

10   regulate greenhouse gases through SIPs.  If the Court finds the language of the CAA silent on

11   this issue or ambiguous, the Court must accord deference to EPA's interpretation that measures

12   to control non-criteria pollutants may not legally be made part of a SIP.

13   **D.**     **Citizen Suits Cannot be Used to Force a State Agency to Perform an Act that Falls Entirely Within the Agencies' Discretion or to Fulfill a Duty That Does Not Belong**

14           **to the Agencies**

15        If the Court determines that Plaintiffs' action fails because there is no authority to

16   extend the Washington SIP to apply to greenhouse gases, this Court need go no further.  This

17   motion should be granted and Plaintiffs' case should be dismissed.  However, there are

18   additional, alternative reasons Plaintiffs' case should be dismissed.  The next two sections

19   describe these additional reasons for dismissal.

20        It is well established that decisions entrusted to an agency's discretion are unreviewable

21   in certain circumstances.  *See, e.g., Heckler v. Chaney,* 470 U.S 821, 830-32 (1985); *Sierra*

22   *Club & Valley Watch, Inc. v. Jackson*, __F.3d__, 2011 WL 2600841 (D.C. Cir. 2011) *5.

23   Indeed, an agency's action may be excluded from judicial review "where statutes are drawn in

24   such broad terms that in a given case there is no law to apply" or "statute is drawn so that a

25   court would have no meaningful standard against which to judge the agency's exercise of

26   discretion." *Id.*

DEFENDANTS' 12(b)(6) MOTION AND
RESPONSE TO PLAINTIFFS' SUMMARY
JUDGMENT MOTION
C11-417-MJP

23

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
(360) 586-6770

In determining whether a matter has been committed to agency discretion, and is, therefore, unreviewable, the Court considers: "both the nature of the administrative action at issue and the language and structure of the statute that supplies the applicable legal standards for reviewing that action." *Id.* at *6. Regarding enforcement action (or inaction), "if the statute in question does not 'give any indication that violators must be pursued in every case, or that one particular enforcement strategy must be chosen over another' and if it provides no meaningful guidelines defining the limits of the agency's discretion, then enforcement is committed to the agency's discretion." *Id.* (citing *Ass'n of Irritated Residents v. EPA*, 494 F.3d 1027, 1033 (D.C. Cir. 2007). The reasons for this are manifold:

> First, an agency decision not to enforce often involves a complicated balancing of a number of factors which are peculiarly within its expertise. Thus, the agency must not only assess whether a violation has occurred, but whether agency resources are best spent on this violation or another, whether the agency is likely to succeed if it acts, whether the particular enforcement action requested best fits the agency's overall policies, and, indeed, whether the agency has enough resources to undertake the action at all. An agency generally cannot act against each technical violation of the statute it is charged with enforcing. The agency is far better equipped than the courts to deal with the many variables involved in the proper ordering of its priorities. Similar concerns animate the principles of administrative law that courts generally will defer to an agency's construction of the statute it is charged with implementing, and to the procedures it adopts for implementing that statute. See *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.*, 435 U.S. 519, 543 (1978); *Train v. Natural Resources Defense Council, Inc.*, 421 U.S. 60, 87 (1975).

*Heckler,* 470 U.S. at 831-32.

That certain agency decisions to act, or not to act, are unreviewable as acts of agency discretion has been extended to the CAA and specifically to claims made pursuant to citizen suits. *See, e.g., Sierra Club,* 2011 WL 2600841 (Citizen suit challenge to EPA administrator's "failure" to prevent the construction of three power plants in Kentucky unreviewable and dismissed pursuant to Rule 12(b)(6)); *Ass'n of Irritated Residents,* 494 F.3d 1027 (citizens suit challenge to EPA's decision to enter into consent orders regulating air pollutants emitted from

DEFENDANTS' 12(b)(6) MOTION AND
RESPONSE TO PLAINTIFFS' SUMMARY
JUDGMENT MOTION
C11-417-MJP

24

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
(360) 586-6770

1    concentrated animal feeding operations dismissed as decisions within agency's discretion and

2    unreviewable).

3           Moreover, courts have dismissed CAA citizen suits that fail to allege a violated duty or

4    obligation of an *agency* (as opposed to the actual, responsible actor) or that fail to identify an

5    actual duty or obligation in the SIP that has been violated by an agency.  *See, e.g., EPA v. Port*

6    *Auth.*, 162 F. Supp. 2d 173 (S.D.N.Y. 2001); *Bayview Hunters*, 366 F.3d 692.   In *Port*

7    *Authority*, citizens claimed that a group of Eastern state authorities' operation of toll roads,

8    bridges and tunnels violated the CAA because, among other arguments, the booths slowed

9    traffic and unnecessarily increased toxic tailpipe emissions and were "major sources" of air

10   pollutants.  The court rejected this argument holding that the motor vehicles using the booths,

11   not the booths (and the agencies who operated them), were the sources of air pollutants:

12           Thus, to state a claim under the citizen suit provision a plaintiff must allege "a
             violation of 'a specific strategy or commitment in the SIP and describe, with
13           some particularity, the respects in which compliance with the provision is
             deficient.' " *Coalition Against Columbus Ctr. v. City of New York, 967 F.2d*
14           *764, 769 (2d Cir. 1992). Accord, e.g., Wilder, 854 F.2d at 610; Council of*
             *Commuter Orgs. v. Gorsuch, 683 F.2d 648, 660 (2d Cir. 1982).*
15
             Plaintiffs claim that defendants have violated the CAA by slowing "vehicular
16           movement which unnecessarily increases toxic tailpipe emissions." However,
             the complaint does not identify any violations of specific emissions standards,
17           or limitations under the CAA or legal enforceable strategies or commitments
             **that the defendants** made under a current SIP.
18
             Plaintiffs also claim that toll booths are major sources of hazardous air
19           pollutants under *42 U.S.C. §§ 7411, 7412.* The CAA defines a "major source"
             as a "stationary source" "that emits or has the potential to emit considering
20           controls, in the aggregate 10 tons per year or more of any hazardous air
             pollutant or 25 tons per year or more of any combination of hazardous air
21           pollutants…." *42 U.S.C. § 7412(a)(1).* A stationary source is defined as "any
             building, structure, facility, or installation which emits or may emit any air
22           pollutant," *42 U.S.C. § 7411(a)(3).*

23           Plaintiffs do not allege that toll booths emit or have the potential to emit air
             pollutants. *See, e.g., Sierra Club v. Larson, 2 F.3d 462, 466-469 (1st Cir. 1993)*
24           (ventilation buildings do not generate their own emissions and thus are not
             stationary sources). They claim that motor vehicles emit the air pollutants.
25           Motor vehicles, however, are specifically excluded from the definition of

26

stationary source. *See 42 U.S.C. § 7602(z)* ("The term 'stationary source' means generally any source of an air pollutant except those emissions resulting directly from an internal combustion engine for transportation purposes….").

*Port Auth.,* 462 F. Supp. 2d at 187-88 (emphasis added).   Based on the above, the court dismissed the citizen suit because it did not allege a duty the state authorities had violated or establish a cognizable claim under the requirements of the CAA.  *Id.* at 188.

In *Bayview Hunters*, the court dismissed a challenge to a local transportation agency's alleged failure to achieve a 15 percent increase in transit ridership included in the California SIP.  *Bayview Hunters,* 366 F.3d at 699-01. The Court held that the 15 percent "target" was not a "binding obligation" on the local agency, thus, no duty under the SIP had been violated. *Id.* at 704.  Indeed, the court noted that the plaintiffs could "not, through a citizen suit, obtain modification of an SIP to conform with their own notion of proper environmental policy." *Id.* at 703.

The Plaintiffs in this case attempt to create mandates out of the RACT and nuisance provisions in Washington's SIP.  As described below, their attempts must fail because neither provision places a mandatory duty on the Clean Air Agencies to regulate greenhouse gases from refineries.

> **1.      The SIP's RACT Provision Does Not Impose a Mandatory Duty on the Clean Air Agencies to Make RACT Determinations for Greenhouse Gases from Refineries**

Plaintiffs argue that the plain language of the RACT provision requires the Clean Air Agencies to determine and require implementation of RACT from greenhouse gases at refineries.  Plaintiffs Br. (Dkt. 35) at 11-14.  However, their reading of the RACT provision contravenes the regulation's plain meaning.

The RACT provision states:

> Further, all emission units are required to use reasonably available control technology (RACT) which may be determined for some sources or source categories to be more stringent than the applicable emissions limitations of any chapter of Title 173 WAC.  Where current controls are determined to be less

DEFENDANTS' 12(b)(6) MOTION AND
RESPONSE TO PLAINTIFFS' SUMMARY
JUDGMENT MOTION
C11-417-MJP

26

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
(360) 586-6770

1 | than RACT, the permitting authority shall, as provided in section 8, chapter 252,
Laws of 1993, define RACT for each source or source category and issue a rule
2 | or regulatory order requiring the installation of RACT.

3   WAC 173-400-040 (1993).  The first sentence of the RACT provision requires emission units

4   to use reasonably available control technology.  This sentence places a duty on sources, not on

5   agencies.  This sentence places a duty on "emission units" and "sources," not on agencies.[13]

6   Importantly, when sources are issued air operating permits, they are presumed to be in

7   compliance with the RACT standard as long as they are meeting the requirements contained in

8   their permits, applicable rules, and regulatory orders.  *See* Wash. Rev. Code (RCW)

9   70.94.154(6) (emissions standards and other requirements contained in rules or regulatory

10   orders are considered to be RACT).

11         The second sentence of the RACT provision states that, when current controls are

12   determined to be less than RACT, the permitting authority for each source or source category

13   shall define RACT and require installation of RACT.  This sentence places a responsibility on

14   a permitting agency to require RACT, but *only if the agency first determines that current*

15   *controls are less than RACT*.  This provision grants agencies discretionary authority; it does

16   not mandate that the agencies define RACT for any particular source or source category.

17   Rather, it authorizes an agency to require additional controls if such a determination is made.

18   Thus, the RACT provision is a tool available to air agencies to require additional controls from

19   sources.  It is not, as Plaintiffs allege, judicially enforceable against the air agencies to require

20   them to find that current controls are less than RACT.  *See Heckler,* 470 U.S. 821, *Sierra Club,*

21   2011 WL 2600841; *Port Auth.*, 162 F. Supp. 2d 173.

22

23         [13] "Source" is defined as "all of the emissions unit(s) including quantifiable fugitive emissions, that are
24   located on one or more contiguous or adjacent properties, and are under the control of the same person or persons
under common control, whose activities are ancillary to the production of a single product or functionally related
25   groups of products."  *See* WAC 173-400-030(69).
         "Emissions unit" or "emission unit" is defined as "any part of a stationary source or source which emits
26   or would have the potential to emit any pollutant subject to regulation under the Federal Clean Air Act, chapter
70.94 or 70.98 RCW."  *See* WAC 173-400-030(23).

DEFENDANTS' 12(b)(6) MOTION AND
RESPONSE TO PLAINTIFFS' SUMMARY
JUDGMENT MOTION
C11-417-MJP

27

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
(360) 586-6770

1    The Plaintiffs realize that the plain language of the SIP's RACT provision does not

2    support their arguments.  Thus, they do not rely on the SIP's RACT provision but, instead, rely

3    on a separate state statute that has not been incorporated into the SIP.  Plaintiffs' Br. (Dkt. 35)

4    at 13-14.  Specifically, they argue that RCW 70.94.154 is incorporated by reference into the

5    SIP because it is mentioned in WAC 173-400-040.  This argument is incorrect.

6          There is a specific process for incorporating provisions of state or local law into a SIP.

7    In the case of Washington's SIP, the State intentionally selected certain provisions to

8    incorporate and submitted those to EPA for federal approval.   60 Fed. Reg. 28,726.

9    Ultimately, EPA approved certain provisions and disapproved others.  *Id.* at 28,727.   In this

10   process, the State did not propose to incorporate RCW 70.94.154.   Thus, by design, RCW

11   70.94.154 is not part of the SIP.

12         The fact that the statute is mentioned in WAC 173-400-040 is not enough to constitute

13   incorporation by reference.  *See, e.g., Boose v. Tri-County Metro. Transp. Dist.*, 587 F.3d 997,

14   1003-04 (9th Cir.2009) (the mention of USDOJ regulations in USDOT regulations is

15   insufficient to constitute incorporation of those regulations by reference).   Rather, the statute is

16   mentioned because it describes the process for making RACT determinations.  *See* RCW

17   70.95.154(2) (describing when RACT determinations must be made through formal rule);

18   RCW 70.94.154(3) (describing when RACT determinations can be source specific); RCW

19   70.94.154(5) (RACT determinations to be made in accordance with statutory factors and all air

20   contaminants of concern should be addressed in the RACT determination, where practicable).

21   The State knows how to incorporate provisions of state and local law into the SIP.  *See, e.g.*,

22   WAC 173-400-060 (1993) (adopting by reference EPA test methods from 40 C.F.R.

23   Appendix A); WAC 173-400-112(9) (1993) (incorporating by reference definitions referenced

24   in 40 C.F.R. § 52.28(b)).   Had the State wanted to include RCW 70.94.154, it would have

25   done so.  The Plaintiffs' attempt to bootstrap it into the SIP is unavailing and demonstrates the

26

DEFENDANTS' 12(b)(6) MOTION AND
RESPONSE TO PLAINTIFFS' SUMMARY
JUDGMENT MOTION
C11-417-MJP

28

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
(360) 586-6770

1   weakness of their argument that the SIP itself places a duty on the Clean Air Agencies to make

2   RACT determinations.

3       There is no language in the SIP provision, let alone "plain" language, that places a

4   mandatory duty on the Clean Air Agencies to make RACT determinations for greenhouse

5   gases from refineries. For this additional reason, Plaintiffs have not stated a claim under the

6   RACT provision for which relief may be granted.

7       **2.   The SIP's Nuisance Provision Likewise Does Not Place a Mandatory Duty on the Clean Air Agencies to Regulate Greenhouse Gases from Oil Refineries**

8

9       The SIP's nuisance provision is a general emission standard that prohibits sources from

10  emitting air pollutants at levels that constitute a nuisance.  It states:

11      (5)  Emissions detrimental to persons or property.  No person shall cause or allow the emission of any air contaminant from any source if it is detrimental to the health, safety or welfare of any person, or causes damage to property or business.

12

13  WAC 173-400-040(5) (1993).

14      The plain language of this regulation imposes a nuisance standard on "sources."  The

15  Clean Air Agencies are not "sources" for purposes of this case and *nothing in the regulation*

16  *imposes any sort of duty on the Clean Air Agencies*.  Thus, it is not the Clean Air Agencies that

17  Plaintiffs allege are violating WAC 173-400-040(5).   Rather, their true claim is that the

18  refineries are violating that emission standard, and they are dissatisfied with the efforts the

19  Clean Air Agencies are making to enforce that standard.

20      Nonetheless, Plaintiffs maintain that their allegations of nuisance impacts from

21  greenhouse gas emissions are enough for this Court to order the Clean Air Agencies to

22  determine controls "to ensure that emissions of greenhouse gases from the Oil Refineries are

23  not detrimental to the health, safety or welfare of any person or cause damage to property or

24  business pursuant to WAC 173-400-040(5)" and to "immediately implement any such

25  additional controls."  *See, e.g.,* Complaint at Prayer for Relief (d) (Dkt. 1); Plaintiffs' Br.

26

DEFENDANTS' 12(b)(6) MOTION AND
RESPONSE TO PLAINTIFFS' SUMMARY
JUDGMENT MOTION
C11-417-MJP                              29                    ATTORNEY GENERAL OF WASHINGTON
                                                              Ecology Division
                                                              PO Box 40117
                                                              Olympia, WA 98504-0117
                                                              (360) 586-6770

1   (Dkt. 35) at 19-20; [Proposed] Order Granting Plaintiffs' Motion for Summary Judgment

2   (Dkt. 35-1) (Proposed Order) at ¶ 5.  However, they suggest no legal mechanism by which the

3   Clean Air Agencies would go about converting the nuisance standard into "additional

4   controls," let along any legal basis for this Court to order the Clean Air Agencies to do so.

5        Plaintiffs are, quite simply, asking this Court to direct the Clean Air Agencies to

6   enforce WAC 173-400-040(5) against specific sources and to do so in a specific way.  The

7   Supreme Court has made clear that "an agency's decision not to prosecute or enforce, whether

8   through civil or criminal process, is a decision generally committed to an agency's absolute

9   discretion."  *Heckler*, 470 U.S. at 831.  An agency decision not to undertake enforcement

10  actions is "presumptively unreviewable" under the APA.  *Id*. at 832.  Even if Plaintiffs were

11  able to show that refinery greenhouse gas emissions did violate WAC 173-400-040(5), which

12  they have not done, Plaintiffs made no effort to overcome the presumption that the Clean Air

13  Agencies' decisions regarding enforcement of that provision are not reviewable by the Court.

14       These same principles have been applied in the specific context of SIPs to preclude

15  exactly the sort of claim Plaintiffs advance here.  *See e.g. Port Auth.*, 162 F. Supp. 2d 173;

16  *Bayview Hunters,* 366 F.3d 692.  *See also In the Matter of Hercules, Inc.*, U.S. EPA "Order

17  Responding to Petitioners' Request that the Administrator Object to Issuance of a State

18  Operating Permit" (Nov. 10, 2004) at 8-10 (EPA Administrator held that Georgia's Title V

19  regulation prohibiting sources from causing or allowing air pollution that unreasonably

20  interferes with enjoyment of life or property "imposes a general obligation on sources of air

21  pollution," not the Georgia Department of Natural Resources (EPD), and "does not require

22  EPD to determine whether a source's emissions will create a nuisance prior to issuing an air

23  quality permit.").  *See* Shirey Decl., Ex. B.  Because the nuisance provision does not apply

24  directly to the Clean Air Agencies and does not place a mandatory duty on the Agencies,

25  Plaintiffs' challenge to it must be dismissed.

26

DEFENDANTS' 12(b)(6) MOTION AND
RESPONSE TO PLAINTIFFS' SUMMARY
JUDGMENT MOTION
C11-417-MJP

30

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
(360) 586-6770

1

    **3.**       **The Nuisance Provision is Not Judicially Enforceable**

2

    The Plaintiffs' challenge under the nuisance provision also fails because WAC 173-

3

400-040(5) is not specific enough for the Court to enforce through a citizen suit.  In a recent

4

case interpreting similar SIP provisions, the Seventh Circuit dismissed a citizen suit on the

5

basis that the two cited emission standards or limitations were not "specific enough for judicial

6

enforcement."  *See McEvoy v. IEI Barge Servs., Inc.,* 622 F.3d 671, 679-80 (7th Cir. 2010).

7

The court held that while a SIP provision may qualify as an "emission standard or limitation"

8

pursuant to 42 U.S.C. § 7604, a reviewing court must also find that the provision is judicially

9

enforceable.  *Id.* at 678.   Where a SIP provision is not "specific enough for judicial

10

enforcement," the § 7604 citizen suit must be dismissed.  *Id.* at 679-80.

11

    Specifically, the *McEvoy* court found the two following Illinois SIP provisions

12

insufficiently specific to sustain a § 7604 citizen suit:

13

    Two of those regulations are at issue in this appeal. The first is Section 201.141, entitled "Prohibition of Air Pollution," which provides:

14

15

        No person shall cause or threaten or allow the discharge or emission of any contaminant into the environment in any State so as, either alone or in combination with contaminants from other sources, to cause or tend to cause air pollution in Illinois, or so as to violate the provisions of this Chapter, or so as to prevent the attainment or maintenance of any applicable ambient air quality standard.

16

17

18

19

*ILL. ADMIN. CODE, tit. 35, § 201.141.*   Second is Section 212.301, the "Fugitive Particulate Matter" regulation, which states:

20

        No person shall cause or allow the emission of fugitive particulate matter from any process, including any material handling or storage activity, that is visible by an observer looking generally toward the zenith at a point beyond the property line of the source.

21

22

*ILL. ADMIN. CODE, tit. 35, § 212.301.*

23

*McEvoy,* 622 F.3d at 673.

24

    The *McEvoy* court held the first provision was little more than a commandment to "not

25

pollute" and therefore insufficiently specific.  *Id.* at 678.   It found the second provision

26

DEFENDANTS' 12(b)(6) MOTION AND
RESPONSE TO PLAINTIFFS' SUMMARY
JUDGMENT MOTION
C11-417-MJP

31

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
(360) 586-6770

1  regarding fugitive dust to be slightly more specific than the first, but ultimately concluded that

2  it also did not present the court with specific enough guidance for purposes of enforcement. *Id.*

3  at 679.  Thus, it dismissed the plaintiffs' citizen suit challenging the two provisions.[14]

4  More recently, the Supreme Court held that federal nuisance law is not a basis for

5  pursuing claims against sources that emit greenhouse gases.  *Am. Elec. Power Co. (AEP) v.*

6  *Connecticut*, 131 S. Ct. 2527 (2011).  In reaching its conclusion, the court concluded that the

7  CAA displaces federal nuisance law by providing a pervasive regulatory scheme to address air

8  pollution.  *Id.* at 2537-40.  The court also articulated the general principles underlying its

9  ruling:

> 10  The appropriate amount of regulation in any particular greenhouse gas-producing sector cannot be prescribed in a vacuum . . . the Clean Air Act
> 11  entrusts such complex balancing to EPA in the first instance, in combination with state regulators. . . .  The expert agency is surely better equipped to do the
> 12  job than individual district judges issuing ad hoc, case-by-case injunctions. Federal judges lack the scientific, economic, and technological resources an
> 13  agency can utilize in coping with issues of this order.

14  *Id.* at 2539-40.

15  Similar to *McEvoy*, and consistent with *AEP*, the nuisance provision in WAC 173-400-

16  040(5) does not contain specific enough language to be judicially enforceable by this Court

17  through a § 7604 citizen suit.  As stated by the *McEvoy* court, the questions raised by the

18  meaning of the general language of the provision and how it is to be applied to a specific

19  source or sources, are "manifold."  *AEP*, 131 S. Ct. at 2539-40.  Indeed, the Plaintiffs' vaguely

20  requested relief—asking this Court to order the Clean Air Agencies to require and implement

21  some unidentified "necessary controls" on the five refineries, *see* Proposed Order (Dkt. 35-1)

22  at ¶ 5—illustrates the inherent infeasibility of enforcing this provision through a citizen suit.

23  For this additional reason, Plaintiffs' challenge to the nuisance provision should be dismissed.

24

25     [14] Note that *McEvoy* did not hold that an air agency could not enforce the two regulations at issue in that
26  case.  Rather, the court simply concluded the regulations were not specific enough on their face to be enforced
   through a citizen suit.

DEFENDANTS' 12(b)(6) MOTION AND
RESPONSE TO PLAINTIFFS' SUMMARY
JUDGMENT MOTION
C11-417-MJP

32

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
(360) 586-6770

### 4.    Plaintiffs' Reading of the Nuisance Provision Turns the Federal and State Regulatory Framework on its Head

Plaintiffs' nuisance claim also fails because it turns the legal and regulatory framework established by Congress and the State for the regulation of air pollution on its head and would swallow all of the other requirements of the SIP as well as many other requirements of the state and federal Clean Air Acts.  Plaintiffs maintain that, rather than enforcing WAC 173-400-040(5) as written, the Clean Air Agencies should conduct a site-specific evaluation of every pollutant emitted by every source (they offer no basis to limit the evaluation to criteria pollutants or greenhouse gases), and then use the nuisance standard articulated in that regulation to derive nuisance-based and health-based, source specific limits or conditions for each pollutant for every source.  *See* Plaintiffs' Br. (Dkt. 35) at 15-16, 19-20.

Plaintiffs' novel reading of this regulation would transform this simple nuisance standard into a replacement for the entire CAA regulatory process, including the NAAQS/SIP process.  Plaintiffs suggest that WAC 173-400-040(5) not only authorizes, but *mandates*, the Clean Air Agencies to bypass the entire regulatory process established by the CAA and develop their own case-by-case and pollutant-by-pollutant controls.  Under this reading, the nuisance standard would completely displace the SIP, obligating the Clean Air Agencies to set facility-specific limits for criteria pollutants, and, according to Plaintiffs, any other pollutants the Clean Air Agency concludes has the potential to harm health safety or welfare.

There is no precedent for such an expansive reading of a general nuisance standard.  Plaintiffs can point to no court that has ever held that an agency has the discretion to use a nuisance standard to derive specific emission limits for specific facilities, in the fashion they have suggested, let alone any ruling holding that agencies are required to do so.  The Court should reject Plaintiffs unfounded reading of WAC 173-400-040(5).

DEFENDANTS' 12(b)(6) MOTION AND
RESPONSE TO PLAINTIFFS' SUMMARY
JUDGMENT MOTION
C11-417-MJP

33

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
(360) 586-6770

1   **E.   If the Court Rules for the Plaintiffs on the Legal Issues, the Court Should Set a**
2   **Remedy Phase Because the Plaintiffs Have Not Identified Any Type of Relief That**
    **the Court Can Grant**

3   Finally, if the Court were to disagree with the Clean Air Agencies on the legal

4   arguments articulated above, the Court should then grant a remedy phase to allow additional

5   briefing and the possible introduction of evidence on appropriate remedies.  A remedy phase

6   was anticipated by the parties and is incorporated into the joint status report.  Joint Rule 26(f)

7   Status Report and Discovery Plan (Dkt. 20) at 4, ¶ 8.  The Clean Air Agencies will address the

8   need for a remedy phase briefly herein and expect to address it in greater detail if a remedy

9   phase is granted.

10   The most expansive relief the Court could grant to Plaintiffs, in the unlikely event it

11   rules in their favor on all of the issues they have presented, would be an order compelling the

12   Clean Air Agencies to make discretionary decisions under the two regulations at issue, without

13   directing what the outcome of those decisions might be.  "[W]hen an agency is compelled by

14   law to act within a certain time period, but the manner of its action is left to the agency's

15   discretion, a court can compel the agency to act, but has no power to specify what the action

16   must be."  *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 65 (2004).  Despite this

17   recognized limitation on judicial power, the Plaintiffs ask the Court to exercise discretion that

18   is vested in state and regional agencies.  Specifically, they ask the Court to order the Clean Air

19   Agencies to apply the RACT and nuisance provisions to limit greenhouse gas emissions from

20   refineries.  However, they cite no language in the SIP that would authorize this specific relief.

21   Furthermore, the 90 day timeline sought by Plaintiffs is unrealistic.  Because there are

22   more than three refineries, any RACT determination for those sources would have to be

23   developed through a formal rulemaking process.  *See* RCW 70.94.154(2) (requiring

24   rulemaking for source categories that include three or more sources); Clark Decl. ¶ I.  Due to

25   the highly technical nature of RACT determinations and the expected high level of public

26   involvement in the development of a RACT rule, the rulemaking process would take

DEFENDANTS' 12(b)(6) MOTION AND
RESPONSE TO PLAINTIFFS' SUMMARY
JUDGMENT MOTION
C11-417-MJP

34

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
(360) 586-6770

1    approximately three years from start to finish.  Clark Decl. ¶¶ I-N.  Plaintiffs' call for use of

2    the nuisance standard to derive additional greenhouse gas emission limits is unprecedented, but

3    logically should follow completion of any RACT process.  Clark Decl. ¶ P.

4         If the Plaintiffs prevail on the legal issues, the Clean Air Agencies intend to introduce

5    additional  evidence  and  argument  demonstrating  why  Plaintiffs'  requested  relief  is

6    impermissible and unrealistic.  However, the Clean Air Agencies reiterate in conclusion that

7    any remedy is inappropriate because the Plaintiffs fail to identify a federally enforceable duty

8    to apply the RACT and nuisance provisions to greenhouse gases from refineries. Therefore,

9    their lawsuit should be dismissed.

10                              V.      CONCLUSION

11        For the reasons stated above, the Clean Air Agencies respectfully ask the Court to deny

12   Plaintiffs' Motion for Summary Judgment and to dismiss this case for failure to state a claim

13   for which relief may be granted.

14        DATED this 22nd day of August, 2011.

15   ROBERT M. McKENNA                          MARTEN LAW PLLC
     Attorney General
16
     _s/ Katharine G. Shirey_____            _s/ Svend A. Brandt-Erichsen_____
17   KATHARINE G. SHIREY, WSBA #35736           SVEND A. BRANDT-ERICHSEN
     LAURA J. WATSON, WSBA #28452               WSBA #23923
18   Assistant Attorneys General                *Attorney for Defendant Mark Asmundson*
     *Attorneys for Defendant Ted Sturdevant*   1191 Second Avenue, Suite 2200
19   P.O. Box 40117                             Seattle, WA  98101
     Olympia, WA 98504-0117                     svendbe@martenlaw.com
20   kays1@atg.wa.gov; lauraw2@atg.wa.gov       (206) 292-2600
     (360) 586-6770
21
     PUGET SOUND CLEAN AIR AGENCY
22
     _s/ Jennifer A. Dold_____
23   JENNIFER A. DOLD, WSBA #23822
     *Attorney for Defendant Craig Kenworthy*
24   1904 3rd Avenue, Suite 105
     Seattle, WA 98101-3317
25   jenniferd@pscleanair.org
     (206) 343-8800
26

DEFENDANTS' 12(b)(6) MOTION AND                35          ATTORNEY GENERAL OF WASHINGTON
RESPONSE TO PLAINTIFFS' SUMMARY                                      Ecology Division
JUDGMENT MOTION                                                      PO Box 40117
C11-417-MJP                                                     Olympia, WA 98504-0117
                                                                    (360) 586-6770

# Appendix A

Transportation Control Measure #2

TCM #2:  Support post-1983 improvements identified in transit operator's 5-year plans, after consultation with the operators adopt ridership increase target for 1983-1987.

EMISSION REDUCTION ESTIMATES:  These emission reduction estimates are predicated on a 15% ridership increase. The actual target would be determined after consultation with the transit operators.

|  | 1983 | 1984 | 1985 | 1986 | 1987 |  |
|---|---|---|---|---|---|---|
| HC: | 0 | .23 | .42 | .60 | .72 | tons/day |
| CO: | 0 | 2.03 | 4.03 | 5.80 | 7.15 |  |
| $NO_x$: | 0 | .36 | .68 | .94 | 1.04 |  |

COST:  Costs of maintaining the existing level of services is currently programmed in regional allocations. Ridership increases would come from productivity improvements, thus additional costs would be moderate.

IMPLEMENTATION SCHEDULE:

o 6 major transit operators adopt FY 1983-87 plans by July, 1982

o MTC consults with operators on ridership targets by Jan., 1983

o MTC, through implementation of the TIP and allocation of regional funds, seeks to ensure operators' 5-year plans are implemented

o Ridership gains are monitored through annual RFP reports

DESCRIPTION OF CONTROL MEASURE:

This measure is basically an extension of TCM #1. Since federal funds for transit purposes are being cut back, many of the improvements identified in the 5 year plans deal with increased productivity. Thus, while the size of the transit system may not grow significantly, the ridership is expected to increase.

OTHER IMPACTS

o 31,600 gallons of gasoline saved.

o Alternatives to automobile travel will be increased.

1

**PROOF OF SERVICE**

2

I hereby certify that on August 22, 2011, a copy of the foregoing document was

3

electronically filed with the Clerk of Court using the CMF/ECF system, which will send

4

notification of such filing to the following:

5

6
- **Svend A. Brandt-Erichsen**
  sberichsen@martenlaw.com, rbeckett@martenlaw.com

7
- **Janette K. Brimmer**
  jbrimmer@earthjustice.org, cmcevoy@earthjustice.org, kregan@earthjustice.org,
  chamborg@earthjustice.org

8
- **Brian W Chestnut**
  bchestnut@zcvbs.com, bgruber@zcvbs.com, hreynolds@zcvbs.com

9
- **Jennifer A. Dold**
  jenniferd@pscleanair.org

10
- **Joshua Osborne-Klein**
  joshok@zcvbs.com, ckelsey@zcvbs.com, mvoege@zcvbs.com

11

12
- **Katharine G. Shirey**
  ecyolyef@atg.wa.gov, kays1@atg.wa.gov, DanielleF@atg.wa.gov

13
- **Laura J. Watson**
  lauraw2@atg.wa.gov, ecyolyef@atg.wa.gov

14
- **Jeffrey Wayne Leppo**
  jwleppo@stoel.com, SEA_Docket@stoel.com, jashore@stoel.com

15
- **Ryan P. Steen**
  rpsteen@stoel.com,SEA_DOCKET@stoel.com,lastevens@stoel.com

16

DATED this 22th day of August 2011.

17

18

_s/ Katharine G. Shirey_

19
KATHARINE G. SHIREY, WSBA #35736
Assistant Attorney General

20
(360) 586-6770

21

22

23

24

25

26

PROOF OF SERVICE
2:11-cv-00417-MJP

1

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
(360) 586-6770