JANETTE K. BRIMMER (WSB #41271)
Earthjustice
705 Second Avenue, Suite 203
Seattle, WA 98104
(206) 343-7340
(206) 343-1526 *[FAX]*
jbrimmer@earthjustice.org

*Attorneys for Plaintiffs*

BRIAN W. CHESTNUT (WSB #23453)
JOSHUA OSBORNE-KLEIN (WSB #36736)
Ziontz, Chestnut, Varnell, Berley & Slonim
2101 Fourth Avenue, Suite 1230
Seattle, WA 98121
(206) 448-1230
(206) 448-0962 *[FAX]*
bchestnut@zcvbs.com
joshok@zcvbs.com

*Co-Counsel for Plaintiffs*

HONORABLE MARSHA J. PECHMAN

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| WASHINGTON ENVIRONMENTAL COUNCIL and SIERRA CLUB WASHINGTON STATE CHAPTER, <br><br> Plaintiffs, <br><br> v. <br><br> THEODORE ("TED") L. STURDEVANT, DIRECTOR, WASHINGTON STATE DEPARTMENT OF ECOLOGY, in his official capacity, MARK ASMUNDSON, DIRECTOR, NORTHWEST CLEAN AIR AGENCY, in his official capacity, and CRAIG T. KENWORTHY, DIRECTOR, PUGET SOUND CLEAN AIR AGENCY, in his official capacity, <br><br> Defendants, <br><br> and <br><br> WESTERN STATES PETROLEUM ASSOCIATION, <br><br> Intervenor-Defendant. | Civ. No. 11-417-MJP <br><br> PLAINTIFFS' COMBINED REPLY/RESPONSE IN SUPPORT OF SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANTS' AND INTERVENOR MOTIONS TO DISMISS, FOR SUMMARY JUDGMENT, AND TO STRIKE |

PLS' COMBINED REPLY/RESPONSE IN SUPPORT OF
SUMMARY JUDGMENT/OPPOSITION TO DEFS'-INTRVNORS'
MOTIONS TO DISMISS, SJ, & STRIKE (Civ. No. 11-417-MJP)

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA 98104*
*(206) 343-7340*

TABLE OF CONTENTS

INTRODUCTION ....................................................................................................1

ARGUMENT ..........................................................................................................2

I.    THERE IS NO AMBIGUITY IN THE LAW THAT SUGGESTS EPA EXCEEDED ITS AUTHORITY IN APPROVING WASHINGTON'S SIP. ..............................................................................................................2

    A.    Washington's SIP is Unambiguous. ........................................2

    B.    Section 110 of the Clean Air Act is Unambiguous......................3

    C.    None of the Examples of "EPA's Position" Offer Useful Guidance to This Court. ..............................................................8

II.    THE RACT AND NARRATIVE SIP STANDARDS ARE ENFORCEABLE BY CITIZENS AGAINST THE REGULATORY AGENCIES....................................................................................12

    A.    The Plain Language of the RACT Standard Requires the Agencies to Determine and Require RACT. .........................................12

        1.    Compliance with their SIP obligations is not a matter of "enforcement discretion" for the regulatory agencies. .................12

        2.    The Defendants' disjointed and piecemeal reading of the RACT Standard fails to conform to its plain meaning and fails to give effect to the RACT requirements as a whole. ...........13

    B.    The Narrative Standard Imposes an Obligation on the Agencies to Protect Public Health, Welfare, and Property............................18

        1.    The Narrative Standard is a defined obligation of the regulatory agencies. .......................................................18

        2.    The Narrative Standard is an enforceable emission limitation or standard. ................................................18

        3.    Defendant-Intervenor misapplies the doctrine of collateral estoppel. ...................................................................22

III.    DEFENDANT-INTERVENOR CLAIMS OF MATERIAL DISPUTED FACTS ARE MISPLACED. ......................................................24

IV.    REMEDY............................................................................25

PLS' COMBINED REPLY/RESPONSE IN SUPPORT OF SUMMARY JUDGMENT/OPPOSITION TO DEFS'-INTRVNORS' MOTIONS TO DISMISS, SJ, & STRIKE (Civ. No. 11-417-MJP) -i-

*Earthjustice*
705 Second Ave., Suite 203
Seattle, WA  98104
(206) 343-7340

RESPONSE IN OPPOSITION TO DEFENDANT-INTEVENOR WESTERN STATES PETROLEUM ASSOCIATION'S MOTION TO STRIKE ....................................................26

I.   THE EXHIBITS TO THE OSBORNE-KLEIN DECLARATION ARE ADMISSIBLE....................................................................................................26

    A.   The Exhibits Are Authenticated..................................................................26

    B.   The Exhibits are Not Hearsay. ...................................................................27

    C.   The Documents Also Fit Within Hearsay Exceptions. ...............................28

    D.   The Exhibits are Not Inadmissible Opinion Evidence................................29

    E.   The Exhibits are Relevant. .........................................................................31

II.  PLAINTIFFS' STANDING DECLARATIONS ARE ADMISSIBLE.................32

CONCLUSION............................................................................................................34

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

Alaska Wildlife Alliance v. Jensen,
  108 F.3d 1065 (9th Cir. 1997) ........................................................................33

Am. Elec. Power Co. v. Connecticut,
  ___ U.S. ___, 131 S.Ct. 2527 (2011) ...................................................13, 20

Am. Lung Assoc. of N.J. v. Kean,
  871 F.2d 319 (3d Cir. 1989)........................................................................13, 25

Arkansas v. Oklahoma,,
  503 U.S. 91 (1992).............................................................................................6

Ass'n of Irritated Residents v. C & R Vanderham Dairy,
  2007 WL 2815038 (E.D. Cal. 2007).................................................................22

Barsamian v. City of Kingsburg,
  597 F. Supp. 2d 1054 (E.D. Cal. 2009)............................................................38

Bayview Hunters Point Cmty. Advocates v. Metro. Transp. Comm'n,
  366 F.3d 692 (9th Cir. 2004) ...............................................................2, 14, 20, 22

California Wilderness Coalition v. U.S. Dept. of Energy,
  631 F.3d 1072 (9th Cir. 2011) ..........................................................................14

Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.
  467 U.S. 837 (1984)............................................................................................2

Christopher Phelps & Assocs., LLC v. Galloway,
  492 F.3d 532 (4th Cir. 2007) ............................................................................30

Comty's for a Better Env't v. Cenco Refining Co.,
  180 F.Supp.2d 1062 (C.D.Cal. 2001) .........................................................13, 19

Concerned Citizens of Bridesburg v. EPA,
  836 F.2d 777 (3d. Cir. 1987)..................................................................5, 10, 11

Conde v. Velsicol Chem. Corp.,
  804 F. Supp. 972 (S.D. Ohio 1992) .................................................................286

Desrosiers v. Flight Int'l of Florida Inc.,
  156 F.3d 952 (9th Cir. 1998) ............................................................................30

PLS' COMBINED REPLY/RESPONSE IN SUPPORT OF
SUMMARY JUDGMENT/OPPOSITION TO DEFS'-INTRVNORS
MOTIONS TO DISMISS, SJ, & STRIKE (Civ. No. 11-417-MJP) -iii-

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

Duquesne Light Co. v. EPA,
   166 F.3d 609 (3rd Cir. 1999) ..............................................................4, 5

Duquesne Light Co. v. EPA,
   698 F.2d 456 (D.C. Cir. 1983) ...............................................................9

El Comité Para el Bienestar de Earlimart v. Warmerdam,
   539 F.3d 1062 (9th Cir. 2008) ..............................................................17

Envtl. Prot. Info. Ctr. v. Blackwell,
   389 F. Supp. 2d 1174 (N.D. Cal. 2004) .................................................33

EPA ex rel. McKeown v. Port Auth. Of New York and New Jersey,
   162 F. Supp. 2d 173 (S.D.N.Y. 2001).....................................................20

Equal Employment Opportunity Comm'n v. E.I. DuPont de Nemours & Co.,
   2004 WL 2347559 (E.D. La. Oct. 18, 2004) .....................................27, 29

Estate of Gonzales v. Hickman,
   2207 WL 3237729 (C.D. Cal. 2007).......................................................27

F.T.C. v. H.N. Singer, Inc.,
   668 F.2d 1107 (9th Cir. 1982) ...............................................................25

Friends of the Earth v. Carey,
   535 F.2d 165 (2d Cir. 1976).................................................................25

Gen. Motors Corp v. United States,
   496 U.S. 530 (1990)..............................................................................9

Gilbrook v. City of Westminster,
   177 F.3d 839 (9th Cir. 1999) .................................................................29

Granite Rock Co. v. International Broth. Of Teamsters, Freight, Constr., General Drivers,
   Warehousemen and Helpers,
   __ F.3d __, 2011 WL 1902675 (9th Cir. 2011) ...................................22

Hispanic Broad. Corp. v. Educ. Media Found,
   2003 WL 22867633 (C.D. Cal. 2004).....................................................27

Johnson v. Pleasanton,
   982 F.2d 350 (9th Cir. 1992) .................................................................29

Lujan v. Defenders of Wildlife,
   504 U.S. 555 (1992).........................................................................32, 33

PLS' COMBINED REPLY/RESPONSE IN SUPPORT OF
SUMMARY JUDGMENT/OPPOSITION TO DEFS'-INTRVNORS'
MOTIONS TO DISMISS, SJ, & STRIKE (Civ. No. 11-417-MJP) -iv-

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

<u>McEvoy v. IEI Barge Services, Inc.</u>,
  622 F.3d 671 (7th Cir. 2010) ....................................................................20, 21

<u>Melville v. Am. Home Assurance Co.</u>,
  584 F.2d 1306 (3d Cir. 1978)...................................................................................30

<u>Nw. Envtl. Def. Ctr. v. Bonneville Power Admin.</u>,
  117 F.3d 1520 (9th Cir. 1997) .................................................................................33

<u>PUD No. 1 of Jefferson County v. Washington Dep't of Ecology</u>,
  511 U.S. 700 (1994)..............................................................................................5, 6

<u>Reyn's Pasta Bella, L.L.C. v. Visa USA, Inc.</u>,
  442 F.3d 741 (9th Cir. 2006) ...................................................................................22

<u>Safe Air for Everyone v. EPA</u>,
  488 F.3d 1088 (9th Cir. 2007) ...........................................................................2, 3, 6

<u>San Francisco Baykeeper v. West Bay Sanitary Dist.</u>,
  ___ F. Supp. 2d ___, 2011 WL 1990637 (N.D. Cal. May 23, 2011)................................28, 29

<u>Sannes v. Jeff Wyler Chevrolet, Inc.</u>,
  1999 WL 33313134 (S.D. Ohio Mar. 31, 1999) .........................................................27

<u>Shell Oil Co. v. Franco</u>,
  2004 WL 5615656 (C.D. Cal. May 18, 2004) ...........................................................27

<u>Shelton v. Consumer Prods. Safety Comm'n</u>,
  277 F.3d 998 (8th Cir. 2002) .................................................................................30

<u>Sierra Club v. Tennessee Valley Auth.</u>,
  430 F.3d 1337 (11th Cir. 2005) ...............................................................................25

<u>Train v. Natural Res. Def. Council</u>,
  421 U.S. 60 (1975)...................................................................................................7

<u>U.S. v. Akers</u>,
  785 F.2d 814 (9th Cir. 1986) .................................................................................25

<u>Union Elec. Co. v. EPA</u>,
  427 U.S. 246 (1976).........................................................................................4, 7, 10

<u>United States v. Alcan Foil Prods. Div. of Alcan Aluminum Corp.</u>,
  889 F.2d 1513 (6th Cir. 1989) ..................................................................................9

<u>United States v. Bhatia</u>,
  545 F.3d 757 (9th Cir. 2008) ...................................................................................22

PLS' COMBINED REPLY/RESPONSE IN SUPPORT OF
SUMMARY JUDGMENT/OPPOSITION TO DEFS'-INTRVNORS'
MOTIONS TO DISMISS, SJ, & STRIKE (Civ. No. 11-417-MJP) -v-

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

United States v. Echeverry,
　　759 F.2d 1451 (9th Cir. 1985) ..................................................................28

United States v. Eppolito,
　　646 F. Supp. 2d 1239 (D. Nev. 2009) ........................................................28

United States v. Wheeling-Pittsburgh Steel Corp.,
　　818 F.2d 1077 (3d Cir. 1987).......................................................................9

Weinberger v. Romero-Barcelo,
　　456 U.S. 305 (1982)...................................................................................25

Williams v. Long,
　　585 F. Supp. 2d 679 (D. Md. 2008) .....................................................26, 27


**STATE CASES**

Campbell & Gwinn v. Ecology,
　　146 Wn.2d 1, 43 P.3d 4 (2002)..................................................................14

Sierra Club et al. v. Southwest Pollution Control Agency,
　　PCHB No. 09-108.....................................................................................18

State v. Vasquez,
　　148 Wn. 2d 303, 59 P.3d 648 (2002).........................................................22


**FEDERAL STATUTES**

33 U.S.C. § 1313...............................................................................................6

42 U.S.C. § 7410(a)(2)(A) ................................................................................4

42 U.S.C. §§ 7410(k) ........................................................................................4

42 U.S.C. § 7410(k)(3) ..................................................................................4, 6

42 U.S.C. § 7604(a) ........................................................................................13

42 U.S.C. § 7604(f) .........................................................................................13

42 U.S.C. § 7661c............................................................................................31

PLS' COMBINED REPLY/RESPONSE IN SUPPORT OF
SUMMARY JUDGMENT/OPPOSITION TO DEFS'-INTRVNORS'
MOTIONS TO DISMISS, SJ, & STRIKE (Civ. No. 11-417-MJP) -vi-

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

1

STATE STATUTES

RCW 70.94.011 ...............................................................................................14

RCW 70.94.154 ...........................................................................12, 15, 16, 17


REGULATIONS

7 DE Admin Code 1144 .................................................................................5, 9

NWCAA § 104.1 ................................................................................................3

PSCAA Reg. 1, Sec. 304 ...................................................................................3

WAC 173-400-010 ...........................................................................................14

WAC 173-400-030(67) .....................................................................................18

WAC 173-400-040 ..............................................................................3, 8, 9, 12

WAC 173-400-040(5) .........................................................................18, 19, 21


MISCELLANEOUS

60 Fed. Reg. 28726 (June 2, 1995) ..............................................................8, 14

61 Fed. Reg. 8624 (Feb. 26. 1997) ...................................................................8

63 Fed. Reg. 5269 (Feb. 2, 1998) .....................................................................8

69 Fed. Reg. 17368 (Apr. 2, 2004) ...................................................................8

69 Fed. Reg. 53007 (Aug. 31, 2004) .................................................................8

71 Fed. Reg. 13553 (March 16, 2006) .............................................................10

75 Fed. Reg. 48566 (Aug. 11, 2010) ..............................................................5, 9

PLS' COMBINED REPLY/RESPONSE IN SUPPORT OF
SUMMARY JUDGMENT/OPPOSITION TO DEFS'-INTRVNORS'
MOTIONS TO DISMISS, SJ, & STRIKE (Civ. No. 11-417-MJP) -vii-

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

1

**RULES OF EVIDENCE**

2

FRE 402 ...................................................................................................................31

FRE 701 ...................................................................................................................34

FRE 702 ...............................................................................................................29, 30

FRE 705 ...................................................................................................................30

FRE 801(c) ...............................................................................................................27

FRE 803(8) ...............................................................................................................29

FRE 803(8)(C) .......................................................................................................28, 30

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

INTRODUCTION

Defendants ("Agencies") and Defendant-Intervenor[1] seek to divert the Court's attention from what remains a simple issue in this case:  whether the Agencies have complied with the plain language of an approved State Implementation Plan ("SIP").  This case does not seek to impose specific greenhouse gas controls on specific refineries in Washington State, and it requires no sifting and winnowing through technical information to determine what controls would be appropriate.  Defendants' extensive windup with general Clean Air Act ("CAA") boilerplate, and submission of numerous cases and administrative actions unrelated to the issue of regulatory compliance with this SIP, cannot obscure their obligation to comply with the plain language of the SIP.

The SIP provisions at issue are unambiguous—the plain language of these provisions encompasses greenhouse gases as air contaminants that the Agencies must regulate under various provisions of Washington law, adopted in the SIP and approved by the Environmental Protection Agency ("EPA").  Most notably, the SIP plainly requires the Agencies to determine and require Reasonably Available Control Technology ("RACT") for all air contaminants from major sources such as the five oil refineries operating in Washington State.

Rather than enforce the SIP as written, Defendants seek to have the Court make a policy decision to rewrite the SIP, and to decide on a case by case, pollutant by pollutant basis, what is or is not covered by the SIP requirements.  Defendants cite no cases and no provision in the CAA that supports their claims that specific provisions in a SIP that were submitted by the state and duly approved by EPA are not enforceable in accordance with their plain terms.  Rather, the case law is clear and consistent:  SIPs that meet the basic requirements of the CAA must be

---

[1] Collectively  the Agencies and Defendant-Intervenor will be referred to as "Defendants".

PLS' COMBINED REPLY/RESPONSE IN SUPPORT OF
SUMMARY JUDGMENT/OPPOSITION TO DEFS'-INTRVNORS
MOTIONS TO DISMISS, SJ, & STRIKE (Civ. No. 11-417-MJP) -1-

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

1  approved by EPA even if they impose requirements that go beyond the minimums established by

2  federal law, and states must conduct themselves in accordance with those approved terms.

3                    ARGUMENT

4  I.     THERE IS NO AMBIGUITY IN THE LAW THAT SUGGESTS EPA EXCEEDED ITS
        AUTHORITY IN APPROVING WASHINGTON'S SIP.

5       Despite Defendants' strenuous efforts, there is no <u>Chevron</u> "step two"[2] question in this

6  case.  Neither the Washington SIP nor the CAA suffer from any ambiguity that invites an

7  interpretation beyond the language of the SIP to what the Agencies "intended" when they

8  submitted the SIP, or what EPA "intended" when it approved the SIP.

9      A.    <u>Washington's SIP is Unambiguous.</u>

10      As Defendants acknowledge, SIPs are interpreted and enforced in accordance with their

11  plain language, the basic "first step" under <u>Chevron</u> analysis.  <u>Safe Air for Everyone v. EPA</u>, 488

12  F.3d 1088, 1095-96 (9th Cir. 2007); <u>Bayview Hunters Point Cmty. Advocates v. Metro. Transp.</u>

13  <u>Comm'n</u>, 366 F.3d 692, 698 (9th Cir. 2004).  If the language is clear, the inquiry ends.  <u>Id.</u>

14      The Agencies agree that they are not arguing about the plain language of the SIP, but

15  rather focus on "the language of the Clean Air Act" in an attempt to breathe ambiguity into the

16  SIP provisions at issue in this case.  <u>See</u> Agencies' Motion and Response Memorandum, p. 22, fn

17  12.  None of the Defendants contest that greenhouse gases are plainly encompassed by the

18  definition of "air contaminant" in Washington's SIP, reinforced by Executive Order of the

---

[2] <u>Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.</u> 467 U.S. 837, 843 (1984) (where intent is unclear form the plain meaning, the court will look and defer to an agency interpretation, if the interpretation is not contrary to Congress' intent and purpose and does not frustrate the policy Congress sought to implement).

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

Governor, nor do they dispute that the RACT and Narrative Standard in WAC 173-400-040[3] impose their requirements on all "air contaminants."  Defendants also do not dispute that refineries in Washington are "major sources" of "air contaminants" including greenhouse gases.

Moreover, Defendants point to no statement of agency intent that contradicts the plain language of the SIP.  As the Ninth Circuit held in <u>Safe Air</u>, 488 F.3d at 1097-98, the only instance in which agency intent might modify the plain language of a SIP is where that intent is clearly and unambiguously stated in published notices accompanying the SIP approval process.  Here, as in <u>Safe Air</u>, there is no such stated intent contrary to the plain language of the SIP provisions at issue in this case.  Because the plain language of the Washington SIP requires the Agencies to address greenhouse gas emissions from major sources such as refineries, the inquiry concerning application of the RACT and Narrative Standards to greenhouse gas emissions should end there.

B.    <u>Section 110 of the Clean Air Act is Unambiguous.</u>

Because the language of Washington's SIP is plain and unambiguous, Defendants press for an inquiry beyond the SIP provisions to the language of the CAA itself in an effort to gain the Court's deference to after-the-fact agency intent and authority arguments that would relieve the Agencies of the obligation to apply the RACT and Narrative Standards to greenhouse gas emissions.  Again, however, Defendants cite to no specific ambiguity in section 110 of the CAA (42 U.S.C. § 7410) that supports their call for this Court to disregard the plain language of the SIP and look instead to inconsistent EPA policy and unpublished agency "interpretations."

---

[3] Plaintiffs will refer to the Washington Administrative Code as a collective reference for all the provisions of the various Agencies that contain the RACT and/or Narrative Standard language at issue in the case:  WAC 173-400-040, NWCAA Sec. 104.1, and PSCAA Reg. 1, Sec. 304.

PLS' COMBINED REPLY/RESPONSE IN SUPPORT OF
SUMMARY JUDGMENT/OPPOSITION TO DEFS'-INTRVNORS'
MOTIONS TO DISMISS, SJ, & STRIKE (Civ. No. 11-417-MJP) -3-

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

There is no dispute that the Washington SIP met the requirements of the CAA and was therefore approved by EPA.  EPA did not misbehave or act outside the boundaries of the law in doing so, nor is there such a suggestion from Defendants.  Section 110(k)(3) of the CAA provides that EPA shall approve a State's SIP submission "as a whole if it meets all the applicable requirements of this Act."  42 U.S.C. § 7410(k)(3).  If a portion meets all the applicable requirements of the Act and is severable, the EPA may approve the portion that meets the requirements and disapprove the portion that does not.  Id.

The law is clear that EPA must approve SIPs that meet the basic requirements of the CAA and EPA must do so even if the SIP contains requirements that are stricter or exceed the floor set by the CAA.  Union Elec. Co. v. EPA, 427 U.S. 246, 262-63, 265 (1976); Duquesne Light Co. v. EPA, 166 F.3d 609, 611, 613 (3rd Cir. 1999) (citing 42 U.S.C. § 7410(k)(3)); see also 42 U.S.C. §§ 7410(k).  Union Electric is particularly instructive here.  In that case, a regulated party challenged EPA's approval of a SIP arguing the requirements in the SIP were "not practicable" or an "impossibility" because they were economically and technically infeasible.  Union Elec., 427 U.S. at 254.  EPA's position, upheld by the Supreme Court, was that section 110(a)(2)(A) of the CAA (42 U.S.C. § 7410(a)(2)(A)) sets only a minimum standard that states may exceed in their discretion, rejecting the regulated party's argument that more stringent requirements were not "necessary" to attaining the National Ambient Air Quality Standards ("NAAQS") and therefore not approvable in a SIP.  Id. at 260-62.  In the instant case, Defendants likewise contend the SIP should not be read as requiring controls on greenhouse gases because such controls are "not necessary to attain NAAQS," an argument flatly inconsistent with the holding in Union Electric, which should be similarly rejected.

PLS' COMBINED REPLY/RESPONSE IN SUPPORT OF
SUMMARY JUDGMENT/OPPOSITION TO DEFS'-INTRVNORS
MOTIONS TO DISMISS, SJ, & STRIKE (Civ. No. 11-417-MJP) -4-

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

1    While the Union Electric and Duquesne cases did concern SIP provisions for attaining or

2   exceeding NAAQS, Concerned Citizens of Bridesburg v. EPA, 836 F.2d 777, 781 (3d. Cir.

3   1987) applied the same reasoning and concepts to odor provisions in a SIP, finding that EPA

4   must allow states to include more stringent provisions and must not second guess a state's

5   choices in that regard.  Id. ("EPA has limited authority to reject a SIP.").  Even more particular to

6   the issues here, the Bridesburg court found that even where EPA had changed its policy and

7   decided that odor regulations were no longer a desired part of SIPs, a state is still "entitled to

8   include in a SIP provisions that go beyond the minimal requirements of the NAAQS" and in

9   doing so "may impose enforcement obligations on the EPA and on the federal courts."  Id. at 787

10  (citing Union Elec.).

11    More recently, in keeping with the reasoning in the Bridesburg case, EPA took action to

12  approve a SIP that extends beyond criteria pollutants.  In 2010, EPA approved revisions to

13  Delaware's SIP that directly and expressly regulate carbon dioxide, a greenhouse gas, and

14  mercury, a hazardous air pollutant.  Delaware's SIP incorporates Delaware's regulation of

15  stationary generator emissions.  7 DE Admin Code 1144.  That provision states that its purpose is

16  to ensure that emissions of various air pollutants, including carbon dioxide, from stationary

17  generators in Delaware, do not adversely impact public health, safety, and welfare.  7 DE Admin

18  Code 1144(1.1).  This provision is part of Delaware's current SIP, approved by EPA in August

19  2010.  75 Fed. Reg. 48566, 48567 (Aug. 11, 2010).  The Delaware example is precisely in line

20  with the Union Electric and Bridesburg cases and precisely on point here.

21    What is more, the reasoning in cases like Union Electric and Bridesburg mirrors the

22  reasoning in decisions applying a similar shared state and federal structure in the Clean Water

23  Act ("CWA"), Title 33 U.S.C.  For example, in PUD No. 1 of Jefferson County v. Washington

24

25  PLS' COMBINED REPLY/RESPONSE IN SUPPORT OF
    SUMMARY JUDGMENT/OPPOSITION TO DEFS'-INTRVNORS'
26  MOTIONS TO DISMISS, SJ, & STRIKE (Civ. No. 11-417-MJP) -5-

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

1  Dep't of Ecology, 511 U.S. 700 (1994), the Supreme Court highlighted the structure of the CWA

2  that directed states to develop water quality standards designed to attain and maintain the

3  biological, chemical and physical integrity of the nation's water, subject to EPA review and

4  approval.  Like SIPs under the CAA, states' water quality standards become federally-

5  enforceable components of the CWA once they are approved by EPA.  33 U.S.C. § 1313.  The

6  Supreme Court held that under this shared state/federal system of environmental regulation,

7  states have latitude to determine best how to meet the requirements of the CWA, subject to

8  approval by EPA.  Id. at 718-19.  In particular, the Court found that the state's inclusion of

9  antidegradation requirements in its water quality standards that affect and set standards for water

10 quantity, approved by EPA, were enforceable and within the state's authority to develop water

11 quality standards under the CWA.  The Court rejected the argument that the state or EPA

12 exceeded their authority under the CWA even when the CWA explicitly states that it does not

13 regulate water quantity.  Id. at 720-21.[4]

14      Defendants cite to no specific ambiguity in section 110 that supports their attempts to

15 modify the plain language of the Washington SIP.  Rather, Defendants largely ignore section

16 110(k)(3), which requires that EPA approve a State's SIP submission "as a whole if it meets all

17 the applicable requirements of this Act," 42 U.S.C. § 7410(k)(3), or a portion if that portion is

18 severable from the portions that EPA does not meet the requirements of the CAA.  Id.  Those are

19 the extent of EPA's limited options with respect to approval of SIPs, and courts have found that

20 these options are consistent with Congress' intent to allow state's significant latitude in

21

22 _____

[4] In Safe Air, the Ninth Circuit also made note of the analogies to the CWA method of regulation
23 and a state's authority to set federally-enforceable standards stricter than the minimums.  Safe
   Air, 488 F.3d at 1096-97 (citing to Arkansas v. Oklahoma, 503 U.S. 91 (1992)).

24

25 PLS' COMBINED REPLY/RESPONSE IN SUPPORT OF
   SUMMARY JUDGMENT/OPPOSITION TO DEFS'-INTRVNORS'
26 MOTIONS TO DISMISS, SJ, & STRIKE (Civ. No. 11-417-MJP) -6-

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

1    controlling air pollution with oversight by EPA to ensure a consistent minimum.  Duquesne, 166

2    F.3d at 471 (citing Train v. Natural Res. Def. Council, 421 U.S. 60 (1975)); see also Union Elec.,

3    427 U.S. at 256-57.  This plain reading of section 110(k)(3)'s straight-forward language is also

4    consistent with an internal EPA memorandum on the topic, in which the Director notes that EPA

5    is limited to full approval or full disapproval, and may only give partial approval if portions of

6    the SIP are severable and some portions fail to meet the minimum applicable requirements.

7    Memorandum, John Calcagni, Dir. OAQPS to Regional Air Directors, "Processing of State

8    Implementation Plan (SIP) Submittals" (July 9, 1992), at 2.[5]  There is no suggestion here that

9    any relevant parts of Washington's SIP failed to meet the applicable requirements while other

10   parts did not, and there is no way to separate portions of Washington's SIP under dispute—what

11   is encompassed in the definition of air contaminants—as that phrase is used throughout the SIP.

12        Indeed, nowhere in Defendants' pleadings do they cite to any word or phrase or provision

13   of section 110 that is unclear or ambiguous.  Rather, Defendants' effort to convince the Court to

14   defer to the Agencies' refusal to comply with the plain language of the SIP is without foundation

15   in the language of the CAA itself.  Defendants claim only that in requiring states to include

16   provisions "necessary" to attaining and maintaining NAAQS in their SIPs, it must unavoidably

17   follow that there is some kind of strictness or air pollutant threshold or limitation for SIPs and

18   that provisions that are not "necessary" for CAA minimums cannot be approved by EPA.

19   Defendants' arguments assume too much with no grounding in the language of the CAA or the

20   case law.  The argument that only SIP provisions necessary to comply with the NAAQS may be

---

[5] A copy of the July 9, 1992 Memorandum by John Calcagni was originally submitted in this matter with the Declaration of Janette K. Brimmer in support of Plaintiffs' opposition to the Agencies' motion for a stay.  A second copy of the Calcagni Memorandum is attached to this pleading for convenience of the Court and parties.

PLS' COMBINED REPLY/RESPONSE IN SUPPORT OF
SUMMARY JUDGMENT/OPPOSITION TO DEFS'-INTRVNORS'
MOTIONS TO DISMISS, SJ, & STRIKE (Civ. No. 11-417-MJP) -7-

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

approved was soundly rejected by the Supreme Court in the Union Electric case and should be

rejected here.  Defendants' arguments are nothing more than an attempt to manufacture

ambiguity for the sake of escaping the requirements of a plainly-worded SIP.

C.      None of the Examples of "EPA's Position" Offer Useful Guidance to This Court.

Defendants further encourage the Court to depart from the plain language of the SIP

provisions at issue in this case with artfully-selected examples of EPA action on other SIPs in

other states involving pollutants and issues distinct from those here.  The proffered examples of

EPA's past and current actions do not shed useful light on the issues before the Court and

provide no basis for the Court to ignore the plain language of the SIP.

The most important consideration of EPA action is what EPA did with Washington's SIP.

EPA approved the SIP's RACT and Narrative Standards, and the provision defining "air

contaminant", in 1995.  60 Fed. Reg. 28726 (June 2, 1995).  EPA approved amendments to

Washington's SIP with regional agency versions of the RACT and/or Narrative Standard on

several occasions thereafter, without altering or questioning the RACT and Narrative Standards

or the air contaminant definition.  See, e.g., 61 Fed. Reg. 8624 (Feb. 26. 1997) (Southwest Clean

Air Agency regional variations); 63 Fed. Reg. 5269 (Feb. 2, 1998) (Yakima Clean Air Agency

version of RACT and Narrative Standards including the provisions that applied to odors and

dust); and 69 Fed. Reg. 53007 (Aug. 31, 2004) (Puget Sound Clean Air Agency RACT

standard).  Further, all of these regional agencies have adopted and included in the SIP the basic

definition of air contaminant which encompasses greenhouse gases.  Id.  In the interim, EPA has

stated that WAC 173-400-040 is an important provision in Washington's SIP for meeting the

requirements of the CAA as a whole.  69 Fed. Reg. 17368 et seq. (Apr. 2, 2004).  EPA

emphasized that WAC 173-400-040 had been in Washington's SIP for a long time, it applied

PLS' COMBINED REPLY/RESPONSE IN SUPPORT OF
SUMMARY JUDGMENT/OPPOSITION TO DEFS'-INTRVNORS'
MOTIONS TO DISMISS, SJ, & STRIKE (Civ. No. 11-417-MJP) -8-

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

1    state-wide, and it is federally-enforceable.  Id.  EPA has consistently approved the RACT and

2    Narrative Standards and the definition of air contaminant in Washington's SIP with no contrary

3    suggestions or reservations about its authority to do so.[6]

4        As for Defendants' examples regarding SIPs in other states, they conveniently omit the

5    most recent example of EPA action relevant to this case—the 2010 approval of Delaware's SIP,

6    which regulates stationary generator emissions, including carbon dioxide, to ensure that

7    emissions of that and other pollutants do not adversely impact public health, safety, and welfare.

8    7 DE Admin Code 1144(1.1); approved by EPA 75 Fed. Reg. 48566, 48567 (Aug. 11, 2010).

9        Furthermore, Defendants' examples of EPA action in other states provide no legally or

10   factually valid foundation for the court to ignore the SIP's plain language.  First, in every

11   example, EPA is removing a SIP provision through a formal process; however, such process is

12   conspicuously absent here.  There are required and accepted procedures for making changes to a

13   SIP—simply asking a court to ignore portions of it is not one of them.  See, e.g., Gen. Motors

14   Corp v. United States, 496 U.S. 530, 540-41 (1990); see also United States v. Alcan Foil Prods.

15   Div. of Alcan Aluminum Corp., 889 F.2d 1513, 1519 (6th Cir. 1989) (cites omitted); United

16   States v. Wheeling-Pittsburgh Steel Corp., 818 F.2d 1077, 1084 (3d Cir. 1987); Duquesne Light

17   Co. v. EPA, 698 F.2d 456, 471 (D.C. Cir. 1983).  In Washington, the provisions in question are

18   still in the SIP.  As all of the parties acknowledge, SIPs must be enforced in accordance with

19   their plain language, not in accordance with proposed revisions or changes.  The fact that EPA

20   _____

21   [6] Defendant-Intervenor includes an old notice showing EPA disapproved an early odor
     requirement submitted by Washington, with no explanation of how a 1992 rejection of an odor
22   provision sheds any light or has any bearing on EPA's full approval of the RACT and Narrative
     Standard provisions several years later.  In fact, EPA's approval of the RACT and Narrative
23   Standards in 1995 suggests those provisions are different from odor, are important, enforceable
     provisions in the SIP, and that EPA had no question about its authority to approve them.

24

25   PLS' COMBINED REPLY/RESPONSE IN SUPPORT OF              *Earthjustice*
     SUMMARY JUDGMENT/OPPOSITION TO DEFS'-INTRVNORS          *705 Second Ave., Suite 203*
26   MOTIONS TO DISMISS, SJ, & STRIKE (Civ. No. 11-417-MJP) -9-   *Seattle, WA  98104*
                                                              *(206) 343-7340*

felt it necessary to remove provisions in SIPs in other states demonstrates that EPA believed those provisions were enforceable until removed.

Second, in many of these examples, EPA repeats the reasoning of the vaunted, but exceedingly-thin, 1979 memorandum by Michael James, cited by Defendants.[7]  The 1979 Memorandum and the rationales based on it are of little value given the Memorandum's lack of legal analysis or support in the language of the CAA (as compared, for example, to the breadth and detail of the Calcagni Memorandum).  The 1979 James Memorandum also predates important cases such as the Supreme Court's Union Electric decision, which calls the Memorandum's sweeping and unsupported conclusions into question.

Third, in each of these EPA examples, EPA proposed complete deletion or omission of a segment of a SIP, the segments being apparently readily severable from the rest of the SIP.  In contrast, in Washington's SIP, the RACT and Narrative Standards and definition of air contaminants that includes greenhouse gases are not readily severable.

Finally, the odor examples, the bulk of the examples put forward by Defendants, have little to no bearing on the RACT and Narrative Standards.  In all of the so-called "nuisance" provision cases (some of which are explicitly about odor), EPA calls out odor or "odor and dust" as problems more appropriate for local air district control as opposed to SIPs.  Putting aside whether EPA's opinion in that regard is legally-correct or factually sound, (the Bridesburg case calls EPA's sweeping statements into question), it highlights a difference with the provisions at issue here.  Odor has been the subject of a pointed change in policy as recognized in the Bridesburg case.  As discussed in Bridesburg, pursuant to direction from Congress, EPA studied,

---

[7] In one example, EPA notes it is removing a portion of a SIP based on EPA policy as distinct from legal analysis and interpretation.  See 71 Fed. Reg. at 13553 (March 16, 2006) Leppo Ex. 6.

PLS' COMBINED REPLY/RESPONSE IN SUPPORT OF
SUMMARY JUDGMENT/OPPOSITION TO DEFS'-INTRVNORS'
MOTIONS TO DISMISS, SJ, & STRIKE (Civ. No. 11-417-MJP) -10-

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

developed, and published a formal policy regarding odor in 1980, and, based upon those studies, recommended against further inclusion of odor requirements in SIPs.  Bridesburg, 836 F.2d at 782.  Importantly, none of EPA's rationales for discontinuing odor requirements in SIPs had anything to do with the legal claims made in the James Memorandum or with EPA's authority to approve SIPs.  Id.  And, even with that policy change, the Bridesburg court found that Pennsylvania could resubmit a more-narrowly tailored version of its odor regulation to EPA as part of Pennsylvania's SIP, id. at 787-88, negating any claim by EPA that odor provisions must always and automatically be rejected as part of a SIP.

Washington does not include odor in its RACT or Narrative Standard, culling it out and omitting it from coverage in the SIP.  The RACT Standard identifies technical requirements for defined air contaminants, and Washington's Narrative Standard is more narrowly drawn and specific to the protection of public health than the generalized nuisance odor provisions EPA appears to be targeting in the examples submitted by Defendants.

To summarize, Defendants' claims that the Washington SIP should not be enforced in accordance with its plain terms are without foundation and should be rejected.  The SIP is plain on its face that greenhouse gases are air contaminants and that air contaminants are subject to the RACT and Narrative Standards.  There is no ambiguity in section 110 of the CAA regarding EPA's authority to approve or disapprove SIPs such that the Court need look or defer to EPA's opinion and actions.  The Supreme Court bluntly rejected the argument that only SIP provisions that are "necessary" to the basic achievement of NAAQS are approvable.  If a state exceeds that which is necessary, EPA has no authority to reject it.  Finally, even if the court looks to EPA, there is little to no guidance there.  Plaintiffs urge the court to reject Defendants' motions and to grant Plaintiffs' motion for summary judgment.

PLS' COMBINED REPLY/RESPONSE IN SUPPORT OF
SUMMARY JUDGMENT/OPPOSITION TO DEFS'-INTRVNORS'
MOTIONS TO DISMISS, SJ, & STRIKE (Civ. No. 11-417-MJP) -11-

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

1

2

II.     THE RACT AND NARRATIVE SIP STANDARDS ARE ENFORCEABLE BY
        CITIZENS AGAINST THE REGULATORY AGENCIES.

3

        A.      The Plain Language of the RACT Standard Requires the Agencies to Determine
                and Require RACT.

4

5

        The RACT Standard imposes obligations on both the source or air contaminants and on

6

the regulatory agencies.  It is the agency regulatory obligation that is at issue in this litigation—

7

not an enforcement action against the Refineries.  The plain language of the RACT Standard is

as follows:

8

9

10

11

12

13

14

15

> All sources and emissions units are required to meet the emission standards of this
> chapter.  Where an emission standard listed in another chapter is applicable to a specific
> emissions unit, such standard will take precedent over a general emission standard listed
> in this chapter.  When two or more emissions units are connected to a common stack and
> the operator elects not to provide the means or facilities to sample emissions from the
> individual emissions units, and the relative contributions of the individual emissions units
> to the common discharge are not readily distinguishable, then the emissions of the
> common stack must meet the most restrictive standard of any of the connected emissions
> units.  Further, all emissions units are required to use reasonably available control
> technology (RACT) which may be determined for some sources or source categories to
> be more stringent than the applicable emission limitations of any chapter of Title 173
> WAC.  Where current controls are determined to be less than RACT, ecology or the
> authority shall, as provided in section 8, chapter 252, Laws of 1993, define RACT for
> each source or source category and issue a rule or regulatory order requiring the
> installation of RACT.

16

WAC 173- 400-040 (1993).[8]

17

18

        1.      Compliance with their SIP obligations is not a matter of "enforcement
                discretion" for the regulatory agencies.

19

        Defendants misapply the law in arguing that this Court cannot enforce the RACT

20

standard in the SIP because it is subject to "enforcement discretion" by the Agencies.  This

21

argument is wrong in two fundamental ways.  First, Plaintiffs are not pursuing an enforcement

22

23

[8] As is pointed out in the parties' initial briefs, the session law cited in the RACT Standard was
ultimately codified at RCW 70.94.154.  Because the relevant provisions of 70.94.154 remain
unchanged, for ease of reference Plaintiffs will continue to cite to RCW 70.94.154.

24

25

26

PLS' COMBINED REPLY/RESPONSE IN SUPPORT OF
SUMMARY JUDGMENT/OPPOSITION TO DEFS'-INTRVNORS'
MOTIONS TO DISMISS, SJ, & STRIKE (Civ. No. 11-417-MJP) -12-

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

action against the refineries nor are Plaintiffs suggesting that this Court should require the agencies to "enforce" against a violation by the refineries.[9]  Rather, the case is one step earlier in the process, at the initial regulatory stage where the Agencies must comply with their regulatory obligations under the SIP to determine and then apply RACT where applicable.  This is not a matter of state "enforcement discretion".  Rather, the Agencies have simply failed to engage in an initial regulatory examination and decision required by the SIP.

Second, the Defendants' position on "enforcement discretion" fails to acknowledge the existence and very point of the citizen suit provisions in the CAA.  Citizens may bring suit in federal district court to enforce the requirements of a SIP against an agency when it is failing in its obligations.  42 U.S.C. § 7604(a) and (f); see also Am. Elec. Power Co. v. Connecticut, ___ U.S. ___, 131 S.Ct. 2527, 2538 (2011); Am. Lung Assoc. of N.J. v. Kean, 871 F.2d 319, 320-25 (3d Cir. 1989); Comty's for a Better Env't v. Cenco Refining Co., 180 F.Supp.2d 1062, 1079 (C.D.Cal. 2001) (and cases cited therein).[10]  Defendants' "enforcement discretion" defense to compliance with the SIP has no place in this case and does not dictate a result in their favor.

> 2.  *The Defendants' disjointed and piecemeal reading of the RACT Standard fails to conform to its plain meaning and fails to give effect to the RACT requirements as a whole.*

The Defendants' dubious parsing of the RACT Standard and their surgical carve out of the statutory requirements for determining RACT fail to give effect to the purpose and intent of the RACT Standard and fail to conform to the legal requirements to interpret regulations and SIPs as a whole.  In statutory and regulatory construction, the statute or rule must be read as a

---

[9]This is not a permit enforcement case because the Refineries permits do not include a RACT requirement for greenhouse gas emissions—the heart of the problem here.

[10] Citizens may also enforce directly against a source precisely when an agency is 'exercising its enforcement discretion' by failing or refusing to pursue a violation. 42 U.S.C. § 7604(a) and (f).

PLS' COMBINED REPLY/RESPONSE IN SUPPORT OF SUMMARY JUDGMENT/OPPOSITION TO DEFS'-INTRVNORS' MOTIONS TO DISMISS, SJ, & STRIKE (Civ. No. 11-417-MJP) -13-

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

1    whole, in conjunction with other statutes and in accordance with the overall purpose and

2    structure of the statute and its companion provisions. <u>California Wilderness Coalition v. U.S.</u>

3    <u>Dept. of Energy</u>, 631 F.3d 1072, 1087 (9th Cir. 2011); <u>Campbell & Gwinn v. Ecology</u>, 146

4    Wn.2d 1, 9, 43 P.3d 4 (2002).  Courts are to ensure that an interpretation does not leave portions

5    of a statute or its companion provisions meaningless or superfluous. <u>Id.</u>  The same basic rules of

6    construction are applied to SIPs. <u>See, e.g.</u>, <u>Bayview Hunters Point</u>, 366 F.3d at 700.

7           The RACT and Narrative Standard requirements are simply part of a larger statutory and

8    regulatory framework, the purpose of which is to "preserve, protect, and enhance air quality for

9    current and future generations," RCW 70.94.011, to "protect the public welfare . . . and to

10   prevent air pollution problems that interfere with the enjoyment of life, property, or natural

11   attractions," <u>id.</u>, to "provide for the systematic control of air pollution from air contaminant

12   sources," WAC 173-400-010 (incorporated into SIP, 60 Fed. Reg. 28726 (June 2, 1995)), and to

13   "establish rules generally applicable to the control and/or prevention of the emission of air

14   contaminants," <u>id.</u>   To implement those important general purposes, Washington developed the

15   RACT and Narrative Standards.  However, Defendants' construction of the RACT Standard

16   creates a circular pattern of application that ultimately renders the RACT requirements

17   meaningless, an incorrect outcome under the law that makes attaining the important clean air

18   purposes of the SIP, much less the specific directives of the Standards, unlikely.

19          Specifically, Defendants misapply the term "may" in the mandate that "all emissions

20   units are required to use reasonably available control technology (RACT) which <u>may</u> be

21   determined for some sources or source categories to be more stringent than the applicable

22   emission limitations of any chapter of Title 173 WAC." (emphasis added.) The term "may" is

23   plainly referencing the fact that a source cannot count on only being required to meet the

24

25   PLS' COMBINED REPLY/RESPONSE IN SUPPORT OF
     SUMMARY JUDGMENT/OPPOSITION TO DEFS'-INTRVNORS'
26   MOTIONS TO DISMISS, SJ, & STRIKE (Civ. No. 11-417-MJP) -14-

1   applicable emission limitations of Title 173 WAC.  The "may" makes clear that a source of air

2   contaminants might be required to conform to an even stricter emission control standard.

3   Defendants would have the Court read this as a reference to the Agencies' obligation to

4   determine RACT rendering it discretionary.  This is a contortion of that sentence and of the

5   RACT standard as a whole.  It is inconceivable that the term "may" in this context is saying

6   anything about agency regulatory obligations other than giving an agency leeway to be more,

7   rather than less, strict in emission control decisions.  Plaintiffs' urge the court to reject the

8   Defendants' misuse of the word "may".

9       Moreover, Defendants would have this Court find that the remainder of the RACT

10  Standard exists in a vacuum relative to agency obligations.  The second half of the RACT

11  Standard dictates that where it is determined a source is employing less than RACT controls, the

12  agency "shall, as provided in [RCW 70.94.154] define RACT for each source or source category

13  and issue a rule or regulatory order requiring the installation of RACT."  (emphasis added.)

14  Defendants argue that unless the agency feels like looking into whether RACT is being

15  employed, (which, based upon the state's track record for the refineries, the Agencies rarely, if

16  ever, feel like doing),[11] or unless the source volunteers that it is not employing RACT as required

17

---

18  [11] As Plaintiffs noted in the 60-day Notice Letter for this case, although the Title V permit
    program was added in the 1990 CAA Amendments, and although the SIP was approved in 1995,
19  the Agencies failed to issue required Title V operating permits for the refineries until 2002 and
    2003 and only after settling with a coalition of conservation groups who had sent a 60 day Notice
20  of Intent to Sue letter in 2000 due to the failure to issue permits.  Further, all of these permits, but
    for the Tesoro facility, have expired and not been renewed.  Three of those refineries are
21  operating under permits that expired approximately two years ago, the fourth is operating under a
    permit that expired well over two years ago.  NWCAA, BP West Coast Products Air Operating
22  Permit, at ii (modified Sept. 6, 2006); PSCAA, U.S. Oil & Refining Co. Air Operating Permit, at
    2 (amended Apr. 15, 2003); NWCAA, ConocoPhillips Air Operating Permit, at i (May 20,
23  2003); NWCAA, Shell Oil Products Air Operating Permit, at ii (modified Sept. 24, 2004).

24

25  PLS' COMBINED REPLY/RESPONSE IN SUPPORT OF          *Earthjustice*
    SUMMARY JUDGMENT/OPPOSITION TO DEFS'-INTRVNORS    *705 Second Ave., Suite 203*
26  MOTIONS TO DISMISS, SJ, & STRIKE (Civ. No. 11-417-MJP) -15-    *Seattle, WA  98104*
                                                        *(206) 343-7340*

by the SIP, no one need figure it out.  This leads to the circular result that sources must employ RACT under the SIP, but no regulatory body will ever determine what RACT is, or whether it has been implemented, and in turn RACT will never be imposed because no one is minding the regulatory store.  This interpretation largely renders the RACT Standard meaningless.  It is inconsistent with the rules of statutory and regulatory construction and should be rejected.

Defendants' interpretation also reads the express reference to RCW 70.94.154 entirely out of the SIP.  The requirements of RCW 70.94.154 (as they existed in 1993—they are largely unchanged to date) are plainly included in the approved SIP as an obligation of the regulatory agencies.  Defendants' argument that this reference should be ignored because the statute's terms themselves are not repeated in the SIP violates the principles of statutory construction and enforcement of plain language of SIPs.  As noted in detail throughout this case, SIPs must be enforced according to their plain language and that means according to all their plain language and requirements.  In order to give effect to the entirety of the RACT provision, it must be read in conjunction with the requirements of RCW 70.94.154, plainly referenced in the SIP.

RCW 70.94.154 requires the state, no later than 1994, to establish a list of sources requiring RACT review and a schedule for the review.  The Agencies are to update the list and revise the schedule for RACT determinations not less than every five years.  The state and local agencies shall revise RACT requirements as dictated by the reviews conducted under RCW 70.94.154.  Plainly, reading the entirety of the SIP with the reference to RCW 70.94.154 requires the Agencies to determine whether the refineries are employing RACT to control greenhouse gas emissions and, if the Agencies determine the refineries are not, to establish and impose RACT either by order or by rule.  That is the plain meaning of the SIP, read as a whole.

PLS' COMBINED REPLY/RESPONSE IN SUPPORT OF SUMMARY JUDGMENT/OPPOSITION TO DEFS'-INTRVNORS' MOTIONS TO DISMISS, SJ, & STRIKE (Civ. No. 11-417-MJP) -16-

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

1   The Defendants cite to no authority that supports their claim that the specific reference to

2   RCW 70.94.154 can be ignored when enforcing the SIP.  That is because there is no law that

3   supports Defendants' position on this point.  Plaintiffs have found only one case that directly

4   addresses incorporation by reference into SIPs, but that case is very different from the situation

5   here where the SIP specifically references a precise statutory provision and that difference

6   between the cases supports enforcement of RCW 70.94.0154 as an integral part of Washington's

7   SIP.  El Comité Para el Bienestar de Earlimart v. Warmerdam, 539 F.3d 1062 (9th Cir. 2008),

8   concerned a California SIP section that included proposed strategies for reducing air pollutants

9   from pesticides.  The plaintiffs sought to enforce more-detailed obligations set forth in a

10   memorandum the state submitted after public notice, but before final approval by EPA.  Id. at

11   1067.  The Ninth Circuit found that despite mention in the preamble, the memorandum could not

12   be considered part of the SIP.  The SIP terms themselves were clear and therefore there was no

13   need to look to additional documents evidencing "administrative intent."  Id. at 1071-72.

14   Here, there is no need to look beyond the face of the SIP.  The publicly-noticed, EPA-

15   approved SIP includes an explicit and specific reference to the Agencies' obligation to determine

16   and impose RACT by rule or order in accordance with RCW 70.94.0154.  In contrast to El

17   Comité, there is no need to determine what was publicly-available when or what might or might

18   not have been EPA's intent.  The statute is plainly-referenced and incorporated into the SIP.  In

19   order to give effect to that plain meaning, the Agencies' obligations under the RACT Standard

20   must include assessing current controls and determining and imposing RACT in accordance with

21   RCW 70.94.154.  Otherwise, the public has been misled regarding application of RACT and the

22   language referencing the statute would be rendered superfluous.

23

24

25   PLS' COMBINED REPLY/RESPONSE IN SUPPORT OF
     SUMMARY JUDGMENT/OPPOSITION TO DEFS'-INTRVNORS'
26   MOTIONS TO DISMISS, SJ, & STRIKE (Civ. No. 11-417-MJP) -17-

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

Despite Defendants' efforts to slice and dice the plain language of the RACT Standard, Defendants cannot overcome the plain meaning as a whole:  the Agencies have an obligation to assess and determine RACT for control of all air contaminants at all major sources, including refineries, and once determined, RACT shall be imposed to control air contaminants. Defendants offer no support for any other reading that is rational and that gives effect to the whole of the RACT requirements.

B.   The Narrative Standard Imposes an Obligation on the Agencies to Protect Public Health, Welfare, and Property.

1.   *The Narrative Standard is a defined obligation of the regulatory agencies.*

The Agencies try to escape their obligations under the Narrative Standard by claiming it applies only to sources, not to the Agencies.  This is incorrect and inconsistent with the plain language of the SIP.  The Narrative Standard prohibits "any person" from allowing the emission of any air contaminant from any source to a degree that harms the public health or welfare or that damages property or business.  WAC 173-400-040(5).  "Person" is defined in the SIP to include an individual, firm, public or private corporation, association, partnership, <u>political subdivision</u>, municipality, <u>or government agency</u>.  WAC 173-400-030(67) (emphasis added).  The Agencies are thus prohibited from allowing emissions of air contaminants in contravention of the Narrative Standard.  Their argument that it applies only to sources is entirely without merit.

2.   *The Narrative Standard is an enforceable emission limitation or standard.*

Defendants' arguments regarding enforceability of the Narrative Standard are likewise unfounded and unsupported in the case law.  Defendants' primary argument appears to be that the Narrative Standard is too subjective for citizen enforcement against the Agencies.  In making this argument, Defendants confuse the case law concerning enforcement of goals against

PLS' COMBINED REPLY/RESPONSE IN SUPPORT OF SUMMARY JUDGMENT/OPPOSITION TO DEFS'-INTRVNORS' MOTIONS TO DISMISS, SJ, & STRIKE (Civ. No. 11-417-MJP) -18-

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

polluting sources with the situation here:  enforcement of regulatory obligations against

regulatory agencies.

In <u>Cenco</u>, the court noted that "an emission standard or limitation is <u>broadly construed</u> as

any type of control to reduce the amount of emissions into the air."  <u>Cenco</u>, 180 F. Supp. 2d at

1076 (quoting <u>Citizens for a Better Env't v. Deukmejian</u>, 731 F. Supp. 1448, 1454 (N.D. Cal.

1990)) (emphasis added).  While the <u>Cenco</u> court recognized that a number of district courts had

rejected citizen suits based upon general nuisance provisions as too subjective for enforcement,

the court also pointed out that this did not mean SIP provisions are only enforceable if they are a

numeric or similarly-objective requirement on air emissions.  <u>Id.</u> at 1077.  For example, in <u>Cenco</u>

the court found that process and permitting requirements were important and sufficiently specific

to be amenable to citizen enforcement. <u>Id.</u> at 1078.

Washington's Narrative Standard is likewise enforceable as it delineates sufficiently

specific criteria for measuring allowable emissions—they must not be "detrimental to the health,

safety, or welfare of any person, or causes damage to property or business."  WAC 173-400-

040(5).  While this criteria is obviously not a numeric limit, and does not prescribe a particular

technology-based standard, that level of specificity is not required for enforcement of the

provision against the Agencies.  This action is not about enforcing a permit term against a

specific refinery or even about setting a particular level of pollutant control.[12]  This Court is not

---

[12] Defendant-Intervenor, in pressing this Court to look to the Pollution Control Hearings Board
("PCHB") on the Narrative Standard, fails to note the PCHB found the Narrative Standard, when
inserted wholesale into a CAA permit, is "<u>enforceable as written,</u>" without the need for specific
numeric pollutant limits, including for greenhouse gases.  <u>Sierra Club et al. v. Southwest</u>
<u>Pollution Control Agency</u>, PCHB No. 09-108, Order Granting Summary Judgment, at ¶ 21(Apr.
19, 2010) (emphasis added), Leppo Ex. 8.  While Plaintiffs strongly disagree that collateral
estoppel applies in this case, <u>infra</u>, p. 22, if the Court were to find that it binds for one issue, it
should bind for all.

PLS' COMBINED REPLY/RESPONSE IN SUPPORT OF
SUMMARY JUDGMENT/OPPOSITION TO DEFS'-INTRVNORS'
MOTIONS TO DISMISS, SJ, & STRIKE (Civ. No. 11-417-MJP) -19-

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

called upon to weigh and decide any technical details with this action.  Rather, this action seeks to compel the Agencies to comply with their regulatory obligation to engage in that technical exercise.  This is a very important distinction and a crucial difference between this case and those relied upon by Defendants.  The Narrative Standard prohibits the Agencies from allowing harmful emissions and it is undisputed the Agencies have not applied the Narrative Standard to refinery emissions of greenhouse gases.

The cases cited by Defendants are readily distinguishable from the situation before the Court here.[13]  For example, in <u>Bayview Hunters Point</u>, the SIP provision at issue was plainly identified as only a "goal" for transit ridership and the court found that a <u>goal</u> is not a SIP obligation susceptible to citizen enforcement.  Similarly, in <u>EPA ex rel. McKeown v. Port Auth. Of New York and New Jersey</u>, 162 F. Supp. 2d 173 (S.D.N.Y. 2001), the plaintiff's allegations that slowing traffic and idling cars caused by the operation of toll booths "unnecessarily increased tailpipe emissions" in general violation of the CAA were rejected by the court because the complaint did not identify any violation of specific emission standards under the CAA and did not identify any violation of a specific strategies or commitment in the SIP.  <u>Id.</u> at 187.  <u>McEvoy v. IEI Barge Services, Inc.</u>, 622 F.3d 671 (7th Cir. 2010), was a direct enforcement action against a source of coal dust pollution.  <u>Id.</u> at 673.[14]  One of the Illinois laws at issue was,

---

[13] The Agencies' citation to <u>Amer. Elec. Power Co., Inc. v. Connecticut</u>, __ U.S. __, 131 S.Ct. 2527 (2011), is so strained it need not be directly addressed.  The AEP case was not a SIP enforcement case nor a citizen suit under the CAA.  The AEP case was a tort action based in claims of federal common law nuisance.  The only apparent connection is that it contains the word nuisance and it is about climate change.  The <u>AEP</u> case does confirm and repeat that greenhouse gases are pollutants under the CAA.  <u>AEP</u>, 131 S.Ct. at 2532-33.

[14] The EPA order, <u>In the Matter of Hercules, Inc.</u>, Petition No. IV-2003-1 (November 10, 2004), cited by the Agencies and appended to their brief, also is not a SIP enforcement case or a CAA citizen suit, but an administrative permit appeal, where, interestingly, EPA <u>did</u> <u>not</u> suggest that

---

PLS' COMBINED REPLY/RESPONSE IN SUPPORT OF
SUMMARY JUDGMENT/OPPOSITION TO DEFS'-INTRVNORS'
MOTIONS TO DISMISS, SJ, & STRIKE (Civ. No. 11-417-MJP) -20-

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

as the Seventh Circuit described, a very "broad, hortatory" admonition to not cause pollution, which the court declined to enforce against the source where there were no standards for "causing pollution" or permit terms against which the court could judge the alleged violation.  <u>Id.</u> at 678.  Unlike the Narrative Standard at issue here, the Illinois law lacked specific instruction that emissions should not be "detrimental to the health, safety, or welfare of any person, or causes damage to property or business."  WAC 173-400-040(5).  In addressing a second SIP provision involving fugitive particulate matter, the <u>McEvoy</u> court makes a critically important observation on the need for agency guidance on the standard, exactly what the Plaintiffs in this case seek: "[I]t is not our role to flesh out this regulation without better guidance from the competent administrative bodies."  <u>Id.</u> at 680.  This case seeks to compel the Agencies to abide by their obligation to identify RACT or other applicable controls.  This case requires no technical weighing and sifting by the court.

The undisputed (admitted by the Agencies) facts are that the refineries emit greenhouse gases and that greenhouse gases—the cause of climate change—are harmful to public health and welfare and damaging to property or business.  Sturdevant Answer at ¶ 15; Asmundson Answer at ¶ 15; Kenworthy Answer at ¶ 15.  Further, the Agencies admit that they have taken no actions under the Narrative Standard to curb the emission of greenhouse gases or to even assess controls for them.[15]  Sturdevant Responses to Request for Admission Nos 1-4; Asmundson Responses to Request for Admission Nos. 1 and 2, and Kenworthy Responses to Request for Admission Nos.

---

the rule was unenforceable, the principle for which the Agencies include the case, but rather that it was adequate to ensure its terms would be enforceable later by the agency and the public.

[15] Again, the Northwest Clean Air Agency has responded in Requests for Admissions that it did some assessment for a new expansion at the Tesoro facility, but not for the existing facility.  Asmundson Response to Request for Admissions Nos. 3 and 4.

PLS' COMBINED REPLY/RESPONSE IN SUPPORT OF
SUMMARY JUDGMENT/OPPOSITION TO DEFS'-INTRVNORS'
MOTIONS TO DISMISS, SJ, & STRIKE (Civ. No. 11-417-MJP) -21-

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

1, 3 and 4.  The issue is not a dispute over the Agencies' decisions regarding control of greenhouse gases or an assessment that resulted in a conclusion that greenhouse gases were not harmful.  The Agencies are allowing the emission of air contaminants and the evidence is that those air contaminants are having detrimental effects.

> 3.      *Defendant-Intervenor misapplies the doctrine of collateral estoppel.*

Defendants also misapply the doctrine of collateral estoppel in an attempt to avoid the plain meaning of the SIP.  In particular, Defendant-Intervenor misapplies the doctrine when it attempts to bring this case under the umbrella of an unrelated Title V permitting dispute before a state administrative body.

First, a state's interpretation of regulations incorporated into a SIP, even if binding as a matter of state law, is <u>not</u> directly dispositive of its meaning in a SIP.  <u>Ass'n of Irritated Residents v. C & R Vanderham Dairy</u>, 2007 WL 2815038 (E.D. Cal. 2007) (citing <u>Safe Air</u> 475 F.3d at 1103 and <u>Bayview Hunters Point</u>).

Second, courts apply collateral estoppel to preclude litigation sparingly and only when very specific factors are present.  Collateral estoppel only prohibits adjudication of an issue on the basis of a previous proceeding when <u>all</u> of the following apply: 1) the parties in the two cases are the same or in privity; 2) the issue in the previous proceeding was necessarily decided and was identical to the one which is sought to be relitigated; and 3) the first proceeding ended in a final judgment on the merits.  <u>Granite Rock Co. v. International Broth. Of Teamsters, Freight, Constr., General Drivers, Warehousemen and Helpers</u>, __ F.3d __, 2011 WL 1902675, at *2 (9th Cir. 2011); <u>United States v. Bhatia</u>, 545 F.3d 757, 759 (9th Cir. 2008); <u>Reyn's Pasta Bella, L.L.C. v. Visa USA, Inc.</u>, 442 F.3d 741, 746 (9th Cir. 2006); <u>see also</u> <u>State v. Vasquez</u>, 148 Wn. 2d 303,

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

308, 59 P.3d 648 (2002) where the Washington Supreme Court outlines the same factors and adds a fourth:  that application of the doctrine will not work an injustice.

Collateral estoppel is plainly inapplicable in this case, as the issues in the prior Title V dispute are not identical to those being litigated here.  The coal plant Title V dispute was an administrative permit appeal, not a SIP enforcement case or a citizen suit enforcement action.  While the Narrative Standard was part of the that prior case, the claims centered on to what extent and how the Narrative Standard must be included in the coal plant's operating permit issued under Title V of the CAA as an "applicable requirement" of the SIP.  See 42 U.S.C. § 7661c.  The PCHB found that the Narrative Standard was an applicable requirement of the Washington SIP, but that the Narrative Standard was properly included in the Title V permit when the permitting agency included the language of the Narrative Standard verbatim in the Title V Permit.  Leppo Ex. 8, at ¶ 21.  In particular, the PCHB found that the Narrative Standard was "enforceable as written."  Id. (emphasis added).[16]  Collateral estoppel does not apply to bar the claims here against the Agencies.

In sum, Defendants again fail to demonstrate any serious disagreement over the plain language of their SIP obligations, instead choosing to argue that the Court should ignore that language based upon inapplicable case law.  Plaintiffs ask the Court to reject Defendants' motions and grant Plaintiffs' motion for summary judgment.

---

[16] The parties are also not identical.  The appellants before the PCHB were Sierra Club, National Parks Conservation Association, and Northwest Environmental Defense Center.  The Plaintiffs here include Washington Environmental Council, which had no part in the litigation against the coal plant that was at the center of the permitting dispute.

PLS' COMBINED REPLY/RESPONSE IN SUPPORT OF
SUMMARY JUDGMENT/OPPOSITION TO DEFS'-INTRVNORS'
MOTIONS TO DISMISS, SJ, & STRIKE (Civ. No. 11-417-MJP) -23-

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

1
2

III.    DEFENDANT-INTERVENOR CLAIMS OF MATERIAL DISPUTED FACTS ARE
MISPLACED.

3        Defendant-Intervenor's half-hearted claims that material disputed facts necessitate a trial

4   are wrong in that they once again misconstrue the nature of the issues in this case.  There is no

5   issue of disputed fact relevant to enforcement of the RACT Standard against the Agencies—the

6   Agencies admit that they have not made any RACT determinations or implemented RACT for

7   emissions of greenhouse gases from the Refineries.  Thus, if Plaintiffs are correct that the RACT

8   Standard imposes an obligation on the Agencies relative to greenhouse gas emissions, it is the

9   Agencies, not this Court, that must determine whether controls at the Refineries are less than

10  RACT, and if so, determine and impose RACT.  That is the first step in the very process

    Plaintiffs' seek the Court to compel.

11       There is similarly no disputed fact relevant to enforcement of the Narrative Standard

12  against the Agencies, as the Agencies admit that they have not complied with this provision and

13  instead argue that it is inapplicable.  If Plaintiffs are correct that the Narrative Standard is

14  enforceable against the Agencies relative to greenhouse gas emissions, Plaintiffs' are not

15  required to prove the Refineries are causing a nuisance.  Plaintiffs need only demonstrate, and

16  have demonstrated, that the Agencies are allowing uncontrolled emission of air contaminants

17  potentially detrimental to public health and damaging to property or business.  That imposes an

18  obligation on the Agencies to determine whether and to what extent controls are necessary.  It is

19  the order compelling the Agencies to make those determinations that Plaintiffs seek, and there is

20  no disputed material fact regarding whether the Agencies have made those determinations.

21
22
23
24

25  PLS' COMBINED REPLY/RESPONSE IN SUPPORT OF
    SUMMARY JUDGMENT/OPPOSITION TO DEFS'-INTRVNORS'
26  MOTIONS TO DISMISS, SJ, & STRIKE (Civ. No. 11-417-MJP) -24-

IV.    REMEDY

Plaintiffs do not object to Defendants' suggestion that the remedies in this case may be addressed in a separate briefing phase, should the Court find such segregation helpful.  See Rule 26 Stipulated Report, dated Apr. 28, 2011.  However, Plaintiffs do not agree such a phase is automatically warranted.  As noted in Plaintiffs' initial brief, federal district courts have wide latitude to fashion equitable remedies tailored to address environmental harms.  Friends of the Earth v. Carey, 535 F.2d 165, 173 (2d Cir. 1976) ("the district court is obligated, upon a showing that the state has violated the plan, to issue appropriate orders for its enforcement"); see also Am. Lung Ass'n of New Jersey v. Kean, 871 F.2d at 327; Sierra Club v. Tennessee Valley Auth., 430 F.3d 1337, 1354 (11th Cir. 2005)[17] see also F.T.C. v. H.N. Singer, Inc., 668 F.2d 1107, 1113 (9th Cir. 1982) (absent explicit statutory limitation, district court's equitable authority includes "the authority to grant any ancillary relief necessary to accomplish complete justice.").

Given the history here of delayed permitting, (completed only upon threat of citizen enforcement suit), complete failure to apply the requirements of the SIP, and already-available scientific information, the additional three-year delay suggested by the Agencies is unwarranted and inequitable.  Further, Plaintiffs request, should the court allow the Agencies to comply with the SIP requirements in any time frame longer than 90 days, that the Court retain jurisdiction to ensure the deadlines are met so that the citizen non-profit organizations and the environment are not required to repeatedly bear the expense and additional delay inherent in starting and restarting multiple citizen enforcement actions with their 60-day advance notice requirements.

---

[17] See also Clean Water Act cases where courts note the broad equitable authority to address environmental wrongs:  U.S. v. Akers, 785 F.2d 814, 823 (9th Cir. 1986); Weinberger v. Romero-Barcelo, 456 U.S. 305, 320 (1982) (court has broad authority "to order that relief it considers necessary to secure prompt compliance with the Act").

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

RESPONSE IN OPPOSITION TO DEFENDANT-INTEVENOR WESTERN STATES
PETROLEUM ASSOCIATION'S MOTION TO STRIKE

I.       THE EXHIBITS TO THE OSBORNE-KLEIN DECLARATION ARE ADMISSIBLE.

Defendant-Intervenor's objections to the declarations and exhibits submitted by Plaintiffs
are without foundation in the law and rules of evidence.  Defendant-Intervenor focuses primarily
on the Osborne-Klein Declaration and exhibits, yet, with the exception of Exhibit E, all of
Osborne-Klein Declaration (ECF No. 37, Exhibits A-J) are public records maintained by public
offices.  Second Osborne-Klein Declaration ¶¶ 2-5, 7-11.  As public records maintained by
public offices, these documents are inherently reliable and take judicial notice of them.  See San
Francisco Baykeeper v. West Bay Sanitary Dist., __ F.Supp.2d __, 2011 WL 1990637, at *6
(N.D. Cal. May 23, 2011) ("It is well established that records, reports, and other documents on
file with administrative agencies—such as the State Water Resources Control Board—are
judicially noticeable.") (citations omitted).  Even absent judicial notice of these materials,
Defendant-Intervenor has not provided a basis for exclusion.

A.       The Exhibits Are Authenticated.

Defendant-Intervenor is incorrect in its claims that Exhibits to the Osborne-Klein
Declaration (ECF No. 37, Exhibits A, C-D, F, G-J) have not been properly authenticated.
Defendant-Intervenor's Br. at 28-29.  As mentioned above and clarified in the Second
Declaration of Joshua Osborne-Klein, the documents referenced in these paragraphs are all
public records and are available on public websites.  Second Osborne-Klein Declaration, ¶¶ 2-5,
7-11.  Because the challenged materials are public documents from public websites, they are
self-authenticating.  See, e.g., Williams v. Long, 585 F. Supp. 2d 679, 686-88 (D. Md. 2008)
(citing cases for proposition that postings on government websites are "inherently authentic,"

PLS' COMBINED REPLY/RESPONSE IN SUPPORT OF
SUMMARY JUDGMENT/OPPOSITION TO DEFS'-INTRVNORS'
MOTIONS TO DISMISS, SJ, & STRIKE (Civ. No. 11-417-MJP) -26-

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

including <u>Estate of Gonzales v. Hickman</u>, 2007 WL 3237727, at *2 n.3 (C.D. Cal. May 30, 2007); <u>Equal Employment Opportunity Comm'n v. E.I. DuPont de Nemours & Co.</u>, 2004 WL 2347559 (E.D. La. Oct. 18, 2004); <u>Shell Oil Co. v. Franco</u>, 2004 WL 5615656 (C.D. Cal. May 18, 2004); <u>Hispanic Broad. Corp. v. Educ. Media Found.</u>, 2003 WL 22867633 (C.D. Cal. Oct. 30, 2003); <u>Sannes v. Jeff Wyler Chevrolet, Inc.</u>, 1999 WL 33313134 (S.D. Ohio Mar. 31, 1999)).

Furthermore, the Second Osborne-Klein Declaration identifies the public website address from which each document was obtained, and the last date it was viewed on the public website. Second Osborne-Klein Declaration, ¶¶ 2-5, 7-11.  This information provides the Court with a means of extrinsically verifying the exhibits at issue.  <u>See</u> <u>Equal Employment Opportunity Comm'n</u>, 2004 WL 2347559 at *1-2 (finding Rule 901(a) to be "satisfied" because "[t]he exhibit contains the internet domain address from which the table was printed, and the date on which it was printed" and because "[t]he Court has accessed the website using the domain address and has verified that the webpage printed exists at that location"); <u>see also</u> <u>Williams</u>, 585 F. Supp. 2d at 688-89 ("A proponent of [electronically stored information] could use the URL, date, and/or official title on a printed webpage to show that the information was from a public website, and therefore, self-authenticating.").  This extrinsic evidence satisfies authentication requirements.

B.       The Exhibits are Not Hearsay.

Contrary to Defendant-Intervenor's assertion, none of the documents are "offered to prove the truth of the matter asserted," and thus they do not constitute hearsay as defined in FRE 801(c).  The scope of this case is limited—as the Court expressly recognized when it denied the attempted intervention of Steven Keeler, the Court "need not determine the presence or magnitude of climate change" to resolve this case, but need "only determine Defendants' regulatory obligations under the CAA and SIP."  Order on Motion to Intervene, ECF No. 26 at 3-

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

4.  To that end, Plaintiffs do not rely on the documents attached to the Osborne-Klein Declaration to demonstrate the magnitude of climate change or the actions that the Refineries have taken to control their greenhouse gas emissions, but rather to give the Court background and context on which to base its decision on whether the Agencies have failed to abide by their obligations to assess and determination RACT for greenhouse gas emissions under the SIP.  The Exhibits do not "prove" the issues before the Court, but rather show that controls have been demonstrated and/or determined by other public entities for refineries generally and might be available for consideration in a RACT process, and that the Agencies could, if they acted on their SIP obligations, similarly determine whether RACT is available for the Refineries.  Plaintiffs clearly do not offer this evidence as basis for the Court to actually impose those controls—as has been restated throughout this case; that is not the relief sought and that issue is not before this Court.  When used for these purposes, the Exhibits do not constitute hearsay.[18]

C.    The Documents Also Fit Within Hearsay Exceptions.

Even if the documents were considered hearsay, almost all of them fit within the "public records" exception.  Specifically, Exhibits A-D and F-J are "reports" or "statements" made by "public offices or agencies" that  provide "factual findings resulting from an investigation made pursuant to authority granted by law . . . ."  FRE 803(8)(C); see also Conde v. Velsicol Chem. Corp., 804 F. Supp. 972, 993-94 (S.D. Ohio 1992) (EPA reports excepted from the hearsay prohibition under FRE 803(8)(C)).  These exhibits are excepted from the hearsay prohibition unless Defendant-Intervenor, as the opponent of the evidence, can meet its burden of "coming

---

[18] See also United States v. Echeverry, 759 F.2d 1451, 1457 (9th Cir. 1985) (out-of-court statements offered to provide background to Court are not hearsay); United States v. Eppolito, 646 F. Supp. 2d 1239, 1241 (D. Nev. 2009) (statement of informant "offered to give context" to other evidence is not hearsay).

PLS' COMBINED REPLY/RESPONSE IN SUPPORT OF
SUMMARY JUDGMENT/OPPOSITION TO DEFS'-INTRVNORS
MOTIONS TO DISMISS, SJ, & STRIKE (Civ. No. 11-417-MJP) -28-

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

forward with enough negative factors to persuade a court that a report should not be admitted." Johnson v. Pleasanton, 982 F.2d 350, 352 (9th Cir. 1992); see also Gilbrook v. City of Westminster, 177 F.3d 839, 858 (9th Cir. 1999) ("A trial court may presume that public records are authentic and trustworthy.  The burden of establishing otherwise falls on the opponent of the evidence, who must 'come forward with enough negative factors to persuade a court that a report should not be admitted.'") (citation omitted); San Francisco Baykeeper v. W. Bay Sanitary Dist., 2011 WL 1990637, at *18 (N.D. Cal. 2011) (FRE 803(8) "calls for '[a] broad approach to admissibility' that 'assumes admissibility in the first instance.'") (quoting Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 167, 169 (1988)) (brackets in original); Equal Employment Opportunity Comm'n, 2004 WL 2347559 at *1 ("'Public records and government documents are generally considered not to be subject to reasonable dispute,' and '[t]his includes public records and government documents available from reliable sources on the Internet.'") (brackets in original, citation omitted, emphasis added).  The evidence should not be excluded because Defendant-Intervenor has "provided no evidence whatsoever to raise doubts about the reliability" of the Exhibits and there likely is no such evidence.[19]  Gilbrook, 177 F.3d at 858.

> D.    The Exhibits are Not Inadmissible Opinion Evidence.

Defendant-Intervenor's claims that Exhibits A-J to the Osborne-Klein Declaration are "inadmissible opinion evidence" under FRE 702 are also incorrect.  Defendant-Intervenor's Br.

---

[19] It was Defendant-Intervenor's burden and obligation to come forward with such evidence in its initial pleading so that it could be reviewed by Plaintiffs and a proper response formulated. Plaintiffs request that the Court not allow Defendant-Intervenor to attempt to establish untrustworthiness in reply.  Should Defendant-Intervenor do so, Plaintiffs will likely seek leave of the Court to file a sur-reply to respond to the allegations.

PLS' COMBINED REPLY/RESPONSE IN SUPPORT OF
SUMMARY JUDGMENT/OPPOSITION TO DEFS'-INTRVNORS'
MOTIONS TO DISMISS, SJ, & STRIKE (Civ. No. 11-417-MJP) -29-

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

1    at 31.  Again, with the exception of Exhibit E,[20] the Exhibits are "public records" for purposes of

2    FRE 803(8)(C).  As such, these Exhibits are presumed reliable unless Defendant-Intervenor can

3    provide a basis to conclude that these reports are untrustworthy.  Supra at 30.  Defendant-

4    Intervenor has failed to provide any evidence to rebut this presumption of reliability (and likely

5    cannot provide such evidence), and the unrebutted presumption operates to satisfy the

6    admissibility requirements of FRE 702.  See Desrosiers v. Flight Int'l of Florida Inc., 156 F.3d

7    952, 962-63 (9th Cir. 1998); see also Christopher Phelps & Assocs., LLC v. Galloway, 492 F.3d

8    532, 542 (4th Cir. 2007) (rejecting FRE 702 challenge to public record because "the assessment

9    could appropriately have been admitted under the agency records exception to the hearsay rule,

10   Fed.R.Evid. 803(8), which holds such documents sufficiently reliable because they represent the

11   outcome of a governmental process and were relied upon for non-judicial purposes."); Shelton v.

12   Consumer Prods. Safety Comm'n, 277 F.3d 998, 1009 n.2 (8th Cir. 2002) (declining to consider

13   FRE 702 objection to business record because "the district court did not abuse its discretion by

14   admitting the laboratory reports into evidence under [FRE] 803(6)"); Melville v. Am. Home

15   Assurance Co., 584 F.2d 1306, 1316 (3d Cir. 1978) ("To allow objections to be sustained under

16   Rules 702 and 705 without a showing of untrustworthiness would have the practical effect of

17   nullifying the exception to the hearsay rule provided by Rule 803(8)(C).").

18

19

---

20   [20] The BP Report at Exhibit E it also not offered for the truth of a particular level or kind of
     greenhouse gas emissions from the BP refinery, but only to demonstrate the general fact that BP

21   does emit a large quantity of greenhouse gases.  The precise amount in any given year is
     immaterial.  Further, because Defendant-Intervenor has since supplied similar information itself,

22   showing more recent emissions from BP, Plaintiffs are willing to rely on Defendant-Intervenor's
     corroborating report.  It is interesting to note that the Defendant-Intervenor-supplied emission

23   numbers are even higher than the older document submitted by Plaintiffs.

24

25   PLS' COMBINED REPLY/RESPONSE IN SUPPORT OF
     SUMMARY JUDGMENT/OPPOSITION TO DEFS'-INTRVNORS'      *Earthjustice*
     MOTIONS TO DISMISS, SJ, & STRIKE (Civ. No. 11-417-MJP) -30-    *705 Second Ave., Suite 203*

26                                                          *Seattle, WA  98104*
                                                            *(206) 343-7340*

E.      The Exhibits are Relevant.

Finally, Defendant-Intervenor makes an ineffective claim that Exhibits E, H, and I to the Osborne-Klein Declaration are not relevant and thus are inadmissible under FRE 402. Defendant-Intervenor Br. at 31-33.  The relevancy challenge is incorrect—these materials provide relevant context and background for the Court, including information giving the Court a sense of the scope and import of this case, as well as an idea of what possible outcomes could result if the Court resolves this case in Plaintiffs' favor.  When considered for these purposes, Exhibits E, H, and I are relevant and admissible.  See, e.g., Barsamian v. City of Kingsburg, 597 F. Supp. 2d 1054, 1058 n.1 (E.D. Cal. 2009) (evaluating evidence that was "at minimum, relevant to provide some background and context.") (citing Pelayo v. City of Downey, 570 F. Supp. 2d 1183, 1189 n.52 (C.D. Cal. 2008) (same).

Specifically, Exhibit E allows the Court to compare estimated annual greenhouse gas emissions from the BP cherry point oil refinery in 2004 with total state-wide annual greenhouse gas emissions during that year.  This information is relevant to establish background and context in this case, as it demonstrates the public import of the Agencies' obligations under the SIP to assess and, if necessary, control greenhouse gas emissions from the Refineries.  While Defendant-Intervenor asserts that this information is "irrelevant" because it is "nearly a decade old and, accordingly, meaningless in terms of present emissions levels," Plaintiffs chose to use the 2004 data for the BP facility because Plaintiffs possessed comparable state-wide data from that year.  Plaintiffs do not contend that this data reflects the current greenhouse gas emissions levels at the BP facility; however, the more recent greenhouse gas emissions data provided by Defendant-Intervenor in the Holms Declaration (ECF No. 51), when compared with the 2004 data, indicates that greenhouse gas emissions from the BP facility increased between 2004 and

PLS' COMBINED REPLY/RESPONSE IN SUPPORT OF SUMMARY JUDGMENT/OPPOSITION TO DEFS'-INTRVNORS' MOTIONS TO DISMISS, SJ, & STRIKE (Civ. No. 11-417-MJP) -31-

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

2008 (from 1.84 million metric tons in 2004 to 2.10 million metric tons in 2008).  Compare ECF No. 1 (Complaint) at ¶ 17 with ECF No. 51 (Holms Declaration) at ¶ 4.

Likewise, Exhibits H and I (public reports containing information on potential greenhouse gas reduction strategies at oil refineries) are relevant because they provide the Court with information that will be useful in crafting a remedy if Plaintiffs prevail in this case.  While these Exhibits do not specifically address the Refineries operating in Washington State, they do (as Defendant-Intervenor admits) describe "the general potential for achieving energy efficiencies in U.S. oil refineries."  Defendant-Intervenor's Br. at 32.  This information is relevant because it gives the Court a basis to conclude that, if it orders the Agencies to make determinations on measures to control greenhouse gas emissions from the Refineries, such a regulatory process would not be futile, but rather could result in cost-effective measures that benefit Plaintiffs and all Washingtonians and redresses plaintiffs' injuries.

II.     PLAINTIFFS' STANDING DECLARATIONS ARE ADMISSIBLE.

Defendant-Intervenor's objections to Plaintiffs' standing declarations (ECF Nos. 39-44) on the basis that none of the declarants are experts in relevant fields is utterly lacking in support.  This argument fails because the contested declarations are offered for the purpose of satisfying Article III and jurisprudential standing requirements.  See, e.g., Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).  The contested declarations contain specific factual allegations regarding the standing requirements, including detailed explanations of the injuries caused by the Agencies' failure to comply with the SIP provisions at issue in this case.  E.g, ECF No. 39 at ¶¶ 7-8; ECF No. 40 at ¶¶ 9-17; ECF No. 41 at ¶¶ 8-17; ECF No. 42 at ¶¶ 10-16;  ECF No. 43 at ¶¶ 6-8; ECF No. 44 at ¶¶ 3-8.

PLS' COMBINED REPLY/RESPONSE IN SUPPORT OF SUMMARY JUDGMENT/OPPOSITION TO DEFS'-INTRVNORS' MOTIONS TO DISMISS, SJ, & STRIKE (Civ. No. 11-417-MJP) -32-

Both the Supreme Court and the Ninth Circuit have held that, for purposes of summary judgment, facts averred by a plaintiff with respect to standing must be taken as true.  Lujan, 504 U.S. at 561 (in response to a summary judgment motion challenging a plaintiff's standing to bring suit the plaintiff need only "set forth by affidavit or other evidence specific facts . . . which for purposes of the summary judgment motion will be taken to be true.") (internal quotation marks omitted); Alaska Wildlife Alliance v. Jensen, 108 F.3d 1065, 1068-69 (9th Cir. 1997) ("At the summary judgment stage, . . .  Plaintiffs need only plead facts that, taken as true, would show that [government authorized activity] caused their injuries.").  Indeed, standing declarations are fundamentally different from evidence offered to prove questions of fact material to a disposition on the merits.[21]  For this reason, courts allow standing declarations to be submitted even if those materials would not be admissible were they offered as evidence relevant to a disposition on the merits.  See, e.g., Nw. Envtl. Def. Ctr. v. Bonneville Power Admin., 117 F.3d 1520, 1528 (9th Cir. 1997) ("We therefore consider the affidavits not in order to supplement the administrative record on the merits, but rather to determine whether petitioners can satisfy a prerequisite to this court's jurisdiction.").  Courts have explicitly found that standing declarations may be submitted despite the fact that those declarations contain opinion testimony that is "expert-like" and would be inadmissible to determine questions on the merits.  Envtl. Prot. Info. Ctr. v. Blackwell, 389 F. Supp. 2d 1174, 1121 (N.D. Cal. 2004) ("Under these circumstances, the Court expressly

---

[21] In this case, there is little to no overlap between the facts relevant to the merits and the facts relevant to standing.  The questions to be decided on the merits are the proper interpretation of the two Washington SIP provisions at issue in this case, and whether the Defendant Agencies have complied with these provisions with respect to emissions of greenhouse bases from the Refineries.  Whether Plaintiffs' economic, aesthetic, or recreational interests will be damaged by the Agencies' failure to comply with these SIP provisions is a separate question that goes to the Court's jurisdiction, but not to the merits of this case.

PLS' COMBINED REPLY/RESPONSE IN SUPPORT OF
SUMMARY JUDGMENT/OPPOSITION TO DEFS'-INTRVNORS
MOTIONS TO DISMISS, SJ, & STRIKE (Civ. No. 11-417-MJP) -33-

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

disavows reliance on the declarations except as they are relevant to standing.").  Defendant-Intervenor's objections to Plaintiffs' standing declarations must therefore be rejected.[22]

In short, Defendant-Intervenor has failed to present any valid basis to exclude the evidence Plaintiffs have submitted, which is offered to provide the Court with background and context in this case, and also to establish Plaintiffs' legal standing.  Plaintiffs accordingly ask the Court to reject Defendant-Intervenor's request to strike these materials.

CONCLUSION

Plaintiffs respectfully request summary judgment in their favor finding that the Agencies have failed to comply with the RACT and Narrative Standards of Washington's SIP and ordering such compliance.  Plaintiffs further respectfully request that the Court deny Defendants' and Defendant-Intervenor's Motions to Dismiss and for Summary Judgment as contrary to the plain language of the SIP and having provided no authority for this Court to disregard that plain language.  Finally, Plaintiffs' respectfully request that the Court deny Defendant-Intervenor's Motion to Strike Exhibits and Declaration filed by Plaintiffs.

---

[22] FRE 701 also provides that lay witnesses may provide opinion testimony based upon the perception of the witness where it is helpful to the court's understanding and where it is not based upon specialized knowledge.  Here, the standing declarants are not setting forth opinions about what will happen with climate change, but rather they are setting forth their concerns and potential injuries based upon their understanding of what experts are saying about climate change.  It is perfectly legitimate and indeed helpful for the standing declarant to explain to the court the bases for their injury and concern.  They are not offering opinion on any fact relevant to the underlying issues the court must decide.

PLS' COMBINED REPLY/RESPONSE IN SUPPORT OF
SUMMARY JUDGMENT/OPPOSITION TO DEFS'-INTRVNORS'
MOTIONS TO DISMISS, SJ, & STRIKE (Civ. No. 11-417-MJP) -34-

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

1   Respectfully submitted this 21st day of September, 2011.

2

3                                    /s/ Janette K. Brimmer
                                JANETTE K. BRIMMER (WSB #41271)
4                               Earthjustice
                                705 Second Avenue, Suite 203
5                               Seattle, WA  98104
                                (206) 343-7340
6                               (206) 343-1526 *[FAX]*
                                jbrimmer@earthjustice.org
7
                                *Attorneys for Plaintiffs*
8
                                BRIAN W. CHESTNUT (WSB #23453)
9                               JOSHUA OSBORNE-KLEIN (WSB #36736)
                                Ziontz, Chestnut, Varnell, Berley & Slonim
10                              2101 Fourth Avenue, Suite 1230
                                Seattle, WA  98121
11                              (206) 448-1230
                                (206) 448-0962 *[FAX]*
12                              bchestnut@zcvbs.com
                                joshok@zcvbs.com
13
                                *Attorneys for Plaintiffs*
14

15

16

17

18

19

20

21

22

23

24

25   PLS' COMBINED REPLY/RESPONSE IN SUPPORT OF                *Earthjustice*
     SUMMARY JUDGMENT/OPPOSITION TO DEFS'-INTRVNORS            *705 Second Ave., Suite 203*
26   MOTIONS TO DISMISS, SJ, & STRIKE (Civ. No. 11-417-MJP) -35-   *Seattle, WA  98104*
                                                               *(206) 343-7340*

CERTIFICATE OF SERVICE

I am a citizen of the United States and a resident of the State of Washington.  I am over 18 years of age and not a party to this action.  My business address is 705 Second Avenue, Suite 203, Seattle, Washington 98104.

I HEREBY CERTIFY that on September 21, 2011, I electronically filed the following the following documents:

1.  Plaintiffs' Combined Reply/Response in Support of Summary Judgment and in Opposition to Defendants' and Intervenor Motions to Dismiss, for Summary Judgment, and to Strike;
2.  Second Declaration of Joshua Osborne-Klein.

with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Svend A. Brandt-Erichsen
Marten Law Group PLLC
1191 Second Avenue, Suite 2200
Seattle WA  98101
(206) 292-2600
(206) 292-2601 *[FAX]*
svendbe@martenlaw.com
*Attorneys for Defendant Mark Asmundson, Director, Northwest Clean Air Agency*

☐ via facsimile
☐ via overnight courier
☐ via first-class U.S. mail
☐ via hand delivery
☐ via e-mail
☒ via electronic service by Clerk

Jennifer A. Dold
Puget Sound Clean Air Agency
1904 Third Avenue, Suite 105
Seattle, WA  98101-3317
(206) 343-8800
(206) 343-7522 *[FAX]*
jenniferd@pscleanair.org
*Attorneys for Defendant Craig T. Kenworthy, Director Puget Sound Clean Air Agency*

☐ via facsimile
☐ via overnight courier
☐ via first-class U.S. mail
☐ via hand delivery
☐ via e-mail
☒ via electronic service by Clerk

CERTIFICATE OF SERVICE   -1-

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

1

Katharine G. Shirley
Assistant Attorney General

☐ via facsimile
☐ via overnight courier

2

Laura J. Watson
Assistant Attorney General

☐ via first-class U.S. mail
☐ via hand delivery

3

Office of the Attorney General
Ecology Division

☐ via e-mail
☒ via electronic service by Clerk

4

P.O. Box 40117
Olympia, WA  98504-0117

5

(360) 586-6770

6

(360) 486-6760 *[FAX]*
ECYOLYEF@atg.wa.gov

7

KayS1@atg.wa.gov
LauraW2@atg.wa.gov

8

*Attorneys for Defendant E.G. "Ted" Sturdevant, Director*
*Washington State Department of Ecology*

9

10

Jeffrey W. Leppo
Matthew T. Cohen
Ryan P. Steen

☐ via facsimile
☐ via overnight courier

11

Stoel Rives LLP

☐ via first-class U.S. mail
☐ via hand delivery

12

600 University Street, Suite 3600
Seattle, WA  98101

☐ via e-mail
☒ via electronic service by Clerk

13

(206) 624-0900
jwleppo@stoel.com

14

mtcohen@stoel.com
rpsteen@stoel.com

15

*Attorneys for Intervenor-Defendant*
*Western States Petroleum Association*

16

17

I, Cheryl McEvoy, declare under penalty of perjury that the foregoing is true and correct.

18

Executed this 21st day of September, 2011, at Seattle, Washington.

19

20

21

Cheryl McEvoy

22

23

24

25

26

27

28

CERTIFICATE OF SERVICE   -2-

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*