1   THE HONORABLE MARSHA J. PECHMAN

2

3

4

5

6

7                   UNITED STATES DISTRICT COURT
            WESTERN DISTRICT OF WASHINGTON
8                          AT SEATTLE

9   WASHINGTON ENVIRONMENTAL            No. 2:11-cv-00417-MJP
    COUNCIL and SIERRA CLUB
10  WASHINGTON STATE CHAPTER,           INTERVENOR-DEFENDANT WESTERN
                                        STATES PETROLEUM ASSOCIATION'S
11              Plaintiffs,             REPLY MEMORANDUM IN SUPPORT
                                        OF MOTION FOR SUMMARY
12       v.                             JUDGMENT

13  THEODORE ("TED") L. STURDEVANT,
    DIRECTOR, WASHINGTON STATE
14  DEPARTMENT OF ECOLOGY, in his
    official capacity, MARK ASMUNDSON,
15  DIRECTOR, NORTHWEST CLEAN AIR
    AGENCY, in his official capacity, and
16  CRAIG T. KENWORTHY, DIRECTOR,
    PUGET SOUND CLEAN AIR AGENCY,
17  in his official capacity,

18              Defendants,

19  WESTERN STATES PETROLEUM
    ASSOCIATION,
20
                Intervenor-Defendant.
21

22

23

24

25

26

INTERVENOR-DEFENDANT'S REPLY MEMORANDUM IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT (2:11-cv-00417-MJP)

# TABLE OF CONTENTS

Page

I. PLAINTIFFS' CLAIMS ARE DEPENDENT UPON INTERPRETING THE
WASHINGTON SIP IN A MANNER THAT CONFLICTS WITH SECTION 110
OF THE CLEAN AIR ACT ............................................................................................1

    A. The Intent Of Washington's SIP To Regulate GHGs Is Not Clear, Plain, Or
    Permissible ................................................................................................................1

    B. Plaintiffs Have Not Even Attempted To Reconcile Their Claims With Section 110
    Of The CAA ..............................................................................................................3

    C. The CAA Does Not Reserve To Each State The Option To Federalize Regulation
    Of Non-Criteria Pollutants Through A SIP ............................................................4

    D. EPA's Long-Standing Interpretation Of The CAA Is Permissible And Controlling..........7

        1. Chevron deference .........................................................................................8

        2. Plaintiffs' alternative efforts to distinguish EPA's interpretation are ineffective..........9

II. THE RACT RULE DOES NOT REQUIRE THE AGENCIES TO CONDUCT A
RACT ANALYSIS FOR GHG EMISSIONS FROM WASHINGTON OIL
REFINERIES ...............................................................................................................12

III. THE AGENCIES ARE NOT IN VIOLATION OF THE NUISANCE RULE ......................15

    A. The Nuisance Rule Is Not An Emission Standard Or Limitation And, Thus, Is
    Unenforceable In A CAA Citizen Suit ................................................................15

    B. Plaintiffs' Interpretation Of The Nuisance Rule Is Illogical...............................17

    C. The Nuisance Rule Does Not Authorize Or Require Agencies To Undertake Any
    Rulemaking ............................................................................................................18

    D. Plaintiffs Are Barred From Relitigating Whether The Nuisance Rule Mandates
    Development Of Specific Emissions Standards For GHGs...................................19

IV. WSPA'S MOTION TO STRIKE SHOULD BE GRANTED ................................................21

    A. Plaintiffs Admit Their Documents Are Not Admissible Evidence.....................21

    B. Even Standing Declarations Must Contain Admissible Evidence........................21

V. CONCLUSION .............................................................................................................23

INTERVENOR-DEFENDANT'S REPLY MEMORANDUM IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT (2:11-cv-00417-MJP) - i

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
Telephone (206) 624-0900

70908606.6 0052991-00002

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Action for Rational Transit v. W. Side Highway Project*,
   699 F.2d 614 (2d Cir. 1983).......................................................................................15

*Bravos v. BLM*,
   Nos. 6:09-cv-00037-RB-LFG & 6:09-cv-00414-RB-LFG, 2011 Dist. LEXIS 95708,
   at *22 (D.N.M. Aug. 3, 2011).....................................................................................22

*Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*,
   467 U.S. 837 (1984)............................................................................................7, 8, 9

*Cmtys. for a Better Env't v. Cenco Ref. Co.*,
   180 F. Supp. 2d 1062 (C.D. Cal. 2001) ..............................................................12, 16

*Concerned Citizens of Bridesburg v. EPA*,
   836 F.2d 777 (3d Cir. 1987)..........................................................................5, 7, 8, 12

*Duquesne Light Co. v. EPA*,
   166 F.3d 609 (3d Cir. 1999)..................................................................................5, 6

*Environmental Protection Information Center v. Blackwell*,
   389 F. Supp. 2d 1174 (N.D. Cal. 2004) ....................................................................22

*Ethyl Corp. v. EPA*,
   541 F.2d 1 (D.C. Cir. 1976) ........................................................................................8

*Gerlinger v. Amazon.com Inc.*,
   526 F.3d 1253 (9th Cir. 2008) ..................................................................................22

*Heckler v. Chaney*,
   470 U.S. 821 (1985)..................................................................................................18

*Helter v. AK Steel Corp.*,
   No. C-1-96-527, 1997 U.S. Dist. LEXIS 9852 (S.D. Ohio Mar. 31, 1997) ..........................16

*Hydranautics v. FilmTec Corp.*,
   204 F.3d 880 (9th Cir. 2000) ....................................................................................19

*In re Election Contest Filed by Coday*,
   130 P.3d 809 (Wash. 2006)........................................................................................20

INTERVENOR-DEFENDANT'S REPLY MEMORANDUM IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT (2:11-cv-00417-MJP) - ii

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone (206) 624-0900*

*In re Recall of Pearsall-Stipek,*
   961 P.2d 343 (Wash. 1998)...................................................................................................20

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555 (1992)...........................................................................................................22

*Massachusetts v. EPA,*
   549 U.S. 497 (2007).............................................................................................................2

*New York v. United States,*
   505 U.S. 144 (1992)...........................................................................................................19

*Northwest Environmental Defense Center v. Bonneville Power Administration,*
   117 F.3d 1520 (9th Cir. 1997) ...........................................................................................22

*Paper, Allied-Industrial, Chem. & Energy Workers Int'l Union v. Cont'l Carbon Co.,*
   No. 04-0438, 2005 WL 1389431 (W.D. Okla. 2005) ........................................................16

*Parklane Hosiery Co. v. Shore,*
   439 U.S. 322 (1979)...........................................................................................................19

*Pension Benefit Guar. Corp. v. Carter & Tillery Enters.,*
   133 F.3d 1183 (9th Cir. 1998) ...........................................................................................10

*PUD No. 1 of Jefferson County v. Washington Department of Ecology,*
   511 U.S. 700 (1994).............................................................................................................7

*Puget Soundkeeper Alliance v. State,*
   9 P.3d 892 (Wash. Ct. App. 2000) ....................................................................................13

*Rodriguez v. United States,*
   480 U.S. 522 (1987)...........................................................................................................13

*Safe Air for Everyone v. EPA,*
   475 F.3d 1096 (9th Cir. 2007) ...........................................................................................10

*Satterfield v. J.M. Huber Corp.,*
   888 F. Supp. 1561 (N.D. Ga. 1994) ...................................................................................16

*Shoemaker v. City of Bremerton,*
   745 P.2d 858 (Wash. 1987)................................................................................................19

*Sierra Club v. Sw. Wash. Clean Air Agency,*
   No. 09-108, 2010 WL 1636869 (Wash. PCHB Apr. 19, 2010)................................... passim

INTERVENOR-DEFENDANT'S REPLY MEMORANDUM IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT (2:11-cv-00417-MJP) - iii

70908606.6 0052991-00002

*Snyder v. Munro,*
     721 P.2d 962 (Wash. 1986)...........................................................................20

*Union Electric Co. v. EPA,*
     427 U.S. 246 (1976).........................................................................4, 5, 6, 9

*United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.,*
     484 U.S. 365 (1988)............................................................................2

*United States v. Durham,*
     464 F.3d 976 (9th Cir. 2006) ...............................................................22

*United States v. Echeverry,*
     759 F.2d 1451 (9th Cir. 1985) .............................................................21

*United States v. Eppolito,*
     646 F. Supp. 2d 1239 (D. Nev. 2009).....................................................21

*Washington v. Mullin-Costin,*
     95 P.3d 321 (Wash. 2004)...................................................................20

*Young v. Cmty. Nutrition Inst.,*
     476 U.S. 974 (1986)..........................................................................13

**Federal Statutes**

42 U.S.C. § 7416.................................................................................5

42 U.S.C. § 7602(k)............................................................................15

42 U.S.C. § 7604(a)(1).........................................................................15

**Washington Statutes**

RCW 70.94.011.................................................................................13

RCW 70.94.154.................................................................................15

RCW 70.94.154(1)..............................................................................13

RCW 70.94.154(3)..............................................................................13

RCW 70.94.154(3)(c)...........................................................................13

**Federal Rules**

Fed. R. Civ. P. 56(c)(4).......................................................................21

INTERVENOR-DEFENDANT'S REPLY MEMORANDUM IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT (2:11-cv-00417-MJP) - iv

70908606.6 0052991-00002

Fed. R. Civ. P. 56(e) ...........................................................................................................22

Fed. R. Evid. 401 ...............................................................................................................21

Fed. R. Evid. 402 ...............................................................................................................21

**Federal Regulations**

40 Fed. Reg. 33,215 (Aug. 7, 1975)....................................................................................11

48 Fed. Reg. 45,607, 45,609 (Sept. 14, 1981) .....................................................................2

57 Fed. Reg. 44,530, 44,532 (Sept. 28, 1992) ...............................................................2, 11

71 Fed. Reg. 13,551, 13,552-53 (Mar. 16, 2006) .................................................................5

73 Fed. Reg. 11,845, 11,846 (Mar. 5, 2008) ......................................................................10

73 Fed. Reg. 23,101, 23,102 (Apr. 29, 2008) .....................................................................10

75 Fed. Reg. 48,566 (Aug. 11, 2010)..................................................................................10

76 Fed. Reg. 16,365, 16,366 (Mar. 23, 2011) ...................................................................2, 9

**Washington Regulations**

WAC 173-400-040 (1980).................................................................................................2, 13

WAC 173-400-040 (1993)....................................................................................................14

WAC 173-400-040(6).............................................................................................................15

**Constitutional Provisions**

Tenth Amendment .................................................................................................................19

**Other Authorities**

Del. Dep't of Natural Resources Regulation No. 1144 – Control of Stationary Generator
     Emissions 9 ...................................................................................................................10

S. Rep. No. 91-1196, 91st Cong., 2d Sess. 36 (1970)...........................................................16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

INTERVENOR-DEFENDANT'S REPLY MEMORANDUM IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT (2:11-cv-00417-MJP) - v

70908606.6 0052991-00002

1
2

## I.  PLAINTIFFS' CLAIMS ARE DEPENDENT UPON INTERPRETING THE WASHINGTON SIP IN A MANNER THAT CONFLICTS WITH SECTION 110 OF THE CLEAN AIR ACT

3      Stripped bare of all the rhetoric, this case presents the following circumstances.  At the

4  time the Washington SIP provisions at issue here were adopted, EPA did not regulate greenhouse

5  gases ("GHGs") under the Clean Air Act ("CAA"), nor did the State of Washington regulate

6  GHGs under state law.  Moreover, in proposing and approving the Washington SIP RACT and

7  Nuisance Rules, neither EPA nor Ecology (or anyone else) actually considered, let alone

8  intended to regulate, GHG emissions.  What Congress did address in enacting Section 110, and

9  what EPA clearly thought about and resolved in issuing numerous regulatory interpretations over

10  decades in many contexts, including in the context of the Washington SIP, is that the CAA does

11  not authorize SIP provisions that are not NAAQS attainment strategies.  GHGs were first

12  regulated under the CAA as "air pollutants" in 2007, but they are still non-criteria pollutants, the

13  regulation of which is not a NAAQS attainment strategy authorized by CAA Section 110.

14  **A.      The Intent Of Washington's SIP To Regulate GHGs Is Not Clear, Plain, Or Permissible**

15      Plaintiffs begin (and end) their argument with a "plain language" interpretation of the

16  Washington SIP.  However, Plaintiffs' interpretation is anything but plain, clear, or certain.

17  Indeed, Plaintiffs' interpretation requires this Court to conclude that the RACT and Nuisance SIP

18  provisions were proposed by the Washington Department of Ecology ("Ecology")[1] and approved

19  by the U.S. Environmental Protection Agency ("EPA") with the silent intent of exceeding the

20  authority granted by CAA Section 110.

21      Plaintiffs' interpretation of the Washington SIP follows this logic:  (i) the RACT and

22  Nuisance Rules apply to "air contaminants"; (ii) in 2009, Governor Gregoire issued a

23

24  _____

25      [1] Ecology, together with the two defendant local air control authorities, are collectively referred to as the "Agencies."

26

INTERVENOR-DEFENDANT'S REPLY MEMORANDUM IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT (2:11-cv-00417-MJP) - 1

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
Telephone (206) 624-0900

1 pronouncement that GHGs are "air contaminants" under state law; and (iii) therefore the

2 Washington SIP regulates GHGs.  The defects in this analysis are many:

- The CAA only authorizes SIP provisions for the purpose of attaining and maintaining NAAQS.  *See infra* § I.B-D.  GHGs are not criteria air pollutants.  These circumstances bear directly upon interpretation of the Washington SIP because regulation of GHGs in a SIP is *ultra vires.  See United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988) (intent may be clarified by the remainder of the statutory scheme "because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law").

- Neither the RACT nor the Nuisance Rules identify GHGs as specific pollutants to which they apply.  These provisions are "general" air control provisions applicable to whatever air emissions the SIP regulates.  Rather than establishing with certain clarity that the SIP regulates GHGs, the generality of these provisions begs the question at issue in this litigation – *i.e.*, what air pollutants does the SIP regulate?

- Until the Supreme Court's 2007 decision in *Massachusetts v. EPA*, 549 U.S. 497 (2007), EPA's interpretation was that the CAA did not regulate GHGs at all.  It defies logic that EPA considered GHGs outside the reach of the CAA until 2007, but nevertheless intended for provisions of the Washington SIP, adopted at least a decade earlier,[2] to apply to GHGs.

- The RACT Rule does not contain any reference to the term "air contaminant."  Instead, Plaintiffs rely upon a Washington statute that has <u>not</u> been incorporated into the SIP, and that, at most, permissively allows the Agencies to consider a range of unspecified air emissions where doing so is deemed "practicable" and "of concern" for a given source or source category.  *See* Dkt. 50 at 18-19.

- In approving Washington rules into the SIP, EPA has ensured that the reach of the Washington SIP is limited to NAAQS attainment strategies.  *See* 57 Fed. Reg. 44,530, 44,532 (Sept. 28, 1992) (excluding odor, particulate fallout, and hazardous air pollutant standards from Washington SIP); 76 Fed. Reg. 16,365, 16,366 (Mar. 23, 2011) (pending SIP amendment to clarify that provisions of

---

[2] Contrary to Plaintiffs' contention, the RACT Rule was approved into the Washington SIP in substantially the same form as it appears today by no later than September 1981.  *See* WAC 173-400-040 (1980); 48 Fed. Reg. 45,607, 45,609 (Table 52.2479) (Sept. 14, 1981) (Leppo Supp. Decl. Exs. 10-11).

INTERVENOR-DEFENDANT'S REPLY MEMORANDUM IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT (2:11-cv-00417-MJP) - 2

1    Washington SIP "must reasonably relate to attainment and maintenance of the
2    NAAQS").

3    • In addition to the absence of any plain language inclusion of GHGs in the SIP,
     there is no extrinsic evidence demonstrating that EPA ever considered GHGs in
4      enacting the RACT and Nuisance Rules of the SIP (or any other SIP provisions),
     let alone that they actually intended for the SIP to regulate GHGs (or presumed
5      they had authority under the CAA to do so).  To the contrary, for nearly 40 years,
     EPA has consistently interpreted the CAA to limit the reach of SIPs to NAAQS
6      attainment strategies.  *See infra* § I.D.

7    • There is also no extrinsic evidence demonstrating that the State of Washington
8      ever considered GHGs in proposing the RACT and Nuisance Rules for inclusion
     in the SIP.  However, there is clear and unrebutted extrinsic evidence that the
9      State of Washington, acting through Ecology, never intended for the RACT and
     Nuisance Rules to extend federal regulation to pollutants not otherwise regulated
10     under the SIP, such as GHGs.  *See* Dkt. 56 ¶¶ C-E (Clark Decl.).

11   Through this litigation, Plaintiffs ask the Court to insert GHG regulation into the SIP *post hoc*

12   even though doing so is not what EPA (or the state) intended, and even though doing so would

13   render the RACT and Nuisance provisions of the Washington SIP *ultra vires*.  *See generally*

14   *Sierra Club v. Sw. Wash. Clean Air Agency*, No. 09-108, 2010 WL 1636869, at *2 (Wash. PCHB

15   Apr. 19, 2010) (holding in an analogous situation that "[t]he interpretation of the air regulations

16   advanced by the Conservation Organizations does not comport with the legal framework

17   established by Congress and the resulting regulatory approaches enacted by the state Legislature,

18   Ecology, and SWCAA").

19   **B.    Plaintiffs Have Not Even Attempted To Reconcile Their Claims With Section 110 Of
           The CAA**
20
           As explained in the Agencies' and WSPA's opening briefs, Section 110 of the CAA only
21
     authorizes SIPs to implement strategies to attain and maintain NAAQS.  *See* Dkt. 50 at 6-11.
22
     The plain language of CAA Section 110 is amenable to no other interpretation, and indeed, there
23
     are *no cases* that reach a contrary conclusion.  *Id.*  Because GHGs are not a criteria pollutant or
24
     precursor (*i.e.,* an air pollutant or a precursor to an air pollutant for which a NAAQS has been
25
     established), no intent or purpose of Congress in Section 110 is served by SIP regulation of
26

INTERVENOR-DEFENDANT'S REPLY MEMORANDUM IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT (2:11-cv-00417-MJP) - 3

1   GHGs.  *Id.*  The only conclusion that is consistent with the plain language of Section 110 and

2   EPA's long-held interpretation of SIP authority is that a SIP may not regulate non-criteria

3   pollutants, such as GHGs.  *Id.*

4        Plaintiffs' response does not squarely address, let alone convincingly reconcile, the

5   conflict between the meaning of CAA Section 110, through which Congress authorized SIPs,

6   and Plaintiffs' interpretation of the Washington SIP.  Accordingly, the Agencies and WSPA's

7   explications of the meaning of Section 110 are entirely unrebutted.

8   **C.   The CAA Does Not Reserve To Each State The Option To Federalize Regulation Of
        Non-Criteria Pollutants Through A SIP**

9        Instead of grappling with the irreconcilable conflict between CAA Section 110 and the

10  basic premise of its claims, Plaintiffs assert that the CAA reserves to each state the ability to

11  enact federally enforceable SIP provisions that implement control strategies for any air pollutant.

12  *See* Dkt. 59 at 3-8.  This unprecedented argument ignores Section 110, misconstrues CAA

13  Section 116, misapplies inapposite caselaw and mischaracterizes WSPA's contentions.

14       First, it is well established that under Section 110 a state may implement control

15  measures *for criteria pollutants and precursors* that are more stringent than required to attain or

16  maintain federal ambient air standards.  *Union Electric Co. v. EPA*, 427 U.S. 246 (1976).

17  Plaintiffs overextend the reach of Section 110 and related caselaw to argue that so long as a

18  proposed SIP meets minimum federal standards, states are free to propose through a SIP, and

19  EPA must approve and federalize, any control measure for any air pollutant.  However,

20  Plaintiffs' expansive interpretation is both wholly without support in the plain language of the

21  statute and contrary to decades of consistent interpretation and application of Section 110 by

22  EPA.  *See* Dkt. 50 at 6-11.  Contrary to Plaintiffs' argument, Section 110 does not authorize SIP

23  provisions addressing any and all air pollutants.  *Id.*

24

25

26

INTERVENOR-DEFENDANT'S REPLY MEMORANDUM IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT (2:11-cv-00417-MJP) - 4

**STOEL RIVES LLP**
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone (206) 624-0900*

1    Second, it is clear that Section 116 of the CAA expressly preserves the rights of a state or

2  political subdivision to adopt and enforce *under state law* other pollution control measures

3  pertaining to other air pollutants.

4    Retention of State authority

5
   Except as otherwise provided . . . nothing in this Act shall preclude or deny the
6  right of any State or political subdivision thereof to adopt or enforce (1) any
   standard or limitation respecting emissions of air pollutants or (2) any
7  requirement respecting control or abatement of air pollution; except that if an
   emission standard or limitation is in effect under an applicable implementation
8  plan . . . such State or political subdivision may not adopt or enforce any emission
   standard or limitation which is less stringent than the standard or limitation under
9  such plan or section.

10  42 U.S.C. § 7416.  The plain language of Section 116 unambiguously *retains state authority*

11  rather than *extends federal authority*.  *Id.*  This reservation of authority to the states when acting

12  under state law cannot and does not inform the meaning and reach of Washington's federal SIP.[3]

13    Finally, Plaintiffs misstate and misapply the holdings in *Union Electric Co.*, *Duquesne*

14  *Light Co.*, and *Bridesburg*.  As addressed in WSPA's opening brief, *Union Electric Co.* and

15  *Duquesne Light Co. v. EPA*, 166 F.3d 609 (3d Cir. 1999), dealt with SIP regulation of criteria

16  pollutants, while *Concerned Citizens of Bridesburg v. EPA*, 836 F.2d 777 (3d Cir. 1987),

17  involved a SIP control measure adopted to attain the federal NAAQS for ozone and sulfur

18  dioxide.  *See* Dkt. 50 at 14.  As with their non-response to the plain language of CAA Section

19  110, Plaintiffs again studiously ignore, and therefore fail to reconcile, the distinguishing aspects

20  of these cases.

21

22

---

23    [3] Plaintiffs' expansive reliance upon Section 116 also conflicts with EPA's interpretation
24  of this statutory provision in the context of a SIP.  *See* 71 Fed. Reg. 13,551, 13,552-53 (Mar. 16,
   2006) (Dkt. 53 at Ex. 6) ("Section 116 of the CAA thus explains that unless pre-empted under
25  one of several enumerated provisions of the Act, the state may adopt regulations more stringent
   than those required under the Act.  It does not, however, as the commenter suggests, require that
26  any 'more stringent' state regulations be included as part of the federally enforceable SIP.").

INTERVENOR-DEFENDANT'S REPLY MEMORANDUM IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT (2:11-cv-00417-MJP) - 5

1       In *Union Electric Co.*, the Supreme Court held that Missouri could adopt, and EPA could

2   approve, SIP provisions enacting emission standards that are more stringent than the minimum

3   required to attain the sulfur dioxide NAAQS.  Sulfur dioxide is a criteria pollutant, and

4   accordingly, this case does not address regulation of non-criteria pollutants in a SIP.  Plaintiffs

5   make no attempt to address why the holding of *Union Electric Co.* informs, let alone determines

6   as a matter of law, the outcome of the pending claims regarding non-criteria pollutants.[4]

7       In *Duquesne Light Co.*, the Third Circuit dismissed on standing grounds the claims of an

8   electric utility challenging a Pennsylvania SIP provision that regulated criteria pollutants in a

9   non-attainment area.  Similar to the arguments rejected in *Union Electric Co.*, the utility argued

10  that EPA improperly approved into the SIP a provision more stringent than EPA's rule.  In

11  dismissing the utility's claims, the court observed that Section 110 does not prohibit a state from

12  proposing, and does not allow EPA to reject, a SIP that imposes more stringent standards for

13  regulation of criteria pollutants.  *Duquesne Light Co.*, 166 F.3d at 613.  Again, Plaintiffs make no

14  attempt to address how a holding pertaining to regulation of criteria pollutants in a manner more

15  stringent than required by federal standards is authority for extending the reach of SIPs to non-

16  criteria pollutants for which there are no applicable federal air quality standards at all.  *See id.* at

17  611 ("The SIP must specify emission limitations and other measures necessary for that region to

18  meet and maintain the required NAAQS.").

19          [4] Plaintiffs also mischaracterize Defendants' and WSPA's contentions in an effort to set

20  them up as a strawman for a non-responsive argument.  In *Union Electric Co.*, an electric utility
    objected to EPA's approval of Missouri's SIP sulfur dioxide limits on various grounds including,
21  among other things, that the sulfur dioxide limits were not "necessary" *because they were more
    stringent than needed to attain the applicable NAAQS.*  427 U.S. at 262.  Plaintiffs contend that
22  Defendants and WSPA are making the same argument here – that regulation of GHGs is not
    "necessary" to attain NAAQS.  *See* Dkt. 59 at 4-5.  However, the analogy does not fit.  GHGs are
23  not criteria pollutants and, thus, there is no applicable NAAQS.  Rather than arguing that GHG
    regulation is more stringent than necessary to attain an applicable NAAQS, the point here is that
24  *regulation of GHGs in a SIP is entirely irrelevant to attaining or maintaining any NAAQS.*
    Plaintiffs ignore this central distinction between the *Union Electric Co.* decision and the issues
25  presented here.  *See generally Union Electric Co.*, 427 U.S. at 249 (emphasizing that the "heart"
    of Section 110 "is the requirement that each State formulate, subject to EPA approval, an
26  implementation plan designed to achieve national primary ambient air quality standards").

INTERVENOR-DEFENDANT'S REPLY MEMORANDUM IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT (2:11-cv-00417-MJP) - 6

1      Finally, in *Bridesburg*, the Third Circuit addressed a challenge to EPA's deletion of an

2   odor provision of the Pennsylvania SIP without engaging in notice and comment rulemaking.

3   The disputed regulation was approved into the SIP at a time when it was EPA's policy to

4   approve odor provisions as a control measure for attaining the NAAQS for ozone and sulfur

5   compounds. *See* Dkt. 50 at 14; *Bridesburg*, 836 F.2d at 781-82, 787 (observing that

6   Pennsylvania considered its odor regulations "an adjunct to regulation of ozone and sulfur

7   compounds"). The court determined that EPA was required to engage in notice and comment

8   rulemaking, which is a holding of no application here. In so doing, the Third Circuit left

9   undecided whether Pennsylvania's odor rule could be maintained in the SIP if the state could not

10   justify odor regulation as a NAAQS attainment strategy. 836 F.2d at 781 n.3 ("substantive

11   contentions" of parties not reached). Plaintiffs here neither acknowledge the critical distinction

12   that the odor regulation was adopted as a NAAQS attainment strategy nor explain how a decision

13   that did not reach any substantive issues is meaningful authority in support of their claims.[5]

14   **D.   EPA's Long-Standing Interpretation Of The CAA Is Permissible And Controlling**

15      If the plain language of Section 110 is not otherwise clear regarding the reach of SIP

16   authority, then under step two of the applicable *Chevron* analysis, EPA's long-standing

17   construction of the CAA regarding this issue must be accepted as long as it is permissible.

18   *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984); *see* Dkt. 50

19

20      [5] Plaintiffs' reliance upon analogy to the Clean Water Act ("CWA"), as interpreted in

21   *PUD No. 1 of Jefferson County v. Washington Department of Ecology*, 511 U.S. 700 (1994), is
     also misplaced. The Court in *PUD No. 1* did not look to decisions interpreting the CAA at all,

22   let alone decisions pertaining to CAA Section 110, nor is there any indication that Congress
     looked to the CWA in enacting CAA Section 110. To the extent there is an analogy to be made,

23   it is that in *PUD No. 1* the Supreme Court looked first to the statutory provisions of federal law
     in determining the scope of state authority to impose federally enforceable limits. In sustaining

24   the actions of the state, the Court validated EPA's interpretation of the CWA and rejected
     petitioners' reading because it led "to an unreasonable interpretation of the Act." *Id.* at 717.

25   Here, Plaintiffs want this Court to interpret the Washington SIP in the abstract, without reference
     to the underlying authorizing statute, as interpreted by EPA, and without considering the

26   unreasonable results of their interpretation in light of the CAA's statutory scheme.

INTERVENOR-DEFENDANT'S REPLY MEMORANDUM IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT (2:11-cv-00417-MJP) - 7

1    at 8.  Since the early 1970s, EPA has consistently interpreted the CAA to limit the reach of SIPs

2    to criteria pollutants:

3           [M]easures to control non-criteria pollutants may not legally be
            made part of a SIP.  Section 110 of the Clean Air Act makes clear
4           that the SIPS have this limitation.

5    Dkt. 52 at Ex. 1; *see* Dkt. 50 at 8-10.  In response, Plaintiffs both ignore the applicable *Chevron*

6    analysis and assert misdirected objections.

7           1.      **Chevron deference**

8           Where a court reviews an agency's interpretation of a statute it is charged with

9    administering, the Supreme Court's opinion in *Chevron* provides the appropriate framework of

10   review.  The first step is for the court to determine "whether Congress has directly spoken to the

11   precise question at issue."  *Chevron*, 467 U.S. at 842.  "If the intent of Congress is clear, that is

12   the end of the matter; for the court, as well as the agency, must give effect to the unambiguously

13   expressed intent of Congress."  *Id.* at 842-43.  If the court concludes that the statute is either

14   silent or ambiguous with respect to the precise question at issue, the second step of the court's

15   review process is to determine whether the interpretation proffered by the agency is "based on a

16   permissible construction of the statute."  *Id.* at 843.  A court is not empowered to substitute its

17   own construction of a statutory provision for that of an agency; it can only hold the agency to

18   "minimal standards of rationality."  *Ethyl Corp. v. EPA*, 541 F.2d 1, 36 (D.C. Cir. 1976); *see*

19   *Chevron*, 467 U.S. at 844.[6]

20          The opening briefs of the Agencies and WSPA address in detail EPA's interpretation that

21   Congress did not intend to authorize SIPs to regulate non-criteria pollutants because doing so

22   would in no way further the express purpose of SIPs to attain and maintain NAAQS.  EPA's

23   ─────────────

24          [6] The only court to expressly voice the question whether, in CAA Section 110, Congress
     intended to allow SIPs to regulate matters unrelated to NAAQS concluded that "Congress simply
25   did not contemplate that SIPs might include matters unrelated to NAAQS."  *Bridesburg*, 836
     F.2d at 785.  If, as suggested by the Third Circuit in *Bridesburg*, the statute is silent or
26   ambiguous, then this is a textbook instance for application of step two of the *Chevron* analysis.

INTERVENOR-DEFENDANT'S REPLY MEMORANDUM IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT (2:11-cv-00417-MJP) - 8

1   construction of its SIP authority has remained consistent for approaching 40 years and is soundly

2   grounded in both the language and structure of the statute, and EPA's expertise and experience:

3
> Section 110 of the CAA requires States to adopt and submit to
> EPA for approval State Implementation Plans (SIPs) to implement,
4
> maintain, and enforce the NAAQS.  In general, State and local
> regulations approved by EPA into the SIP under Section 110 of the
5
> CAA must reasonably relate to attainment and maintenance of the
> NAAQS.
6

7   76 Fed. Reg. at 16,366 (Dkt. 53-1).  The Supreme Court has repeatedly accorded EPA's

8   interpretations of the CAA, including its interpretation of Section 110 in a different context,

9   "great deference."  *See, e.g., Union Electric Co.*, 427 U.S. at 483.[7]  Lacking any rebuttal,

10   Plaintiffs' response is silent as to why EPA's construction of the reach of Section 110 is not

   permissible, and therefore binding, pursuant to a *Chevron* step two analysis.

11        **2.**     **Plaintiffs' alternative efforts to distinguish EPA's interpretation are**

12               **ineffective**

13         Instead of engaging in an analysis of the applicable step two *Chevron* standard, Plaintiffs

14   assert that EPA's interpretation of Section 110 applies in narrow circumstances not present here.

15   First, Plaintiffs state that EPA's actions to limit the scope of a SIP to NAAQS attainment

16   provisions all occurred in the context of formal rulemaking processes to withdraw certain SIP

17   provisions.  *See* Dkt. 59 at 9-10.  However, Plaintiffs' observation is wrong and, in any event, the

18   procedural context of EPA's interpretations is irrelevant.  EPA's consistent interpretation of

19   Section 110 is evident in many contexts, including general agency memoranda (*e.g.,* Dkt. 53 at

20   Ex. 1), numerous agency responses to proposals by a state to amend a SIP to include rules that

21             [7] Notably, at the time of the *Union Electric Co.* decision, EPA's full interpretation of
22   Section 110 was (and still is) twofold:  (i) Section 110 authorizes states to adopt, and EPA to
   approve, SIP provisions that regulate NAAQS pollutants more stringently than are required to
23   attain a NAAQS; and (ii) Section 110 does not authorize SIP provisions that regulate non-criteria
   pollutants in a manner that is entirely irrelevant to attaining or maintaining a NAAQS.  The
24   Supreme Court in *Union Electric Co.* addressed and adopted the first part of EPA's interpretation
   of Section 110.  This case squarely presents, as a matter of first impression by the courts, the
25   second part of EPA's interpretation of Section 110.  Plaintiffs do not even attempt to explain
   why part of EPA's interpretation of Section 110 is entitled to "great deference" from the
26   Supreme Court but the other part of EPA's interpretation of Section 110 must be ignored.

INTERVENOR-DEFENDANT'S REPLY MEMORANDUM IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT (2:11-cv-00417-MJP) - 9

1    regulate non-criteria pollutants (*e.g., id.* at Exs. 2-4), and proposed and final rules amending SIPs

2    (*e.g., id.* at Exs. 5-7).  Moreover, it is the permissibility, clarity, and consistency of EPA's

3    interpretation of Section 110 in each instance over a period of decades that matters, not the exact

4    procedural nature of each communication or action in which EPA's interpretation appears.

5            Here, the question is not what EPA must do *if* the Washington SIP improperly regulates

6    GHGs, but *whether* the Washington SIP regulates GHGs.  EPA's interpretation of Section 110

7    informs this Court's interpretation of the intent of the Washington SIP.  *See, e.g., Pension Benefit*

8    *Guar. Corp. v. Carter & Tillery Enters.*, 133 F.3d 1183, 1186 (9th Cir. 1998) (courts "derive

9    meaning from context, and this requires reading the relevant statutory provisions as a whole"

10   (internal quotation marks and citation omitted)); *Safe Air for Everyone v. EPA*, 475 F.3d 1096,

11   1105-06 (9th Cir. 2007) (regulation should not be read to contradict clearly expressed

12   administrative intent or to lead to absurd results).  Section 110 either does or does not extend SIP

13   authority to regulation of all air pollutants, and EPA's interpretation of Section 110 is either

14   permissible or it is not.[8]

15

16   _____

          [8] Plaintiffs' reliance on a Delaware SIP rule as an indicator of EPA's views on the
17   permissible scope of SIP regulation is not persuasive. Dkt. 59 at 5.  In 2007, Delaware submitted
     for SIP approval a new regulation that controlled emissions from diesel-fired electric generators.
18   The regulation set emission limits for five criteria pollutants and for $CO_2$.  *See* Del. Dep't of
     Natural Resources Regulation No. 1144 – Control of Stationary Generator Emissions 9 (cited in
19   Dkt. 59 at 9).  EPA proposed to approve the Delaware regulation in a two-page Federal Register
     notice in which EPA said that the regulation "will help to ensure that the air emissions from new
20   and existing stationary generators do not cause or contribute to the existing air quality problems
     with regard to ground level ozone and fine particulate matter." 73 Fed. Reg. 11,845, 11,846
21   (Mar. 5, 2008).  However, the EPA notice did not mention GHGs and no one commented on the
     proposed rule.  EPA approved it without public comment, once again stating that the rule would
22   address ozone and fine particulate air quality problems. 73 Fed. Reg. 23,101, 23,102 (Apr. 29,
     2008).  The 2010 Federal Register notice that Plaintiffs cite in their brief is not EPA's approval
23   of Regulation No. 1144 into the SIP, but rather a formatting update to the entire SIP.  Like the
     actual SIP approval two years earlier, the 2010 notice does not mention GHGs. 75 Fed. Reg.
24   48,566 (Aug. 11, 2010).  EPA processes dozens of SIP amendments each year.  The GHG
     emission standard in the Delaware rule attracted no one's attention, and EPA approved it without
25   comment.  In offering this isolated example to refute the many deliberate EPA statements that
     SIPs must be limited to control of criteria pollutants, Plaintiffs reveal the weakness of their
26   argument.

INTERVENOR-DEFENDANT'S REPLY MEMORANDUM IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT (2:11-cv-00417-MJP) - 10

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone (206) 624-0900*

70908606.6 0052991-00002

1    Next, Plaintiffs contend that the reach of a SIP may be limited only to the extent that a

2    SIP provision is "readily severable from the rest of the SIP."  *See* Dkt. 59 at 10.  According to

3    Plaintiffs, application of the RACT and Nuisance provisions of the Washington SIP to all air

4    pollutants, including GHGs, is "not readily severable."  *Id.*  To the extent this make-weight

5    contention is comprehensible, it fails because there is literally no authority or support for such a

6    distinction.  There is nothing in the CAA, decades of SIP administrative action, or the caselaw

7    that even mentions it.  Moreover, the argument yet again assumes the very issue in dispute:

8    whether the Washington SIP regulates GHGs.  If the RACT and Nuisance provisions of the

9    Washington SIP do not regulate GHGs, there is nothing to sever.

10    Finally, Plaintiffs attempt to redefine EPA's interpretation of Section 110 by limiting it to

11    odor issues.  *See id.* at 10-11.  However, Plaintiffs' efforts to cramp the scope of EPA's

12    interpretation are nothing more than an exercise in denial.  To begin with, yet again, there is no

13    authority or rationale offered for the notion that in enacting Section 110, Congress somehow

14    limited the reach of SIPs to exclude odor but include other non-criteria pollutants.  Moreover,

15    EPA has plainly stated its interpretation that Section 110 does not authorize SIPs to regulate non-

16    NAAQS pollutants in terms that are not limited to odor or any other subset of non-criteria

17    pollutants.  *See, e.g.,* Dkt. 53 at Ex. 1 ("[M]easures to control non-criteria pollutants may not

18    legally be made part of a SIP.  Section 110 of the Clean Air Act makes clear that the SIPs have

19    this limitation.").  Over a period of nearly 40 years, EPA has consistently expressed and applied

20    this interpretation in contexts entirely unrelated to odor.  *See, e.g.,* 40 Fed. Reg. 33,215 (Aug. 7,

21    1975) (EPA determination that portion of Oregon SIP addressing "total reduced sulfur (TRS)" is

22    not enforceable by EPA "[b]ecause TRS is not a pollutant for which a national ambient air

23    quality standard has been established") (Leppo Supp. Decl. at Ex. 12); Dkt. 53 at Ex. 1 at 2

24    (EPA's James Memorandum listing fluorides and arsenic as examples of non-criteria pollutants

25    excluded from regulation in a SIP based upon interpretation of Section 110); 57 Fed. Reg. at

26

INTERVENOR-DEFENDANT'S REPLY MEMORANDUM IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT (2:11-cv-00417-MJP) - 11

1   44,532 (EPA decision excluding non-criteria pollutants from Washington SIP, including

2   standards applicable to toxic air pollutants).[9]

3   **II.  THE RACT RULE DOES NOT REQUIRE THE AGENCIES TO**
    **CONDUCT A RACT ANALYSIS FOR GHG EMISSIONS**
4   **FROM WASHINGTON OIL REFINERIES**

5   Plaintiffs contend that the "plain meaning" of the Washington SIP RACT Rule requires

6   the Agencies to both determine what GHG emission control strategies are RACT for oil

7   refineries, and then order the oil refineries to implement RACT.  *See* Dkt. 59 at 12.  Plaintiffs

8   provide no textual support for their arguments and, instead, urge the Court to conclude that the

9   RACT Rule "must include" these obligations because doing so would further the general

10  purposes of Washington's air emission regulations and because the RACT Rule would be

11  superfluous if RACT analysis is a permissive right, but not an obligation, of the Agencies.  *Id.* at

12  17.  However, these arguments are little more than "plaintiff's own notion of proper

13  environmental policy" repackaged as SIP interpretation.  *Cmtys. for a Better Env't v. Cenco Ref.*

14  *Co.*, 180 F. Supp. 2d 1062, 1076 (C.D. Cal. 2001).

15  To begin with, citations demonstrating that the state's air regulatory framework is

16  intended to protect the environment and control air emissions add no value to interpretation of

17

18  _____

19  [9] Plaintiffs' related explication of the treatment of odor in SIPs by EPA in the context of
    the *Bridesburg* decision is over-simplified.  When EPA first interpreted application of Section
20  110 in the 1970s, it used odor as one of several examples of non-criteria pollutants excluded
    from SIP regulation.  *See* Dkt. 53 at Ex. 1 at 2.  Later, EPA approved odor provisions into
21  various SIPs based upon a judgment that odor regulation was an attainment strategy for ozone
    and sulfur compounds.  *Bridesburg*, 836 F.2d at 781-83.  Subsequent studies led EPA to
22  conclude that odor regulation is not a valid NAAQS attainment strategy and to remove these
    provisions from SIPs.  *Id.*  What this complicated history demonstrates is that EPA's *consistent*
23  *interpretation* of Section 110 to exclude provisions from SIPs that do not pertain to NAAQS
    pollutants has resulted in *changing applications* in the context of odor.  However, there are no
24  similar complications in applying EPA's interpretation of Section 110 to GHGs.  There is no
    contention that Congress, EPA, or the State of Washington *ever considered*, let alone
25  determined, that regulation of GHGs is a strategy for attainment of NAAQS.  *See* Dkt. 50 at 11
    n.10 (explaining why development of a GHG NAAQS would be problematic).

26

INTERVENOR-DEFENDANT'S REPLY MEMORANDUM IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT (2:11-cv-00417-MJP) - 12

1   the RACT Rule in this context.[10]  Every regulatory statute contains general purpose language,

2   and yet Congress and state legislatures have made myriad judgments about what to require or not

3   require, and where to mandate action or to allow for agency discretion.

4           [N]o legislation pursues its purposes at all costs.  Deciding what
            competing values will or will not be sacrificed to the achievement
5           of a particular objective is the very essence of legislative choice –
            and it frustrates rather than effectuates legislative intent
6           simplistically to assume that *whatever* furthers the statute's
            primary objective must be the law.

7   *Rodriguez v. United States*, 480 U.S. 522, 525-26 (1987) (emphasis in original).[11]

8           Similarly, a reading of WAC 173-400-040 that vests the Agencies with the discretion to

9   decide if a RACT review is warranted in no way renders the RACT Rule superfluous.[12]  *See,*

10  *e.g., Young v. Cmty. Nutrition Inst.*, 476 U.S. 974, 984 (1986) (rejecting construction of

11  provision as non-discretionary and explaining that "[s]imply because the FDA is given the

12  choice between employing the standard . . . does not render [the statutory provision]

13  _____

14      [10] Notably, the primary source drawn upon by Plaintiffs to demonstrate the "larger
    statutory and regulatory framework" of the SIP RACT Rule is a Washington statute that is not
15  part of the Washington SIP.  Dkt. 59 at 14 (citing RCW 70.94.011).  Plaintiffs do not explain
    how citation to an extraneous Washington statute informs this Court's interpretation of the
16  federal CAA and related regulatory provisions adopted into a SIP.

17      [11] *See also Puget Soundkeeper Alliance v. State*, 9 P.3d 892, 894-95 (Wash. Ct. App.
    2000) (rejecting analogous argument that, based upon Washington's policy to ensure protection
18  of water quality, AKART ("all known available and reasonable method of prevention, control, or
    treatment") Rule implementing federal CWA must be interpreted to require Ecology to develop
19  and enforce numeric limits on certain effluent discharges).

20      [12] Plaintiffs' response does not address the Washington Pollution Control Hearings Board
    ("PCHB") decision in *Sierra Club*, 2010 WL 1636869, cited in WSPA's opening brief.  There, in
21  interpreting the RACT requirements in context of state law, the PCHB held:

22          Appellants argue about the actions SWCAA *could* have taken.  These
            actions include the determination of RACT by rule pursuant to RCW
23          70.94.154(1) and (3); and the issuance of a RACT order in accordance with RCW
            70.94.154(3)(c).  The Board does not disagree that SWCAA has the authority to
24          undertake such actions. . . .  These statutory provisions are permissive and lie
            within the discretion of the local air authority.

25  *Id.* at *12 (emphasis in original).  Again here, Sierra Club seeks to convert a permissive agency
26  process for RACT into a mandatory SIP requirement.

INTERVENOR-DEFENDANT'S REPLY MEMORANDUM IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT (2:11-cv-00417-MJP) - 13

1    superfluous").  There is no rule of statutory construction that implements Plaintiffs' policy

2    preference that more regulation is always better regulation.  Nor is there a rule of regulatory

3    construction (or any other authority) that interpretations confirming agency discretion in

4    implementation render the underlying provisions entirely superfluous.

5         While accusing Defendants of an "effort to slice and dice the plain language," Plaintiffs'

6    interpretation of the RACT Rule butchers the regulation in order to transform its meaning.

7    Plaintiffs interpret the RACT Rule to read as follows:

8         ~~Further, all emissions units are required to use reasonably available~~
          ~~control technology (RACT) which may be determined for some~~
9         ~~sources or source categories to be more stringent than the~~
          ~~applicable emission limitations of this chapter of Title 173 WAC.~~
10        Where current controls are determined to be less than RACT,
          ~~e~~Ecology or the authority shall ~~, as provided in section 8, chapter~~
11        ~~252, Laws 1993,~~ define RACT <u>for all air contaminants</u> for each
          source or source category and issue a rule or regulatory order
12        requiring the installation of RACT.

13   WAC 173-400-040 (1993) (strikeouts and underlining added).

14        The RACT Rule, as adopted, does not require the Agencies to determine RACT for GHG

15   emissions by refineries.  Instead, the first sentence of the RACT Rule requires "emissions units"

16   to "use . . . RACT."  Just because Plaintiffs would prefer that the rule impose a duty on the

17   Agencies to affirmatively determine RACT does not make it so.  To the contrary, as established

18   in the second sentence of the RACT Rule, only "[w]here current controls are determined to be

19   less than RACT" are the Agencies required to "define RACT for each source or source category

20   and issue a rule or regulatory order requiring the installation of RACT."[13]  Even then, the RACT

21   Rule nowhere references "air contaminants," let alone GHGs, and nowhere mandates or

22

23

24        [13] Importantly, Plaintiffs' response makes clear that they do not seek to establish in this
     litigation that current controls by the oil refineries are "less than RACT" for GHGs.  *See* Dkt. 59
25   at 24 (disclaiming any attempt to prove that current controls are not RACT); *id.* at 27 (admitting
     that none of the material submitted by Plaintiffs is offered to prove the truth of the matters
26   asserted).

INTERVENOR-DEFENDANT'S REPLY MEMORANDUM IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT (2:11-cv-00417-MJP) - 14

1    prioritizes oil refineries, or GHG emissions, for RACT review.[14]  In effect, to bring the RACT

2    Rule in line with their policy preferences, Plaintiffs rewrite the RACT Rule both to render

3    significant portions of the regulation superfluous and to insert additional terms that are not

4    present.  *See Action for Rational Transit v. W. Side Highway Project*, 699 F.2d 614, 616-18 (2d

5    Cir. 1983) ("It is clear that what [plaintiff] seeks is not relief from violations of the existing SIP

6    so much as revisions of the SIP by way of relief to make that document conform to [plaintiff's]

7    notion of proper environmental policy . . . .  These are policy matters going to the administration

8    of the [CAA] . . . and have nothing to do with the power of the courts.").

9         In sum, the RACT Rule does not mandate the actions Plaintiffs allege the Agencies have

10   failed to undertake.  Accordingly, the Agencies are not in violation of the SIP RACT Rule.

11   **III.  THE AGENCIES ARE NOT IN VIOLATION OF THE NUISANCE RULE**

12   **A.    The Nuisance Rule Is Not An Emission Standard Or Limitation And, Thus, Is Unenforceable In A CAA Citizen Suit**

13

14        Section 304(a)(1) of the CAA authorizes citizen suits only for alleged violations of an

15   "emission standard or limitation."  42 U.S.C. § 7604(a)(1).  The Washington Nuisance Rule is

16   precisely the kind of highly subjective SIP provision that the courts have held Congress

17   intentionally excluded from citizen suit enforcement through the defined terms "emission

18   standard" and "emission limitation."  *See* 42 U.S.C. § 7602(k); Dkt. 50 at 21-22.  Plaintiffs have

19   responded with little more than denial of the obvious generality and subjectivity of the rule.

20        The Nuisance Rule states:

21        No person shall cause or allow the emission of any air contaminant
          from any source if it is detrimental to the health, safety, or welfare
          of any person, or causes damage to property or business.

22   WAC 173-400-040(6).  It is hard to imagine a less specific or more subjective standard and,

23   indeed, nuisance provisions of this type are the prototypical example of SIP provisions that

24   _____

25        [14] As previously addressed, RCW 70.94.154 is not incorporated into the SIP and, in any
     event, only provides a process for establishing RACT for source or source categories when there
26   has been a determination that current controls are "less than RACT."  *See* Dkt. 50 at 18-19.

INTERVENOR-DEFENDANT'S REPLY MEMORANDUM IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT (2:11-cv-00417-MJP) - 15

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
Telephone (206) 624-0900

1   courts have held unenforceable through a CAA citizen suit.[15]  Plaintiffs do not discuss, let alone

2   distinguish, the cases cited in WSPA's opening brief, which reject CAA citizen suit actions to

3   enforce nuisance-like provisions of SIPs.  *See* Dkt. 50 at 22-23.[16]

4          Instead, relying upon *Sierra Club*, 2010 WL 1636869, a case that Plaintiffs otherwise

5   strive to ignore, Plaintiffs assert that the Nuisance Rule is "enforceable as written."  Dkt. 59 at

6   19.  However, this contention both turns on its head the argument plaintiff Sierra Club presented

7   to the Washington Pollution Control Hearing Board ("PCHB") and misrepresents the PCHB's

8   holding.  In *Sierra Club*, the appellants appealed to the PCHB the local air agency's issuance of

9   an air operating permit to the TransAlta power plant in Centralia.[17]  Relying upon the RACT and

10  Nuisance Rules, both of which the PCHB characterized as "general emissions standards," Sierra

11  Club argued that the Southwest Clean Air Agency ("SWCAA") was required to develop and

12  enforce facility-specific emissions limits for GHGs and certain other pollutants.  Among other

13

14          [15] *See Helter v. AK Steel Corp.*, No. C-1-96-527, 1997 U.S. Dist. LEXIS 9852, at *50-51
    (S.D. Ohio Mar. 31, 1997) (dismissing plaintiffs' claim and explaining that the CAA citizen suit
15  provision only authorizes suits "to enforce specific quantifiable standards and limitations," and
    the nuisance provision at issue "contains no specific standard or limitation"); *Satterfield v. J.M.*
16  *Huber Corp.*, 888 F. Supp. 1561, 1566 (N.D. Ga. 1994) (rejecting plaintiffs' claim because
    "citizens cannot sue for alleged violations of a nonobjective standard," such as the nuisance-like
17  provisions at issue); *Paper, Allied-Industrial, Chem. & Energy Workers Int'l Union v. Cont'l*
    *Carbon Co.*, No. 04-0438, 2005 WL 1389431, at *14 (W.D. Okla. 2005) (rejecting plaintiffs'
18  claims involving a nuisance-like provision in a SIP because the court was "persuaded by the
    cases which have concluded that a citizen suit may not be maintained to enforce non-objective
19  standards, even if those standards are in an SIP or permit provision").

20          [16] Plaintiffs' reliance on *Communities for Better Environment v. Cenco Refining Co.*, 180
    F. Supp. 2d 1062 (C.D. Cal. 2001), to support their argument is misplaced.  *See* Dkt. 59 at 19.  In
21  *Cenco*, the SIP provisions, while not numeric, were held to be clearly specific, concrete, and
    objective, rather than subjective, tests.  180 F. Supp. 2d at 1077.  Here, neither the Agencies nor
22  WSPA contends that only numeric provisions of a SIP are enforceable.  Rather, in contrast to the
    provisions at issue in *Cenco*, the Washington Nuisance Rule is not the kind of "'objective
23  evidentiary standard(s)'" Congress intended would be enforceable through a CAA citizen suit.
    *Id.* at 1078 (quoting S. Rep. No. 91-1196, 91st Cong., 2d Sess. 36 (1970)).

24          [17] The TransAlta coal-fired power plant is a source of more GHG emissions than all of
    the Washington oil refineries combined.  *Compare Sierra Club*, 2010 WL 1636869, at *4
25  (TransAlta's 2008 GHG emissions were approximately 10.5 MMt $CO_2$e), *with* Dkt. 51 at ¶ 4
    (collective oil refinery GHG emissions in 2008 were 5.9 MMt $CO_2$e).

26

INTERVENOR-DEFENDANT'S REPLY MEMORANDUM IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT (2:11-cv-00417-MJP) - 16

1    contentions, Sierra Club argued that in order for the Nuisance Rule to be an enforceable limit,

2    SWCAA was required to develop and implement "some objective, measurable standard, or

3    condition . . . beyond what is expressed in the general emissions standards." 2010 WL 1636869,

4    at *7. In response, the PCHB cited to numerous examples of *agency enforcement* of the

5    Nuisance Rule and concluded that the rule is "enforceable as written" by Ecology and local air

6    control agencies. *Id.* at *9. The PCHB further held that the Nuisance Rule neither required nor

7    could reasonably accommodate Sierra Club's contention that this "general" rule mandates

8    development of specific emission limits for GHGs or any other air pollutant. *Id.*

9          The PCHB's statement in *Sierra Club* that the Nuisance Rule is "enforceable as written"

10   by air agencies does not inform the question of whether the rule is sufficiently objective and

11   specific to meet the requirements established by Congress for an "emission standard or

12   limitation" enforceable in a CAA citizen suit. The PCHB was not presented with, and did not

13   address, this question. On the other hand, as documented in the PCHB's decision, Sierra Club

14   argued that the Nuisance Rule is <u>not</u> an objective and specific standard. This contention is a fatal

15   admission that cannot be squared with Sierra Club's argument here.

16   **B.      Plaintiffs' Interpretation Of The Nuisance Rule Is Illogical**

17         Plaintiffs next contend that because the Agencies fit within the definition of a "person"

18   under the Washington SIP (*i.e.,* government agencies), the Agencies must be in violation of the

19   rule for "*allowing*" the refineries to emit GHGs to a degree that violates the Nuisance Rule (*i.e.,*

20   "harms the public health or welfare or that damages property or business"). *See* Dkt. 59 at 18.

21   This interpretation of the Nuisance Rule would produce an absurd result and, as applied here, is

22   dependent upon facts not in evidence.

23         Plaintiffs cite to no authority – and there is none – for the proposition that an air control

24   agency that does not take enforcement action against an emission source based upon the

25   Nuisance Rule shall itself be deemed as a matter of law in violation of the Nuisance Rule for

26   "allowing" allegedly harmful emissions to occur. There is no authority for this argument

INTERVENOR-DEFENDANT'S REPLY MEMORANDUM IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT (2:11-cv-00417-MJP) - 17

1    because it is a thinly veiled attempt to compel discretionary enforcement action disguised as

2    regulatory interpretation.  As addressed in WSPA's opening brief, it is well established that

3    federal citizen suits cannot be used to force an agency to undertake enforcement action.  *See* Dkt.

4    50 at 26-27; *Heckler v. Chaney*, 470 U.S. 821, 837 (1985).

5            Even if Plaintiffs' interpretation were correct rather than absurd, WSPA would be entitled

6    to summary judgment dismissing the Nuisance Rule claim.  Under Plaintiffs' reformulated

7    theory, proof that the oil refineries are violating the Nuisance Rule is an essential element of

8    their claim; otherwise, it cannot be shown that the Agencies are "allowing" a violation of the

9    Nuisance Rule.  However, unless any and all GHG emissions by any and all sources constitute

10   violations of the Nuisance Rule, which is an argument even Plaintiffs have not made, there is no

11   basis upon which this Court may find as a matter of law that the oil refineries are in violation of

12   the Nuisance Rule.[18]  Stated otherwise, even if the Agencies could violate the Nuisance Rule by

13   failing to take enforcement action against an emission source, the Agencies cannot be "allowing"

14   a violation to occur unless Plaintiffs first prove that there is a violation.

15   **C.    The Nuisance Rule Does Not Authorize Or Require Agencies To Undertake Any
            Rulemaking**

16

17           Plaintiffs further argue that the Nuisance Rule must be interpreted to "compel the

     Agencies to comply with their *regulatory obligation* to engage in [a] *technical exercise*."  *See*

18   Dkt. 59 at 20 (emphasis added).  However, there is no textual support in the rule and no other

19   authority that demonstrates an intent to establish any "regulatory obligation" of the Agencies to

20   perform any "technical exercise."  This is precisely the argument the PCHB rejected in *Sierra*

21   *Club*, 2010 WL 1636869, at *8-9 (Nuisance Rule "does not require the setting of emission limits

22

23   _____

          [18] *See* Dkt. 59 at 24 (assertion that "Plaintiffs are not required to prove the Refineries are

24   causing a nuisance"); *id.* at 27 (Plaintiffs' admission that none of the documents they have
     submitted "are 'offered to prove the truth of the matter asserted'"); *see also* Dkt. 52 at ¶¶ 7-13

25   (uncontested expert declaration that the oil refineries' GHG emissions do not cause, and cannot
     be correlated with, climate change in Washington or climate change effects on public health,

26   welfare, business, or property).

INTERVENOR-DEFENDANT'S REPLY MEMORANDUM IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT (2:11-cv-00417-MJP) - 18

1    on specific pollutants"; translation of Nuisance Rule into "more specific, measurable narrative,

2    or numerical limits . . . would create and impose a new substantive standard in the absence of

3    authority to do so"; and adoption of Sierra Club's "expansive reading" of Nuisance Rule "would

4    swallow the rules regarding other air pollution limits and would result in local air authorities

5    being required to determine case-by-case limits for numerous air contaminants").[19]

6    **D.    Plaintiffs Are Barred From Relitigating Whether The Nuisance Rule Mandates
        Development Of Specific Emissions Standards For GHGs**

7              Under the principles of collateral estoppel, Plaintiffs should be prohibited from re-

8    arguing that the Nuisance Rule imparts an obligation on the Agencies to determine and

9    implement emissions controls for specific pollutants. *See* Dkt. 50 at 24-26. Under the collateral

10   estoppel doctrine, once an issue is actually litigated and necessarily decided, that determination

11   is conclusive in subsequent suits based on a different cause of action but involving a party to the

12   prior litigation. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.5 (1979); *Hydranautics v.*

13   *FilmTec Corp.*, 204 F.3d 880, 885 (9th Cir. 2000); *Shoemaker v. City of Bremerton*, 745 P.2d

14   858, 860 (Wash. 1987). In response, Plaintiffs contend that collateral estoppel fails because the

15   parties in this action are not identical in all respects to those in *Sierra Club*. *See* Dkt. 59 at 23.[20]

16

17          [19] Moreover, interpreting the Nuisance Rule to require the Agencies to undertake
18   rulemaking would violate the Tenth Amendment, which provides: "The powers not delegated to
     the United States by the Constitution, nor prohibited by it to the States, are reserved to the States
19   respectively, or to the people." The Tenth Amendment constrains the ability of Congress to
     "direct or otherwise motivate the States to regulate in a particular field or a particular way." *New*
20   *York v. United States*, 505 U.S. 144, 161 (1992). While Congress may encourage a State to
     regulate in a particular way – for example, by attaching conditions to the receipt of federal funds
21   or by offering states the choice of regulating by federal standards or having their state law
     preempted – nothing would allow Congress to authorize a citizen suit for violation of state law.
22   *See id.* at 166-168.

23          [20] Plaintiffs also half-heartedly argue that the claims here are somehow different from
     those in *Sierra Club*. However, the question of whether Washington's Nuisance Rule requires
24   the Agencies to determine and implement emissions controls for specific air contaminants, such
     as GHGs, was the *precise* issue decided by the PCHB in *Sierra Club*, and accordingly, the issues
25   are identical. *See* Dkt. 50 at 24-26. Plaintiffs do not dispute that the second (a final judgment on
     the merits) and fourth (application of the doctrine must not work an injustice on the party against
26   whom it is applied) prongs of the four-part collateral estoppel test are met.

INTERVENOR-DEFENDANT'S REPLY MEMORANDUM IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT (2:11-cv-00417-MJP) - 19

1    However, the inclusion of the Washington Environmental Council ("WEC") as a co-plaintiff

2    with Sierra Club here is no shield to the application of collateral estoppel.

3        Washington once required strict mutuality of the parties to apply issue and claim

4    preclusion; however, it has since adopted a more lenient, modern approach.  *See Washington v.*

5    *Mullin-Costin*, 95 P.3d 321, 324 (Wash. 2004) (explaining that mutuality of parties is satisfied

6    "so long as the party against whom preclusion is sought was a party *or in privity with a party to*

7    *the prior litigation*" (emphasis added)).  Under the modern approach, "nominally different

8    parties" will satisfy the "identity of the parties" inquiry if the later party possesses "sufficiently

9    identical interests" to a previous litigant.  *In re Recall of Pearsall-Stipek*, 961 P.2d 343, 346

10   (Wash. 1998); *see also Snyder v. Munro*, 721 P.2d 962, 963 (Wash. 1986) ("The identity of the

11   parties is not a mere matter of form, but is one of substance; the court will look to the legal effect

12   of the identity of the parties even though they may be nominally different."); *In re Election*

13   *Contest Filed by Coday*, 130 P.3d 809, 817 (Wash. 2006) (voter challenge gubernatorial election

14   barred by prior identical case involving different parties because the plaintiffs were "acting in the

15   same capacity, and ha[d] the same legal interest, as the participants" in the earlier matter).

16       The same principles apply here.  Sierra Club has previously litigated and lost the issue it

17   presents for a second time to this Court.  The addition of WEC as a co-plaintiff with no

18   independent role or distinct identity (*i.e.,* asserting the exact same allegations and legal claims in

19   a single complaint, employing the same legal counsel, and, in all respects, filing joint pleadings

20   and briefing) does not entitle Sierra Club to a second bite at the apple.  WEC and Sierra Club

21   have identical interests in this case, and are acting in privity, as evidenced by their identical legal

22   interests, shared legal counsel, and jointly filed briefs.  In sum, Sierra Club and WEC's joint

23   interests here are "sufficiently identical" to warrant application of collateral estoppel as a bar to

24   re-litigation of Sierra Club's interpretation of the Nuisance Rule.

25

26

INTERVENOR-DEFENDANT'S REPLY MEMORANDUM IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT (2:11-cv-00417-MJP) - 20

1

**IV.  WSPA'S MOTION TO STRIKE SHOULD BE GRANTED**

2

**A.     Plaintiffs Admit Their Documents Are Not Admissible Evidence**

3   In response to WSPA's motion to strike Plaintiffs' supporting submissions, Plaintiffs

4   state that "none of the documents are 'offered to prove the truth of the matter asserted'" and

5   instead are being offered for "background and context" only.  Dkt. 59 at 27-28.  Indeed,

6   Plaintiffs concede that their documents neither tend to "prove the issues before the Court" nor

7   are they offered for the truth of the matters stated in them.  *Id.*  As such, the documents are not

8   "relevant evidence."  Fed. R. Evid. 401 ("'Relevant evidence' means evidence having any

9   tendency to make the existence of any fact that is of consequence to the determination of the

10  action more probable or less probable than it would be without the evidence.").  "Evidence

11  which is not relevant is not admissible."  Fed. R. Evid. 402.  Plaintiffs cite no authority, and there

12  is none, for the admission of documents that are admittedly irrelevant and not offered to prove

13  the truth of any of the matters asserted.[21]

14

**B.     Even Standing Declarations Must Contain Admissible Evidence**

15  The declarations submitted by Plaintiffs also contain inadmissible speculation and

16  unqualified opinion testimony purporting to link GHG emissions from the Washington oil

17  refineries to current and future climate change effects in Washington.  Dkt. 50 at 33.  The

18  declarations further claim that application of the Washington SIP to limit GHG emissions would

19  reduce and slow the effects of climate change in Washington.  *See id.*  An affidavit submitted for

20  purposes of summary judgment, including a standing affidavit, must be premised upon

21  admissible evidence.  *See* Fed. R. Civ. P. 56(c)(4) (requiring that an affidavit "be made on

22

─────────────

23  [21] The cases cited by Plaintiffs in support of their "background and context" evidentiary exception are inapposite.  *See, e.g., United States v. Echeverry*, 759 F.2d 1451, 1457 (9th Cir.

24  1985) (sustaining admission of statements in support of cocaine distribution conviction that were not offered for the truth of the matters asserted "because their probative value is independent of

25  their veracity"); *United States v. Eppolito*, 646 F. Supp. 2d 1239 (D. Nev. 2009) (sustaining admission of recorded conversation in support of methamphetamine distribution conviction

26  because statements were admitted to provide context, not to prove truth of the matter asserted).

INTERVENOR-DEFENDANT'S REPLY MEMORANDUM IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT (2:11-cv-00417-MJP) - 21

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone (206) 624-0900*

1   personal knowledge, set out facts that would be *admissible* in evidence, and show that the affiant

2   … is competent to testify on the matters stated." (emphasis added)); *Lujan v. Defenders of*

3   *Wildlife*, 504 U.S. 555, 561 (1992) ("[E]ach element [of standing] must be supported in the same

4   way as any other matter on which the plaintiff bears the burden of proof, *i.e.,* with the manner

5   and degree of evidence required at the successive stages of the litigation."); *Gerlinger v.*

6   *Amazon.com Inc.*, 526 F.3d 1253, 1255-56 (9th Cir. 2008) ("In response to a summary judgment

7   motion . . . to establish Article III standing, a plaintiff can no longer rest on 'mere allegations'

8   but must set forth by affidavit or other admissible evidence 'specific facts' as delineated in

9   Federal Rule of Civil Procedure 56(e) as to the existence of such standing." (citation omitted));

10   *see also United States v. Durham*, 464 F.3d 976, 982 (9th Cir. 2006) (opinion testimony of lay

11   witnesses must be "predicated upon concrete facts within their own observation and recollection

12   – that is facts perceived from their own senses, as distinguished from their opinions or

13   conclusions drawn from such facts." (internal quotation marks and citation omitted)); *Bravos v.*

14   *BLM*, Nos. 6:09-cv-00037-RB-LFG & 6:09-cv-00414-RB-LFG, 2011 Dist. LEXIS 95708, at *22

15   (D.N.M. Aug. 3, 2011) ("Declarants paint a bleak picture of the future of New Mexico's

16   environment, but their allegations are not sufficiently reliable or trustworthy to establish injury-

17   in-fact.  Without any factual support or basis in scientific observation, Declarants' statements are

18   pure conjecture.  Consequently, at this stage of litigation, they are insufficient to confer

19   standing." (citation omitted)).[22]  For the reasons stated in WSPA's motion to strike, Plaintiffs'

20   declarations do not meet the applicable standards for admissibility.

21

22

23

24   [22] Plaintiffs erroneously rely upon *Northwest Environmental Defense Center v.*
    *Bonneville Power Administration*, 117 F.3d 1520 (9th Cir. 1997), and *Environmental Protection*

25   *Information Center v. Blackwell*, 389 F. Supp. 2d 1174, 1221 (N.D. Cal. 2004).  These cases
    hold that an affidavit submitted to establish standing is not an improper supplementation of the

26   administrative record on the merits.  However, this is not a record review case.

INTERVENOR-DEFENDANT'S REPLY MEMORANDUM IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT (2:11-cv-00417-MJP) - 22

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
Telephone (206) 624-0900

1

## V.  CONCLUSION

2     For the foregoing reasons, WSPA respectfully requests that this Court grant its motion to

3  strike Plaintiffs' evidence and its motion for summary judgment dismissing Plaintiffs' claims.

4     DATED:      October 12, 2011.

5                              STOEL RIVES LLP

6                              /s/Jeffrey W. Leppo
7                              Jeffrey W. Leppo, WSBA No. 11099
                               Matthew Cohen, WSBA No. 11232

8
                               Attorneys for Intervenor-Defendant
9                              Western States Petroleum Association

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

INTERVENOR-DEFENDANT'S REPLY MEMORANDUM IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT (2:11-cv-00417-MJP) - 23

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
Telephone (206) 624-0900

1

**CERTIFICATE OF SERVICE**

2        I hereby certify that on October 12, 2011, I filed a copy of the foregoing document with

3   the Clerk of the Court for the United States District Court – Western District of Washington by

4   using the CM/ECF system.  Participants in this Case No. 2:11-cv-00417 who are registered

5   CM/ECF users will be served by the CM/ECF system.

6

7        Svend A. Brandt-Erichsen, sberichsen@martenlaw.com
         Janette K. Brimmer, jbrimmer@earthjustice.org

8        Brian W. Chestnut, bchestnut@zcvbs.com
         Jennifer A. Dold, jenniferd@pscleanair.org

9        Joshua Osborne-Klein, joshok@zcvbs.com
         Ryan P. Steen, rpsteen@stoel.com

10       Katharine G. Shirey, ecyolyef@atg.wa.gov
         Laura J. Watson, lauraw2@atg.wa.gov

11

12

13                              /s/ Jeffrey W. Leppo
                                Jeffrey W. Leppo

14

15

16

17

18

19

20

21

22

23

24

25

26

INTERVENOR-DEFENDANT'S REPLY MEMORANDUM IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT (2:11-cv-00417-MJP) - 24

70908606.6 0052991-00002