1

2

3

4

5

6

The Honorable Marsha J. Pechman

7

8

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE**

9

10

WASHINGTON ENVIRONMENTAL
COUNCIL and SIERRA CLUB
WASHINGTON STATE CHAPTER,

11

Case No.  2:11-cv-00417-MJP

12

Plaintiffs,

**DEFENDANTS' REPLY BRIEF
IN SUPPORT OF 12(b)(6)
MOTION TO DISMISS**

13

v.

14

THEODORE ("TED") L.
STURDEVANT, DIRECTOR,
WASHINGTON STATE
DEPARTMENT OF ECOLOGY, in his
official capacity, MARK ASMUNDSON,
DIRECTOR, NORTHWEST CLEAN
AIR AGENCY, in his official capacity,
and CRAIG T. KENWORTHY,
DIRECTOR, PUGET SOUND CLEAN
AIR AGENCY, in his official capacity,

15

16

17

18

19

Defendants,

20

21

and

22

WESTERN STATES PETROLEUM
ASSOCIATION,

23

Intervenor-Defendant.

24

25

26

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
(360) 586-6770

# TABLE OF CONTENTS

I.    INTRODUCTION................................................................................................ 1

II.   ARGUMENT .................................................................................................... 2

      A.   EPA Does Not Have The Authority To Make The Regulation Of Greenhouse
           Gases Part Of A SIP.................................................................................. 2

           1.   EPA's approval of the Delaware SIP is consistent with EPA's authority
                to approve into a SIP only provisions relating to attaining and
                maintaining the NAAQS for criteria pollutants. ................................. 4

           2.   The federal Clean Water Act case cited by Plaintiffs does not support
                their claim that a SIP may reach beyond criteria pollutants and their
                precursors. ......................................................................................... 5

           3.   EPA's actions with regard to Washington's SIP do not support Plaintiffs'
                claim that a SIP may reach beyond criteria pollutants and their
                precursors. ......................................................................................... 7

      B.   Neither The RACT Provision Nor the Nuisance Provision Places a Mandatory
           Duty On The Agencies To Take The Actions Plaintiffs Are Requesting................ 8

           1.   The SIP does not mandate that the Clean Air Agencies make RACT
                determinations for greenhouse gases from refineries.......................... 9

           2.   Plaintiffs fail to identify a federally enforceable mandatory duty of the
                Clean Air Agencies under the nuisance provision. ........................... 12

      C.   Plaintiffs Are Not Entitled To The Relief They Seek............................................ 15

III.  CONCLUSION ............................................................................................... 16

DEFENDANTS' REPLY BRIEF IN
SUPPORT OF 12(b)(6) MOTION TO
DISMISS
Case No.  2:11-cv-00417-MJ

i

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
(360) 586-6770

1

**TABLE OF AUTHORITIES**

2

<u>Cases</u>

3

*Bayview Hunters Point Cmty. Advocates v. Metro. Transp. Comm'n,*
  366 F.3d 692 (9th Cir. 2004) ............................................................................. 13, 15

4

*Communities for a Better Environment v. Cenco Refining Co.,*
  180 F. Supp. 2d 1062 (C.D. Cal. 2001) ............................................................. 15

5

*Concerned Citizens of Bridesburg v. EPA,*
  836 F.2d 777 (3rd Cir. 1987) ............................................................................. 5

6

7

*El Comité Para El Bienestar De Earlimart v. Warmerdam,*
  539 F.3d 1062 (9th Cir. 2008) ........................................................................... 9, 10

8

9

*EPA ex rel. McKeown v. Port Auth.,*
  162 F. Supp. 2d 173 (S.D. N.Y. 2001) .............................................................. 13

10

*Fernandez v. Brock,*
  840 F.2d 622 (9th Cir. 1988) ............................................................................. 10, 11

11

*Lee v. Los Angeles,*
  250 F.3d 668 (2001) ........................................................................................... 14

12

13

*McEvoy v. IEI Barge Servs., Inc.,*
  622 F.3d 671 (7th Cir. 2010) ............................................................................. 12, 15

14

*PUD 1 of Jefferson County v. Wash. Dep't of Ecology,*
  511 U.S. 700 (1994) ........................................................................................... 5, 6, 7

15

16

*Sierra Club v. Sw. Pollution Control Agency,*
  PCHB No. 09-108 (Apr. 19, 2010) .................................................................... 14

17

18

<u>**Federal Statutes**</u>

19

33 U.S.C. § 1313(c)(2)(A) ........................................................................................ 6

20

33 U.S.C. § 1314(f)(1)(F) .......................................................................................... 6

21

33 U.S.C. § 1362(19) .................................................................................................. 6

22

33 U.S.C. §1341(a) ..................................................................................................... 6

23

42 U.S.C. § 7410 .......................................................................................................... 3

24

42 U.S.C. § 7410(a)(1) ............................................................................................... 3

25

42 U.S.C. § 7501(1) .................................................................................................... 8

26

42 U.S.C. § 7502(b)-(c) ............................................................................................. 5

DEFENDANTS' REPLY BRIEF IN
SUPPORT OF 12(b)(6) MOTION TO
DISMISS
Case No.  2:11-cv-00417-MJ

ii

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
(360) 586-6770

**State Statutes**

RCW 70.94.035 ................................................................................................... 9

RCW 70.94.154 ..................................................................................... 1, 2, 9-11, 15

RCW 70.94.154(4) ............................................................................................. 11

RCW 70.94.181 ................................................................................................... 9

RCW 70.94.457 ................................................................................................... 9

RCW 70.94.477(2) ............................................................................................... 9

**Federal Regulations**

40 C.F.R. § 52.2470 ........................................................................................... 1, 9

40 C.F.R. § 52.2470(c)(45)(i)(B) ......................................................................... 9

40 C.F.R. § 52.2470(c)(81)(i)(A) ......................................................................... 9

40 C.F.R. § 52.2470(c)(81)(i)(B) ......................................................................... 9

69 Fed. Reg. 17,368 (Apr. 2, 2004) .................................................................. 7, 8

73 Fed. Reg. 23,102 (Apr. 29, 2008) ................................................................... 4

75 Fed. Reg. 48,566 (Aug. 11, 2010) ................................................................... 4

**State Regulations**

7 DE Admin. Code 1144 .................................................................................... 4, 5

7 DE Admin. Code 1144 (1.1) .............................................................................. 4

WAC 173-400-040 (1993) .......................................................................... 7, 10, 11

WAC 173-400-040(5) (1993) ...................................................................... 1, 12, 13, 14

**Rules**

Fed. R. Evid. 201 .............................................................................................. 13

**Other Authorities**

http://www.nwcleanair.org/aqPrograms/airPermits_pg2.htm ............................ 13, 14

http://www.pscleanair.org/announce/permits/issued/12593-faop.pdf ................... 13, 14

DEFENDANTS' REPLY BRIEF IN
SUPPORT OF 12(b)(6) MOTION TO
DISMISS
Case No.  2:11-cv-00417-MJ

iii

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
(360) 586-6770

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**TABLE OF ACRONYMNS**

| | |
|---|---|
| CAA | Clean Air Act |
| NAAQS | national ambient air quality standards |
| RACT | reasonably available control technology |
| RCW | Revised Code of Washington |
| SIP | state implementation plan |
| WAC | Washington Administrative Code |

DEFENDANTS' REPLY BRIEF IN
SUPPORT OF 12(b)(6) MOTION TO
DISMISS
Case No.  2:11-cv-00417-MJ

iv

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
(360) 586-6770

# I.      INTRODUCTION

Plaintiffs have many hurdles to overcome in order to state a claim in this case for which relief can be granted.  Their first hurdle is to establish that the Washington state implementation plan (SIP) reaches greenhouse gases.  The very foundation of Plaintiffs' case rests on this notion; if the two SIP provisions Plaintiffs rely upon are not federally enforceable against greenhouse gases, this case must be dismissed.  Plaintiffs argue that their "unambiguous" reading of the SIP settles this question, and that the Court's analysis should look no further.  However, Plaintiffs' simplistic argument ignores the plain language of the Clean Air Act (CAA), supported by decades of case law, limiting SIPs to criteria pollutants.  Plaintiffs' argument cannot overcome the applicable statutory language of the CAA and, therefore, Plaintiffs fail in their effort to extend the SIP to apply to greenhouse gases.  Thus, Plaintiffs' case must be dismissed for failure to state a claim.

Even if Plaintiffs could overcome their first hurdle, their next hurdle requires proof that the two provisions they cite place mandatory duties on Defendants Ted Sturdevant, Mark Asmundson, and Craig T. Kenworthy (the Clean Air Agencies) to regulate greenhouse gases from refineries in the fashion advocated for by Plaintiffs.  Their argument regarding the reasonably available control technology (RACT) provision rests on the false premise that RCW 70.94.154 is incorporated by reference into the SIP.  In fact, EPA's SIP approval contains 103 separate subparagraphs listing the numerous state and local laws incorporated into the SIP.  40 C.F.R. § 52.2470.  RCW 70.94.154 is not among them, and no amount of wishful thinking by the Plaintiffs can make it otherwise. The Clean Air Agencies do not have a mandatory duty to make RACT determinations for refineries' greenhouse gas emissions.

Likewise, there is no mandatory duty to apply the general nuisance regulation, WAC 173-400-040(5), to derive pollutant-specific emission limits for a specific source in the manner requested by Plaintiffs.  If Plaintiffs allege that a particular source, in this case a

DEFENDANTS' REPLY BRIEF IN
SUPPORT OF 12(b)(6) MOTION TO
DISMISS
Case No.  2:11-cv-00417-MJ

1

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
(360) 586-6770

refinery in Washington, constitutes a nuisance in violation of this regulation, their recourse is against the specific source, not against the regulatory agencies.

Finally, if Plaintiffs could overcome these hurdles, their next hurdle requires proof that they are entitled to the relief they seek.  This, they cannot do.  Even if RCW 70.94.154 were incorporated into the SIP, its only mandate is to the Department of Ecology (Ecology) to establish a RACT list and schedule (which Ecology has already done).  To the extent that the nuisance provision places any duty on the Clean Air Agencies, the Agencies have already met it by including a nuisance condition in all of the refineries' air permits.  Neither provision can be read to require regulation of greenhouse gases from refineries in the specific way requested by Plaintiffs in this case.  As noted in Defendants' 12(b)(6) Motion to Dismiss and Response in Opposition to Plaintiffs' Motion for Summary Judgment (Agencies' Motion) (ECF No. 55) at 2-7, greenhouse gases from refineries are regulated under other CAA requirements—just not the ones to which the Plaintiffs point.

The Plaintiffs have not met their burden on any one of their hurdles.  They have failed to state any claim for which relief can be granted, and their case must be dismissed.

## II.    ARGUMENT

### A.    EPA Does Not Have The Authority To Make The Regulation Of Greenhouse Gases Part Of A SIP

In our Motion, the Clear Air Agencies demonstrated that the CAA does not authorize EPA to approve into a SIP provisions that reach beyond criteria pollutants and their precursors. Agencies' Motion (ECF No. 55) at 12-23.  We pointed out that the plain language of the CAA dictates that SIPs may only reach criteria pollutants, and that this reading of the CAA is consistent with EPA's interpretation of the law and with the case law regarding SIPs.  *Id.* Plaintiffs leave this demonstration unrefuted.  Instead, Plaintiffs ask this Court to ignore the CAA provisions that authorize and set the legal parameters for SIPs and to confine its analysis to whether or not the language of the SIP itself is unambiguous.  Plaintiffs' Combined

DEFENDANTS' REPLY BRIEF IN
SUPPORT OF 12(b)(6) MOTION TO
DISMISS
Case No.  2:11-cv-00417-MJ

2

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
(360) 586-6770

Reply/Response in Support of Summary Judgment and in Opposition to Defendants' and Intervenor Motions to Dismiss, for Summary Judgment, and to Strike (Pl. Resp.) (ECF No. 59) at 2. In so doing, Plaintiffs' argument ignores the regulatory framework of the CAA and the specific language of 42 U.S.C. § 7410 and disregards the fact that a SIP is a creature of the CAA, and that its purpose and outer bounds are set by the CAA.

The Clean Air Agencies agree that a state may propose, and EPA must approve, provisions in a SIP that, in regulating criteria pollutants, go beyond the minimum requirements set by the CAA. This much is clear from court rulings. Plaintiffs, however, would go further, and require EPA to approve into a SIP provisions that have nothing to do with criteria pollutants. Indeed, under Plaintiffs' interpretation, there is no limit to what EPA must approve into a SIP, so long as the language is unambiguous and other provisions in the SIP meet the minimum requirements for attaining and maintaining the NAAQS. Pl. Resp. (ECF No.59) at 4. But contrary to Plaintiffs' claims, the CAA does dictate limits on the scope of the regulations that can be approved into a SIP: SIPs must relate to the NAAQS, which have been set for criteria pollutants. 42 U.S.C. § 7410.

Plaintiffs are correct in noting that, "nowhere in Defendants' pleadings do they cite to any word or phrase or provision of section 110 [of the CAA] that is unclear or ambiguous." Pl. Resp. (ECF No. 59) at 7. This is because, as noted in our Motion at 15, Section 110 of the CAA (42 U.S.C. § 7410) is *clear* and is *not ambiguous*. Section 110 of the CAA explicitly lays out the purpose and scope of SIPs: attaining and maintaining the NAAQS, which EPA must set for criteria pollutants:

> Each State shall . . . adopt and submit to the Administrator . . . after the promulgation of a national primary ambient air quality standard (or any revision thereof) under section 7409 of this title for any air pollutant, <u>a plan which provides for implementation, maintenance, and enforcement of such primary standard</u> in each air quality control region (or portion thereof) within such State.

42 U.S.C. § 7410(a)(1) (emphasis added).

DEFENDANTS' REPLY BRIEF IN
SUPPORT OF 12(b)(6) MOTION TO
DISMISS
Case No. 2:11-cv-00417-MJ

3

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
(360) 586-6770

1    Because the CAA defines EPA's authority to approve into a SIP, and thus make

2  federally enforceable, only those provisions that relate to the NAAQS and criteria pollutants,

3  there is no need to reach the second step of the *Chevron* analysis.  However, should the Court

4  believe the CAA to be ambiguous on this point, the Court should grant *Chevron* deference to

5  EPA's interpretation of the statute because EPA is charged with implementing it.  And EPA's

6  interpretation agrees with the Agencies' analysis.  Agencies' Motion (ECF No. 55) at 17-19.

7         **1.     EPA's approval of the Delaware SIP is consistent with EPA's authority to
            approve into a SIP only provisions relating to attaining and maintaining
8           the NAAQS for criteria pollutants.**

9    In an attempt to show that EPA has found that SIPs may reach beyond criteria

10  pollutants and their precursors, Plaintiffs assert that EPA approved into Delaware's SIP

11  provisions regulating mercury and carbon dioxide that are unrelated to criteria pollutants.  Pl.

12  Resp. (ECF No. 59) at 5.  Plaintiffs are incorrect.  First, the Delaware provision in question (7

13  DE Admin Code 1144, attached for the Court's convenience)[1] does not address mercury.  By

14  its own terms, it regulates emissions of "nitrogen oxides (NOx), nonmethane hydrocarbons

15  (NMHC),[2] particulate matter (PM), sulfur dioxide ($SO_2$), carbon monoxide (CO), and carbon

16  dioxide ($CO_2$)," all of which, except carbon dioxide, are criteria pollutants or their precursors.

17  7 DE Admin. Code 1144 (1.1).  There is no mention of mercury.  Indeed, in the Federal

18  Register Notice cited by Plaintiffs, EPA was careful to explicitly exclude from the SIP other

19  provisions of Delaware law regulating mercury.  75 Fed. Reg. 48,566, 48,578-79 (Aug. 11,

20  2010).

21    Second, while Delaware Regulation 1144 does reach carbon dioxide, EPA approved it

22  into the SIP because Delaware stated that regulating carbon dioxide would help Delaware

23  attain the NAAQS for ozone, a criteria pollutant.  *See, e.g.* 73 Fed. Reg. 23,102 (Apr. 29, 2008)

24  (EPA approval into SIP); Second Declaration of Katharine G. Shirey (Second Shirey Decl.),

25    _____
       [1]  Second Declaration of Katharine G. Shirey, Ex. A.
26    [2]  "Nonmethane hydrocarbons" is a term for volatile organic compounds (VOCs), which are precursors to
    the criteria pollutant ozone.

DEFENDANTS' REPLY BRIEF IN
SUPPORT OF 12(b)(6) MOTION TO
DISMISS
Case No.  2:11-cv-00417-MJ

4

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
(360) 586-6770

Ex. B (Delaware Response to Comments at 5-6) (GHG emission could result in a regional increase in ground-level ozone).[3]  At the time Regulation 1144 was proposed for inclusion in the SIP, Delaware was in nonattainment for ozone.  Second Shirey Decl., Ex. C (Letter from John A. Hughes, Delaware Department. of Natural Resources and Environmental Control, to Mr. Donald S. Welch, USEPA Region 3 dated November 1, 2007).  When an area is designated nonattainment for a given criteria pollutant, the state must submit a plan (nonattainment SIP) containing measures the state will use to ensure that the area attains the NAAQS for that pollutant.  42 U.S.C. § 7502(b)-(c).  Regulation 1144 was part of Delaware's plan to come into compliance with the ozone NAAQS.[4]  Second Shirey Decl., Ex. C.  Neither the Clean Air Agencies nor EPA made any connection between greenhouse gas emissions and attaining or maintaining NAAQS in Washington.

Plaintiffs' reliance on *Concerned Citizens of Bridesburg v. EPA*, 836 F.2d 777 (3rd Cir. 1987) is similarly misplaced.  In *Concerned Citizens of Bridesburg*, Pennsylvania took the position that the odor provisions in the SIP provided a means of regulating criteria pollutants. *Concerned Citizens of Bridesburg,* 836 F.3d at 779, 783 n.8, 787.  Plaintiffs cite **no** authority for their position that regulation of pollutants that are completely divorced from the NAAQS can be included in a SIP.

### 2.  The federal Clean Water Act case cited by Plaintiffs does not support their claim that a SIP may reach beyond criteria pollutants and their precursors.

Finding no direct support in the CAA context, Plaintiffs next claim that a federal Clean Water Act case, *PUD 1 of Jefferson County v. Washington Department of Ecology*, 511 U.S.

---

[3] *See also* the Delaware Climate Change Action Plan referenced in Delaware's Response to Comments at pp. 21-22:  "Currently, ground-level ozone concentrations across Delaware exceed national standards for human health set by the USEPA. Wilmington and the northern region are classified as non-attainment areas, due to the frequent exceedance of USEPA ozone standards. An increase in air temperature associated with climate change would increase ozone in the region."  Second Shirey Decl., Ex. D.

[4] Sunlight and heat in the atmosphere act on VOCs and NOx to form ozone.  Delaware argued that $CO_2$ was increasing the amount of heat in the atmosphere and thereby increasing the production of ozone.  Because Delaware made the connection to NAAQS, and Delaware was in nonattainment for ozone, EPA accepted the state's request and approved the provision into Delaware's SIP.

DEFENDANTS' REPLY BRIEF IN SUPPORT OF 12(b)(6) MOTION TO DISMISS
Case No.  2:11-cv-00417-MJ

5

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
(360) 586-6770

700 (1994) (*Jefferson County PUD*) is analogous to this one.  Pl. Resp. (ECF No. 59) at 5-6.

Plaintiffs are wrong.  In *Jefferson County PUD*, the Supreme Court upheld the Washington

State Department of Ecology's imposition of a water quantity restriction in a state certification

issued for a hydroelectric project under Section 401 of the Clean Water Act.[5]  Plaintiffs

inaccurately describe the issues and the holding in the case.  The Court did not address the

question of whether the state's water quality standards were "enforceable . . . and within the

state's authority to develop water quality standards."  Rather, the Court addressed the question

of whether the state, within its broad § 401 powers, could apply its EPA-approved use

designation to place a water quantity restriction in a § 401 certification.  *Jefferson County*

*PUD,* 511 U.S. at 710.  Thus, not only is the case inapposite because it involves interpretation

of a separate federal statute, the question posed in the case is not similar to the question being

posed in the present case.

Second, and contrary to Plaintiffs' claims, the Clean Water Act explicitly recognizes

that a water quantity measure can be imposed under the Clean Water Act.  That is, the Clean

Water Act recognizes that water quantity is related to water quality and that low amounts of

water can cause decreases in water quality.  33 U.S.C. § 1314(f)(1)(F); 33 U.S.C. § 1362(19).

By contrast, the CAA does not recognize that greenhouse gases can be regulated through SIPs.

Third, the water quantity restriction being challenged in the *Jefferson County PUD* case

was in line with and supported the purpose of the Clean Water Act provision requiring states to

develop water quality standards, including use designations and water quality criteria to protect

those uses.  33 U.S.C. § 1313(c)(2)(A).  One of the designated uses for the water body in

question (Dosewallips River) was migration, rearing, spawning, and harvesting of salmon and

other fish.  *Jefferson County PUD,* 511 U.S. at 705-706.  Ecology determined that the water

---

[5]  The state § 401 certification was a mandatory prerequisite before the Federal Energy Regulation Commission could issue a license for the project. *Jefferson County PUD*, 511 U.S. at 709.  A state can only issue a § 401 certification if it has reasonable assurance that the project will not violate the state's water quality standards. 33 U.S.C. §1341(a).

DEFENDANTS' REPLY BRIEF IN
SUPPORT OF 12(b)(6) MOTION TO
DISMISS
Case No.  2:11-cv-00417-MJ

6

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
(360) 586-6770

quantity restriction was necessary to preserve that use.  *Id*. at 709.  Here, the measures advocated by Plaintiffs (regulation of greenhouse gases using the SIP) are not in line with and do not support the purpose of the CAA provision requiring states to develop SIPs to achieve and maintain the NAAQS.  *Jefferson County PUD* is not analogous to the present case and does not support the Plaintiffs' arguments.

### 3.   EPA's actions with regard to Washington's SIP do not support Plaintiffs' claim that a SIP may reach beyond criteria pollutants and their precursors.

Plaintiffs argue that the Court should take note of EPA's actions with regard to Washington's SIP.  Pl. Resp. (ECF No. 59) at 8.  Plaintiffs note that EPA approved into Washington's SIP the nuisance and RACT standards at issue in this case, as well as provisions applying to odors and dust.  *Id*.  Plaintiffs fail to note that all of these provisions can apply to criteria pollutants, and are therefore appropriate in a SIP.  EPA stated this explicitly in its 2004 action on Puget Sound Clean Air regulations:

> EPA does not agree that Sections 9.11 and 9.13 apply only or primarily to nuisance and odors.  There is nothing in the text of the regulations to suggest that they are so limited, and EPA believes the regulations apply equally to NAAQS pollutants such as particulate.

*See* 69 Fed. Reg. 17,368, 17,371 (Apr. 2, 2004).  EPA goes on to connect the provisions' presence in the SIP to criteria pollutants by noting that, "[a]s part of the SIP, EPA would not attempt to enforce the provisions of Section 9.11 and 9.13 as they apply to odors and nuisance."  *Id*.

Plaintiffs further claim that "EPA has stated that WAC 173-400-040 is an important provision in Washington's SIP for meeting the requirements of the CAA as a whole."  Pl. Resp. (ECF No. 59) at 8, (citing 69 Fed. Reg. 17,368 *et. seq*. (Apr. 2, 2004)).  Plaintiffs have manufactured this claim out of nothing.  Nowhere in the cited Federal Register Notice does EPA make such a statement.  Indeed, EPA links the presence of WAC 173-400-040 in the SIP to Section 110 of the CAA and the NAAQS.  EPA states, "[i]f, for example, Washington was seeking to remove WAC 173-400-040(5) and (7) [from the SIP], EPA would require a showing

DEFENDANTS' REPLY BRIEF IN SUPPORT OF 12(b)(6) MOTION TO DISMISS
Case No.  2:11-cv-00417-MJ

7

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
(360) 586-6770

1    that, consistent with CAA section 110(l), removal of these provisions did not interfere with any

2    applicable requirement concerning attainment and reasonable further progress . . . "  69 Fed.

3    Reg. 17,368, 17,371-72 (emphasis added).  The term "reasonable further progress" refers to

4    reductions in emissions of a pollutant for which an area is in nonattainment of the NAAQS.  42

5    U.S.C. § 7501(1).

6         Thus, the EPA actions cited by Plaintiffs concerning Washington's SIP support the

7    Clean Air Agencies' argument that provisions made federally enforceable by approval into a

8    SIP must relate to criteria pollutants and the NAAQS.

9         To summarize, the Clean Air Agencies have laid out in detail why and how the

10   federal CAA authorizes EPA to approve into a SIP only provisions that bear some relation to

11   criteria pollutants and their precursors.  Agencies' Motion (ECF No. 55) at 12-23.  Plaintiffs

12   have made no attempt to refute the Agencies' analysis.  It is undisputed that greenhouse

13   gases are not criteria pollutants, and that no NAAQS have been set for them.  Unlike

14   Delaware, Washington has not attempted to regulate greenhouse gases through its SIP as a

15   means of attaining NAAQS for a criteria pollutant. The Washington SIP does not encompass

16   greenhouse gases. Therefore, Plaintiffs have failed to state a claim and their case should be

17   dismissed.

18   **B.    Neither The RACT Provision Nor the Nuisance Provision Places a Mandatory
         Duty On The Agencies To Take The Actions Plaintiffs Are Requesting**

19        If the Court finds that Washington's SIP does regulate greenhouse gases, the next

20   hurdle Plaintiffs must overcome is to demonstrate that the RACT and nuisance provisions

21   Plaintiffs cite place mandatory duties on the Clean Air Agencies that the Agencies have not

22   met.  Plaintiffs have failed to make that demonstration, and thereby have failed to overcome

23   this next hurdle.  First, as discussed below, the SIP does not require the Clean Air Agencies

24   to make RACT determinations for greenhouse gases from refineries.  Nor does the SIP place

25

26

DEFENDANTS' REPLY BRIEF IN
SUPPORT OF 12(b)(6) MOTION TO
DISMISS
Case No.  2:11-cv-00417-MJ                8                ATTORNEY GENERAL OF WASHINGTON
                                                                  Ecology Division
                                                                  PO Box 40117
                                                                  Olympia, WA 98504-0117
                                                                  (360) 586-6770

a mandatory duty on the Clean Air Agencies to derive pollutant-specific emission limits for a specific source in the manner requested by Plaintiffs.

**1.     The SIP does not mandate that the Clean Air Agencies make RACT determinations for greenhouse gases from refineries.**

Plaintiffs continue to insist that RCW 70.94.154 is incorporated by reference into the SIP.  Pl. Resp. (ECF No. 59) at 16-18.  Their tenacity on this point is understandable—without RCW 70.94.154, there is nothing that they can point to that resembles a mandatory duty of the agencies (and, in fact, even RCW 70.94.154 does not impose the mandate Plaintiffs claim it imposes).  The fact is that RCW 70.94.154 is not incorporated into the SIP, and Plaintiffs therefore cannot rely on it to state their claim.

Plaintiffs argue that because RCW 70.94.154 is mentioned in the SIP's RACT provision, its requirements are "plainly included in the SIP."  Pl. Resp. (ECF No. 59) at 16. Contrary to Plaintiffs' arguments, there is a very specific process for incorporating provisions of state law into a SIP.  EPA has painstakingly listed each and every state and local law, regulation, and reference document included in the SIP. These laws, regulations, and documents can be found in 103 separate subparagraphs of EPA's final rule approving the SIP.  40 C.F.R. § 52.2470.  Although other sections of state statute are incorporated by reference,[6] RCW 70.94.154 is not.  Simply put, RCW 70.94.154 is not part of the SIP.

The case cited by Plaintiffs further supports this conclusion and, in fact, controls the outcome. Pl. Resp. (ECF No. 59) at 17 (citing *El Comité Para El Bienestar De Earlimart v. Warmerdam*, 539 F.3d 1062 (9th Cir. 2008)).  Similar to the present Plaintiffs, the *El Comité* plaintiffs argued that a particular memorandum had been incorporated by reference into the California SIP even though the memorandum was not included in EPA's final rule approving the SIP.  The Ninth Circuit concluded that EPA's final rule governs what is in the SIP, and that the memorandum was not incorporated by reference into the SIP because it was not

---

[6] 40 C.F.R. § 52.2470(c)(45)(i)(B) (incorporating by reference RCW 70.94.035 and .181); 40 C.F.R. § 52.2470(c)(81)(i)(A) and (B) (incorporating by reference RCW 70.94.477(2) and .457).

DEFENDANTS' REPLY BRIEF IN SUPPORT OF 12(b)(6) MOTION TO DISMISS
Case No.  2:11-cv-00417-MJ

9

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
(360) 586-6770

1    included in EPA's final rule. *El Comité,* 539 F. 3d at 1069-72. Likewise, RCW 70.94.154 is

2    not included in EPA's final rule on the Washington SIP and is therefore not part of the SIP.

3          Plaintiffs complain that this result renders the RACT provision meaningless and

4    circular. Pl. Resp. (ECF No. 59) at 16. They are incorrect. The RACT provision in the SIP

5    requires sources to meet RACT and authorizes, but does not require, the Clean Air Agencies

6    to make RACT determinations. If and when a Clean Air Agency chooses to exercise this

7    discretion, WAC 173-400-040 specifies that the Agency should use the procedure in RCW

8    70.94.154 to define RACT by rule or regulatory order. By specifying the method to be used

9    when a Clean Air Agency chooses to make a RACT determination, WAC 173-400-040 does

10   not strip the agency of the discretion to decide when such a determination is warranted. Nor

11   does this reference constitute a wholesale incorporation of RCW 70.94.154 into the SIP, as

12   Plaintiffs claim. Pl. Resp. (ECF No. 59) at 16. Plaintiffs might not like this result, but that

13   does not render it meaningless or circular.

14         Plaintiffs also argue that the Clean Air Agencies' reading of the RACT provision is

15   wrong because the Agencies misconstrue the word "may" in the first sentence of the

16   provision. Pl. Resp. (ECF No. 59) at 14-15. Contrary to Plaintiffs' arguments, "may" is a

17   permissive term, thus leading to the conclusion that the Agencies have discretion to decide

18   when to make RACT determinations. *See, e.g., Fernandez v. Brock*, 840 F.2d 622, 632 (9th

19   Cir. 1988). In *Fernandez*, the Ninth Circuit rejected an argument that the Secretary of Labor

20   was required to promulgate regulations governing pension plan benefits for seasonal workers.

21   In doing so, the court interpreted statutory language that stated "the term 'year of service'

22   shall be such period *as may be determined* under regulations prescribed by the Secretary."

23   *Id.* (emphasis added) The court concluded "may" is a permissive word that is construed to

24   vest discretionary power absent a clear indication otherwise, and, therefore, the decision

25   whether to promulgate regulations rested within the Secretary's discretion. *Id.*

26

DEFENDANTS' REPLY BRIEF IN
SUPPORT OF 12(b)(6) MOTION TO
DISMISS
Case No.  2:11-cv-00417-MJ

10

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
(360) 586-6770

1    Similarly, the RACT provision states that "all emissions units are required to use

2 [RACT] *which may be determined* for some sources or source categories to be more stringent

3 than the applicable emissions limitations [in existing law]."   WAC 173-400-040 (1993)

4 (emphasis added).  Like in *Fernandez,* use of the word "may" demonstrates that the decision

5 to make RACT determinations rests with the Agencies.

6    Furthermore, the Clean Air Agencies' do not solely rely on the word "may" in the

7 first sentence of the provision.   The second sentence of the RACT provision also

8 demonstrates that the Agencies have discretion to decide when to make a RACT

9 determination: "*Where current controls are determined to be less than RACT*, ecology or the

10 [permitting] authority shall, as provided in section 8, chapter 252, Laws of 1993, define

11 RACT for each source or source category and issue a rule or regulatory order requiring the

12 installation of RACT."  WAC 173-400-040 (1993) (emphasis added*).  The RACT provision

13 read as a whole does not place a mandatory duty on the Agencies to determine RACT for

14 greenhouse gases from refineries, and there is no feasible way to read such a mandate into it.

15    The only arguably mandatory obligation any of the Clean Air Agencies have related

16 to RACT is not federally enforceable, as it is neither in the SIP nor referenced in the SIP.

17 RCW 70.94.154(4) requires the Ecology to "develop a list of sources and source categories

18 requiring RACT review and a schedule for conducting that review."  Plaintiffs do not allege

19 that Ecology has not developed such a list and schedule.  Rather, they allege that there is an

20 affirmative duty to make RACT determinations for greenhouse gases from refineries (and,

21 presumably that this duty exists even if it is not consistent with the RACT list and schedule).

22 Again, there is no feasible way to read such a requirement into the law.  Even if there was,

23 Plaintiffs' recourse is not in federal court because RCW 70.94.154 is not in the SIP and,

24 therefore, is not federally enforceable.  Plaintiffs have failed to identify a violation of a

25 federally enforceable mandatory duty under the RACT provision upon which this Court can

26 grant relief.  Therefore, this claim must be dismissed.

DEFENDANTS' REPLY BRIEF IN
SUPPORT OF 12(b)(6) MOTION TO
DISMISS
Case No.  2:11-cv-00417-MJ

11

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
(360) 586-6770

**2.      Plaintiffs fail to identify a federally enforceable mandatory duty of the Clean Air Agencies under the nuisance provision.**

In our Motion, we demonstrated that Plaintiffs failed to state a claim for relief regarding WAC 173-400-040(5), the "nuisance standard," for a number of reasons.   We demonstrated that the plain language of the nuisance standard placed a duty on "sources," not the Clean Air Agencies.  *See* Agencies' Motion (ECF No. 55) at 29.  We demonstrated that the Plaintiffs unlawfully sought to exercise the Clean Air Agencies' discretion to enforce the nuisance standard.  *Id.* at 30.  We demonstrated that pursuant to *McEvoy v. IEI Barge Servs., Inc.*, 622 F.3d 671 (7th Cir. 2010), the nuisance standard is insufficiently specific to be enforced as requested by Plaintiffs in a citizen suit under the Act.  *Id.* at 30.  All provide a basis for dismissal of Plaintiffs' claim regarding the nuisance standard.

Plaintiffs fail to persuasively rebut any of these demonstrations, and therefore, fail to clear another necessary hurdle to prevail in this matter.

WAC 173-400-040(5) (1993) states:

> Emissions detrimental to persons or property. No person shall cause or permit the emission of any air contaminant from any source if it is detrimental to the health, safety, or welfare of any person, or causes damage to property or business.

WAC 173-400-040(5) (1993) (version in currently approved SIP).

Plaintiffs first argue that the Clean Air Agencies are "prohibited from allowing emissions" that violate WAC 173-400-040(5).  Pl. Resp. (ECF No. 59) at 18.  It is undisputed that the refineries, and not the Clean Air Agencies, are the "source" of the greenhouse gases the Plaintiffs complain of in this action.   Thus, the relief Plaintiffs seek from this Court, "additional controls" on the refineries,[7] is sought from the wrong defendants.   Indeed, in reviewing citizen suits, the courts look to the specific language of the provisions at issue to

---

[7]   *See* relief requested in Plaintiffs' Complaint at (d) (ECF No. 1); Plaintiffs' Motion for Summary Judgment (ECF No. 35) at 19-20; and Plaintiffs' [Proposed] Order Granting Motion for Summary Judgment (ECF No. 35-1) ¶ 5.

DEFENDANTS' REPLY BRIEF IN
SUPPORT OF 12(b)(6) MOTION TO
DISMISS
Case No.  2:11-cv-00417-MJ                                  12                           ATTORNEY GENERAL OF WASHINGTON
                                                                                                                          Ecology Division
                                                                                                                          PO Box 40117
                                                                                                                          Olympia, WA 98504-0117
                                                                                                                          (360) 586-6770

1  determine whose duty is properly before it. *See EPA ex rel. McKeown v. Port Auth.*, 162 F.

2  Supp. 2d 173, 187-88 (S.D. N.Y. 2001) (complaint did not identify "any violations of specific

3  emissions standards, or limitations under the CAA or legal enforceable strategies or

4  commitments that the defendants made under a current SIP"); *Bayview Hunters Point Cmty.*

5  *Advocates v. Metro. Transp. Comm'n*, 366 F.3d 692, 704 (9th Cir. 2004).  Because Plaintiffs

6  seek to enforce the nuisance standard against the wrong defendants, this action fails to state a

7  claim upon which relief may be granted.

8      Plaintiffs attempt to avoid this fatal flaw in their claim by re-casting their assertions as

9  an Agency error because the Agencies "have not applied [WAC 173-400-040(5)] to refinery

10 emissions of greenhouse gases."  Pl. Resp. (ECF No. 59) at 20.  But the Clean Air Agencies

11 have applied the nuisance standard to the refineries.  In each air operating permit issued to each

12 of the five Washington refineries, the Puget Sound Clean Air Agency and the Northwest Clean

13 Air Agency have required their respective permittees to comply with WAC 173-400-040(5).

14 For example, in the air operating permit issued by the Puget Sound Clean Air Agency and

15 currently in effect for the U.S. Oil & Refining Company facility in Tacoma, Washington,

16 Section I.D.2 requires U.S. Oil to meet "applicable requirement" WAC 173-400-040(5) and to

17 "not emit any air contaminant if it is detrimental to the health, safety, or welfare of any person,

18 or causes damage to property or business."  *See*

19 http://www.pscleanair.org/announce/permits/issued/12593-faop.pdf (last accessed Oct. 12,

20 2011); Declaration of Steve Van Slyke, Ex. A (excerpts of approved U.S. Oil air operating

21 permit).  The permits issued by the Northwest Clean Air Agency for the other four refineries

22 contain similar language prohibiting "emissions detrimental to health or property."  *See*

23 http://www.nwcleanair.org/aqPrograms/airPermits_pg2.htm (last accessed Oct. 12, 2011);

24

25

26

DEFENDANTS' REPLY BRIEF IN
SUPPORT OF 12(b)(6) MOTION TO
DISMISS
Case No.  2:11-cv-00417-MJ

13

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
(360) 586-6770

1    Declaration of Mark Asmundson and exhibits thereto (excerpts of four refinery air operating

2    permits).[8]

3         Thus, the Clean Air Agencies have already required each refinery targeted by Plaintiffs

4    to comply with the nuisance standard through air operating permits.  Plaintiffs acknowledge

5    that Washington's Pollution Control Hearings Board has held that WAC 173-400-040(5) was

6    properly included in an air operating permit when the permitting agency included the language

7    of the nuisance standard verbatim.  Pl. Resp. (ECF No. 59) at 23 (citing *Sierra Club v. Sw.*

8    *Pollution Control Agency*, PCHB No. 09-108, Order Granting Summary Judgment, ¶ 21 (Apr.

9    19, 2010)).  In the *Sw. Pollution Control Agency* decision, the Board noted that WAC 173-400-

10   040(5) is enforceable as written, and agencies need not derive pollutant-specific emission

11   limits for a specific source in the manner requested by Plaintiffs.   *Sierra Club*, PCHB

12   No. 09-108, ¶¶ 3, 21, 22.

13        If Plaintiffs believe that the refineries have not met these conditions for purposes of

14   greenhouse gases, Plaintiffs could seek that relief against the refineries.  But Plaintiffs cannot

15   successfully claim that the Clean Air Agencies have not applied the nuisance standard to the

16   refineries.  Nor have Plaintiffs identified any legal basis for their novel claim that "seeks to

17   compel the Agencies . . . to engage in [the] technical exercise" of applying the nuisance

18   standards to greenhouse gases from refineries.  Pl. Resp. at 20.  Plaintiffs cannot through a

19   citizen suit convert WAC 173-400-040(5) into a criterion for deriving new, facility-specific

20   emission limits on greenhouse gases.  It is black-letter law that Plaintiffs cannot use citizen suit

21

22   _____

23        [8]  Although a court cannot normally consider evidence outside the pleadings in a 12(b)(6) motion without
     converting the motion to one for summary judgment, an exception exists for evidence that constitutes a matter of
     public record.  *See, e.g,. Lee v. Los Angeles*, 250 F.3d 668, 688-89 (2001) (citing to Fed. R. Evid. 201).  The five

24   refinery permits are matters of public record and can be readily accessed by the public on the websites of the
     Northwest and Puget Sound Clean Air Agencies.  *See* http://www.pscleanair.org/announce/permits/issued/12593-

25   faop.pdf (last accessed Oct. 12, 2011); http://www.nwcleanair.org/aqPrograms/airPermits_pg2.htm (last accessed
     Oct. 12, 2011).  The declarations submitted by the Clean Air Agencies in their opening brief can also be

26   considered because the Agencies were responding to the Plaintiffs' summary judgment motion in addition to
     bringing their own 12(b)(6) motion.

DEFENDANTS' REPLY BRIEF IN                         14                  ATTORNEY GENERAL OF WASHINGTON
SUPPORT OF 12(b)(6) MOTION TO                                               Ecology Division
DISMISS                                                                      PO Box 40117
Case No.  2:11-cv-00417-MJ                                              Olympia, WA 98504-0117
                                                                             (360) 586-6770

1  actions to modify a SIP provision to "conform with their own notion of proper environmental

2  policy." *See Bayview*, 366 F.3d at 703.

3       Additionally, Plaintiffs do not rebut the *McEvoy* case and its holding that a SIP

4  provision that is not "specific enough for judicial enforcement" cannot form the basis for a

5  citizen suit claim.  *McEvoy*, 622 F.3d at 679-80.  Indeed, Plaintiffs acknowledge that in

6  *Communities for a Better Environment v. Cenco Refining Co.*, 180 F. Supp. 2d 1062, 1077

7  (C.D. Cal. 2001), the court "recognized that a number of district courts had rejected citizen

8  suits based upon general nuisance provisions as too subjective for enforcement, . . . " Pl. Resp.

9  (ECF No. 59) at 19.  Thus, Plaintiffs admit that the very general language of the nuisance

10  standard provides this Court with no "judicially enforceable" language.

11       Plaintiffs attempt to distinguish *McEvoy* by saying that the Illinois provisions were

12  different because they did not include "specific instruction that emissions should not be

13  'detrimental to the health, safety, or welfare of any person, or cause damage to property or

14  business.'" Pl. Resp. (ECF No. 59) at 21.  But that is a meaningless distinction.  Though not

15  identical, the provisions are similar in that neither the Washington, nor Illinois provisions

16  contain language specific enough for a court to enforce through a citizen suit.  *McEvoy* is

17  relevant because it reminds us that a SIP provision must be specific enough for a court to

18  enforce; otherwise, a citizen suit cannot stand.  *McEvoy*, 622 F.3d at 678-80.  The Washington

19  nuisance standard at issue in this case is no more specific than the general "do not cause

20  pollution" and "fugitive particulate matter" provisions in *McEvoy*.

21       Plaintiffs have not established a cause of action against the Clean Air Agencies under

22  the nuisance provision.  Thus, this claim also must be dismissed.

23  **C.**    **Plaintiffs Are Not Entitled To The Relief They Seek.**

24       Finally, even if Plaintiffs overcome the first three hurdles, they must still prove that

25  they are entitled to the relief they seek.  They are unable to clear this last hurdle.  As noted

26  above, even if RCW 70.94.154 were incorporated into the SIP, the only arguably mandatory

DEFENDANTS' REPLY BRIEF IN
SUPPORT OF 12(b)(6) MOTION TO
DISMISS
Case No.  2:11-cv-00417-MJ

15

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
(360) 586-6770

1    duty it imposes is for the Ecology to promulgate a RACT list and schedule.  Plaintiffs' claim

2    that the Clean Air Agencies are required to make RACT determinations for greenhouse gases

3    from refineries cannot be derived from this general duty to promulgate a list and schedule.

4         To the extent that the nuisance provision places any duty on the Clean Air Agencies,

5    the Agencies have met it by including a nuisance condition in all of the refineries' air permits.

6    If the Plaintiffs believe the refineries are not meeting their permit conditions, their recourse is

7    against the refineries, not the Agencies.

8         Finally, the Clean Air Agencies repeat their request for a separate remedy phase

9    should the Court rule in favor of the Plaintiffs on summary judgment.    Plaintiffs

10   acknowledge that a remedy phase may be warranted. Pl. Resp. (ECF No. 59) at 25.  Indeed

11   the difference between the parties' positions on how long it would take to implement the

12   relief sought (90 days versus 3 years) demonstrates that there are factual issues that need to

13   be resolved before the Court can grant any relief to the Plaintiffs.  The Clean Air Agencies

14   maintain that Plaintiffs are not entitled to any relief, but respectfully request a remedy phase

15   should the Court rule otherwise.

### III.   CONCLUSION

16

17        For the reasons stated above, the Clean Air Agencies respectfully ask the Court to grant

18   the Clean Air Agencies' Motion and dismiss this action in its entirety.

19        DATED this 12th day of October 2011.

20   ROBERT M. McKENNA                              MARTEN LAW PLLC
     Attorney General
21

22   *s/ Katharine G. Shirey*                        *s/ Svend A. Brandt-Erichsen*
     KATHARINE G. SHIREY, WSBA #35736               SVEND A. BRANDT-ERICHSEN
23   LAURA J. WATSON, WSBA #28452                    WSBA #23923
     Assistant Attorneys General                     *Attorney for Defendant Mark Asmundson*
24   *Attorneys for Defendant Ted Sturdevant*        1191 Second Avenue, Suite 2200
     P.O. Box 40117                                  Seattle, WA  98101
25   Olympia, WA 98504-0117                          svendbe@martenlaw.com
     kays1@atg.wa.gov; lauraw2@atg.wa.gov            (206) 292-2600
26   (360) 586-6770

1    PUGET SOUND CLEAN AIR AGENCY

2    *s/ Jennifer A. Dold*
     JENNIFER A. DOLD, WSBA #23822
3    *Attorney for Defendant Craig Kenworthy*
     1904 3rd Avenue, Suite 105
4    Seattle, WA 98101-3317
     jenniferd@pscleanair.org
5    (206) 343-8800

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

# PROOF OF SERVICE

I hereby certify that on October 12, 2011, a copy of the foregoing document was electronically filed with the Clerk of Court using the CMF/ECF system, which will send notification of such filing to the following:

- **Svend A Brandt-Erichsen**
  sberichsen@martenlaw.com,rbeckett@martenlaw.com
- **Janette K. Brimmer**
  jbrimmer@earthjustice.org,cmcevoy@earthjustice.org,kregan@earthjustice.org,chamborg@earthjustice.org
- **Brian W Chestnut**
  bchestnut@zcvbs.com,bgruber@zcvbs.com,hreynolds@zcvbs.com
- **Jennifer A Dold**
  jenniferd@pscleanair.org
- **Steven D Keeler**
  co2truths@gmail.com
- **Jeffrey Wayne Leppo**
  jwleppo@stoel.com,SEA_Docket@stoel.com,jashore@stoel.com
- **Joshua Osborne-Klein**
  joshok@zcvbs.com,ckelsey@zcvbs.com,mvoege@zcvbs.com
- **Katharine G. Shirey**
  ecyolyef@atg.wa.gov,kays1@atg.wa.gov,DanielleF@atg.wa.gov
- **Ryan P. Steen**
  rpsteen@stoel.com,SEA_DOCKET@stoel.com,lastevens@stoel.com,sdloomis@stoel.com
- **Laura J Watson**
  lauraw2@atg.wa.gov,ecyolyef@atg.wa.gov

DATED this 12th day of October 2011.

*/s/ Katharine G. Shirey*
KATHARINE G. SHIREY, WSBA #35736
Assistant Attorney General

DEFENDANTS' REPLY BRIEF IN
SUPPORT OF 12(b)(6) MOTION TO
DISMISS
Case No.  2:11-cv-00417-MJ

18

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
(360) 586-6770