UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WASHINGTON ENVIRONMENTAL COUNCIL and SIERRA CLUB WASHINGTON STATE CHAPTER,<br><br>Plaintiff,<br><br>v.<br><br>THEODORE ("TED") L. STURDEVANT, DIRECTOR, WASHINGTON STATE DEPARTMENT OF ECOLOGY, in his official capacity, et. al.<br><br>Defendants,<br><br>WESTERN STATES PETROLEUM ASSOCIATION<br><br>Intervenor-Defendant. | CASE NO. C11-417 MJP<br><br>ORDER ON THE PARTIES' DISPOSITIVE MOTIONS |

This matter comes before the Court on Plaintiff's motion for summary judgment (Dkt. No. 35), Defendants' motion to dismiss (Dkt. No. 55), and Intervenor-Defendant's motion for summary judgment (Dkt. No. 50). Having reviewed the motions, the combined responses (Dkt.

Nos. 55 and 50), the replies (Dkt. Nos. 59, 61, and 63), Defendants' notice of supplemental authority (Dkt. No. 69), Plaintiffs' response to the supplemental authority (Dkt. No. 70), and all related filings, the Court GRANTS in part and DENIES in part the parties' motions, GRANTS in part and DENIES in part Defendants' motion to strike, and ORDERS parties meet and confer to propose a briefing schedule regarding an appropriate remedy.

**Background**

Plaintiffs Washington Environmental Council and Sierra Club (collectively referred to as "Conservation Organizations") are suing Defendants Ted Sturdevant, Mark Asmundson, and Craig T. Kenworthy in their official capacities as directors of, respectively, the Washington State Department of Ecology ("Ecology"), Northwest Clean Air Agency ("NWCAA"), and the Puget Sound Clean Air Agency ("PSCAA")(collectively referred to as "Agencies") under the federal Clean Air Act. Plaintiffs allege the Agencies are not enforcing Washington's State Implementation Plan ("SIP") which requires the Agencies to define reasonably available control technology ("RACT") for greenhouse gases ("GHGs") and apply the RACT standards to oil refineries. Five oil refineries operate in Washington—BP Cherry Point in Blaine, ConocoPhillips in Ferndale, Shell Oil in Anacortes, Tesoro in Anacortes, and U.S. Oil in Tacoma. Plaintiffs believe the oil refineries are responsible for a significant portion of the total GHG emissions in Washington. The Western States Petroleum Association ("WSPA"), of which all five oil refineries are members, appear as Intervenor-Defendants. (See Dkt. No. 25.)

Washington's SIP was adopted pursuant to the Clean Air Act ("CAA"). 42 U.S.C. §§ 7408-7410. Under the CAA, the Environmental Protection Agency ("EPA") establishes national ambient air quality standards ("NAAQS") for "criteria pollutants." 42 U.S.C. § 7409(a). Then, each state must propose a SIP that sets emissions limits, control measures, and schedules for

attaining and/or maintaining NAAQS compliance. 42 U.S.C. § 7410(a). Once a SIP is approved by the EPA, it becomes federal law and federally-enforceable. Safe Air for Everyone v. EPA, 488 F.3d 1088, 1091 (9th Cir. 2007). As NAAQS change and new NAAQS are added, states revise their SIPs and propose how they will attain and/or maintain those revised NAAQS. 42 U.S.C. § 7410(a)(1). To date, the EPA has established NAAQS for six pollutants: particulate matter, sulfur dioxide, ozone, nitrogen dioxide, carbon monoxide, and lead. 40 C.F.R. Part 50. The EPA has not established NAAQS for GHGs.

In Washington, Ecology adopted revisions to Washington's SIP in 1993, which the EPA later approved in 1995. 60 Fed. Reg. 28,726 (June 2, 1995). At issue in this action are two provisions amended in 1995: the "RACT provision" and the "Narrative Standard." In relevant part, the RACT provision states:

> [A]ll emissions units are required to use reasonably available control technology (RACT) which may be determined for some sources or source categories to be more stringent than the applicable emission limitations of any chapter of Title 173 WAC. Where current controls are determined to be less than RACT, the permitting authority shall, as provided in [RCW 70.94.154], define RACT for each source or source category and issue a rule or regulatory order requiring the installation of RACT.

WAC 173-400-040(1). The Narrative Standard states:

> No person shall cause or allow the emission of any air contaminant from any source if it is detrimental to the health, safety, or welfare of any person, or causes damage to property or business.

WAC 173-400-040(6). RCW 70.94.030(1) defines "air contaminants" as "dust, fumes, mist, smoke, other particulate matter, vapor, gas odorous substance, or any combination thereof."

ORDER ON THE PARTIES' DISPOSITIVE
MOTIONS- 3

Since Washington's definition of "air contaminants" includes GHGs and oil refineries are "emission units" or sources of air contaminants, Plaintiffs bring this action demanding the Agencies establish RACTs for GHG emissions from oil refineries.

**Analysis**

I. <u>Dispositive Motions</u>

Plaintiffs and WSPA filed cross-motions for summary judgment and the Agencies filed a motion to dismiss. There is no dispute that, to date, the Agencies have not applied the RACT provision to GHGs. However, Defendants argue Washington's SIP is not federally-enforceable to the extent it regulates GHGs because GHGs are not criteria pollutants with recognized NAAQS.

A. <u>Summary Judgment and Motion to Dismiss Standards</u>

On a motion to dismiss, the Court must accept the material allegations in the complaint as true and construe them in the light most favorable to Plaintiff. <u>NL Indus., Inc. v. Kaplan</u>, 792 F.2d 896, 898 (9th Cir.1986). A motion to dismiss filed pursuant to Rule 12(b)(6) tests the sufficiency of the complaint. <u>Conley v. Gibson</u>, 355 U.S. 41, 45–46 (1957). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009) (<u>quoting</u> <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 554, 570 (2007)). The plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Twombly</u>, 550 U.S. at 555.

Summary judgment is not warranted if a material issue of fact exists for trial. <u>Warren v. City of Carlsbad</u>, 58 F.3d 439, 441 (9th Cir.1995), <u>cert. denied</u>, 516 U.S. 1171, 116 S.Ct. 1261, 134 L.Ed.2d 209 (1996). The underlying facts are viewed in the light most favorable to the party

opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "Summary judgment will not lie if ... the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party moving for summary judgment has the burden to show the absence of a genuine issue concerning any material fact. Adickes v. S.H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Once the moving party has met its initial burden, the burden shifts to the nonmoving party to establish the existence of an issue of fact regarding an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986). To discharge this burden, the nonmoving party cannot rely on its pleadings, but instead must have evidence showing that there is a genuine issue for trial. Id. at 324.

B. Application

Defendants argue summary judgment is warranted because (1) Washington's SIP provisions do not require Agencies establish RACT for GHG emissions and (2) even if Washington's SIP was interpreted to impose an obligation on the Agencies, the CAA precludes Washington SIP from regulating beyond NAAQS. The Court agrees in part and disagrees in part.

1. Washington SIP

The Court finds the Agencies are obligated to establish RACT for GHG emissions under the RACT provision.

a. RACT Provision

In interpreting a SIP, the Court relies on the plain meaning of the plan and stops there if the language is clear. Safe Air for Everyone v. U.S. E.P.A., 488 F.3d at 1095 (9th Cir. 2007).

1  The RACT provision's plain language requires the Agencies to define RACT requirements
2  where emission units are less than RACT.  See WAC 173-400-040(1).  It provides: "Where
3  current controls are determined to be less than RACT, the permitting authority shall, as provided
4  in [RCW 70.94.154], define RACT for each source or source category and issue a rule or
5  regulatory order requiring the installation of RACT." Id. (emphasis added).  As provided in
6  RCW 70.94.154, the Agencies must establish a list of sources requiring RACT review, develop a
7  schedule for review, and update the list at least once every five years.  RCW 70.94.154(4).  In
8  establishing or revising RACT requirements, the Agencies "must address, where practicable, all
9  air contaminants deemed to be of concern for that source or source category."  RCW
10 70.94.154(5)(emphasis added).  In Washington, "air contaminant" includes "particulate matter,
11 vapor, gas, odorous substance or any combination thereof."  RCW 70.94.030(1).  GHGs fall
12 under this definition and Washington Governor Christine Gregoire's 2009 executive order
13 confirms that, in Washington, "greenhouse gases are air contaminants."  Exec. Order 09-05 (May
14 21, 2005).  In sum, based on its plain language, the RACT provision is not discretionary and
15 requires Agencies to establish RACT standards for GHGs.
16     Defendants, nevertheless, present four arguments for interpreting the RACT provision
17 contrary to its plain language.  First, Defendants argue RCW 70.94.154, the statute setting out
18 the procedure for establishing RACT, was not formally adopted into Washington's SIP.
19 However, the Court finds this argument is unpersuasive because the RACT provision
20 incorporates the statute by reference.  It explicitly refers Agencies to RCW 70.94.154 for
21 guidance on establishing RACT.  While Defendants argue courts in Boose v. Tri-County Metro.
22 Transp. Dist., 587 F.3d 997 (9th Cir. 2009) and El Comité Para El Bienestar de Earlimat v.
23 Warmerdam, 539 F.3d 1062 (9th Cir. 2008) declined to incorporate a disputed provision by
24

reference, both cases are distinguishable. In Boose, the disputed provision stated generally that entities "may be subject to ADA regulations of the Department of Justice." Boose, 587 F.3d at 1003-4. Likewise, in El Comité, plaintiffs sought to enforce a memo that was referenced in the preamble of the final rule. El Comité, 539 F.3d at 1068. Here, in contrast, the RACT provision cites to a specific statute, not the general regulations of a federal agency and is included in the operative section of Washington's final SIP. Because the RACT provision necessarily relies on RCW 70.94.154 to ensure Agencies define RACT for all air contaminants, the provision is incorporated by reference.

Second, Defendants argue the Agencies have no obligation to determine RACT for GHG emissions under the provision unless emission units are determined to be less than RACT. The Court finds the argument illogical. In order for emission units to know whether they are employing adequate RACTs, the Agencies must establish a RACT standard. While Defendants argue the decision to establish RACTs is discretionary and analogize to Sierra Club v. Jackson, the case is distinguishable. 648 F.3d 848 (D.C. Cir. 2011). In Sierra Club, the disputed provision stated the EPA "shall take such measures . . . as necessary to prevent the construction or modification of a major emitting facility." Id. at 856 (emphasis added). The D.C. Circuit held the EPA's actions were unenforceable because the statute did not define what was "necessary." The RACT provision, in contrast, contains no such qualifying language. It sets forth detailed procedures for establishing RACT and, therefore, imposes an obligation on Agencies to develop RACTs.

Third, Defendants argue the RACT provision's requirements are discretionary because the first sentence uses the word "may." The Court finds Defendants' argument is a tortured reading of the RACT provision. The first sentence provides, "[A]ll emissions units are required

to use reasonably available control technology (RACT) which <u>may</u> be determined for some sources or source categories to be more stringent than the applicable emission limitations for any chapter of Title 173 WAC." WAC 173-400-040(1) (emphasis added). The term "may" references the fact that a source might be required to conform to a stricter emission control standard than Title 173. It does not, as Defendants argue, suggest the Agencies' obligations for establishing RACT requirements are discretionary.

Fourth, Defendants rely on <u>EPA ex rel. McKeown v. Port Authority</u> to argue the Agencies similarly made no commitment under the SIP to regulate GHG emissions. The Court is not persuaded. In <u>Port Authority</u>, citizens claimed that the state authorities' operation of toll booths slowed traffic and increased toxic tailpipe emissions. 162 F. Supp.2d 173 (S.D.N.Y. 2001). The district court dismissed the action, reasoning that cars were the actual source of emissions, not toll booths, and the state agency was not obligated under the SIP or CAA to regulate toll booths. <u>Id.</u> at 187-88. In contrast, the RACT provision explicitly requires the regulation of emission sources, including oil refineries. While Defendants are correct in noting the RACT provision obligates oil refineries to implement RACT, the oil refineries' obligations do not absolve the Agencies' commitment. Under the RACT provision, the Agencies is obligated to define RACT for all air contaminants and determine whether oil refineries are in compliance.

Since the plain language of the RACT provision requires it and Plaintiffs' suit is not a discretionary enforcement action, the Court finds the Agencies are obligated to apply the RACT provision to GHGs.

\\

\\

b. Narrative Standard

Plaintiffs also allege Defendants are violating the Narrative Standard by failing to establish RACT requirements. The Court, however, disagrees. Because the Agencies have broad discretion under the Narrative Standard, the provision is unenforceable as a citizen suit.

Courts only enforce specific SIP strategies; they do not enforce overall objectives or aspirational goals. Bayview Hunters Point Community Advocates v. Metropolitan Transp. Com'n, 366 F.3d 692, 701 (9th Cir. 2004)(citation omitted). In certain circumstances, decisions entrusted to an agency's discretion are unreviewable. See Heckler v. Chaney, 470 U.S. 821, 830-32 (1985). An agency's action is excluded from judicial review "where statutes are drawn in such broad terms that in a given case there is no law to apply" or the statute "is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." Id. A citizen suit may not be maintained solely to force regulators to conform to the plaintiff's own notion of proper environmental policy. Citizens for a Better Env't v. Deukmejian, 731 F.Supp. 1448, 1454 (N.D. Cal. 1990).

Here, the Narrative Standard is not enforceable as a citizen suit. First, the plain language does not impose an obligation on the Agencies to regulate GHG emissions. The Narrative Standard provides, "No person shall cause or allow the emission of any air contaminant from any source if it is detrimental to the health, safety, or welfare of any person, or causes damage to property or business." WAC 173-400-040(6). Plaintiffs argue the Agencies must regulate GHG emissions because the Agencies fall within the definition of "person" and, under the Narrative Standard, no person shall "allow" the emission of air contaminants. But, the Court finds Plaintiff's argument goes too far. The Narrative Standard applies to Agencies to the extent Agencies are barred from emitting air contaminants like every other "person." The Agencies,

however, do not violate the Narrative Standard by "allow[ing]" the emission of air contaminants. If the Court were to agree with Plaintiffs, every person would violate the Narrative Standard when oil refineries emit air contaminants. Since the Narrative Standard does not require Agencies, let alone all "persons," regulate air contaminants, the Court finds the provision does not obligate the Agencies to develop RACT standards for GHGs.

Second, the Narrative Standard is too broad to be enforceable as a citizen action. Unlike the RACT provision, which sets forth specific procedures for establishing RACTs, the Narrative Standard is not a detailed SIP strategy. It is stated generally and is aspirational in language. While Plaintiffs rely on Communities for a Better Environment v. Cenco Refining Co. to argue the Narrative Standard need not require numeric standards, the argument is misplaced. 180 F.Supp. 2d 1062, 1077 (C.D. Cal. 2001). While the SIP provisions in Cenco were not numeric, they involved concrete and objective permitting requirements. Id. In contrast, the Narrative Standard does not establish any requirements at all. As Plaintiffs concede, the Narrative Standard does not prescribe any particular technology-based standard. (Pltf's Reply Br., Dkt. No. 59 at 28.) Merely stating the emissions should "not be detrimental to the health, safety or welfare of any person" is not enough. See McEvoy v. IEI Barge Servs., Inc., 622 F.3d 671, 678 (7th Cir. 2010)(finding the Illinois provision amounted to little more than a commandment, "thou shall not pollute"). Since it does not set forth any specific standard, the Court finds the provision unenforceable.

Finally, the parties dispute whether collateral estoppel applies to the Pollution Control Hearings Board's ("PCHB") decision regarding the Narrative Standard in April 2010. See Sierra Club et al. v. Southwest Pollution Control Agency, PCHB No. 09-108, Order Granting Summary Judgment (Apr. 19, 2010)(Leppo Decl., Dkt. No. 53-1.) The Court need not reach the issue of

collateral estoppel because the Court finds Plaintiff's claim under the Narrative Standard fails on the merits.

Since the Narrative Standard provides Agencies broad discretion as to its enforcement, the Narrative Standard is not actionable as a citizen suit.

2. CAA

Alternatively, Defendants argue, even if the Washington SIP regulates GHG emissions, the CAA does not authorize regulation of GHGs through SIPs. Defendants contend the purpose of the state SIP process under the CAA is to assure maintenance of NAAQS for criteria pollutants only. The Court finds Defendants' argument fails. It is undisputed that the SIP process was enacted to ensure the prompt attainment of specified air quality standards. 42 U.S.C. § 7410. The only question is whether the CAA allows for state SIPs to impose broader emissions standards than otherwise required by NAAQS—and the Court finds the answer is yes.

   a. Statutory Interpretation

On questions of statutory interpretation, courts follow the approach set forth in Chevron U.S. A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842 (1984). Chevron requires courts to examine in the first instance "whether Congress has directly spoken to the precise question at issue." Chevron, 467 U.S. at 842. "If Congress has done so, the inquiry is at an end; [we] 'must give effect to the unambiguously expressed intend of Congress.'" Food & Drug Admin. V. Brown & Williamson Tobacco Corp., 529 U.S. 120, 132 (2000)(quoting Chevron, 467 U.S. at 843). If, after conduct such an analysis, a court concludes that Congress has not addressed the issue, the court "must respect the agency's construction of the statute so long as it is permissible." Brown & Williamson, 529 U.S. at 132.

\\

b. Plain Language

The CAA's plain language allows states to impose broader emission standards than otherwise required by NAAQS. Under the CAA, the EPA "shall approve [a state's SIP] as a whole if it meets all the applicable requirements." 42 U.S.C. § 7410(k)(3). In other words, the EPA must approve a state SIP irrespective of whether the state SIP is more stringent than federal law as long as the SIP meets minimum federal requirements. See Union Elec. Co. v. EPA, 427 U.S. 246, 266 (1976).

Defendants nevertheless present three arguments for finding the CAA does not provide for regulations that exceed the scope of attaining NAAQS. First, Defendants argue SIPs must be tailored simply and precisely to meet NAAQS. The Court finds Defendants' argument fails. In Union Elec. Co., the Supreme Court held a SIP need only "meet the 'minimum conditions' of [the CAA]." Id. at 266. Beyond that, if a state makes the legislative determination that it desires a particular air quality that exceeds NAAQS, the Supreme Court held, "such a determination is fully consistent with the structure and purpose of [the CAA]." Id. at 266.

Second, Defendants argue state regulations that go beyond NAAQS are not federally-enforceable and merely a part of state law. The Court disagrees. Section 7416 of the CAA provides:

> [N]othing in this chapter shall preclude or deny the right of any State or political subdivision thereof to adopt or enforce (1) any standard or limitation respecting emissions of air pollutants or (2) any requirement respecting control or abatement of air pollution; except that if an emission standard or limitation is in effect under an applicable implementation plan or under section 7411 or section 7412 of this title, such State or

|   |   |
|---|---|
| 1 | political subdivision may not adopt or enforce any emission standard or limitation which |
| 2 | is less stringent than the standard or limitation under such plan or section." |

42 U.S.C. § 7416.  While Defendants argue the provision merely confirms the CAA does not preempt state air pollution laws, the Supreme Court rejected such a curtailed reading of § 7416. Union Elec. Co., 427 U.S. at 264.  In Union Elec. Co., the amici relied on § 7416 to argue states adopting emission standards stricter than NAAQS must adopt the standards independently of the EPA-approved SIP.  Id.  Because amici's argument would require states wanting stricter standards to enact two sets of emission standards, one federally approved plan and one stricter state plan, the Supreme Court disagreed.  Id.  Since there is "no basis . . . for visiting such wasteful burdens upon the States and [the EPA]," the Court finds that Washington may include standards stricter than NAAQS within its SIP.  Id.

Third, Defendants argue Union Elec. Co. only allows a state SIP to impose more stringent regulations of criteria pollutants—not expand regulations to non-criteria pollutants. The Court, however, disagrees.  Nothing in Union Elec. Co. limited its reasoning to criteria pollutants; the Supreme Court's reasoning applies equally to SIP provisions regulating non-criteria pollutants.  See, e.g., Concerned Citizens of Bridesburg v. EPA, 836 F.2d 777, 782 (3d Cir. 1987).  In Bridesburg, the EPA rescinded its approval of Pennsylvania's SIP provision regulating offensive odors because the EPA determined offensive odors were not criteria pollutants. 836 F.2d at 782.  In finding EPA's actions violated CAA's statutory procedures for SIP revisions, the Third Circuit reasoned the EPA's authority to reject a state SIP is limited and the state is entitled to "include . . . SIP provisions that go beyond the minimal requirements of the NAAQS." Id. at 787.  While Defendants attempt to distinguish Bridesburg by observing Pennsylvania determined odor regulations assisted in NAAQS attainment and the Agencies here

have not made a similar link between GHG emissions and NAAQS, the Court finds the distinction inapposite. Regardless of the states' beliefs regarding the relationship between non-criteria pollutants and criteria pollutants, there is no dispute that odors, like GHGs, are not criteria pollutants. This action, therefore, presents an analogous situation--the EPA-approved, SIP provision requires regulation of a non-criteria pollutant. Following the reasoning in Bridesburg, the Court upholds Washington's SIP provision as it is currently-approved by the EPA.

Since the CAA allows state SIPs to impose regulations that reach beyond attaining and maintaining NAAQS for criteria pollutants, the Court finds Washington's SIP provisions regulating GHGs are federally-enforcable.

3. EPA Interpretation

Even if the Court finds the plain language is ambiguous and reaches step two of the Chevron analysis, Defendants' argument that SIPs cannot extend to GHG emissions fails. The Court finds the EPA's interpretation of the CAA is, at best, mixed.

Several of its actions suggest the EPA interprets the CAA as allowing state SIPs to regulate non-criteria pollutants. First, the EPA recently approved a state SIP that included regulations of GHG emissions. In 2010, the EPA approved revisions to Delaware's SIP expressly regulating carbon dioxide, a type of GHG. 75 Fed. Reg. 48,566, 48,567 (Aug. 11, 2010); see also 7 DE Admin Code 1144(1.1)("The purpose of this regulation is to ensure that emissions of . . . carbon dioxide from stationary generators in the State of Delaware do not adversely impact public health, safety, and welfare."). While Defendants argue Delaware was in a "nonattainment" zone and explicitly stated regulation of carbon dioxide would help Delaware attain NAAQS for ozone, there is no showing that the EPA based its approval on these factors.

At the least, Delaware's SIP suggests the EPA interprets the CAA as allowing state SIPs to include regulations of GHGs in certain circumstances.

Second, the EPA requires state SIPs to regulate GHG emissions under the Prevention of Significant Deterioration ("PSD") program. 42 U.S.C. §§ 7470-7479. PSD programs require major emitting facilities in "attainment" regions to obtain PSD permits and demonstrate that the facility implements best available control technology ("BACT") for air pollutants, including GHG emissions. Id. Although separate regulations promulgate the PSD program, the program is part of each state's SIP. In fact, the EPA required several states to submit corrective SIPs when it determined the states did not apply PSD requirements to GHG emissions. See, e.g., 75 Fed. Reg. 53,892-53900 (Sept. 2, 2010), 75 Fed. Reg. 77,698, 77,702 (Dec. 13, 2010). The EPA's requirement that state SIPs include provisions for regulating GHG emissions suggests the EPA does not interpret the CAA as limited to criteria pollutants.

Third, the EPA has repeatedly approved the RACT provision in Washington's SIP, which regulates GHGs. The EPA originally approved the RACT provision in 1995. 60 Fed. Reg. 28,726 (June 2, 1995). Without altering the RACT provision, the EPA approved amendments to Washington's SIP again in 1998 and 2004. See, e.g., 63 Fed. Reg. 5,269 (Feb. 2. 1998); 69 Fed. Reg. 53,007 (Aug. 31, 2004). While Defendants argue the EPA approved of the provisions only to the extent they apply to criteria pollutants, the argument is unavailing. The EPA must approve a proposed SIP "as a whole if it meets all of the applicable requirements." 42 U.S.C. § 7410. If the EPA sought to limit the RACT provision to criteria pollutants, it must do so through formal rulemaking.[1] See, e.g., Concerned Citizens of Bridgesburg v. EPA, 836 F.2d 777, 787 (3rd Cir.

---

[1] The Court recognizes the EPA proposed a clarification of its Washington SIP approval in March 2011. See 76 Fed. Reg. 16,365 (Mar. 23, 2011). In the proposal, the EPA proposes to

1987)("If the EPA is dissatisfied with a SIP or a portion of it, then it must either initiate the process for revising the SIP or initiate the process for promulgating a new SIP that addresses the deficiencies in the earlier one.")

Defendants, nevertheless, rely on a 1979 memo to argue the EPA interprets the CAA as limited to criteria pollutants. In the 1979 memo, EPA's associate general counsel stated, "measures to control non-criteria pollutants may not legally be made part of a SIP. Section 110 of the Clean Air Act makes clear that the SIPs have this limitation." (Dkt. No. 57, Shirey Decl., Ex. A.) Defendants' reliance on the 1979 memo, however, is unpersuasive. The Court questions whether the memo remains EPA's interpretation today considering the EPA's recent actions in Delaware, Washington and under the PSD program. In addition, the 1979 memo pre-dates both Union Elec. Co., which expressly recognized states' ability to go beyond NAAQS, and Massachsuetts v. EPA. In Massachusetts v. EPA, the Supreme Court rejected the EPA's argument that it lacked authority to regulate GHGs under the CAA. 549 U.S. 497 (2007). Thus, the Court finds the 1979 memo out-dated by Supreme Court case law and conflicts with the EPA's own actions.

Defendants' reliance on EPA actions in Oregon and Georgia are inapposite. While the EPA removed Oregon's proposed regulation of total reduced sulfur because TRS was not a pollutant for which NAAQS existed, the EPA decision was made in 1975 and only after formal rulemaking. 40 Fed. Reg. 33,215 (Aug. 7, 1975). In Georgia, the EPA removed a "general nuisance provision" from Georgia's SIP because the EPA determined that the provision was "not

---

limit necessary state regulations to criteria pollutants and their precursors. Id. 76 Fed. Reg. at 16,366. However, as Defendants acknowledge, until a formal approval of a revision is finalized, the current rule remains in force. See Gen. Motors. Corp. v. United States, 496 U.S. 530, 540-41 (1990). If the EPA proposal is of any relevance, it suggests the EPA also interprets the currently-approved SIP as allowing for state regulations of GHG emissions.

related to the attainment and maintenance of the NAAQS." 71 Fed. Reg. 13,551-52 (Mar. 16, 2006). A general nuisance provision, however, is more analogous to the Narrative Standard which the Court agrees is too broad to be enforceable. It is different from the carefully-crafted, specific RACT provision at issue here. Since Washington's currently-approved SIP is considerably more detailed, the Court finds Defendants' reliance on EPA actions in Oregon and Georgia misplaced.

In sum, the EPA's interpretation of the CAA is mixed and the EPA has repeatedly approved Washington's SIP, including the RACT provision. Since the CAA's plain language allows SIPs to exceed federal NAAQS requirements and Washington's SIP requires the Agencies regulate GHGs, the Court GRANTS Plaintiffs' motion for summary judgment as to its claim under the RACT provision.

II. Remedy

In the event that Plaintiffs prevail on their claims, Defendants requested the Court allow additional briefing as to the appropriate remedies. Having found the Plaintiffs prevail on their claim under the RACT provision, the Court GRANTS Defendants' request.

A factual dispute exists as to how much time Defendants require in order to comply with the RACT provision. While Plaintiffs argue ninety days is sufficient, Defendants argue three years is necessary to establish RACTs and regulate the five oil refineries. As the parties indicated in their joint status report, (Dkt. No. 20 at ¶ 8), the Court finds further evidence is necessary before the Court can fashion an appropriate remedy.

III. Motion to Strike

Defendants seek to strike several of Plaintiffs exhibits and the standing declarations as irrelevant. The Court agrees with respect to Plaintiffs' exhibits only.

1       Exhibits A, C, D, E, F, G, H, I, and J, attached to Joshua Osbourne-Klein's declaration, contain various evaluations and reports regarding climate change. Specifically, Exhibit A is the Climate Impacts Group's "Washington Climate Change Impacts Assessment;" Exhibit C is the EPA's technical support document for the petrochemical production sector; Exhibit D is the United States Energy Information Administration's 2006 report on "Energy-related Carbon Dioxide Emissions in U.S. manufacturing,"; Exhibit E is a British Petroleum report evaluating Cherry Point Refinery in Blaine, WA; Exhibit F is a report by the Washington State Department of Community, Trade and Economic Development regarding GHGs; Exhibit G is a copy of Northwest Clean Air Agency's report explaining its basis for issuing a permit to the Tesoro Refining facility; Exhibit H are excerpts from a report by Energetics, Inc. about "Energy Bandwith for Petroleum Refining Processes"; Exhibit I are excerpts from a Berkeley report on "Energy Efficiency Improvement and Cost Saving Opportunities for Petroleum Refineries"; and Exhibit J is a report by the EPA's technical support document for proposed rulemaking for GHGs. While Plaintiffs submit the exhibits as background, none of these exhibits are relevant under F.R.E. 402. This litigation is limited to the Agencies' obligation to regulate GHG emissions. Whether or not GHG emissions contribute to climate change and/or whether it is feasible to develop RACT for GHG emissions are broader policy questions not at issue here. The Court GRANTS Defendants' motion to strike these exhibits.

      The "standing" declarations are submitted for the purpose of satisfying Article III and jurisprudential standing requirements. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). To the extent they are submitted to support the Court's jurisdiction, the Court DENIES Defendants' motion to strike the standing declarations.

\\

**Conclusion**

The Court GRANTS in part and DENIES in part the parties' dispositive motions. The Court DENIES the Agencies' motion to dismiss Plaintiffs claim under the RACT provision. The CAA requires Washington's SIP meet minimum federal requirements regarding criteria pollutants, but did not preclude Washington's SIPs from including non-criteria pollutants within its regulations. Since the currently-approved RACT provision requires the Agencies develop RACT for GHGs, the Court finds Plaintiffs assert a federally-enforceable cause of action. Because the Agencies concede they are not applying the RACT provision to GHG emissions, the Court likewise finds Plaintiffs prevail on summary judgment. The Court GRANTS the Agencies' motion to dismiss Plaintiffs' claim under the Narrative Standard. The Narrative Standard provides the Agencies broad discretion as to how to enforce the provision and does not obligate Agencies to create RACT standards for GHG emissions.

The Court GRANTS Defendants' motion to strike Exhibits A, C, D, E, F, G, H, I, and J of Joshua Osbourne-Klein's declaration, and DENIES Defendants' motion to strike Plaintiffs' standing declarations.

The Court ORDERS parties to meet and confer and propose a briefing schedule regarding an appropriate remedy. The parties' proposal is due within ten (10) days of entry of this Order.

The clerk is ordered to provide copies of this order to all counsel.

Dated this 1st day of December, 2011.

Marsha J. Pechman
United States District Judge