1                           THE HONORABLE MARSHA J. PECHMAN

2

3

4

5

6

7                   UNITED STATES DISTRICT COURT
                WESTERN DISTRICT OF WASHINGTON
8                         AT SEATTLE

9  WASHINGTON ENVIRONMENTAL      No. 2:11-cv-00417-MJP
    COUNCIL and SIERRA CLUB
10  WASHINGTON STATE CHAPTER,    **INTERVENOR-DEFENDANT**
                                  **WESTERN STATES PETROLEUM**
11           Plaintiffs,           **ASSOCIATION'S BRIEF ON**
                                    **REMEDIES**
12     v.

13  THEODORE ("TED") L. STURDEVANT,
    DIRECTOR, WASHINGTON STATE
14  DEPARTMENT OF ECOLOGY, in his
    official capacity, MARK ASMUNDSON,
15  DIRECTOR, NORTHWEST CLEAN AIR
    AGENCY, in his official capacity, and
16  CRAIG T. KENWORTHY, DIRECTOR,
    PUGET SOUND CLEAN AIR AGENCY,
17  in his official capacity,

18           Defendants,

19  WESTERN STATES PETROLEUM
    ASSOCIATION,
20
           Intervenor-Defendant.
21

22

23

24

25

26

INTERVENOR-DEFENDANT'S BRIEF
ON REMEDIES (2:11-cv-00417-MJP)

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone (206) 624-0900*

1

## TABLE OF CONTENTS

2                                                                                           PAGE

3  I.    INTRODUCTION ................................................................................................ 1

4  II.   ARGUMENT ..................................................................................................... 3

5        A.   The CAA Limits the Scope of Citizen Suit Remedies to Enforcing
             Specific Strategies Expressly Enumerated in the SIP ........................... 3

6        B.   The Only Remedy Available Is to Order the Agencies to Update the
             RACT List and Schedule as Provided in RCW 70.94.154 ..................... 4

7             1.   This Court has determined that the SIP requires the Agencies to
                  determine RACT for all sources following the procedures of RCW
8                 70.94.154 .......................................................................................... 4

9             2.   This Court may not bypass the explicit statutory procedures for
                  determining RACT, which do not require the Agencies to
10                immediately conduct RACT review for the GHG emissions of
                  petroleum refineries ........................................................................ 6

11       C.   Even if the Court Could Order the Agencies to Immediately Determine
             RACT for Refineries, Any Such Order Could Not Direct the Agencies'
12           Exercise of Their Discretion Provided in RCW 70.94.154 .................... 8

13            1.   RCW 70.94.154 explicitly grants the Agencies discretion to
                  determine RACT by source or source category ........................... 9

14            2.   RCW 70.94.154 explicitly grants the Agencies discretion to decide
                  which air control agency evaluates RACT for each Washington
15                refinery ............................................................................................ 10

16            3.   RCW 70.94.154 requires the Agencies to consider "all air
                  contaminants deemed to be of concern" when conducting a RACT
17                review ............................................................................................... 11

     III.  CONCLUSION .................................................................................................. 12

18

19

20

21

22

23

24

25

26

INTERVENOR-DEFENDANT'S BRIEF
ON REMEDIES (2:11-cv-00417-MJP) - i

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
Telephone (206) 624-0900

1

## I.  INTRODUCTION

2      This memorandum is submitted by Intervenor-Defendant Western States Petroleum

3  Association ("WSPA") to address potential remedies pursuant to this Court's scheduling order

4  dated January 6, 2012 (Dkt. 79).  The Court asked the parties to address the schedule for the

5  defendant Agencies to develop reasonably available control technology ("RACT") standards for

6  greenhouse gases ("GHGs") at the five petroleum refineries located within the State of

7  Washington.  *Id.*

8      The process and schedule for establishing RACT standards in Washington is controlled

9  by the explicit language of RCW 70.94.154.  As discussed in Section II.B.1 below, this Court has

10  already decided that the RCW 70.94.154 is part of Washington's State Implementation Plan

11  ("SIP"), and that the Agencies must develop RACT using the procedures outlined in RCW

12  70.94.154.[1]  As to that procedure, RCW 70.94.154(4) instructs the Washington Department of

13  Ecology ("Ecology") to develop a detailed list and schedule of priority sources for RACT

14  review.  Every five years, Ecology must update that list.  *Id.*

15      Ecology published the first RACT list and schedule in 1996, but has never updated it.

16  *See* Declaration of Frank Holmes, submitted herewith, ("Holmes Decl."), Ex. 1 at 1.  The

17  obligation to update that list and schedule every five years is a SIP commitment with a clear

18  deadline.  The Court may order Ecology to update the RACT list and implementation schedule.

19  The initial RACT list and implementation schedule took three years from the passage of RCW

20  70.94.154.  WSPA defers to Ecology as to the length of time necessary to complete the update of

21  the RACT list and implementation schedule.

22      At the same time, it is equally clear that the citizen suit provisions of the Clean Air Act

23  ("CAA") do not authorize the Court to bypass the process outlined in RCW 70.94.154 and

24

25      [1] WSPA respectfully continues to disagree with this holding for the reasons discussed in
WSPA's prior briefing and motion for reconsideration.

26

INTERVENOR-DEFENDANT'S BRIEF
ON REMEDIES (2:11-cv-00417-MJP) - 1

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone (206) 624-0900*

1  require the Agencies to immediately "develop RACT standards for greenhouse gases" for the

2  petroleum refineries.  As discussed in Section II.B.2 below, courts uniformly recognize that they

3  may only enforce explicit commitments actually undertaken in the SIP itself.  Here, the explicit

4  commitment is found in the process established by the Washington Legislature in RCW

5  70.94.154.  Under that process, Ecology prioritizes sources and source categories for RACT

6  review.  The Legislature instructed Ecology to set a schedule for RACT review of Washington

7  sources.  In setting that schedule, the Legislature directed Ecology to consider specific criteria,

8  and to consult with specific stakeholders.  The Court has determined that these procedures are

9  part of the SIP, and therefore enforceable in a CAA citizen suit.  Having determined that the SIP

10  incorporates this process, the Court may not substitute its judgment for Ecology's and decide

11  which sources and air contaminants should be reviewed first.  To do so would effectively rewrite

12  the SIP in a manner routinely rejected by courts in CAA citizen suit cases.

13         Finally, as explained in Section II.C below, if the Court nonetheless were to order the

14  Agencies to develop RACT standards for refineries immediately, any such order could not direct

15  the Agencies in the exercise of their discretion in formulating RACT provided in RCW

16  70.94.154.  The statute authorizes the Agencies to establish RACT through rulemaking or

17  through issuance of source-specific regulatory orders, and it authorizes both Ecology and local

18  air authorities to develop RACT for sources under their jurisdiction.  Moreover, the statute

19  authorizes the Agencies to decline to consider any air contaminant in a RACT determination

20  when such consideration is not "practicable" or when the particular contaminant is not "deemed

21  to be of concern" for a particular source.  Any remedy order must preserve to the Agencies the

22  discretion to decide how to implement RACT for the sources they regulate.

23

24

25

26

INTERVENOR-DEFENDANT'S BRIEF
ON REMEDIES (2:11-cv-00417-MJP) - 2

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
Telephone (206) 624-0900

# II. ARGUMENT

**A.    The CAA Limits the Scope of Citizen Suit Remedies to Enforcing Specific Strategies Expressly Enumerated in the SIP**

The CAA authorizes citizen suits against any person who violates "an emission standard or limitation." 42 U.S.C. § 7604(a)(1). A SIP provision may qualify as "an emission standard or limitation" if that provision is a "requirement" that relates to "limits" on a source or to the "operation and maintenance of a source." 42 U.S.C. § 7602(k). The "well-established rule" is that "courts may only enforce specific SIP strategies, and may not enforce a SIP's overall objectives or goals." *Bayview Hunters Point Cmty. Advocates v. Metro. Transp. Comm'n*, 366 F.3d 692, 701 (9th Cir. 2004) ("*Bayview*"). Consistent with these limitations, courts have ordered state agencies to comply with deadlines for promulgating regulations only if they are expressly enumerated in the SIP, *American Lung Ass'n v. Kean*, 670 F. Supp. 1285, 1289 (D.N.J. 1987), or to comply with a "process" that is "plainly spelled out" in the SIP. *Citizens for a Better Environment v. Deukmejian*, 731 F.Supp. 1448, 1457 (N.D. Cal. 1990) ("*Citizens*").

Courts cannot, however, fill gaps in a SIP or revise SIP requirements to more effectively implement the goals of the SIP. *See Bayview*, 366 F.3d at 698; *Action for Rational Transit v. W. Side Highway Project*, 699 F.2d 614, 616 (2nd Cir. 1983); *Citizens*, 731 F.Supp. at 1459. Similarly, courts may not "bootstrap" an enforceable commitment into a SIP simply because such a commitment seems "logical" or even "necessary." *See El Comite Para El Bienestar de Earlimart v. Warmerdam*, 539 F.3d 1062, 1073 (9th Cir. 2008) ("*El Comite*"). Nor may courts enforce provisions in a SIP that are themselves discretionary. *Id*. at 1069.

In short, remedial authority in the context of a CAA citizen suit is limited to explicit commitments in the SIP itself. As discussed below, the SIP, as construed by the Court, contains an enforceable commitment to update the RACT list and schedule every five years. However, the SIP contains no commitment, express or otherwise, to prioritize first and to immediately conduct RACT review of petroleum refineries for GHG emissions in advance of RACT review

INTERVENOR-DEFENDANT'S BRIEF
ON REMEDIES (2:11-cv-00417-MJP) - 3

71166162.2 0052991- 00002

**STOEL RIVES LLP**
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone (206) 624-0900*

1   of every other emissions source category and every other air contaminant.  To the contrary,

2   because remedial authority in the context of a CAA citizen suit is limited to explicit

3   commitments in the SIP itself, there is no lawful basis to "bootstrap" into the SIP a requirement

4   that the Agencies immediately conduct a RACT review of petroleum refineries for GHG

5   emissions.

6   **B.    The Only Remedy Available Is to Order the Agencies to Update the RACT List and**
       **Schedule as Provided in RCW 70.94.154**

7

8           **1.    This Court has determined that the SIP requires the Agencies to determine**
               **RACT for all sources following the procedures of RCW 70.94.154**

9           The scope of the available remedies in this case is dictated by the commitments explicitly

10  contained in the SIP.  *El Comite*, 539 F.3d at 1069 ("To determine . . . whether the remedies

11  imposed by the district court are appropriate, we first address the scope of the SIP").  This Court

12  has already decided the scope of the relevant SIP provisions.  The Court determined that:  (i) the

13  SIP imposes an obligation on all emission units to use RACT (Dkt. 72 at 7); (ii) that this

14  obligation logically "imposes an obligation on the Agencies to develop RACTs," because

15  otherwise the emission units cannot "know whether they are employing adequate RACTs" (*Id.*);

16  and (iii) the SIP incorporates the provisions of RCW 70.94.154 "to set forth the <u>procedure</u> for

17  defining RACT and identify the air contaminants to which RACT applies."  (Dkt. 77 at 3

18  (emphasis added)).  In other words, this Court has determined that the SIP requires the Agencies

19  to develop RACT for all sources following the "procedure" outlined in RCW 70.94.154.  As to

20  the scope of that "procedure," the Court has stated that RCW 70.94.154 provides that "the

21  Agencies must establish a list of sources requiring RACT review, develop a schedule for RACT

22  review, and update the list at least once every five years."  Dkt. 72 at 6.[2]

23

24  ───────────────

25      [2] Although the Court stated that "the Agencies" must establish a list of sources requiring
    RACT review, RCW 70.94.154(4) expressly assigns that task solely to Ecology.

26

INTERVENOR-DEFENDANT'S BRIEF
ON REMEDIES (2:11-cv-00417-MJP) - 4

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
Telephone (206) 624-0900

1    As to the first requirement – the commitment to develop a RACT list and schedule –

2    Ecology published the required list and schedule for RACT review in December 1996.  *See*

3    Holmes Decl., Ex. 1 at 1.  The RACT list was intended to be Ecology's "framework for

4    systematically performing RACT determinations."  *Id.*  In prioritizing source categories for

5    RACT review, Ecology recognized that EPA was engaged in developing "MACT" emission

6    standards for hazardous air pollutants for various source categories.  *Id.* at 2 ("For purposes of

7    regulatory efficiency, Ecology will attempt to time RACT evaluations with the timing of MACT

8    evaluations.").  Tracking EPA's MACT development schedule, Ecology assigned certain

9    petroleum refinery process units for RACT review in "Group A2," and certain refinery process

10   units in "Group A3."  *Id.* at 2-3.  Ecology listed no petroleum refinery units in "Group A1," the

11   first tier of sources scheduled for RACT review.

12   Ecology has not subsequently updated that list.  Nor have any of the Agencies ever

13   completed a RACT rulemaking for any source category or pollutant.[3]  Because RCW 70.94.154

14   established deadlines for Ecology to update the RACT list and implementation schedule, and the

15   Court has determined that these deadlines are SIP-approved, the Court may order Ecology to

16   complete these requirements.  *See Citizens,* 731 F.Supp. at 1457.

17   As to the length of time necessary to update that list, the statute requires Ecology to

18   prioritize sources for RACT review by identifying those source categories for which RACT

19   review is most likely to yield benefits:

20   In developing the list to determine the schedule of RACT review,
     ecology shall consider emission reductions achievable through the
21   use of new available technologies and the impacts of those
     incremental reductions on air quality, the remaining useful life of
22   previously installed control equipment, the impact of the source or

23   _____
     [3] In June 1993, shortly after the legislature enacted RCW 70.94.154, Ecology commenced
24   a RACT rule development process for the kraft pulp mill source category.  *See* Holmes Decl. at
     Ex. 3 (Briefing on RACT Rule Development Process for the Kraft Pulp Mill Source Category
     (June 9, 1993)).  To the best of WSPA's knowledge, Ecology never completed that first
25   rulemaking and has never undertaken and completed any subsequent RACT rulemaking.  *See*
     Holmes Decl. at ¶ 9.
26

INTERVENOR-DEFENDANT'S BRIEF
ON REMEDIES (2:11-cv-00417-MJP) - 5

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
Telephone (206) 624-0900

1     source category on air quality, the number of years since the last
BACT, RACT or LAER determination for that source and other
2     relevant factors.

3 RCW 70.94.154(4).  Moreover, prior to finalizing the list and schedule, the statute directs

4 Ecology to "consult with local air authorities, the regulated community, environmental groups,

5 and other interested individuals and organizations."  *Id.* WSPA defers to Ecology as to the

6 length of time actually necessary to complete this comprehensive review and analysis of all

7 sources.  Nonetheless, it is important to note that it took Ecology more than three years from the

8 enactment of RCW 70.94.154 to establish the first RACT list and schedule, and that the

9 prioritization criteria require hard information that Ecology may need to gather from the sources

10 under consideration.  *See, e.g.,* Holmes Decl., Ex. 4 (136-page pulp and paper hog fuel boiler

11 RACT analysis by Ecology).

12   **2.**  **This Court may not bypass the explicit statutory procedures for determining**
**RACT, which do not require the Agencies to immediately conduct RACT**
13      **review for the GHG emissions of petroleum refineries**

14   In RCW 70.94.154, the Legislature laid out a process for RACT evaluations for a

15 universe of Washington sources and source categories.  This Court has held that that process is

16 part of the SIP.  Accordingly, Plaintiffs are clearly wrong in ignoring the prioritization scheme

17 imposed by RCW 70.94.154(4) and suggesting that the Court require the Agencies to address

18 GHG emissions of petroleum refineries ahead of the many source categories Ecology has ranked

19 as a higher priority on the existing RACT list (and for which RACT has not yet been

20 determined).  Such an order would expressly contradict the terms of RCW 70.94.154, which

21 directs the Agencies to "revise RACT requirements, as needed, *based on the review conducted*

22 *under this subsection."*  RCW 70.94.154(4) (emphasis added).

23   Courts routinely reject efforts to re-write a SIP or to supply missing commitments to

24 achieve the purported goals of a SIP.  For example, in *Bayview,* the plaintiffs sued California's

25 Metropolitan Transit Commission ("MTC"), arguing that the state violated an enforceable

26 commitment in the SIP to achieve a 15% increase in transit ridership over levels in 1982-83.  366

INTERVENOR-DEFENDANT'S BRIEF
ON REMEDIES (2:11-cv-00417-MJP) - 6

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone (206) 624-0900*

1   F.3d at 697.   The district court agreed, issuing an order requiring transit agencies to take steps

2   to increase ridership by 15% over levels in 1982-83.   *Id.* at 698.   The Ninth Circuit reversed.

3   Starting with the plain language of the SIP, the Court explained that "[n]o provision within [the

4   SIP] actually stated that MTC was required to increase ridership by any specific amount." *Id.*

5   Instead, the SIP simply discussed the 15% ridership increase as a "target."   Such discussion is

6   not an express commitment, and "[a]greeing to establish a ridership 'target' is simply not the

7   same as promising to attain that target." *Id.*   In the absence of any such promise, the target was

8   unenforceable because "an obligation cannot be imposed based upon a SIP if that obligation was

9   not actually undertaken in the SIP." *Id.*   Simply put, the district court lacked jurisdiction to order

10  the state to take action that was not expressly committed to in the SIP itself.

11       The district court decision in *Citizens* is also instructive on the limits of enforcing SIP

12  provisions.   The California SIP required the Bay Area Air Quality Management District to enact

13  contingency measures for stationary sources if reasonable further progress ("RFP") targets were

14  met.   *Citizens*, 731 F.Supp. at 1459.   The RFP targets were not met, and the District duly enacted

15  contingency measures.   The plaintiffs argued that the District violated the SIP because its

16  contingency measures were *insufficient* to meet RFP targets.   *Id.*   The Court rejected those

17  arguments because the SIP did not expressly commit the District to enact contingency measures

18  that are "sufficient" to meet RFP, but only that such measures be enacted.   *Id.*   As the Court

19  explained, "[w]hile such a commitment may seem to logically flow from the [SIP], the Court is

20  not at liberty to extrapolate from the [SIP] or flesh out strategies not expressly contained

21  therein." *Id.  See also Action for Rational Transit,* 699 F.2d at 616 (court lacked jurisdiction to

22  address plaintiff's "desire to augment or amend the SIP to correct perceived inadequacies").

23       The above cases demonstrate that the remedy here is limited to enforcing the strategy

24  outlined in the SIP – to update a priority list of sources needing RACT review and to set a

25  schedule for conducting those reviews.   As was the case in *Bayview*, "[n]o provision within [the

26  SIP] actually state[s]" that the Agencies are required to immediately conduct RACT review for

INTERVENOR-DEFENDANT'S BRIEF
ON REMEDIES (2:11-cv-00417-MJP) - 7

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
Telephone (206) 624-0900

1   any particular source or emission.  Instead, as was the case in *Citizens*, Plaintiffs seek to

2   improperly "extrapolate" such a requirement from the SIP.  Plaintiffs need to make their

3   arguments about the urgency of issuing RACT determinations for Washington refineries as to

4   GHGs to Ecology, not to this Court.  By asking this Court to circumvent the process explicitly

5   established in RCW 70.94.154, Plaintiffs invite this Court to substitute its judgment for the

6   discretion vested solely in Ecology by the Legislature.  However, "the Court is not at liberty" to

7   do so, and may only order the Agencies to do what the statute (and thus the SIP) explicitly

8   requires.

9           The Washington Legislature in RCW 70.94.154 clearly assigned to Ecology the policy

10   decision as to which sources are most in need of the Agencies' limited resources for RACT

11   review.  Although the Court may order the Agencies to revisit and update that list of priorities, it

12   cannot make the priority decision for Ecology in the first instance.  *See American Electric Power*

13   *Co. v. Connecticut*, 131 S. Ct. 2527, 2540 (2011) (rejecting argument that "individual federal

14   judges" should "determine, in the first instance" the complicated scientific and policy choices

15   Congress left to expert agencies).  Any order bypassing Ecology's responsibility in this regard

16   would be  contrary to both the express language of RCW 70.94.154 and the primary jurisdiction

17   assigned by that statute to Ecology to prioritize its RACT determinations. *See Am. Auto. Mfrs.*

18   *Ass'n v. Massachusetts Dept. of Envtl. Prot.*, 163 F.3d 74, 81 (1st Cir. 1998) (doctrine of primary

19   jurisdiction appropriate where agency decision "l[ies] at the heart of the task assigned" by

20   legislature and "agency expertise [i]s required to unravel intricate, technical facts") (internal

21   quotations omitted).

22   **C.     Even if the Court Could Order the Agencies to Immediately Determine RACT for**
       **Refineries, Any Such Order Could Not Direct the Agencies' Exercise of Their**
23     **Discretion Provided in RCW 70.94.154**

24           Even if the Court could order the Agencies to immediately determine RACT for GHGs

25   for petroleum refineries, any such remedy still could not limit the Agencies' discretion to

26   determine:  (i) whether to establish RACT through individual source-specific regulatory orders

INTERVENOR-DEFENDANT'S BRIEF
ON REMEDIES (2:11-cv-00417-MJP) - 8

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
Telephone (206) 624-0900

1   or by rule; (ii) which Agency should assume responsibility for establishing RACT for each

2   refinery or group of refineries; and (iii) what pollutants to consider in the RACT evaluation.

3   Such discretion is necessary because, as explained below, RCW 70.94.154 reserves these

4   decisions to the Agencies.  Such discretionary decisions in a SIP are not enforceable in a CAA

5   citizen suit, and the Agencies must be afforded the opportunity to make these important policy,

6   technical, and resource allocation decisions in the first instance.

7         **1.**     **RCW 70.94.154 explicitly grants the Agencies discretion to determine RACT by source or source category**

8

9        RCW 70.94.154(2) and (3) address the process for imposing enforceable RACT

10   determinations.  These subsections grant the Agencies discretion to determine RACT by "source

11   category" or on a "source specific basis."  Generally, where there are three or more sources in a

12   source category, the Agencies must define RACT by rule.  Subsection (3), however, enumerates

13   various circumstances in which an Agency may make a source-specific RACT determination.

14   Several of those circumstances could justify a decision by the Agencies to issue source-specific

    RACT orders.

15        If this Court orders the Agencies to determine RACT for petroleum refineries, they must

16   still apply the criteria in RCW 70.94.154(3).  At that time, the Agencies will determine if the

17   statutory criteria are met, and if so, will exercise their discretion to proceed by category or on a

18   source specific basis.  This Court may not apply and dictate the criteria for the Agencies in the

19   first place. *See American Electric Power Co.,* 131 S. Ct. at 2540.  Even if it could, the Court

20   may not order the Agencies to take discretionary action in the context of a CAA citizen suit.

21   *El Comite*, 539 F.3d at 1069 (discretionary provisions in SIP are unenforceable).

22        Moreover, it is far from clear at this point whether "petroleum refineries" are even a

23   single source category.  Washington's petroleum refineries differ profoundly from each other in

24   their engineering configurations.  For instance, Ecology's 1996 RACT list and schedule sub-

25   categorized refinery process units into: (a) Catalytic Cracking Units, (b) Reforming Units,

26

INTERVENOR-DEFENDANT'S BRIEF
ON REMEDIES (2:11-cv-00417-MJP) - 9

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone (206) 624-0900*

1   (c) Sulfur Plant Units; and (d) Other Petroleum Refineries (not (a), (b), or (c)).  *See* Holmes

2   Decl., Ex. 1 at 2.  Among Washington's five refineries, three have catalytic cracking units and

3   two do not.  *See* Holmes Decl. at ¶ 4.  All five refineries have "reforming units," but those units

4   are very different from each other in age, design and emission configurations.  *Id*.  The Agencies

5   could decide that the differences among the refineries warrant source-specific RACT

6   determinations, rather than a generic rulemaking approach.  This Court's remedy order must

7   therefore allow the Agencies to apply the factors listed in RCW 70.94.154(2) and (3) in deciding

8   whether RACT should be established by category or through source-specific orders.

9       **2.     RCW 70.94.154 explicitly grants the Agencies discretion to decide which air
            control agency evaluates RACT for each Washington refinery**

10          The same analysis applies with respect to which of the Defendant Agencies will

11  determine RACT for the petroleum refineries.  While the Legislature assigned to Ecology the

12  task of developing a list and schedule for RACT evaluations, it vested all of the Agencies with

13  authority to establish RACT for sources under their jurisdiction.  *See, e.g.*, RCW 70.94.154(4)

14  ("The department and local authorities shall revise RACT requirements, as needed . . ."); RCW

15  70.94.154(5) ("In determining RACT, ecology and local authorities shall utilize the factors set

16  forth . . .").  These statutory provisions, incorporated into the SIP, do not specify which agency

17  must conduct any given RACT determination, and thus clearly grant to the agencies discretion to

18  decide how best to make such determinations.   As discussed above, this kind of discretionary

19  decision is not enforceable in a CAA citizen suit.  *El Comite*, 539 F.3d at 1069.

20          Of Washington's five refineries, four are located within the district boundaries of the

21  Northwest Clean Air Agency ("NWCAA"), and one within the boundaries of the Puget Sound

22  Clean Air Agency ("PSCAA").  NWCAA and PSCAA issue most air permits for the refineries

23  within their districts,[4] and their staff are most familiar with the configuration and emissions

24  _____

25      [4] With minor exceptions not relevant here, Ecology has the exclusive authority to issue
    prevention of significant deterioration permits for major new projects in Washington state.

26

INTERVENOR-DEFENDANT'S BRIEF
ON REMEDIES (2:11-cv-00417-MJP) - 10

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone (206) 624-0900*

1   profiles of the refineries they regulate.  It would be reasonable, although not mandated by the

2   statute, for the Agencies to decide that NWCAA and PSCAA should take responsibility for

3   establishing RACT for the refineries they regulate.  Accordingly, any remedy order issued by

4   this Court must leave this option open to the Agencies.

5       **3.    RCW 70.94.154 requires the Agencies to consider "all air contaminants
            deemed to be of concern" when conducting a RACT review**

6

7       Finally, RCW 70.94.154 also vests the Agencies with discretion to decline to determine

8   RACT for any particular air contaminant.  While the Plaintiffs profess a narrow interest in

9   compelling the Agencies to establish RACT for GHGs, the Legislature specified a more rational

10  and comprehensive approach to RACT evaluation:

11          In establishing or revising RACT requirements, ecology and local
            authorities shall address, where practicable, all air contaminants
            deemed to be of concern for that source or source category.

12  RCW 70.94.154(5).  Under this provision, a RACT determination need not consider particular

13  air contaminants – such as GHGs – if (1) consideration of those contaminants are not

14  "practicable" or (2)  the contaminants are not "deemed to be of concern" for that particular

15  source.  *Id*.  The decision as to whether it is practicable to consider GHGs or whether GHGs are

16  deemed to be of concern for petroleum refineries is a determination that must be made first by

17  the Agencies, not the Court.   *See American Electric Power Co.,* 131 S. Ct. at 2540.[5]

18      This discretion is grounded in practical constraints and trade-offs.  Each source category

19  (and sometimes individual plants within an industry) emit a different suite of pollutants of

20  varying regulatory importance.  Measures implemented to control emissions of one pollutant

21  may increase emissions of another.  As WSPA's prior briefing explained, there is an inverse

22

23  _____
        [5] Nor does the use of the word "shall" in RCW 70.94.154(5) require a different result.
24  The Ninth Circuit has addressed similar "shall" language in a SIP and determined that the use of
    the word "shall does not necessarily signify" that the commitment is not subject to "conditions
    precedent or conditions subsequent."  *Trustees for Alaska v. Fink,* 17 F.3d 1209, 1212 (9th Cir.
25  1994).  In the case of the Washington SIP, the "shall" language is expressly conditioned on a
    determination by the Agencies that GHGs are deemed to be of concern.
26

INTERVENOR-DEFENDANT'S BRIEF
ON REMEDIES (2:11-cv-00417-MJP) - 11

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
Telephone (206) 624-0900

1    relationship between GHG emissions from refineries and the sulfur content of fuels burned in

2    motor vehicles.  *See* Dkt. 50 at 14.  In recent years, EPA has amended its fuel specifications for

3    gasoline, highway diesel, and other fuels to reduce the maximum sulfur content of most fuels to

4    15 parts per million.  Holmes Decl. at ¶ 5.  To meet the new "ultra low sulfur" fuel standards,

5    Washington refineries have invested millions of dollars to upgrade their sulfur capture capability.

6    *Id*.  Refineries remove sulfur from crude oil using energy-intensive processes.  Accordingly,

7    increased GHG emissions are an unavoidable collateral effect of producing cleaner fuels.  *Id*.

8    In deciding whether it is "practicable" to mandate reductions in GHG emissions from refineries,

9    the Agencies would need to consider the effect of EPA's fuel specifications and the sulfur

10   dioxide control benefits that the region gains from low sulfur fuels.

11        The Court's remedy order must preserve the mandate contained in RCW 70.94.154(5)

12   that in establishing RACT requirements, the Agencies should consider all pollutants "deemed to

13   be of concern for that source or source category."  Reducing GHG emissions is not the only

14   objective the Agencies must consider in evaluating RACT, and this Court may not assign to that

15   pollutant a priority that is not found within the SIP or RCW 70.94.154.

16                                    **III.  CONCLUSION**

17        This Court has determined that RCW 70.94.154 is part of the SIP.  The statute outlines

18   the process for RACT determinations in Washington state.  The Court's remedy order must

19   implement, and not circumvent, the process established by the Legislature to prioritize scarce

20   Agency resources for RACT reviews.

21        DATED:       February 6, 2012.

22                                    STOEL RIVES LLP

23                                    /s/Jeffrey W. Leppo
                                      Jeffrey W. Leppo, WSBA No. 11099
24                                    600 University Street, Suite 3600
                                      Seattle, Washington  98101
25                                    Telephone:  (206) 386-7641
                                      Email:  jwleppo@stoel.com
26                                    *Attorneys for Intervenor-Defendant*
                                      *Western States Petroleum Association*

INTERVENOR-DEFENDANT'S BRIEF
ON REMEDIES (2:11-cv-00417-MJP) - 12

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
Telephone (206) 624-0900

1

**<u>CERTIFICATE OF SERVICE</u>**

2        I hereby certify that on February 6, 2012, I filed a copy of the foregoing document with

3   the Clerk of the Court for the United States District Court – Western District of Washington by

4   using the CM/ECF system.  Participants in this Case No. 2:11-cv-00417 who are registered

5   CM/ECF users will be served by the CM/ECF system.

6

7        Svend A. Brandt-Erichsen, sberichsen@martenlaw.com
         Janette K. Brimmer, jbrimmer@earthjustice.org
         Brian W. Chestnut, bchestnut@zcvbs.com
8        Jennifer A. Dold, jenniferd@pscleanair.org
         Joshua Osborne-Klein, joshok@zcvbs.com
9        Ryan P. Steen, rpsteen@stoel.com
         Katharine G. Shirey, ecyolyef@atg.wa.gov
10       Laura J. Watson, lauraw2@atg.wa.gov

11

12                                        /s/ Jeffrey W. Leppo
                                          Jeffrey W. Leppo
13

14

15

16

17

18

19

20

21

22

23

24

25

26

INTERVENOR-DEFENDANT'S BRIEF
ON REMEDIES (2:11-cv-00417-MJP) - 13

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone (206) 624-0900*