1  JANETTE K. BRIMMER (WSB #41271)          HONORABLE MARSHA J. PECHMAN
   Earthjustice
2  705 Second Avenue, Suite 203
   Seattle, WA  98104
3  (206) 343-7340
   (206) 343-1526 *[FAX]*
4  jbrimmer@earthjustice.org

5  *Attorneys for Plaintiffs*

6  BRIAN W. CHESTNUT (WSB #23453)
   JOSHUA OSBORNE-KLEIN (WSB #36736)
7  Ziontz, Chestnut, Varnell, Berley & Slonim
   2101 Fourth Avenue, Suite 1230
8  Seattle, WA  98121
   (206) 448-1230
9  (206) 448-0962 *[FAX]*
   bchestnut@zcvbs.com
10 joshok@zcvbs.com

11 *Co-Counsel for Plaintiffs*

                    UNITED STATES DISTRICT COURT
12             FOR THE WESTERN DISTRICT OF WASHINGTON

13 WASHINGTON ENVIRONMENTAL COUNCIL and      ) Civ. No.  11-417-MJP
   SIERRA CLUB WASHINGTON STATE CHAPTER,     )
14                                           )
                           Plaintiffs,       ) PLAINTIFFS' REPLY BRIEF ON
15                                           ) REMEDY
            v.                               )
16                                           )
   THEODORE ("TED") L. STURDEVANT, DIRECTOR, )
17 WASHINGTON STATE DEPARTMENT OF            )
   ECOLOGY, in his official capacity, MARK   )
18 ASMUNDSON, DIRECTOR, NORTHWEST CLEAN      )
   AIR AGENCY, in his official capacity, and CRAIG T. )
19 KENWORTHY, DIRECTOR, PUGET SOUND CLEAN    )
   AIR AGENCY, in his official capacity,     )
20                                           )
                           Defendants,       )
21                                           )
            and                              )
22                                           )
   WESTERN STATES PETROLEUM ASSOCIATION,     )
23                                           )
                    Intervenor-Defendant.    )
   ──────────────────────────────────────────)
24

25 PLAINTIFFS' REPLY BRIEF ON REMEDY                *Earthjustice*
                                                    *705 Second Ave., Suite 203*
26 (Civ. No. 11-417-MJP)  - 1 -                      *Seattle, WA  98104*
                                                    *(206) 343-7340*

INTRODUCTION

In their briefs on remedy, Defendant Agencies (the "Agencies") and Defendant-Intervenor ("Intervenor") admit to a significant problem with air quality control in Washington State—the almost complete failure of the Agencies to determine and apply Reasonably Available Control Technology ("RACT") for any air contaminants from any source despite being required to do so since at least 1995.  Intervenor's Brf., Dkt. # 88, p.1; Asmundson Decl., Dkt. # 84, ¶¶ 3-5.  The Agencies now justify delay in complying with the court order in this case in order to catch up on all their RACT work, even though it will result in years more uncontrolled greenhouse gas emissions from refineries.  See, e.g., Agencies' Brf., Dkt. # 83, at pp. 13-14.  And, continuing in this vein, the Agencies demonstrate they have done little in the last two-plus months to comply with their RACT obligations for greenhouse gases from refineries.  The Agencies' years of inaction on *all* air contaminants cannot justify further delay now for greenhouse gas emission controls.  The Agencies have failed to demonstrate that they need more than the 164 days to come into compliance with the Court's RACT Order and Plaintiffs ("Conservation Organizations") reiterate their request for a 164-day compliance schedule.

ARGUMENT

I.   THE AGENCIES' PAST FAILURE TO DETERMINE RACT FOR ANY AIR CONTAMINANTS DOES NOT SUPPORT THEIR EXTENDED PROPOSAL.

The Agencies contend they need at least 26 months to comply with the Court's December 1, 2011 order because they must now make RACT determinations for all air contaminants simultaneously.  This "RACT for all or RACT for none" argument is legally incorrect—neither the statute nor the single case upon which the Agencies rely support the claim that RACT determinations for all air contaminants must be made simultaneously.

PLAINTIFFS' REPLY BRIEF ON REMEDY
(Civ. No. 11-417-MJP)  - 2 -

RCW 70.94.154(5), the provision on which the Agencies now rely (but previously argued was irrelevant), expresses a preference for a comprehensive RACT determination, but does not require the Agencies to make RACT determinations for all air contaminants simultaneously. Rather, that provision provides that, in establishing RACT requirements, Ecology and local authorities "shall address, *where practicable*, all air contaminants *deemed to be of concern* for the source or source category." RCW 70.94.154(5) (emphasis added). By the plain language of the statute, if it is not "practicable" to consider all air contaminants simultaneously, the Agencies need not do so. Further, the provision gives the Agencies discretion to determine that air contaminants are not "of concern" and therefore need not be included in a RACT determination.

The one case the Agencies cite to in support of their "RACT for all" theory actually contradicts the Agencies' position. In <u>Bowers v. Pollution Control Hearings Board</u>, 103 Wash. App. 587, 13 P.3d 1076 (2000), the regional agency argued strenuously that it was *not* required to assess and determine RACT for all air contaminants emitted from a coal-fired power plant at one time. Rather, the agency argued that it could, pursuant to a settlement agreement, determine RACT for only the three pollutants subject to the agreement. <u>Id.</u> at 593, 623. The court noted the qualifiers in RCW 70.94.154(5) that provide an agency need only determine RACT where practicable at the time and only where there is a determination that an air contaminant is of concern. <u>Id.</u> at 624. On the basis of this language, the court plainly held that an agency need not determine RACT for all air contaminants when it undertakes a RACT review and determination.

Here, it is within the Agencies' discretion to assess whether, in light of the court's specific order here, it is "practicable" to also make RACT determinations for all air contaminants

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

of concern at the same time.[1]  In addition, the Agencies may determine they need not do RACT

determinations for certain air contaminants that are not "of concern."  RCW 70.94.154(5).  As

noted in Dr. Sahu's Second Declaration, for almost all air contaminants listed in Mr.

Asmundson's Declaration other than greenhouse gases, there already exist control requirements

(through federal rules such as Best Achievable Control Technology and Maximum Achievable

Control Technology standards or National Emission Standards for Hazardous Pollutants, or

federal consent decrees) that are equal to or more strict than RACT.  Sahu Second Decl., ¶ 5.

For such air contaminants, rather than embarking on the fool's errand of making redundant

RACT determinations, the Agencies might determine these are not "of concern" in the current

RACT process.  (In fact, it is puzzling the Agencies have not already done this assessment over

the last two months in determining what is necessary to comply with the Court's order.)

   Finally, whether the Agencies elect to make RACT determinations for other air

contaminants in some larger, perhaps ongoing, process is irrelevant to the time it will take them

to comply with the Court's order in this case.  As is plain in the Agencies' brief and supporting

declarations, different emission unit and technology considerations will be required to make

RACT determinations for various air contaminants other than greenhouse gases.  See also, Sahu

Second Decl., ¶¶ 6 and 23.  Accordingly, even if assessing RACT for all air contaminants, there

will be a sequence and ordering of the air contaminants considered.  Id.  Nothing in the

Agencies' brief or declarations suggests that determining RACT for greenhouse gases is

---

[1] To be clear, the Conservation Organizations do not suggest the Agencies might not be bound
by time obligations within the State Implementation Plan or statutes or regulations for RACT for
other pollutants, but merely that those obligations are outside the bounds of this case.

PLAINTIFFS' REPLY BRIEF ON REMEDY
(Civ. No. 11-417-MJP)  - 4 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

dependent on determining RACT for other air contaminants, and the Agencies have not asserted that these RACT processes are technically inseparable.

II.    THE AGENCIES FAIL TO ADEQUATELY SUPPORT THEIR EXTENDED REQUEST OF MORE THAN TWO YEARS.

Because the Agencies' are not compelled to address air contaminants outside the scope of this Court's order, the remainder of this brief is confined to addressing the actual time necessary to comply with the Court's order and determine RACT for greenhouse gases.  The Agencies' proposed compliance schedule of more than 2 years is based on their continued refusal to recognize that much of the initial work supporting the RACT determinations is already available, includes numerous unnecessary tasks, and is far in excess of what is actually needed to complete RACT determinations for greenhouse gases.

A.    The Agencies' Proposal Includes Unnecessary and Redundant Regulatory Steps.

The Agencies' lengthy RACT process can be broken into three distinct phases:  an initial 6.5 months for a "pre- prenotice inquiry" information-gathering exercise; a 14.5-month period during which more information is gathered and a proposal is developed; a final 5 month period to work through the actual required administrative process for a rulemaking (which also includes public notice and comment).  The Agencies have included many steps that are partly or wholly unnecessary to the determination of RACT for greenhouse gas emissions from oil refineries and for all of the steps, the Agencies propose a serial as opposed to multi-task approach.

First, it is unnecessary for the Agencies to engage in a 6.5 month "information collection stage" prior to issuing the prenotice inquiry (the first formal step in rulemaking, see RCW 34.05.310).  Clark Decl., Dkt. # 86, ¶¶ F-M.  The very purpose of a prenotice inquiry is to inform stakeholders on the topic of the proposed rule and "solicit comments from the public on the

1    subject of a possible rule making." RCW 34.05.310(1)(a); <u>see also</u> RCW 34.05.310(2), (3). The

2    "pre- prenotice" inquiry proposed by the Agencies for "information collection" is redundant not

3    only of the prenotice inquiry process, but also duplicates many steps the Agencies outline for the

4    14.5-month stakeholder/proposal development process that they propose to follow issuance of

5    the prenotice inquiry. [2]  <u>See also</u>, Sahu Second Decl. ¶¶ 7-13. The 90-day period for information

6    gathering and proposal development suggested in the Conservation Organizations' brief for

7    gathering of information and development of the RACT proposal is more than adequate. <u>See</u>

8    <u>e.g.</u>, Agencies' Brf., Dkt. # 83, at 9, 14.

9         The Agencies also include a number of redundant or unnecessary tasks in the 14.5-month

10   period that the Agencies propose to follow issuance of their prenotice inquiry. For example, the

11   air dispersion and cross-media assessments (tasks 2c and 2d in Mr. Asmundson's narrative, Dkt.

12   #84, at ¶¶ 40-43) together comprise four months of the Agencies' proposed schedule. Most, if

13   not all, of this time can be eliminated as unnecessary to the determination of RACT for

14   greenhouse gas emissions from refineries. Sahu Second Decl. ¶¶ 15-16. Specifically, the air

15   dispersion modeling is entirely unnecessary because, as stated above, energy efficiency measures

16   are the plain route to reducing greenhouse gas emissions at the refineries (as already determined

17   by the California Air Resources Board ("CARB"), the Environmental Protection Agency

18   ("EPA"), and others). <u>Id.</u> and ¶ 14. Air dispersion modeling tends to be useful when choosing

19

20   [2] Moreover, some tasks the Agencies propose in their 6.5 month pre-prenotice inquiry process
     are wholly unnecessary to determining RACT for greenhouse gas emissions. For example, it is
21   unnecessary for the Agencies to identify existing greenhouse gas regulations (task 1f in Mr.
     Asmundson's narrative, Dkt. #84, at ¶¶ 29-31), because greenhouse gases are not currently
22   subject to controls (other than reporting) at the refineries. Sahu Second Decl. ¶ 12. It is also
     unnecessary for the Agencies to sift through all air contaminants (task 1b in Mr. Asmundson's
23   narrative, Dkt. #84, at ¶ 16.), as such work is irrelevant to compliance with this Court's Order.

24

25   PLAINTIFFS' REPLY BRIEF ON REMEDY

26   (Civ. No. 11-417-MJP)  - 6 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

1   between alternative technologies under a legal standard that requires weighing of pollutant

2   reductions among many different technological pollutant control devices or when trying to

3   address nonattainment issues in a particular area.  Sahu Second Decl. ¶ 15.  Similarly, there is no

4   need for the Agencies to engage in an intricate assessment, if any, of indirect, unintended "cross

5   media" impacts from RACT options to be considered, because the readily-available research

6   demonstrates energy efficiency measures are currently the best route to RACT for greenhouse

7   gas emissions, and such measures are uniformly positive.[3]  Sahu Second Decl. ¶ 16.

8          It is also unnecessary for the Agencies to prepare a detailed human health risk assessment

9   for the three greenhouse gases that will be the primary focus of the RACT determination (task 3

10  in Mr. Asmundson's narrative, Asmundson, Dkt. #84, at ¶ 44).  As noted by Dr. Sahu, the energy

11  efficiency measures likely to constitute RACT for greenhouse gases have no adverse human

12  health impacts, being beneficial across the board.  Sahu Second Decl., ¶ 18.  Eliminating this

13  unnecessary step would reduce the Agencies' schedule by nine weeks.

14         In addition to the padding of time for the tasks exemplified above, underpinning the

15  Agencies' extended time request is their apparent inability to multi-task the various components

16  of the RACT determination.  The Agencies set forth a serial approach where each task is

17  engaged in from a "work, then wait, then work, then wait" kind of methodology.  This is entirely

18  unnecessary.  For example, all of the tasks listed in Mr, Asmundson's "Task 1" could easily be

19  done in an overlapping or simultaneous fashion in the period following issuance of the prenotice

20

21

22

23

[3] If the Agencies decide to require more aggressive reduction options than efficiency, then some
analysis of indirect consequences may be necessary, but that currently appears unlikely.

24

25  PLAINTIFFS' REPLY BRIEF ON REMEDY
    (Civ. No. 11-417-MJP)  - 7 -

26

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

1    inquiry.  See Sahu Second Decl. ¶¶ 13 and 17.  Further, creation of the Agencies' "decision

2    matrix"[4] could occur while information is acquired and evaluated during Tasks 1 and 2.

3            B.    Much of the Work Outlined by the Agencies Has Already Been Done by Dr.
                   Sahu, the CARB, or EPA.
4
             In proposing the extended two-plus year schedule, the Agencies disregard the significant
5
     work that already been done on this issue that will greatly assist the Agencies in accelerating
6
     their RACT process.  For example, as noted in Dr. Sahu's previous declaration, and presumably
7
     already known to Mr. Asmundson and his staff, it is well-established that the vast majority of
8
     greenhouse gas emissions from the oil refineries are in the form of the first three air
9
     contaminants listed by Mr. Asmundson: carbon dioxide, methane, and nitrous oxide.  Sahu First
10
     Decl., Dkt. #82, at ¶¶ 15, 16 ("over 99% by mass in each refinery are CO2".)  Sahu Second Decl.
11
     ¶¶ 7 and 14.  Because RACT determinations necessarily include a balancing of the benefits of
12
     additional controls against the incremental improvements in air quality, see RCW 70.94.030, it
13
     makes sense for the Agencies to focus on these three air contaminants.  Furthermore, as Dr. Sahu
14
     pointed out from other agencies' existing work, it is already known that RACT for these
15
     greenhouse gases from fuel combustion activities is likely to involve energy efficiency measures
16
     common to all five refineries.  Sahu First Decl. at ¶¶ 20 and 24; Second Decl. at ¶¶ 7 and 14.
17
             Indeed, Dr. Sahu has, in the month he was retained to assist with this matter, already
18
     performed many of the same tasks the Agencies claim will take much longer at the outset of the
19
     RACT process.  For example, Dr. Sahu has reviewed the Title V Operating Permits and
20
     Statements of Basis for each of the refineries—documents issued by the regional agencies—
21
     wherein he has obtained detailed information about the refineries' processes and sources of
22
_____
23   [4] It also appears unnecessary to develop an elaborate matrix to decide among efficiency measures
     that have a high degree of commonality among refineries.  See Sahu Second Decl. ¶ 19.
24

25   PLAINTIFFS' REPLY BRIEF ON REMEDY
     (Civ. No. 11-417-MJP)  - 8 -
26

emissions.  Sahu First Decl. at ¶ 12.  Dr. Sahu has also reviewed the information recently

reported to EPA by the refineries themselves, and from that has been able to assess the type and

amount of greenhouse gases and the general sources of those emissions (from the various

carbon-fuel based processes at the refineries).  Id.  As Dr. Sahu noted, assessing greenhouse gas

emissions from fuel-burning processes is not a terribly-complicated engineering endeavor.  Id. at

¶¶ 21 and 23.  As noted in his Second Declaration, Dr. Sahu has accomplished these tasks in a

approximately two weeks.  Sahu Second Decl. ¶¶ 22 and 26.

Conversely, the Agencies claim that simply identifying the sources and amounts of

emissions will take 27 weeks (over ½ a year), Asmundson Decl., Dkt. #84, at ¶ 10, which

includes five weeks just to "create a list of all contributing emissions units," id. at ¶¶ 21-24.

Incredibly, the Agencies claim it will take *three weeks* simply to formulate the questions to the

refineries.  Id. at ¶ 12.  In sum, the Agencies, who have far better access to the information and

direct experience with these particular refineries, claim that it will take them over half a year to

perform the same task that Dr. Sahu generally performed in a few weeks.

Also in the last month, Dr. Sahu reviewed a number of studies and proposals by EPA,

CARB, and other researchers, regarding energy efficient measures that result in reductions of

greenhouse gas emissions.  As Dr. Sahu previously noted, the work done by CARB and EPA in

particular is readily available and translatable to Washington's oil refineries.  Id.  Overall, the

research done by Dr. Sahu should be more easily performed by Agency staff given their

familiarity with the facilities in question and the regulatory relationship that allows access to a

larger body of information.  But here too, the Agencies seem unable to get the work going in a

timely fashion.  The Agencies claim that the identification of available control technologies

(presumably from the same sources reviewed by Dr. Sahu) will take them a total of 23 weeks—

PLAINTIFFS' REPLY BRIEF ON REMEDY
(Civ. No. 11-417-MJP)  - 9 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

almost five months.  Asmundson Decl., Dkt. #84 at ¶¶ 33-38.  There is no support for the almost

year-long request by the Agencies for the first stages of the RACT determination.

When the padding, redundancies, and unnecessary tasks are stripped away from the

Agencies' request, what is left resembles the timeline in the Conservation Organizations'

request:  164 days.  This timeline allows reasonable periods for gathering together and evaluating

the readily-available information regarding energy efficiency measures for refineries and

distilling that information to a RACT proposal.  It also includes at least two opportunities for the

public and the regulated industry to formally weigh in—one for supplying information at the

outset (the prenotice inquiry) and one for responding to an initial RACT proposal (following

filing of a proposed RACT rule).  The Conservation Organizations urge the court to reject the

Agencies' unnecessary delay of the relief in this case in favor of a timeline more in keeping with

that suggested by the Conservation Organizations in their initial remedies brief.

III.    THE AGENCIES RESOURCE LIMITATIONS DO NOT PROVIDE A BASIS FOR
        DELAYING RELIEF IN THIS CASE.

It appears from their brief and supporting declarations that the Agencies claim the two-

plus years for compliance with their SIP obligations is necessary due in part to constrained

budgets and the attendant inability to allocate engineering time to performing the required

analyses and determinations.  This excuse is a red herring.  First, the state is obligated under the

Clean Air Act to adequately fund its air program sufficient to carry out obligations such as

permitting and all tasks necessary to implementing and enforcing permitting requirements.  See

e.g., 42 U.S.C. § 7410(a)(2)(L); 40 C.F.R. § 52.280.  A state's failure to comply with its SIP

cannot be excused by its failure to fund the tasks necessary to comply.

Second, the Agencies have at their disposal the ability to fund all, or a significant portion, of the work necessary to this RACT determination. The RACT statute itself provides that "[Ecology] and local air authorities are authorized to assess and collect a fee to cover the costs of developing, establishing, or reviewing categorical or case-by-case RACT requirements" and directs Ecology to adopt rules establishing the fee. RCW 70.94.154(7). Pursuant to that instruction, Ecology adopted WAC 173-455-100, which provides that Ecology may assess and collect fees for source-specific RACT determinations or a categorical RACT determination, setting forth fee schedules based upon the complexity of the task and the source and type of RACT determination. WAC 173-455-100(2)-(5). Similarly, the regional agencies provide for fees necessary to fund their programs—both agencies assess an annual "registration" fee to the refineries, NWCAA Reg. § 324, PSCAA Reg. § 5.07, and the Puget Sound Clean Air Agency further provides for a $5,000 fee for agency RACT determinations, PSCAA Reg. § 5.07. [5]

IV.   INTERVENOR'S BRIEF IS NOT RESPONSIVE AND SHOULD BE DISREGARDED.

Intervenor's brief does not address the issue of timing for the Agencies to make a RACT determination for greenhouse gas emissions. Rather, Intervenor chooses to revisit the Court's original decision regarding what is required by the State Implementation Plan with arguments the Court has already rejected and wholly new arguments not raised in the summary judgment briefing. Because Intervenor's brief is not responsive to the Court's request for limited remedies briefing, the Conservation Organizations will not provide specific responses to the arguments raised therein, unless requested by the Court to do so. As a general response, the Conservation Organizations believe that Intervenor's arguments are seriously flawed for several reasons. For

---

[5] Dr. Sahu completed the initial tasks identified by both the Agencies and the Conservation Organizations for $5,330, Sahu Second Decl. ¶ 26, a sum readily covered by the fee authorities.

example, Intervenor reads only pieces of the RACT provisions at RCW 70.94.154 and WAC 173-400-040; however, when read as a whole and together, it is plain the Agencies must not only develop a list and schedule for RACT, but must determine and apply RACT.  Should the Court wish to consider Intervenor's new arguments and attempt to revisit the substantive issues, Conservation Organizations request an opportunity to respond in a supplemental brief.

CONCLUSION

The Agencies' schedule of more than two years for making the RACT determination ordered by this Court is unreasonably long and insufficiently supported.  Their proposal is based on the faulty premise that the Agencies must conduct RACT for all air contaminants simultaneously; assumes the Agencies must start from scratch despite the abundance of existing information relevant to the process; and builds in redundant and unnecessary analytical steps that serve only to delay completion of the task.  The Conservation Organizations ask the Court to reject the Agencies' proposal and instead order the Agencies to make the required RACT determinations for greenhouse gas emissions from oil refineries by 164 days from the date of the Court's order.

Respectfully submitted this 21st day of February, 2012.


_____/s/ Janette K. Brimmer_____
JANETTE K. BRIMMER (WSB #41271)
Earthjustice
705 Second Avenue, Suite 203
Seattle, WA  98104
(206) 343-7340
(206) 343-1526 *[FAX]*
jbrimmer@earthjustice.org
*Attorneys for Plaintiffs*

PLAINTIFFS' REPLY BRIEF ON REMEDY
(Civ. No. 11-417-MJP)  - 12 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

BRIAN W. CHESTNUT (WSB #23453)
JOSHUA OSBORNE-KLEIN (WSB #36736)
Ziontz, Chestnut, Varnell, Berley & Slonim
2101 Fourth Avenue, Suite 1230
Seattle, WA  98121
(206) 448-1230
(206) 448-0962 *[FAX]*
bchestnut@zcvbs.com
joshok@zcvbs.com

*Co-Counsel for Plaintiffs*

PLAINTIFFS' REPLY BRIEF ON REMEDY
(Civ. No. 11-417-MJP)  - 13 -

CERTIFICATE OF SERVICE

        I am a citizen of the United States and a resident of the State of Washington.  I am over 18 years of age and not a party to this action.  My business address is 705 Second Avenue, Suite 203, Seattle, Washington 98104.

        I HEREBY CERTIFY that on February 21, 2012, I electronically filed the following the following documents:

    1.      Plaintiffs' Reply Brief on Remedy; and
    2.      Second Declaration of Dr. Ranajit Sahu, Ph.D.

with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

| | |
|---|---|
| Svend A. Brandt-Erichsen<br>Marten Law Group PLLC<br>1191 Second Avenue, Suite 2200<br>Seattle WA  98101<br>(206) 292-2600<br>(206) 292-2601 *[FAX]*<br>svendbe@martenlaw.com<br>*Attorneys for Defendant Mark Asmundson, Director,*<br>*Northwest Clean Air Agency* | ☐ via facsimile<br>☐ via overnight courier<br>☐ via first-class U.S. mail<br>☐ via hand delivery<br>☐ via e-mail<br>☒ via electronic service by Clerk |
| Jennifer A. Dold<br>Puget Sound Clean Air Agency<br>1904 Third Avenue, Suite 105<br>Seattle, WA  98101-3317<br>(206) 343-8800<br>(206) 343-7522 *[FAX]*<br>jenniferd@pscleanair.org<br>*Attorneys for Defendant Craig T. Kenworthy, Director Puget*<br>*Sound Clean Air Agency* | ☐ via facsimile<br>☐ via overnight courier<br>☐ via first-class U.S. mail<br>☐ via hand delivery<br>☐ via e-mail<br>☒ via electronic service by Clerk |

CERTIFICATE OF SERVICE   -1-

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

1  Katharine G. Shirley
   Assistant Attorney General
2  Laura J. Watson
   Assistant Attorney General
3  Office of the Attorney General
   Ecology Division
4  P.O. Box 40117
   Olympia, WA  98504-0117
5  (360) 586-6770
   (360) 486-6760 *[FAX]*
6  ECYOLYEF@atg.wa.gov
7  KayS1@atg.wa.gov
   LauraW2@atg.wa.gov
8  *Attorneys for Defendant Theodore ("Ted")L. Sturdevant,*
   *Director, Washington State Department of Ecology*
9
   Jeffrey W. Leppo
10 Matthew T. Cohen
   Ryan P. Steen
11 Stoel Rives LLP
   600 University Street, Suite 3600
12 Seattle, WA  98101
   (206) 624-0900
13 jwleppo@stoel.com
14 mtcohen@stoel.com
   rpsteen@stoel.com
15 *Attorneys for Intervenor-Defendant*
   *Western States Petroleum Association*
16

☐ via facsimile
☐ via overnight courier
☐ via first-class U.S. mail
☐ via hand delivery
☐ via e-mail
☒ via electronic service by Clerk

☐ via facsimile
☐ via overnight courier
☐ via first-class U.S. mail
☐ via hand delivery
☐ via e-mail
☒ via electronic service by Clerk

17        I, Cheryl McEvoy, declare under penalty of perjury that the foregoing is true and correct.

18 Executed this 21st day of February, 2012, at Seattle, Washington.

19

20

21 *Cheryl McEvoy*
   _____
22 Cheryl McEvoy

23

24

25

26

27

28 CERTIFICATE OF SERVICE   -2-

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*